K4G3KEWC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    KEWAZINGA CORP.,

4                    Plaintiff,              New York, N.Y.

5              v.                            20 CV 1106 (LGS)

6    GOOGLE, LLC,

7                    Defendant.

8    ------------------------------x        Teleconference

9                                           April 16, 2020
                                            10:50 a.m.
10
     Before:
11
                         HON. LORNA G. SCHOFIELD,
12
                                            District Judge
13

14
                            APPEARANCES
15

16
     STROOCK & STROOCK & LAVAN, LLP
17        Attorneys for Plaintiff
     BY:  TIMOTHY K. GILMAN
18          IAN G. DiBERNARDO
            GREGORY SPRINGSTED
19
     DESMARAIS, LLP
20        Attorneys for Defendant
     BY:  JOHN M. DESMARAIS
21          EMILY CHEN
            ELIZABETH E. WEYL
22          STEVEN M. BALCOF
                   -and-
23   De CARO & KAPLEN, LLP
          Attorneys for Defendant
24   BY:  AMEET A. MODI

25

K4G3KEWC

1          THE COURT:  Good morning, counsel.

2          MR. GILMAN:  Good morning, your Honor.

3          MR. DESMARAIS:  Good morning, your Honor.

4          THE DEPUTY CLERK:  We are here in the matter of 20 CV

5   1106, Kewazinga Corp. v. Google, LLC.  The parties' names have

6   been noted for the record.

7          Before we begin, I would like to remind the parties of

8   several rules and restrictions that are in effect due to the

9   novel coronavirus.  While members of the public and the press

10  have a presumptive access to this proceeding, either live or

11  telephonically, recording or broadcasting of this proceeding is

12  still prohibited by policy of the Judicial Conference of the

13  United States.  Violation of these prohibitions may result in

14  sanctions.

15         Second, we have a court reporter present today.  In

16  order to maintain an accurate record, I am going to ask each

17  counsel to state their name each time they speak before they

18  speak, just to make sure we have a clear record.

19         We are here before the Honorable Lorna G. Schofield.

20         THE COURT:  First of all, thank you for participating

21  telephonically.  I know this is a time that is both strange and

22  difficult for many of us.  Tell me first, who will be speaking

23  on behalf of the plaintiff?

24         MR. GILMAN:  Your Honor, this is Timothy Gilman from

25  Stroock on behalf of Kewazinga.

K4G3KEWC

1      THE COURT:  Thank you.  And who will be speaking on

2  behalf of the defendants?

3      MR. DESMARAIS:  Good morning, your Honor.  This is

4  John Desmarais from Desmarais, LLP.  I will do part of it, and

5  my associate Steve Balcof will talk about the nuances of the

6  schedule, if that's what your Honor wants to cover.

7      THE COURT:  Great.  Thank you.  So, we are here for an

8  initial conference in a patent infringement case.  I have your

9  premotion letters as well as your joint letter and your

10  proposed case management plan, and I understand that this case

11  is a little bit different from most because of the history of

12  the lawsuit in 2013, and that the defendant is making a

13  proposal that discovery be stayed except on the issue of

14  equitable estoppel to try to be more efficient with the use of

15  everyone's resources, and I want to hear more about that.

