**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEWAZINGA CORP.,<br><br>                    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>                    Defendants. | Case No. 1:20-cv-1106-LGS<br><br>**JURY TRIAL DEMANDED** |

## Defendant Google LLC's Answer and Defenses to Plaintiff Kewazinga Corp.'s Complaint

Defendant Google LLC ("Google"), by and through its undersigned counsel, hereby responds to Plaintiff's Complaint and Demand for Jury Trial ("Complaint"), filed by Plaintiff Kewazinga Corp. ("Kewazinga"), as follows:

### Google's Answer To Kewazinga's Complaint

The first paragraph of the Complaint is an introductory paragraph to which no response is required.  To the extent that a response is required, Google admits that the Complaint purports to set forth an action for infringement of U.S. Patent No. 9,055,234 ("the '234 patent"), U.S. Patent No. 6,522,325 ("the '325 patent"), and U.S. Patent No. 6,535,226 ("the '226 patent") (collectively, the "Patents"), arising under the Patent Laws of the United States of America naming Google as the Defendant, but denies that Kewazinga has any factual or legal basis for its infringement claims or that Kewazinga is entitled to any relief whatsoever.

### The Plaintiff

1.      Kewazinga is a corporation organized and existing under the laws of Delaware.

**Response:**  Google lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1 of the Complaint and, on that basis, denies them.

2.      Kewazinga is the sole and exclusive rightful owner of the Patents and holds, *inter alia*, the sole and exclusive right to sue and collect damages for past infringement.

**Response:**  Google lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 of the Complaint and, on that basis, denies them.

3.      Kewazinga developed navigable telepresence technology described in the Patents. From 2001 to 2003, following the filing of the patent applications that led to the Patents, Kewazinga successfully produced content using its technology for NBC Sports, ABC Sports, ESPN, Golf Channel, U.S. Tennis Association, Nike, X-Games, NHL Hockey, New York Mets and David Blaine. Kewazinga-produced content has aired throughout the United States, as well as in the United Kingdom and Japan.

**Response:**  Google lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3 of the Complaint and, on that basis, denies them.  However, Google understands that employees from another entity, Sarnoff Corporation, were at least partially, if not wholly responsible for developing the technology that Kewazinga included in its patent applications that led to the Patents.  *See Kewazinga Corp. v Microsoft*, No. 1:18-cv-4500-GHW, D.I 98-5 at 10 (S.D.N.Y Jan. 27, 2020).

#### The Defendant

4.      Defendant Google LLC is a Delaware limited liability company and maintains established places of business in this district at, for example, 111 Eighth Avenue, New York, New York. Google LLC conducts business in this state and has appointed Corporation Service Company, located at 80 State Street, Albany, NY 12207, as its agent for service of process.

**Response:**  Google admits it is a limited liability company existing under the laws of Delaware.  Google admits it has facilities at 111 Eighth Avenue, New York, New York.  Google admits that it may be served through its registered agent, Corporation Service Company, in New York.  Google states that the remaining allegations in paragraph 4 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies the remaining allegations in paragraph 4 of the Complaint.

5.      Upon information and belief, Google LLC is the successor in interest to Google Inc. (Google Inc. and Google LLC collectively, "Google").

**Response:**  Google admits that, on September 30, 2017, Google Inc. filed a Certificate of Conversion with the Delaware Secretary of State in which Google Inc. converted from a corporation to a limited liability company and changed its name to Google LLC.

6.      Upon information and belief, and without limitation, Google supplies, promotes, offers to sell and sells, and has, including prior to April 1, 2019, supplied, promoted, offered to sell and sold, products and services to customers throughout the United States, including within this District.

**Response:**  Google admits that it has sold products in the United States, including New York.  Google states that the remaining allegations in paragraph 6 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies them.

7.      Upon information and belief, Google has in the past, including prior to April 1, 2019, offered, and currently offers, navigable imagery, including along streets, inside buildings, along waterways and other ground-level imagery, referred to as Street View, including, for example, Street View on Google Maps accessible via a web browser (at https://www.google.com/maps), on Google Earth accessible via a web browser (at https://earth.google.com/web/), on the Google Maps App, Google Earth App and Street View App on devices running the Chrome, Android and iOS operating systems, on Google's virtual reality platforms Cardboard and Daydream, and as made available, directly or indirectly, via various APIs offered by Google (collectively, "Google Street View"), in each case which provides imagery (including imagery captured within this District) and controls for navigating through the imagery, throughout the United States, including within this District.

**Response:**  Google admits that it has a Street View service that is accessible through Google Maps and Google Earth, which is available on web browsers and phone operating systems including Chrome, Android, and iOS.  Google admits to having made products such as Cardboard and Daydream, which rely on phones and phone operating systems.  Google admits to having APIs that incorporate functionality from Street View.  Google admits that Street View may be used to view locations within the United States and within New York. Google states that the remaining allegations in paragraph 7 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies them.

### Jurisdiction And Venue

8.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 271 and 281, *et seq*.

**Response:**  Google admits that that the Complaint purports to set forth an action for patent infringement under the Patent Laws of the United States, Title 35 of the United States Code, but denies that there are any factual or legal bases for Kewazinga's claims.  Google states that the remaining allegations in paragraph 8 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies them and specifically denies that it infringes any of the patents-in-suit.

9.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1338.

**Response:**  Google admits, for the purposes of this action only, that this Court has subject matter jurisdiction over this action alleging patent infringement.  Google denies any remaining allegations in paragraph 9 of the Complaint.

10.     This Court has personal jurisdiction over Google LLC. Google LLC has committed and continues to commit, has contributed to and continues to contribute to, and has induced and continues to induce, acts of infringement of the Patents in this District. On information and belief, Google LLC is registered to do business in New York with DOS ID No. 5231591, and has purposefully conducted and continues to conduct business in this District. On information and belief, Google has previously submitted to the jurisdiction of this Court.

**Response:**  Google admits, for purposes of this action only, that this Court has personal jurisdiction over this action alleging patent infringement.  Google admits that it is registered to do business in New York, that it has the DOS ID No. 5231591 registration number, that it does business in New York, and that it has previously appeared before the U.S. District Court for the Southern District of New York.  Google denies that Kewazinga's claims have any factual or legal bases and the remaining allegations in paragraph 10 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies them.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Google LLC has committed acts of infringement within this District and has a regular and established place of business within this District, including 111 Eighth Avenue, New York, New York. In addition, portions of Google Street View, such as the street level imagery of New York City, were produced in this District.