16      I guess my concern is that, on the one hand it is

17  efficient if the defendant is correct on the merits of their

18  argument, which of course the plaintiff vigorously disputes,

19  and it is highly inefficient if the defendants are incorrect on

20  the merits.  And one of the things I'm wondering about is

21  whether in the end, there won't inevitably be questions of fact

22  which would preclude summary judgment on equitable estoppel

23  grounds.  And also it seems to me that, in any event, that

24  argument wouldn't be dispositive of all the claims, because the

25  third patent wasn't issued and therefore wasn't implicated in

K4G3KEWC

| | |
|---|---|
| 1 | the 2013 lawsuit or the dropping of that lawsuit or any |
| 2 | discussions that followed it. |
| 3 | So let me hear from the defendant. |
| 4 | MR. DESMARAIS:  Yes, your Honor.  Thank you.  This is |
| 5 | John Desmarais from Desmarais, LLP for the defendant. |
| 6 | I take your Honor's comments about efficiency and |
| 7 | judicial economy to heart.  In fact, I've been thinking since |
| 8 | the submission of ways to streamline it even further.  I would |
| 9 | make the following amendment to our proposal, which I think |
| 10 | would actually save quite a bit of time. |
| 11 | We have a very meritorious 12(b)(6) on the claims of |
| 12 | inducement and willful infringement.  And I realize our |
| 13 | proposal has your Honor doing a lot of work of deciding a |
| 14 | motion to dismiss and then deciding a motion for summary |
| 15 | judgment.  So, I think in order to streamline the whole |
| 16 | process, what we would be prepared to do is just go ahead, |
| 17 | assuming your Honor would allow us to file the motion for |
| 18 | summary judgment early, we would just withdraw our request to |
| 19 | file a 12(b)(6), and simply answer on the understanding that it |
| 20 | would be without prejudice to file a 12(c) on the pleadings |
| 21 | later.  So, we would start the case, we would answer, and start |
| 22 | the case.  We would propose a very limited time for discovery, |
| 23 | maybe, you know, two months, maybe three if the plaintiff |
| 24 | really wanted three on the issues of equitable estoppel, and |
| 25 | then we would brief on summary judgment the issue of equitable |

K4G3KEWC

1    estoppel.  And then we can in that same brief, in the

2    alternative, make our 12(c) motion on the pleadings for

3    inducement and willfulness.

4         So the Court wouldn't have to decide the 12(b)(6) or

5    the 12(c) if the Court was satisfied with the summary judgment.

6    We just do that one and done.

7         To move on to your Honor's question about whether it's

8    efficient and whether there will be fact issues.  We don't

9    think there will be, but it's possible there will be.  So your

10   Honor is right to be concerned about that.  But, equitable

11   estoppel is ultimately for you.  It is for the bench in all

12   respects.  So to the extent that summary judgment was not

13   persuasive -- we think it will be -- but to the extent it was

14   not persuasive, any fact issue is for your Honor, it's not for

15   the jury.

16        So the way these equitable estoppel issues are

17   generally resolved is through a bench trial.  If we had a

18   summary judgment argument, or if you could tell just from the

19   briefs that you weren't satisfied, we could schedule a half a

20   day hearing or a one-day hearing, just only a few witnesses, we

21   only need the in-house people from our client who dealt with

22   the plaintiff back in 2013 to talk about what was said and what

23   was exchanged between the parties, and we probably put on a

24   businessperson to talk about the economic and evidentiary

25   prejudice.  So it will be a short hearing, plaintiff could

K4G3KEWC

1    cross-examine them, and then it would be submitted to your

2    Honor to resolve the factual disputes.

3          So I don't think the fact dispute should dissuade us

4    from moving forward.  I've had equitable estoppel trials in

5    other cases, and they last a day and they are pretty

6    straightforward.

7          THE COURT:  Talk about the issue of whether it would

8    dispose of the whole case.

9          MR. DESMARAIS:  Yes, that's where I was going next.

10   Thank you, your Honor.  And I can also talk about the merits

11   just generally because I think I've done a few of these

12   equitable estoppels over the years, and I'm quite familiar with

13   the case law in this area.  This is one of the strongest,

14   probably the strongest on the merits.

15         What happened here is back in 2013, there was an

16   aggressive assertion by the plaintiff, they reached out to us,

17   they tried to get a license agreement, they sued us.  What

18   happened after the lawsuit was filed, we actually met with

19   them, the client went and had a sitdown and explained why the

20   plaintiff was wrong, why there was not infringement, why the

21   patents were invalid, and that the lawsuit should go nowhere.

22   In the aftermath of that meeting, the plaintiff never bothered

23   to serve the complaint.  So we moved to dismiss and the

24   plaintiff never bothered to oppose the motion to dismiss.