**Response:**  Google admits that the Complaint alleges venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b), but not convenient or in the interest of justice under 28 U.S.C. § 1404(a).  Google admits it has facilities at 111 Eighth Avenue, New York, New York.  Google admits that pictures of New York City have been collected in New York.  Google denies that Kewazinga's claims have any factual or legal bases.  The remaining allegations in paragraph 11 of the Complaint contain legal conclusions that require no response.  To the extent an answer is required, Google denies them.

### The Patents-In-Suit

12.     The '234 patent, entitled "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM," was lawfully issued by the United States Patent and Trademark Office on June 9, 2015. The '234 patent issued on United States Patent Application No. 14/505,208, filed October 2, 2014, which claims priority to United States Provisional Application No. 60/080,413, filed on April 2, 1998. A copy of the '234 patent is attached as **Exhibit A**.

**Response:**    Google admits that the face of the '234 patent lists "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM" as the title, lists the date of the patent as June 9, 2015, the application number as 14/505,208, the file date as October 2, 2014, and a provisional application number 60/080,413 was filed on April 2, 1998.  Google admits that Exhibit A to the Complaint appears to be a copy of the '234 patent.  Google denies the remaining allegation in paragraph 12 of the Complaint.

13.     The '234 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Response:**  Denied.

14.     The '325 patent, entitled "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM UTILIZING AN ARRAY OF CAMERAS," was lawfully issued by the United States

Patent and Trademark Office on February 18, 2003. The '325 patent issued on United States Patent Application No. 09/419,274, filed October 15, 1999, which claims priority to United States Provisional Application 60/080,413, filed on April 2, 1998. A copy of the '325 patent is attached as **Exhibit B**.

**Response:** Google admits that the face of the '325 patent lists "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM UTILIZING AN ARRAY OF CAMERAS" as the title, the date of the patent as February 18, 2003, the application number as 09/419,274, the file date as October 15, 1999, and a provisional application number 60/080,413 was filed on April 2, 1998. Google admits that Exhibit B to the Complaint appears to be a copy of the '325 patent. Google denies the remaining allegation in paragraph 14 of the Complaint.

15.     The '325 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Response:** Denied.

16.     The '226 patent, entitled "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM UTILIZING AN ARRAY OF CAMERAS," was lawfully issued by the United States Patent and Trademark Office on March 18, 2003. The '226 patent issued on United States Patent Application No. 09/283,413, filed April 1, 1999, which claims priority to United States Provisional Application 60/080,413, filed on April 2, 1998. A copy of the '226 patent is attached as **Exhibit C**.

**Response:** Google admits that the face of the '226 patent lists "NAVIGABLE TELEPRESENCE METHOD AND SYSTEM UTILIZING AN ARRAY OF CAMERAS" as the title, the date of the patent as March 18, 2003, the application number as 09/283,413, the file date as April 1, 1999, and a provisional application number 60/080,413 was filed on April 2, 1998. Google admits that Exhibit C to the Complaint appears to be a copy of the '226 patent. Google denies the remaining allegation in paragraph 16 of the Complaint.

17.     The '226 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Response:** Denied.

**Introduction**

18.     From about November 2005 through October 2006 Kewazinga had several communications with high-level executives at Google, in which Kewazinga exposed to Google Kewazinga's proprietary and confidential information, including business and technological ideas, plans and strategies.

**Response:**  Google admits to discussions between Kewazinga and Google employees in 2005 and 2006.  Google denies the discussions involved proprietary and confidential information. Google denies any remaining allegations in paragraph 18 of the Complaint.

19.     In 2005 and 2006, Kewazinga communicated, either directly or indirectly, with at least the following individuals then employed by Google: Tim Armstrong, Jennifer Blakeley, Sergey Brin, Vinton Cerf, Brian Dick, Jennifer Feikin, David Lee, Robert MacDonald, Larry Page, and Jill Szuchmacher.

**Response:**  Google admits that in 2005 and 2006, Kewazinga sent email correspondence to Google email accounts, including accounts for Tim Armstrong, Sergey Brin, David Lee, Jennifer Feikin, Robert Macdonald, and Larry Page.   Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 19 of the Complaint and, on that basis, denies them.

20.     For example, in one written communication to Jennifer Feikin, David Lee and Robert MacDonald in June 2006, Kewazinga explained:

> **Strategic Fit** — We believe that our proprietary telepresence technology can help Google to deliver a truly immersive and navigable video experience that will fundamentally redefine how people experience video content and explore the world. We can provide Google with a revolutionary on-the-ground extension for Google Earth and Google Maps that allows viewers to dynamically explore world environments as through [sic] they were physically there — presenting a formidable challenge to competitors while offering tremendous revenue potential.

**Response:**   Google admits that David Worley, Kewazinga's CEO, sent an email attachment that includes the language described in paragraph 20 of the Complaint to David Lee, Robert Macdonald, and Jennifer Feikin. Google lacks knowledge or information sufficient to form

a belief about the truth of the remaining allegations in paragraph 20 of the Complaint and, on that

basis, denies them.

21.     Google Street View provides an on-the-ground extension for Google Earth and
Google Maps that allows viewers to dynamically explore world environments as though they were
physically there.

**Response:**  Google admits that users can access Google Street View through Google Earth

and Google Maps. Google denies any remaining allegations in paragraph 21 of the Complaint,

including any characterizations.

22.     In that same June 2006 communication, Kewazinga further explained:

> **<u>Google Earth and Google Maps</u>**
>
> Navigable Video will vastly extend the reach of Google Earth and
> Google Maps by providing an on-the-ground telepresence extension
> that allows viewers to dynamically explore world environments as
> though they were physically at that location. Miniaturized systems
> mounted on vehicles and boats will ply the streets and waterways of
> cities and locales, giving armchair travelers the ability to experience
> the sights and sounds of live or prerecorded environments as though
> they were there. Kewazinga's telepresence technology will allow
> users to actually move through and around environments, not just
> zoom in from a fixed position. This revolutionary capability will
> launch a world of revenue generating possibilities; including Search,
> Advertising, eCommerce and Social Collaboration.