25         Then more than six years go by, and the designers of

K4G3KEWC

1    this product have left Google, the documents were not preserved

2    because the lawsuit was over.  Lots of evidence has been

3    destroyed, memories have faded, and the economic prejudice is

4    astronomical.  Google has been driving automobiles around the

5    United States and around the world with cameras on them

6    developing this product literally day in and day out for the

7    last six years.  So, we're talking huge amounts of money has

8    been spent and huge amounts of manpower has been spent to build

9    up this product.

10        When you look at the equitable estoppel case law,

11   there is no case with facts as egregious as this of an

12   aggressive assertion, an explanation of why there is no

13   liability, and then six years of silence.  During those six

14   years, all the patents have expired.

15        And to answer your Honor's question about the

16   particular, the third patent, it's true that the lawsuit was

17   in -- the lawsuit back in 2013 was just two of the three

18   patents.  But they're all from the same family, it is all the

19   same invention.  It is just a new one with different claims, so

20   there is nothing materially different about the third patent,

21   and equitable estoppel would apply to the third patent just as

22   well as the other two.

23        THE COURT:  If somehow the third patent were the only

24   issue, would you still be bringing this equitable estoppel

25   argument?

SOUTHERN DISTRICT REPORTERS, P.C.

K4G3KEWC

1          MR. DESMARAIS:  Yes, because the claims from the third

2   patent are not materially different from the other two.  And

3   they all come from the same root invention.  So it is

4   essentially the same issue.  It is the same family.

5          THE COURT:  Do you have law that says essentially

6   that?

7          MR. DESMARAIS:  I don't know that I have a case in the

8   equitable estoppel context, but there are many, many cases in

9   the inequitable conduct context where if there is inequitable

10  conduct on the parent of the patent, all the children are

11  equally unenforceable.  So in the equitable law,

12  unenforceability travels to the children.  I don't right now

13  off the tip of my fingers have a case, but I'll certainly look

14  for one.  I have plenty of them in inequitable conduct.

15         THE COURT:  What happened right around the time when

16  the lawsuit was dropped?  I gathered from the plaintiff's

17  letter that there were discussions about a possible business

18  relationship.  And what happened there?

19         MR. DESMARAIS:  So as I understand the facts, your

20  Honor, Google moved to dismiss, and the plaintiff did not

21  oppose, the lawsuit went away.  And then we don't have any

22  internal evidence of business meetings after that.  That will

23  be one of the things that discovery tries to uncover.  But as I

24  mentioned, there has been six years of silence, and I don't

25  know what records are even available.  But we'll try to uncover

K4G3KEWC

1  that if there was.  But we don't know of any substantive

2  meetings after the lawsuit was dismissed.

3          THE COURT:  So, let me ask the plaintiff.  Why now?

4          MR. GILMAN:  So, I'm happy to jump into that.  I think

5  it would be helpful --

6          THE COURT:  You have to identify yourself each time

7  you talk.  Is this Mr. Gilman?

8          MR. GILMAN:  Yes.  Sorry.  This is Timothy Gilman from

9  Stroock for Kewazinga.

10          One of the things your Honor asked is whether there

11  was case law about the '234 patent which hadn't been issued at

12  the time of the 2013 lawsuit.  And there is a Federal Circuit

13  opinion that's clear that says equitable estoppel cannot affect

14  the '234 patent.  Therefore, no matter what happens with this

15  proposed summary judgment motion, the lawsuit would have to go

16  forward on the same patent family and the same accused product.

17  So we would submit that it doesn't save the parties any efforts

18  to do this piecemeal to try to resolve some of the patents now,

19  if we are going to have to do full-blown discovery and

20  discovery on the same patents down the line.  We don't believe

21  they would be able to win.

22          The Federal Circuit opinion is John Bean v. Morris &

23  Associates,  887 F.3d 1322, 1328 (2018).  In that opinion,

24  they say that equitable estoppel could not apply to pending

25  patent claims, even if those claims when issued could claim

SOUTHERN DISTRICT REPORTERS, P.C.

K4G3KEWC

1    priority to a parent patent subject to equitable estoppel.  The

2    reason behind this rule is that claims that have not issued

3    cannot be asserted.  Therefore, no misleading conduct or

4    silence could be present.