**Response:**  Google admits that David Worley, Kewazinga's CEO, sent an email

attachment that includes the language described in paragraph 22 of the Complaint to David Lee,

Robert Macdonald, and Jennifer Feikin. Google lacks knowledge or information sufficient to form

a belief about the truth of the remaining allegations in paragraph 22 of the Complaint and, on that

basis, denies them.

23.     Google Street View utilizes images captured by camera systems mounted on
vehicles and boats that have plied streets and waterways and allows users to move through and
around environments, not just zoom in from a fixed position.

**Response:**  Google admits that Google Street View uses images captured from a rosette of cameras attached to vehicles.  Google denies any remaining allegations in paragraph 23 of the Complaint, including Kewazinga's characterization of Google Street View.

24.     As reported to Kewazinga by Robert MacDonald, Head of Strategic Partnerships at Google, Google's internal evaluation committee and corporate development team reviewed Kewazinga materials. At the time of such communications in 2005 and 2006, Google never disclosed to Kewazinga that it was developing, had developed or was planning to develop or release Street View or any navigable street-level imagery or on-the-ground extension for Google Earth or Google Maps.

**Response:**  Google admits that Robert Macdonald forwarded Kewazinga non-proprietary and non-confidential information to other Google employees in 2006.  Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 24 of the Complaint and, on that basis, denies them.

25.     On May 25, 2007, following receipt of Kewazinga materials, Google launched Street View in the United States. At no time has Kewazinga provided Google with permission to use any of its technology or patented inventions.

**Response:**  Google admits that it launched Street View on May 25, 2007.  Google denies the allegations in paragraph 25 of the Complaint.  Google expressly denies that any information received from Kewazinga has anything to do with the release of Street View and further states that it does not need permission to launch a product that Google developed itself.  Google lacks sufficient knowledge or information sufficient to form a belief about Kewazinga's communications, but denies that Google requires or ever required Kewazinga's permission to operate Street View.

26.     As part of the communications in 2005 and 2006, Kewazinga also advised Google of its '325 and '226 patents, which had issued by that time, as well as another Kewazinga patent application.

**Response:**  Google admits Kewazinga stated, in the email correspondence Kewazinga sent to Google, that Kewazinga held issued patents and one patent application, although Kewazinga

did not identify any of the patents or patent applications by number.  Google lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 26 of the Complaint and, on that basis, denies them.

27.    Further, Google was advised of the '226 patent during prosecution of its U.S. Patent No. 8,125,481, in which the United States Patent and Trademark Office ("USPTO") examiner cited it as prior art on March 1, 2011.

**Response:**  Google admits that the '226 patent was cited by the USTPO examiner on March 1, 2011 in the prosecution of U.S. Patent No. 8,125,481, which was assigned to Google. Google denies any remaining allegations in paragraph 27 of the Complaint and specifically denies that citation in a file history constitutes "notice" of the '226 patent or any other patent related to the '226 patent.

28.    Further, Google cited the '226 Patent to the USPTO on May 21, 2013 during prosecution of its U.S. Patent No. 9,294,757.

**Response:**  Google admits that the '226 Patent is listed as a prior art reference provided during the prosecution of U.S. Patent No. 9,294,757.  Google denies any remaining allegations in paragraph 28 of the Complaint and specifically denies that citation in a file history constitutes "notice" of the '226 patent or any other patent related to the '226 patent.

29.    Further, Google cited the '226 patent to the USPTO on October 17, 2014 during prosecution of its U.S. Patent No. 10,033,992.

**Response:**  Google admits that the '226 Patent is listed as a prior art reference provided during the prosecution of U.S. Patent No. 10,033,992. Google denies any remaining allegations in paragraph 29 of the Complaint and specifically denies that citation in a file history constitutes "notice" of the '226 patent or any other patent related to the '226 patent.

30.    Google was further advised of Kewazinga's pending U.S. Published Patent Application US 2006/0146123, which claims priority to the '226 and '325 patents, on March 25, 2013, during prosecution of U.S. Patent No. 8,823,707, in which the USPTO examiner cited it as prior art.

**Response:**  Google admits that the U.S. Published Patent Application US 2006/0146123 was cited by the USPTO examiner on March 25, 2013 in the prosecution of U.S. Patent No. 8,823,707, which was assigned to Google.  Google denies any remaining allegations in paragraph 30 of the Complaint and specifically denies that citation in a file history constitutes "notice" of the '226 patent or any other patent related to the '226 patent.

31.     Google was further advised of Kewazinga's pending U.S. Published Patent Application US 2010/0115411, which claims priority to the '226 and '325 patents and to which the '234 Patent claims priority, on June 17, 2016, during prosecution of U.S. Patent No. 9,473,745, in which the USPTO examiner cited it as prior art.

**Response:**  Google admits that the U.S. Published Patent Application US 2010/015411 was cited by the USTPO examiner on June 17, 2016 in the prosecution of U.S. Patent No. 9,473,745, which was assigned to Google.  Google denies any remaining allegations in paragraph 31 of the Complaint and specifically denies that citation in a file history constitutes "notice" of the '226 patent or any other patent related to the '226 patent.

32.     On May 24, 2013, Kewazinga filed an action for patent infringement against Google Inc. in the District of Delaware (the "2013 Action").  The case was dismissed without prejudice on November 14, 2013, without resolving Kewazinga's claims of infringement.

**Response:**  Google admits that Kewazinga filed an action for patent infringement against Google on May 24, 2013 in the U.S. District Court for the District of Delaware.  Google admits the court dismissed the 2013 Action on November 14, 2013, when the court granted Google's Motion to Dismiss.  Google denies the remaining allegations in paragraph 32 of the Complaint.

33.     On June 9, 2015, Kewazinga's '234 patent issued.  The '234 patent claims priority to, *inter alia*, Kewazinga's '325 and '226 patents.  On information and belief, Google had knowledge of the '234 patent after it issued and prior to the filing of this action.

**Response:**  Google admits the face of the '234 patent states it was issued on June 9, 2015.  Google admits the face of the patent claims priority to applications that issued as the '325 and '226 patents.  Google denies the remaining allegations in paragraph 33 of the Complaint.

## Count I – Infringement Of The '234 Patent

34.     Kewazinga realleges and incorporates by reference each of the preceding paragraphs.

**Response:**  Google realleges and incorporates by reference its responses to the allegations

contained in the preceding paragraphs.