5         There is no way the proposed summary judgment can take

6    the '234 patent off the table.  So to the original point your

7    Honor brought up, this case would have to go forward full

8    throttle down the road, even if we took a detour to address the

9    equitable estoppel defense.

10        THE COURT:  Back to my question, which is why now?

11        MR. GILMAN:  The timeline is actually a little more

12   nuanced than has been presented.  And as we pled, Kewazinga was

13   a small up-and-coming technology company.  It has some business

14   discussions with Google in 2005, 2006, showed the patents,

15   showed some confidential technology.  Nothing happened then.

16   But then a year later in 2007, Google launched the exact

17   technology that was embodied in the patents, in the

18   confidential information that was shown.

19        Kewazinga was trying to do business with a number of

20   different bigger players at the time.  By 2013, Kewazinga had

21   realized that a lot of the behemoths in the industry, Google

22   and Microsoft and Nokia, had basically taken its technology and

23   were using it without licenses.  So, Kewazinga brought the 2013

24   lawsuits against these different companies.  Did not serve

25   them, but used the pendency of the lawsuits as a way to get

K4G3KEWC

into negotiations with the companies, which was fairly common
practice, remains fairly common practice for a lot of companies
that want to show they're serious and get into discussions.

The 2013 discussions, because Kewazinga didn't serve
the complaints, at some point during those negotiations, Google
moved to dismiss.  The parties agreed specifically that it
should be without prejudice.  Under Federal Rule 4(m) it was
require to be without prejudice.  And the expectation was it
would take a little bit of the pressure off all the parties to
continue to discuss.

As part of those discussions in the 2013 time frame,
they continued, the lawyers were at loggerheads over whether
specific requirement of the two patents that existed at that
time, the requirement being an array of cameras, was met by
Google's products.  The lawyers couldn't come to an agreement
on it, and one of the things that Kewazinga took to Google is
we have over patent applications out there.  Some of them won't
have this array of cameras limitation, they will be broader, so
we can wait, and once those patents issue, your defense goes
away and maybe we can get back to negotiations.

2015, that patent, which ended up being the '234,
issues.  Kewazinga went back with some of these companies, it
ended up suing Microsoft in 2018 on these patents.  That case
is getting closer and closer to trial right now, also in the
Southern District.  And in 2020 it brought the case against

K4G3KEWC

1    Google.

2              At no time during this process did Kewazinga show it

3    was abandoning its claims, that it was walking away from its

4    claims.  But it was diligently proceeding as best as a small

5    technology company could against a bunch of technology

6    behemoths.

7              THE COURT:  So there were discussions in 2013 and

8    plaintiff said that they had a number of patent applications

9    that wouldn't have this limitation that was causing the

10   difference in viewpoints.  And then what?  Nothing between the

11   two parties?

12             MR. GILMAN:  As I understand the timeline, 2015, June

13   of 2015 is when the patent issued.  Kewazinga focused on

14   Microsoft at that time, as it was parallel discussions going on

15   then, and filed the suit a few years later.  And then as that

16   suit is getting resolved and Kewazinga has the resources, it is

17   turning to Google as well.

18             THE COURT:  Has there been any motion practice in the

19   Microsoft case?

20             MR. GILMAN:  So that case is wrapping up expert

21   discovery right now.  There has been a significant volume of

22   litigation in that case over the last few years.  There was an

23   inter partes review that Microsoft filed that found that

24   Kewazinga's patents were valid.  Mr. DiBernardo has been living

25   with that case for many years.  There has been extensive

K4G3KEWC

1    litigation in that case.

2            THE COURT:  Was there any motion practice?  Whoever

3    from Stroock wants to respond?

4            MR. DiBERNARDO:  Yes.  Ian DiBernardo from Stroock.

5    There has been claim construction in that case.  The Court has

6    issued a claim construction order.  And that is the basis on

7    which these claims against Google are based.  There has been

8    discovery issues, but now we are at the point where fact

9    discovery has closed, and we are in the process in the middle

10   of expert discovery.  There have been no summary judgment

11   motions.