35.     Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed, literally or under the doctrine of equivalents, claims of the '234 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling, offering for sale, and/or importing systems and methods protected thereby within the United States and within this District. Google has been engaged in direct infringement activities with respect to at least Google Street View. By way of example (and without limitation), Google has directly infringed the '234 patent by making and using the system and method of claims 6 and 19 to provide first and second users with respective different views through a remote environment. Google's servers, storage devices, and other computers and hardware, including the Google Street View software and data thereon (collectively, "Google's computer system"), contain and use each component of claim 6 and each step of claim 19.

**Response:**  Denied.

36.     For example, with respect to claim 6, Google Street View provides multiple users with respective different views of multiple locations through a remote environment, such as views of locations on streets.  Google's computer system includes electronic storage devices and processing elements, wherein the processing elements are configured to (i) receive inputs from a first user using Street View on a first user interface device, such as a computer, tablet or smartphone, associated with viewing the environment along a first view and (ii) receive inputs from a second user using Street View on a second user interface device associated with viewing the environment along a second view.  Google's computer system is also configured to store in electronic storage devices images of the environment that were captured by cameras, having overlapping fields of view, for example, mounted on top of Google Street View Cars.  The cameras so mounted on a Google Street View Car capture images at intervals as the automobile proceeds down streets.  Google's computer system is further configured to generate mosaic imagery from images of the environment.  For example, adjacent cameras capture images that overlap.  The images are aligned and image processing algorithms are applied to lessen seams and create smooth transitions. Further, based on the inputs received from the first user interface device, Google's computer system is configured (i) to sequentially provide to the first user interface device mosaic imagery of progressively different locations along the first view—for example, it will provide mosaic imagery of progressive locations down a street; and (ii) sequentially provide to the second user interface device mosaic imagery of progressively different locations along the second view, simultaneously with and independently of the mosaic imagery provided to the first user interface device. It thereby allows the first and second user to navigate simultaneously and independently along first and second views of the environment.

**Response:**  Denied.

37.     Further with regard to claim 6 of the '234 patent, on information and belief, as a user navigates down a street in Street View from a first perspective to a second perspective based on user inputs, Google's computer system tweens imagery of the first perspective and second perspective and generates and displays synthetic imagery having a perspective between the first perspective and the second perspective to smooth the transition from the first perspective to the second perspective.

**Response:**   Denied.

38.     By way of further example (and again without limitation), Google has directly infringed the '234 patent, and continues to do so, including by performing the method of claim 19 to provide a user with a view through a remote environment. Google has performed and is performing each step of claim 19 itself when Google's computer system provides Google Street View to a user, for example, through Google's Google Maps.  For example, with respect to claim 19, Google's computer system receives inputs from a first user using Street View on a first user interface device, such as a computer, tablet or smartphone, wherein the inputs are associated with viewing the environment along a first view, such as the view down a street.  Google's computer system stores images of the environment that were captured by cameras, having overlapping fields of view, mounted on top of Google Street View Cars.  The cameras so mounted on a Google Street View Car capture images at intervals as the automobile proceeds down streets.  Google's computer system generates mosaic imagery from images of the environment.  Further, based on the inputs received from the first user interface device, Google's computer system sequentially provides to the first user interface device mosaic imagery of progressively different locations along the first view—for example, it provides mosaic imagery of progressive locations down a street.

**Response:**   Denied.

39.     Further with regard to claim 19 of the '234 patent, on information and belief, as a user navigates down a street in Street View from a first perspective to a second perspective based on user inputs, Google's computer system tweens imagery of the first perspective and second perspective and generates and displays synthetic imagery having a perspective between the first perspective and the second perspective to smooth the transition from the first perspective to the second perspective.

**Response:**   Denied.

40.     Upon information and belief, Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced the direct infringement of the '234 patent by users of Google Street View pursuant to 35 U.S.C. § 271(b) in the United States and within this District at least by one or more of: (1) providing to users Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each component and step of the patented systems and methods of the '234 patent; (2) dictating via Google Street View's design and instructions to users of Street View the manner in which Street View is used such that, when Street View is operated as intended by Google on a computing device of a user, each component and step of the patented systems and methods of the Patents are used and performed in a manner dictated by Google; (3) providing instructions and directions to users

regarding the use of Google Street View; (4) selling or otherwise providing tablets, computers and smartphones (such as Google Nexus Tablets, Google Chromebooks and Google Pixel Phones); and (5) selling or otherwise providing operating systems or other software that include, for example, the Google Maps App. Upon information and belief, Google has had actual knowledge of the '234 patent since on or about June 9, 2015, Google having been earlier apprised by Kewazinga of Kewazinga's related '325 and '226 patents (to which the '234 patent claims priority) in 2006 and again apprised of those patents in 2013 as a result of the 2013 Action.  Further, the related '226 patent was cited by Google during prosecution of its U.S. Patent No. 9,294,757 in May 2013.  On information and belief, Google has engaged in these activities with knowledge and intent that such activities would cause and/or encourage direct infringement of the '234 patent.

**Response:**  Denied.

41.     Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to the direct infringement by users of Google Street View of claims of the '234 patent (including, without limitation, the claims addressed above) pursuant to 35 U.S.C. § 271(c) in the United States and within this District at least by providing Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each component and step of the patented systems and methods of the '234 patent, including navigating street-level imagery as described herein, knowing that Street View is a material part of the claimed inventions, is especially made or especially adapted for use in infringing the patented systems and methods and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Response:**  Denied.

42.     As a consequence of each of Google's direct infringement, inducement and contributory infringement, both literal and under the doctrine of equivalents, of the '234 patent, Kewazinga has been damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

**Response:**  Denied.

43.     Upon information and belief, Google's infringement of the '234 patent has been willful.

**Response:**  Denied.

### Count II – Infringement Of The '325 Patent

44.     Kewazinga realleges and incorporates by reference each of the preceding paragraphs.

**Response:**  Google realleges and incorporates by reference its responses to the allegations contained in the preceding paragraphs.

45.     Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed, either literally or under the doctrine of equivalents, claims of the '325 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling, offering for sale, and/or importing systems and methods protected thereby within the United States and within this District. Google has been engaged in direct infringement activities with respect to at least Google Street View. By way of example (and without limitation), Google has directly infringed the '325 patent, including by making and using the system and method of claims 1, 10 and 29 to provide a first user and a second user with respective displays of an environment. Google's computer system and other hardware providing Google Street View contain and use each component of claims 1 and 10 and each step of claim 29.