12           THE COURT:  There were no motions to dismiss?

13           MR. DiBERNARDO:  No, your Honor.

14           THE COURT:  All right.  And so, just going back to

15   Mr. Gilman.  Is it correct then that the last discussions

16   between the parties in this lawsuit were in 2013?

17           MR. GILMAN:  I believe the last direct discussions

18   were later in 2013.

19           THE COURT:  If you're able, how would your client

20   respond to the question about why this lawsuit is being brought

21   now?

22           MR. GILMAN:  As I think as your Honor noted at the

23   beginning, the equitable estoppel is an extremely fact-specific

24   inquiry, and there are lots of details that went into the facts

25   that led us to where we are right now.

SOUTHERN DISTRICT REPORTERS, P.C.

K4G3KEWC

1          I think the simplest answer is that Kewazinga is a

2     smaller company with limited resources, and it was picking its

3     battles as it could, the best way it could, as it could get

4     ready for the fight.

5          THE COURT:  All right.  So let me ask Mr. Desmarais a

6     question.  So, your proposal was to put off a halt on

7     discovery, bifurcate discovery, so we did equitable estoppel

8     first.  And one of the questions I had was what effect would

9     that have on claim construction?

10         MR. DESMARAIS:  Yes.  And I think that we can schedule

11    claim construction as soon as your Honor wants to do it.  I

12    don't know that we need to slow down the overall progression of

13    the case.  I am just talking -- our proposal is just talking

14    about slowing down the massive discovery that happens in an

15    infringement case with the infringing discovery and the damages

16    discovery.

17         If your Honor wanted to set the overall case schedule,

18    including setting a date for claim construction, we can live

19    within that, as long as we're sort of bifurcating the discovery

20    period, which is where the real expense is.

21         We are not proposing a long delay.  As I was

22    suggesting, if we eliminate the 12(b)(6) motion to dismiss and

23    just answer and get on with the discovery, we can start the

24    discovery right away.  I think the discovery can take less than

25    two months and we can brief in the next month.  So, we can get

K4G3KEWC

1  all of this equitable estoppel done before you would ordinarily

2  do claim construction anyway.

3           But if your Honor wouldn't mind, if I could just take

4  a few seconds to respond to Mr. Gilman's comments, because I

5  think I can put to rest some of the issues which show this is a

6  meritorious claim.

7           THE COURT:  Okay.

8           MR. DESMARAIS:  So, the <u>John Bean</u> case that plaintiff

9  asserts, while it is true that in that particular case, they

10  did not find equitable estoppel applied to a patent that issued

11  after the alleged misleading conduct, that case is entirely

12  distinguishable because what that case was about was a patent

13  that was in reexamination and the Court specifically had its

14  holding tied to the fact that it was a reexamination patent.

15           But more importantly, the last paragraph of the

16  decision goes on to make the point that I was making in the

17  beginning.  The Court says there, there may be other cases

18  where the reexamined claims contain fewer amendments and

19  narrower added claims such that the reexamined claims do not

20  differ in scope from the original claims. In those instances,

21  the asserted claims may possibly be considered identical for

22  purposes of infringement, and consequently, for purposes of

23  applying equitable estoppel.  So that's exactly the point I was

24  making, which is the third patent's claims are not meaningfully

25  different and should be subsumed in equitable estoppel.

K4G3KEWC

1          There is an even more compelling reason why the third

2     patent should be found to be part of the equitable estoppel.

3     So the plaintiff wrote your Honor a letter on April 6 refuting

4     our motion to dismiss on the willful infringement claims.  And

5     plaintiff specifically alleges in that letter that Google had

6     sufficient knowledge of the third patent.  They say that during

7     the discussions, they told us about their pending application,

8     and they say that we have sufficient knowledge, so much

9     sufficient knowledge that we should be subject to willfully

10    infringing the third patent.