**Response:**  Denied.

46.     For example, with respect to claim 1, the Google computer system includes cameras mounted on top of automobiles (such automobiles referred to by Google as "Google Street View Cars"), each camera having an associated view of the environment and an associated camera output representing that view.  As each Google Street View Car proceeds down a street, the cameras capture respective views having progressively different perspectives of the environment which, accordingly, define a path through the environment and can be considered an array.   On information and belief, Google Street View Cars include sensors, including Lidar (Light Detection and Ranging) and GPS, that capture location, speed, direction and depth information, and Google Street View Cars capture images at known intervals (e.g., distance between successive image captures).  The Google computer system also includes (i) a first user interface device, such as a computer, tablet or smartphone, associated with the first user, wherein first user inputs indicate movement along a first path, such as movement down a street; and (ii) a second user interface device, such as a computer, tablet or smartphone, associated with the second user, wherein second user inputs indicate movement along a second path, independent of and possibly different than the first path, such as movement down a street.  Further, the Google computer system includes at least one processing element coupled to the user interface devices for receiving inputs indicative of movement through the environment.  The processing elements are configured to interpret received first inputs from the first user interface device and select outputs of cameras in the first path; and mix the selected camera outputs by sequentially mosaicing them.  The processing elements are further configured to independently interpret received second inputs from the second user interface device and select outputs of cameras in the second path; and mix the selected camera outputs in the second path by sequentially mosaicing them—thereby allowing the first user and second user to navigate simultaneously and independently through the array.

**Response:**  Denied.

47.     By way of further example (and without limitation), Google has directly infringed claim 10 of the '325 patent. With respect to claim 10, the Google computer system includes cameras mounted on top of automobiles, each camera having an associated view of the environment and an associated camera output representing that view. As each such automobile proceeds down a street, the cameras capture respective views having progressively different perspectives of the environment which, accordingly, define a path through the environment and can be considered an array.  On information and belief, Google Street View Cars include sensors, including Lidar (Light Detection and Ranging) and GPS, that capture location, speed, direction

and depth information, and Google Street View Cars capture images at known intervals (e.g., distance between successive image captures). The Google computer system also includes (i) a first user interface device, such as a computer, tablet or smartphone, associated with the first user, wherein first user inputs indicate movement along a first path, such as movement down a street; and (ii) a second user interface device, such as a computer, tablet or smartphone, associated with the second user, wherein second user inputs indicate movement along a second path, independent of and possibly different than the first path, such as movement down a street. Further, the Google computer system includes at least one processing element coupled to the user interface devices for receiving inputs indicative of movement through the environment. The processing elements are configured to interpret received first inputs from the first user interface device and select outputs of cameras in the first path; and mix the selected camera outputs by sequentially tweening them. The processing elements are further configured to independently interpret received second inputs from the second user interface device and select outputs of cameras in the second path; and mix the selected camera outputs in the second path by sequentially tweening them—thereby allowing the first user and second user to navigate simultaneously and independently through the array. As a user navigates down a street in Street View from a first perspective to a second perspective based on user inputs, Google's computer system generates and displays synthetic imagery having a perspective between the first perspective and the second perspective to transition from the first perspective to the second perspective.

**Response:** Denied.

48. By way of further example (and without limitation), Google has directly infringed the '325 patent by performing the method of claim 29 to provide a user with a view through a remote environment. Google itself has performed and is performing each step of claim 29, for example, when Google's computer system provides Google Street View to a user through Google Maps or its Maps App. For example, with respect to claim 29, Google's computer system receives images captured by cameras mounted on top of Google Street View Cars. The cameras on each Google Street View Car capture images at intervals as each automobile proceeds down a street— *i.e.*, the cameras are repeatedly moved such that the Google computer system receives images captured at one place in the environment and then receives images captured at a different place in the environment. On information and belief, Google Street View Cars include sensors, including Lidar (Light Detection and Ranging) and GPS, that capture location, speed, direction and depth information, and Google Street View Cars capture images at known intervals (e.g., distance between successive image captures). The Google computer system, in turn, stores the received images for later retrieval. The Google computer system also receives inputs from a first user using Street View on a first user interface device, such as a computer, tablet or smartphone, wherein the inputs indicate movement along a first path, such as movement down a street, including a first image captured by cameras positioned at one place in the environment and a second image captured by cameras positioned at a different place in the environment. The Google computer system further mixes the first and second images and sequentially provides to the first user the first image, the mixed image and the second image, thereby simulating movement along the path.

**Response:** Denied.

49. Upon information and belief, Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced the direct infringement of the '325 patent

by users of Google Street View pursuant to 35 U.S.C. § 271(b) in the United States and within this District at least by one or more of: (1) providing to users Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each component and step of the patented systems and methods of the '325 patent; (2) dictating via Street View's design and instructions to users of Street View the manner in which Street View is used such that, when Street View is operated as intended by Google on a computing device of a user, each component and step of the patented systems and methods of the Patents are used and performed in a manner dictated by Street View; (3) providing instructions and directions to users regarding the use of Street View; (4) selling or otherwise providing tablets, computers and smartphones (such as Google Nexus Tablets, Google Chromebooks and Google Pixel Phones); and (5) selling or otherwise providing operating systems or other software that include, for example, the Google Maps App. Upon information and belief, Google has had actual knowledge of the '325 patent since at least 2006, having been advised of it by Kewazinga at that time. Google further had actual knowledge of the '325 patent in May 2013 as a result of the 2013 Action, and in March 2013 as a result of Kewazinga's pending U.S. Published Patent application US 2006/0146123, which claims priority to the '325 patent, having been cited by the Examiner during the prosecution of Google's U.S. Patent No. 8,823,707. On information and belief, Google has engaged in these activities with knowledge and intent that such activities would cause and/or encourage direct infringement of the '325 patent.

**Response:** Denied.

50.    Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by users of Google Street View of claims of the '325 patent (including, without limitation, the claims addressed above) pursuant to 35 U.S.C. § 271(c) in the United States and within this District at least by providing Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each component and step of the patented systems and methods of the '325 patent, including navigating street-level imagery as described herein, knowing that Street View is a material part of the claimed inventions, is especially made or especially adapted for use in infringing the patented systems and methods and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Response:** Denied.