11         So, for them to argue in this call that we could be

12    willful infringers of the third patent, but the third patent

13    isn't part of our reliance on the equitable estoppel doesn't

14    make any sense and is inconsistent.

15         THE COURT:  Okay.

16         MR. GILMAN:  If I can address that last point?

17         THE COURT:  Yes.

18         MR. GILMAN:  There are a few things I wanted to point

19    out.  Our allegation of willful infringement started in 2015 on

20    when the '234 patent issued.  And our allegations are that

21    Google was aware of the patent when it issued and continued to

22    willfully infringe after that.  This is long after any alleged

23    conduct in 2013.  So the issues are distinguishable and there

24    is no inconsistency there.

25         As to the point about the John Bean case, there is

K4G3KEWC

1    more authority from the Federal Circuit that firmly says that

2    you cannot use equitable estoppel against patents that haven't

3    issued.  There is also a Radio Systems case, which is 709 F.3d

4    at 1131, which walks through that proposition.

5            And I do think this talk about just narrow discovery

6    that would be needed to address equitable estoppel I think is

7    not quite accurate.  I think if you actually look at what is

8    required and what goes into the factual analysis behind

9    equitable estoppel, it overlaps with almost every other issue

10   that's going to be subject to discovery in the case.  To prove

11   an equitable estoppel, Google would have to show misleading

12   conduct, that there was reliance on that conduct, and that

13   there was some sort of economic prejudice that resulted.

14           In terms of reliance, what we understand that Google

15   says they would have done something different to not infringe

16   if we had asserted these patents sooner.  To get into that, it

17   naturally implicates how they're infringing today, what

18   alternatives they are alleging they would have done instead,

19   and whether or not that alternative infringes as well.  This is

20   intricately interlinked with the merits discovery infringement.

21           As to economic prejudice, as Mr. Desmarais was talking

22   about earlier, we would have to look into the economic extent

23   of how much they used the street view infringing product.

24   Again, what alternatives were available.  How the economics

25   would have made sense with those alternatives and what value

K4G3KEWC

1    Google has gotten from its infringement.  This is significant,

2    would just be the traditional damages in a patent case too, and

3    what a reasonable royalty would look like, and what the

4    parties' bargaining positions would have looked like.

5              I think one of the more important aspects, too, is

6    equitable estoppel is an equitable offense.  As we pled,

7    Kewazinga shared its patents and its confidential technology

8    with Google in 2005 and 2006.  Google didn't agree to any

9    licenses, and then a year later, Google launched the accused

10   street view without telling Kewazinga, doing it in the exact

11   same way that Kewazinga had told Google it could use the

12   technology shown to it.

13             And whether you characterize this as deliberate

14   infringement or some sort of copying, this is the type of

15   unclean hands by an infringer that would bar equitable estoppel

16   as a defense in the first place.  It overlaps with what would

17   be discovery for willful infringement under Halo.  So we would

18   have to get into all these issues of --

19             THE COURT:  Okay.  I am going to interrupt you there

20   for a second because I'm interested in this issue.

21   Mr. Desmarais, what do you have to say about limited discovery?

22             MR. DESMARAIS:  Yes, your Honor.  The elements of

23   equitable estoppel are was there an aggressive assertion of the

24   suit back in 2013.  That's very circumscribed discovery.  We'll

25   show there is correspondence between the parties, to the extent

K4G3KEWC

1    it still exists, and the fact they sued us.  Then the next

2    element is was there a period of misleading silence thereafter.

3    That doesn't take a lot of discovery to prove.  We will have to

4    prove our reliance, that's true, on the misleading silence.

5    But the reliance is simply what did our legal department do and

6    what did our business people do once the case was resolved, and

7    that's very circumscribed discovery.  We will have to show

8    evidentiary prejudice, so we will make a showing of the

9    documents that have been destroyed, the people that have left

10   the company, the witnesses that are no longer available.  And

11   that's a limited type of discovery.  And we will show economic

12   prejudice.  Economic prejudice isn't a patent law damages

13   analysis.  It is simply what expenditures did Google make on

14   this product in the past six years, and did it ramp up and is

15   the product huge now when it wasn't in 2013.  So those are very

16   circumscribed issues.