51.    As a consequence of each of Google's direct infringement, inducement and contributory infringement, both literal and under the doctrine of equivalents, of the '325 patent, Kewazinga has been damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

**Response:** Denied.

52.    Upon information and belief, Google's infringement of the '325 patent has been willful.

**Response:** Denied.

### Count III – Infringement Of The '226 Patent

53.    Kewazinga realleges and incorporates by reference each of the preceding paragraphs.

**Response:**  Google realleges and incorporates by reference its responses to the allegations

contained in the preceding paragraphs.

54.    Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe, either literally or under the doctrine of equivalents, claims of the '226 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling, offering for sale, and/or importing systems and methods protected thereby within the United States and within this District.  Google has been and is engaged in direct infringement activities with respect to at least Google Street View.  By way of example (and without limitation), Google has directly infringed the '226 patent, and continues to do so, including by making and using the system of claim 119 to provide multiple users with simulated, independent movement through an environment.  Google's computer system and other hardware providing Google Street View contain and use each component of claim 119.

**Response:**  Denied.

55.    For example, with respect to claim 119, the Street View system includes cameras mounted on top of Google Street View Cars, each camera having an associated view of the environment.  As each Google Street View Car proceeds down a street, the cameras have views and associated outputs of a series of progressively different point perspectives of the environment, which, accordingly, define a path through the environment and can be considered an array.  On information and belief, Google Street View Cars include sensors, including Lidar (Light Detection and Ranging) and GPS, that capture location, speed, direction and depth information, and Google Street View Cars capture images at known intervals (e.g., distance between successive image captures).  Google's computer system stores the camera outputs in an electronic storage device for sharing among multiple users.  Google's computer system also includes at least one processing element coupled to the electronic storage device that is configured to store the series of outputs from the cameras along with an indication of the location of the point perspective of each such camera and its output, thereby allowing subsequent simultaneous retrieval of the stored outputs by multiple users.  Further, Google's computer system is also configured to sequentially retrieve from the electronic storage device stored outputs, thereby simulating for multiple users progressive movement along the different point perspectives of the views associated with the retrieved outputs.

**Response:**  Denied.

56.    Upon information and belief, Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced the direct infringement of the '226 patent by users of Google Street View pursuant to 35 U.S.C. § 271(b) in the United States and within this District at least by one or more of: (1) providing to users Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each

component and step of the patented systems and methods of the '226 patent; (2) dictating via Street View's design and instructions to users of Street View the manner in which Street View is used such that, when Street View is operated as intended by Google on a computing device of a user, each component and step of the patented systems and methods of the Patents are used and performed in a manner dictated by Street View; (3) providing instructions and directions to users regarding the use of Street View; (4) selling or otherwise providing tablets, computers and smartphones (such as Google Nexus Tablets, Google Chromebooks and Google Pixel Phones); and (5) selling or otherwise providing operating systems or other software that include, for example, the Google Maps App. Upon information and belief, Google has had actual knowledge of the '226 patent since at least 2006, having been advised of it by Kewazinga at that time. Google further had actual knowledge of the '226 patent in May 2013 as a result of the 2013 Action, and in May 2013 as a result of it having been cited by Google during the prosecution of its U.S. Patent No. 9,294,757. On information and belief, Google has engaged in these activities with knowledge and intent that such activities would cause and/or encourage direct infringement of the '226 patent.

**Response:** Denied.

57.     Google, by itself and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to the direct infringement by users of Google Street View of claims of the '226 patent (including, without limitation, the claim addressed above) pursuant to 35 U.S.C. § 271(c) in the United States and within this District at least by providing Google Street View, which is designed and intended to enable users to access Google's computer system to use and perform each component and step of the patented systems and methods of the '226 patent, including navigating street-level imagery as described herein, knowing that Street View is a material part of the claimed inventions, is especially made or especially adapted for use in infringing the patented systems and methods and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Response:** Denied.

58.     As a consequence of each of Google's direct infringement, inducement and contributory infringement, both literal and under the doctrine of equivalents, of the '226 patent, Kewazinga has been, and continues to be, damaged in an amount not yet determined and is entitled to recover damages pursuant to 35 U.S.C. § 284.

**Response:** Denied.

59.     Upon information and belief, Google's infringement of the '226 patent has been willful.

**Response:** Denied.

## Jury Demand

60.     Kewazinga requests a trial by jury for all issues so triable.

**Response:** Google admits that Kewazinga requests a trial by jury. Google hereby demands a trial by jury.

## Prayer For Relief

WHEREFORE, Kewazinga respectfully requests that the Court enter judgment against Google:

    A.    determining that Google has infringed one or more claims of the '234 patent;

    B.    ordering Google to account for and pay to Kewazinga all damages suffered by Kewazinga as a consequence of Google's infringement of the '234 patent, together with pre- and post-judgment interest and costs as fixed by the Court;

    C.    declaring that Google's infringement of the '234 patent was and is willful and trebling Kewazinga's damages under U.S.C. § 284 on that ground;

    D.    determining that Google has infringed one or more claims of the '325 patent;

    E.    ordering Google to account for and pay to Kewazinga all damages suffered by Kewazinga as a consequence of Google's infringement of the '325 patent, together with pre and post judgment interest and costs as fixed by the Court;

    F.    declaring that Google's infringement of the '325 patent was willful and trebling Kewazinga's damages under U.S.C. § 284 on that ground;

    G.    determining that Google has infringed one or more claims of the '226 patent;

    H.    ordering Google to account for and pay to Kewazinga all damages suffered by Kewazinga as a consequence of Google's infringement of the '226 patent, together with pre and post judgment interest and costs as fixed by the Court;

    I.    declaring that Google's infringement of the '226 patent was willful and trebling Kewazinga's damages under U.S.C. § 284 on that ground;

    J.    declaring that this case is exceptional and awarding Kewazinga its costs and attorneys' fees in accordance with 35 U.S.C. § 285; and

    K.    granting Kewazinga such other and further relief as the Court may deem just and proper.

**Response:** Google denies that Kewazinga is entitled to any relief, either as prayed for in its Complaint or otherwise.

### General Denial

Google further denies each and every allegation contained in the Complaint to which Google has not specifically admitted, denied, or otherwise responded herein.  Further, Google answers without prejudice to its ability to bring a motion for judgment on the pleadings at a later date pursuant to the Court's Order on April 16, 2020 (D.I. 33).