17          It is true that Mr. Gilman claims that it is an

18   equitable expense and therefore they could bring equitable

19   issues to the fore if they choose.  And it is true that if they

20   want to defend that our conduct was somehow egregious or

21   willful, that could be somehow taken into account by your Honor

22   in the equitable weighing.  But we would be willing to have

23   that discovery, too.  We are not trying to cut down any

24   discovery that Mr. Gilman needs, but that discovery is very

25   limited as well.  That's the same person in the legal

K4G3KEWC

1    department who was dealing with Kewazinga back in 2013 will be

2    the person who tells you that we believe that they had gone

3    away, after our conversations.  And when we met with them in

4    2013, we explained to them why we didn't infringe, and they

5    went away.  They didn't respond, they didn't serve the

6    complaint.  And when we moved to dismiss the complaint, they

7    didn't oppose that.  That is the opposite of willful

8    infringement.  The plaintiff went away.  To argue that we, in

9    the face of that, we're willfully infringing by continuing with

10   our product, is not something that's going to tip the scales

11   equitably against equitable estoppel.  We would be willing to

12   give that discovery, too.

13            THE COURT:  Here's what I'm going to do.  I'm going to

14   accept the defendant's suggestion that we have quick discovery,

15   two months, on the issue of equitable estoppel.  Understanding

16   that the defense is an affirmative defense that the defendant

17   has the burden of proof, and that you'll need to marshal that

18   within that period of time.  That's your proposal.

19            I'll enter the schedule that you proposed with respect

20   to claim construction.  I'll stay discovery for the moment,

21   that doesn't relate to the equitable estoppel issue.  I will

22   schedule a conference shortly after the discovery is done on

23   the limited issue so we can discuss whether a hearing is

24   necessary, whether it can be done on papers.

25            Let me just ask Mr. Desmarais, having done this in

K4G3KEWC

1    other cases, is it sometimes submitted on the papers or is a

2    hearing more or less inevitable?

3            MR. DESMARAIS:  I have one issue in the District Court

4    in Boston on the papers.  In the Eastern District of Virginia

5    we had a hearing, a live hearing with a couple witnesses.  So I

6    think it can go both ways, your Honor.

7            THE COURT:  What I would be inclined to do, generally

8    in a case where there is going to be a bench trial, I don't

9    have a summary judgment motion because it means I do everything

10   twice.  And it seems to me unlikely that with talented lawyers

11   on both sides, you are not going to come up with some factual

12   issues.  So I think what I would do is in my order now, I'll

13   set a date for a hearing.  If for some reason we can cancel it

14   and the parties agree that it can be done on the papers, then

15   I'll do that.

16           And part of my rationale is the argument that I read

17   in the defendant's papers which is that the plaintiff has taken

18   this long to file the lawsuit, and it isn't necessarily

19   dispositive of the equitable estoppel issue, but it certainly

20   colors my view of whether we need to immediately embark on

21   full-blown discovery.  So, that is what I will do.

22           And as I understand it, the defendant is going to

23   answer.  So, do we need to set a date for you to do that?

24           MR. DESMARAIS:  Yes, your Honor.

25           THE COURT:  What do you propose?

K4G3KEWC

1            MR. DESMARAIS:  I think how about a week from Friday?

2  Is that okay?

3            THE COURT:  Is that Mr. Desmarais?

4            MR. DESMARAIS:  Yes, your Honor.  I'm sorry.  I should

5  have identified myself.  How about a week from Friday?

6            THE COURT:  Okay.  That's fine.  So, your answer will

7  be due a week from Friday.  Is there anything else we need to

8  discuss?

9            MR. DESMARAIS:  Not from the defendant, your Honor.

10            THE COURT:  From plaintiff?

11            MR. GILMAN:  Nothing from us, your Honor.

12            THE COURT:  Thank you very much, counsel.  Be well, be

13  healthy.  We are adjourned.

14            (Adjourned)

15

16

17

18

19

20

21

22

23

24

25