### Google's Defenses

Google asserts the following defenses in response to the allegations of Kewazinga's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  Google reserves the right to assert any additional defenses as they become known during the course of this action or to the extent they are not otherwise deemed affirmative defenses by law.

### First Defense: Equitable Doctrines

1.      Kewazinga's claims are barred, in whole or in part, by doctrines of waiver, acquiescence, laches, estoppel, implied license, patent misuse, and/or unclean hands.

2.      Kewazinga's claims are barred by the doctrine of equitable estoppel.

3.      Kewazinga aggressively asserted the '226 and '325 patents against Google in 2013 in the District of Delaware.  *Kewazinga Corp. et al v. Google Inc.*, No. 1:13-cv-00938-GMS (D. Del.) (filed May 24, 2013).

4.      After Kewazinga filed its complaint, Google representatives met with Kewazinga and explained in detail why Google did not infringe the patents.

5.      Following that meeting, Google moved to dismiss the complaint and Kewazinga did not oppose.  *Kewazinga Corp. et al v. Google Inc.*, No. 1:13-cv-00938-GMS, D.I. 5 (D. Del. Sep. 25, 2013). In its statement before the court in nonopposition of the dismissal, Kewazinga

stated that, after meeting with Google representatives, it "had no intention of serving Google." *Kewazinga Corp. et al v. Google Inc.*, No. 1:13-cv-00938-GMS, D.I. 7 at 1 (D. Del. Oct. 17, 2013).

6.      Google relied upon Kewazinga's statement filed in nonopposition and was misled by Kewazinga's actions. Google understood the matter to be closed and did not continue investigating the patents or pursuing defenses.

7.      Kewazinga did not contact Google again regarding the patents for over six years.

8.      During those six years of misleading silence, Google continued to invest in, develop, and promote its Street View service.

9.      Kewazinga was aware that Google continued to develop its product and at no time contacted Google to inform Google that it did not consider Kewazinga's claims to be settled.

10.     On April 1, 2019, the Patents expired and Kewazinga still made no efforts to alert Google that it still planned to assert infringement claims of the Patents.

11.     After over six years from not opposing the dismissal of the 2013 Action, almost a year after the Patents expired, and without any prior warning or indication, Kewazinga filed this current action against Google.

12.     Google will suffer material prejudice—both economic and evidentiary—if Kewazinga's claims against Google are allowed to continue.  For example, Kewazinga was aware of the enormous investments Google made into the development of Street View and still opted to remain silent and not alert Google of its intention to assert the Patents against Google.  As another example, because of Kewazinga's misleading conduct and decision to lie-in-wait for over six years, much evidence has been lost, witnesses' memories have faded, and key witnesses—including the founder of Street View—have left Google.  Additionally, after Kewazinga dropped

its claims in the 2013 Action, one of the inventors of the Patents passed away, preventing Google from securing testimony from a key witness.

### Second Defense: Failure To State A Claim

13.     Kewazinga fails to state a claim on which relief can be granted.

### Third Defense: Non-Infringement

14.     Google does not infringe and has not infringed (not directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the Patents.

### Fourth Defense: Patent Invalidity

15.     The claims of the Patents are directed to patent-ineligible subject matter and unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter.

16.     The claims of the Patents are invalid and unenforceable under 35 U.S.C. § 102 because the claims lack novelty, and are taught and suggested by the prior art.

17.     The claims of the Patents are invalid and unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art.

18.     The claims of the Patents are invalid and unenforceable for double patenting.

19.     The claims of the Patents are invalid and unenforceable for failure to satisfy the conditions set forth in 35 U.S.C. § 112, including failure of written description, lack of enablement, and claim indefiniteness.

### Fifth Defense: Improper Inventorship

20.     Kewazinga's purported claims for infringement of the Patents are barred because the claims of the Patents are invalid for failure to comply with the requirements of Title 35 of the United States Code, including at least § 102(f), for failing to identify all inventors.

21.     On information and belief, employees at Sarnoff Corporation contributed to the inventions claimed by the Patents and are not currently named as inventors on the Patents.

22.     Kewazinga partnered with Sarnoff Corporation to develop and scale what would become the patented technology.

23.     Sarnoff Corporation already had intellectual property in the space, and used their expertise to conceive and develop the inventions claimed in the Patents.   *See* https://www.broadcastingcable.com/news/360-degrees-motion-96767                and https://www.tvtechnology.com/news/kewazinga-brings-holodeck-to-broadcast-sports. Kewazinga intended to deceive the U.S. Patent and Trademark Office in omitting Sarnoff's contributions to the Patents, and these actions resulted in inequitable conduct before the U.S. Patent and Trademark Office.

24.     Scott Sorokin, one of the named inventors on the Patents, stated in deposition that employees at Sarnoff contributed at least as much to the inventions in the patents as David Worley, another named inventor on the Patents.  *Kewazinga Corp. v Microsoft*, No. 1:18-cv-4500-GHW, D.I 98-5 at 10 (S.D.N.Y Jan. 27, 2020).

> Q.     Did you feel that anyone at Sarnoff contributed to the – the inventions in your patents?
>          . . .
> [MR. SOROKIN]: I – I guess I can't specifically tell you what the contributions were specifically in there, but they are definite – they – they participated in the development of the – of the technology and the execution of it.  So I – I don't have a correct answer for that.
>
> Q.     (By Mr. Carraway)  Do you feel that anyone at Sarnoff contributed to the inventions in your patent as much as David Worley?
>          . . .
> [MR. SOROKIN]: Yes.

*Id*.

### Sixth Defense: Limitations On Damages And Other Relief

25.    Kewazinga's claims for relief are barred, in whole or in part, by operation of the applicable statutes which limit damages and other relief, including, but not limited to, 35 U.S.C. §§ 286, 287, and 288.  Moreover, it is Kewazinga's burden to prove marking.  Kewazinga has not plausibly pleaded or proven marking and is accordingly not entitled to damages of the '234 Patent.

### Seventh Defense: Patent History Estoppel

26.    Kewazinga is estopped based on amendments, statements, representations, and admissions made during the prosecution of the applications that led to the Patents from asserting any interpretation of the claims of the Patents that would be broad enough to cover any of Google's products or methods alleged to infringe the Patents.

### Eighth Defense: Government Sales

27.    Kewazinga's claims are barred by 28 U.S.C. § 1498 to the extent they relate to use or manufacture of the alleged inventions of the Patents by or for the United States.

### Ninth Defense: Reverse Doctrine Of Equivalents

28.    No relief is available to Kewazinga because, among other things, use of the accused technology is substantially different in principle from the purported inventions described in the Patents, and Kewazinga cannot sustain its burden of proving otherwise, under the reverse doctrine of equivalents.

### Tenth Defense: Inequitable Conduct

29.    Kewazinga's purported claims for infringement of the Patents are barred because the claims of the Patents are invalid and/or unenforceable due to inequitable conduct committed by Kewazinga and/or the applicants for the Patents.

30.     On information and belief, employees at the Sarnoff Corporation contributed to the inventions claimed by the patent and are not currently named as inventors on the Patents.

31.     Kewazinga partnered with the Sarnoff Corporation to develop and scale what would become the patented technology.

32.     The Sarnoff Corporation already had intellectual property in the space, and used their expertise to conceive and develop the inventions claimed in the Patents.   *See* https://www.broadcastingcable.com/news/360-degrees-motion-96767   and https://www.tvtechnology.com/news/kewazinga-brings-holodeck-to-broadcast-sports.   This intellectual property included 38 digital television patents and 242 patents pending or disclosures in process.

33.     Kewazinga advertised that the Sarnoff Corporation had a "war chest" of more than $50 million of background IP that had direct applicability to the inventions of the Patents.

34.     On information and belief, Sarnoff licensed to Kewazinga its intellectual property for the development of the inventions of the Patents, and the license covered at least seven issued patents.

35.     The Sarnoff Corporation developed the software behind the invention in the Patents and Kewazinga used this software in its proof of concept models.

36.     The Sarnoff Corporation was the system architect, designer, and prototype builder of the inventions of the Patents.

37.     Scott Sorokin, one of the named inventors on the Patents, stated in deposition that employees at Sarnoff contributed at least as much to the inventions in the patents as David Worley, another named inventor on the Patents.   *Kewazinga Corp. v Microsoft*, No. 1:18-cv-4500-GHW, D.I 98-5 at 10 (S.D.N.Y Jan. 27, 2020); *see* ¶ 24, *supra*.

38.     The named inventors on the Patents are Scott Sorokin, David Worley, and Andrew Weber.

39.     Prior to co-founding Kewazinga, David Worley worked as a banker structuring derivative products and as a corporate and securities attorney.

40.     On information and belief, prior to co-founding Kewazinga, David Worley had no experience with telepresence systems.

41.     Prior to co-founding Kewazinga, Scott Sorokin worked in marketing and business development.

42.     On information and belief, prior to co-founding Kewazinga, Scott Sorokin had no experience with telepresence systems.

43.     Prior to co-founding Kewazinga, Andrew Weber worked as a commercial producer, a creative consultant, and as a filmmaker.

44.     On information and belief, prior to co-founding Kewazinga, Andrew Weber had no experience with telepresence systems.

45.     On information and belief, Kewazinga was formed either in late 1997 or 1998.

46.     United States Provisional Application No. 60/080,413, the provisional patent application to which the Patents claim priority, was filed on April 2, 1998 shortly after the founding of Kewazinga.

47.     On information and belief, the named inventors of the Patents are not named on any patents other than patents that claim priority to United States Provisional Application No. 60/080,413.

48.     On information and belief, the named inventors David Worley, Scott Sorokin, and Andrew Weber did nothing more to develop the inventions of the Patents than list for the Sarnoff Corporation their desired features for a product they sought to launch at Kewazinga.

49.     On information and belief, all of the design documents relating to the inventions of the Patents are authored by the Sarnoff Corporation.

50.     Kewazinga's purported claims for infringement of the Patents are barred because the claims of the Patents are invalid for failure to comply with the requirements of Title 35 of the United States Code, including at least § 102(f), for failing to identify all inventors.

51.     On information and belief, David Worley, Scott Sorokin, and Andrew Weber knew or should have known that employees at the Sarnoff Corporation contributed to at least part of the invention behind the Patents.

52.     In the process of prosecuting the Patents, David Worley, Scott Sorokin, and Andrew Weber signed declarations that they were original, first, and joint inventors of the Patents.  These declarations included an acknowledgement to disclose information material to the examination of the applications in accordance with 37 C.F.R. § 1.56(a).

53.     On information and belief, David Worley, Scott Sorokin, and Andrew Weber deceived the USPTO during prosecution of the Patents by hiding the true inventors at the Sarnoff Corporation in order to claim sole ownership of the inventions of the Patents.

54.     The intentional failure of the named inventors on the Patents to disclose any Sarnoff Corporation employees as inventors to the USPTO allowed Kewazinga to fraudulently obtain issuance and full rights to the Patents.

55.     Each claim of the Patents are unenforceable because the named inventors, at the time of prosecution of the Patents, deliberately and knowingly affirmatively misrepresented

material information to the USPTO and/or violated the "duty to disclose" in accordance with 37 C.F.R. § 1.56(a) with the intent to deceive the USPTO.

### Eleventh Defense: No Willful Infringement

56.     Kewazinga is not entitled to enhanced or increased damages for willful infringement because Google has not engaged in any conduct that meets the standard for willful infringement (nor has Kewazinga alleged any such conduct).

57.     In fact, Kewazinga dropped its claims of infringement in the 2013 Action after Google told Kewazinga it did not infringe, leading Google to believe that Kewazinga agreed Google did not infringe.  Google's actions are the opposite of a willful infringer.

Dated: New York, New York
April 24, 2020

Respectfully submitted,

By:   */s/      Ameet A. Modi*
      Ameet A. Modi

      DESMARAIS LLP
      John M. Desmarais
      jdesmarais @desmaraisllp.com
      Ameet A. Modi
      amodi@desmaraisllp.com
      Steven M. Balcof
      sbalcof@desmaraisllp.com
      Elizabeth Weyl
      eweyl@desmaraisllp.com
      230 Park Avenue
      New York, NY 10169
      Tel: 212-351-3400
      Fax: 212-351-3401


      Emily Chen (*pro hac vice*)
      echen@desmaraisllp.com
      101 California Street
      San Francisco, California 94111
      Tel: (415) 573-1900
      Fax: (415) 573-1901

      *Counsel for Defendant Google LLC*