**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KEWAZINGA CORP.,

                Plaintiff,

        v.

GOOGLE LLC,

             Defendant.

Civil Action No. 1:20-cv-1106-LGS

**REDACTED VERSION**

## GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.  INTRODUCTION ............................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................2

III.  LEGAL STANDARDS ....................................................................................2

    A.  Summary Judgment ............................................................................2

    B.  Equitable Estoppel .............................................................................2

IV.  ARGUMENT ...................................................................................................3

    A.  No Genuine Dispute Exists That Kewazinga Misled Google Into Believing That Kewazinga Did Not Intend To Enforce Its Patents. ........................................3

        1.  Kewazinga's Delay Of Over Thirteen Years And Complete Silence For More Than Six Years Since The 2013 Action Constitutes Misleading Conduct. ....................................4

        2.  In 2018, Kewazinga's Lawyers At Stroock & Stroock & Lavan Further Misled Google. ....................................5

        3.  Kewazinga's Responses To Google's Proof Of Misleading Conduct Do Not Create A Triable Issue. ....................................7

            a.  Even Though The 2013 Action Was Dismissed Without Prejudice, Kewazinga Affirmatively Stated That It Had "No Intention Of Serving Google." ....................................7

            b.  Equitable Estoppel Applies Equally To The '234 Patent. ..............8

            c.  ███████████████████████, Strengthening The Justification For Equitable Estoppel. ....................................10

    B.  No Genuine Dispute Exists That Google Relied On Kewazinga's Misleading Conduct. ....................................11

        1.  Google Relied On Kewazinga's Misleading Conduct By Shutting Down Its Legal Machinery. ....................................11

        2.  Google Further Relied On Kewazinga's Misleading Conduct By Expanding Its Street View Service Worldwide. ....................................13

**TABLE OF CONTENTS (cont'd)**

Pages

3.  Kewazinga's Generalized Denials Do Not Rebut Google's
    Evidence Of Reliance. ................................................................16

C.  No Genuine Dispute Exists That Google Would Be Materially Prejudiced
    If Kewazinga Is Permitted To Go Forward With Its Claims After Years Of
    Silence.................................................................................................18

    1.  No Dispute Exists That Google Potentially Faces Substantially
        Higher Damages In This Case Based On Kewazinga's Silence,
        Constituting Material Economic Prejudice..............................18

    2.  No Dispute Exists That Key Evidence Is Now Lost, Constituting
        Material Evidentiary Prejudice. ..............................................20

D.  Kewazinga's Defenses To Equitable Estoppel Lack Evidence And Should
    Be Rejected. ......................................................................................21

    1.  Kewazinga's Copying And Willful Infringement Allegations Are
        Factually And Legally Without Merit.......................................21

    2.  Kewazinga's Allegation That Google Attempted To Create A
        Conflict With Respect To Stroock Makes No Sense. ...............23

V.  CONCLUSION................................................................................................24

# TABLE OF AUTHORITIES

**Pages**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................................ passim

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
  828 F. Supp. 1386, (E.D. Wis. 1993), *aff'd*, 52 F.3d 1062 (Fed. Cir. 1995) .......... 3, 18, 19

*Advanced Hydraulics, Inc. v. Otis Elevator Co.*,
  No. 72 C 2405, 1974 WL 20193 (N.D. Ill. July 12, 1974), *aff'd*, 525 F.2d 477 (7th
  Cir. 1975) ........................................................................................................................ 3

*Advanced Hydraulics, Inc. v. Otis Elevator Co.*,
  525 F.2d 477 (7th Cir. 1975) ..................................................................................... 3, 20

*Akeso Health Scis. LLC v. Designs for Health Inc.*,
  No. CV 16-07749 SJO (PJWx), 2018 WL 2122644 (C.D. Cal. Apr. 26, 2018) ................ 3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................ 2

*Arctic Cat, Inc. v. Injection Research Specialists*,
  362 F. Supp. 2d 1113 (D. Minn. 2005) ........................................................... 3, 5, 14, 15

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010) ................................................................................ passim

*Aspex Eyewear v. Clariti Eyewear, Inc.*,
  No. 07 Civ. 2373 (DC), 2008 WL 5049744 (S.D.N.Y. Nov. 26, 2008), *aff'd*, 605
  F.3d 1305 (Fed. Cir. 2010) ....................................................................................... passim

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
  No. 2:15-cv-02812-ODW (PLAx), 2017 WL 2588065 (C.D. Cal. June 13, 2017) ........... 3

*Ecolab, Inc. v. Envirochem, Inc.*,
  264 F.3d 1358 (Fed. Cir. 2001) ..................................................................................... 17

*Ferring B.V. v. Allergan, Inc.*,
  253 F. Supp. 3d 708 (S.D.N.Y. 2015) ............................................................................ 3

*Gasser Chair Co. v. Infanti Chair Mfg. Co.*,
  60 F.3d 770 (Fed. Cir. 1995) ......................................................................................... 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .................................................................................................. 22

iii

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*John Bean Techs. Corp. v. Morris & Associates, Inc.*,
    887 F.3d 1322 (Fed. Cir. 2018) ........................................................................... 8, 9

*Kewazinga Corp. v. Microsoft Corp.*,
    Case No. 1:18-cv-4500-GHW (S.D.N.Y) ............................................................ 6

*Omega Patents, LLC v. CalAmp Corp.*,
    920 F.3d 1337 (Fed. Cir. 2019) ........................................................................... 23

*Radio Systems Corp. v. Lalor*,
    709 F.3d 1124 (Fed. Cir. 2013) ........................................................................... 8

*Scholle Corp. v. Blackhawk Molding Co., Inc.*,
    133 F.3d 1469 (Fed. Cir. 1998) ...................................................................... 3, 5, 9, 10

*Wafer Shave, Inc. v. Gillette Co.*,
    857 F. Supp. 112 (D. Mass. 1993), *aff'd without opinion*, 26 F.3d 140 (Fed. Cir.
    1994) ................................................................................................................. passim

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................................ 2

## I.  INTRODUCTION

Why did Kewazinga wait to file suit until now?  The Court asked that question at the April 16, 2020 conference, and discovery has confirmed the implication—there was no justification for Kewazinga's misleading silence, which Google relied on to its material prejudice.  No genuine factual disputes exist, and the Court should grant summary judgment of equitable estoppel.

For example, no dispute exists that Kewazinga first contacted Google in 2005–2006, then remained silent after 2008 until 2013.  After Kewazinga filed suit and aggressively asserted the patents-in-suit in 2013 (the "2013 Action"), Google explained why it did not infringe—and Kewazinga agreed to dismiss the case shortly thereafter, saying it had "no intention" of serving Google.  It said nothing directly to Google again until more than six years later, with the filing of this lawsuit in 2020.  But as discovery has now confirmed, Kewazinga was sitting back and silently watching Google devote substantial resources to Street View while ███████████████████ ██████████████  Meanwhile, in 2018, Kewazinga's litigation counsel, Stroock & Stroock & Lavan ("Stroock"), agreed to represent Google in another case, telling Google that ████████ ███████████████████████████████████████████████████  But, at the same time, ██████████ ██████████████████████████

While Kewazinga and its representatives engaged in these tactics, Google shut down its legal machinery and devoted substantial resources to the continued development of Street View.  Years later, Google is now locked in—having been stripped of the opportunity to develop defenses, mitigate damages, or secure the key evidence that it could have secured back in 2013.  Kewazinga misled Google, Google relied on those misrepresentations, and it is materially prejudiced today.  Kewazinga's more than thirteen year delay in enforcing its patents against Google presents more

compelling facts for equitable estoppel than almost any other case, and the Court should grant summary judgment.

## II.     FACTUAL BACKGROUND

Pursuant to Local Civil Rule 56.1, Google has concurrently filed its Statement of Material Undisputed Facts ("Undisputed Facts").  To avoid duplication, those material facts are referenced in the context of the arguments presented below.

## III.    LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A factual dispute is genuine only "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  *Id*. at 248.

### B.     Equitable Estoppel

Equitable estoppel is a defense to a claim of patent infringement that can serve as an absolute bar to a patentee's infringement claim.  *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*) ("*Aukerman*").  It is an equitable issue that is "committed to the sound discretion of the trial judge."  *Id*. at 1028.  Three elements must be established:  "(1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement."  *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010).  The Court

analyzes the facts from the defendant's perspective, because "estoppel focuses on the effect of the patentee's conduct on the alleged infringer, not on the reasons for the patentee's conduct." *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112, 119 (D. Mass. 1993), *aff'd without opinion*, 26 F.3d 140 (Fed. Cir. 1994) (citing *Aukerman*, 960 F.2d at 1043).

Equitable estoppel is properly, and routinely, decided on summary judgment, including in this District. *See Aspex Eyewear v. Clariti Eyewear, Inc.*, No. 07 Civ. 2373 (DC), 2008 WL 5049744 (S.D.N.Y. Nov. 26, 2008), *aff'd*, 605 F.3d 1305; *Ferring B.V. v. Allergan, Inc.*, 253 F. Supp. 3d 708 (S.D.N.Y. 2015); *see also, e.g.*, *Wafer Shave*, 857 F. Supp. 112; *Arctic Cat, Inc. v. Injection Research Specialists*, 362 F. Supp. 2d 1113 (D. Minn. 2005); *Akeso Health Scis. LLC v. Designs for Health Inc.*, No. CV 16-07749 SJO (PJWx), 2018 WL 2122644 (C.D. Cal. Apr. 26, 2018); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW (PLAx), 2017 WL 2588065 (C.D. Cal. June 13, 2017); *Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469 (Fed. Cir. 1998); *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 828 F. Supp. 1386, (E.D. Wis. 1993), *aff'd*, 52 F.3d 1062 (Fed. Cir. 1995); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, No. 72 C 2405, 1974 WL 20193 (N.D. Ill. July 12, 1974), *aff'd*, 525 F.2d 477 (7th Cir. 1975).

## IV.   ARGUMENT

### A.   No Genuine Dispute Exists That Kewazinga Misled Google Into Believing That Kewazinga Did Not Intend To Enforce Its Patents.

The first element of equitable estoppel focuses on whether Kewazinga, through misleading conduct, led Google to reasonably believe that Kewazinga did not intend to enforce its patents against Google. *See Aspex Eyewear*, 605 F.3d at 1310. Misleading conduct may include specific statements, action, inaction, or silence when there is an obligation to speak. *Aukerman*, 960 F.2d at 1028.

1.   **Kewazinga's Delay Of Over Thirteen Years And Complete Silence For More Than Six Years Since The 2013 Action Constitutes Misleading Conduct.**

"[M]isleading silence arises when a patentee threaten[s] immediate or vigorous enforcement of its patent rights but then [does] nothing for an unreasonably long time." *Aspex Eyewear*, 605 F.3d at 1310 (internal quotation omitted).   Indeed, that is "the most common [estoppel] situation." *Wafer Shave*, 857 F. Supp. at 119 (citing *Aukerman*, 960 F.2d at 1042).

Here, no dispute exists that Kewazinga first contacted Google in 2005.  (Undisputed Facts ¶ 4.)  Google launched Street View in 2007.  (*Id.* ¶ 6.)  Yet, Kewazinga waited six years to first charge Google with infringement.  For the first time, in the 2013 Action, Kewazinga sued Google for alleged infringement of the '325 and '226 patents—an act of "vigorous enforcement."  (*Id.* ¶ 9); *Aspex Eyewear*, 605 F.3d at 1310.   Likewise, no dispute exists that in subsequent communications between the parties, Kewazinga also threatened the enforcement of its pending patent application, telling Google that ███████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (Undisputed Facts ¶¶ 25–27.)

In an August 2013 meeting between the parties, Google explained to Kewazinga why Google did not infringe.  (*Id.* ¶¶ 22–24.)  Following that meeting, Kewazinga apparently decided not to serve the Complaint—so, in September 2013, Google moved to dismiss the complaint for lack of service.  (*Id.* ¶ 30.)  Kewazinga did not oppose, explaining in its court filing that it "had no intention of serving Google."  (*Id.* ¶ 31.)  The case was dismissed on November 14, 2013, and following the dismissal, Kewazinga itself did not again assert its patents against Google—or even communicate directly with Google—for another more than six years, until this lawsuit was filed in February 2020.  (*Id.* ¶¶ 35, 83.)

4

Kewazinga's overall delay of over thirteen years in enforcing its patents and complete silence for more than six years following the dismissal of the 2013 Action constitutes misleading conduct.  Indeed, courts have regularly granted summary judgment of equitable estoppel based on much shorter periods of silence.  *See, e.g.*, *Aspex Eyewear*, 2008 WL 5049744 at *2, *5 (three years and three months); *Wafer Shave*, 857 F. Supp. at 120–121 (three years and five months); *Scholle*, 133 F.3d at 1473 (three years and six months).

Discovery has now shown that the reason Kewazinga dropped the 2013 Action and stayed silent for more than six years thereafter was because ██████████████████████████ (Undisputed Facts ¶¶ 34, 81–82.)   But Kewazinga never told Google that it would continue pursuing its claims ████████████████ (*id*. ¶ 82)—something it could easily have done if it wanted to.  *See Wafer Shave*, 857 F. Supp. at 121 (noting, on similar facts, that "a simple statement . . . on a postcard probably would have sufficed"); *see also Arctic Cat*, 362 F. Supp. at 1123 ("[The patentee]'s reasons for its delay were immaterial for estoppel purposes because—regardless of [the patentee]'s personal intentions—it is undisputed that [the patentee] did not ever communicate those reasons to [the defendant].").  Instead, rather than tell Google the truth about its intentions, Kewazinga's statement in its 2013 court filing that it "had no intention of serving Google" hid its true intentions—and, as discussed further below, Google relied on that misrepresentation by shutting down its legal machinery, not filing a declaratory judgment action, not filing *inter partes* review (IPR) petitions, and otherwise not mitigating its liability by implementing a non-infringing alternative.

## 2.    In 2018, Kewazinga's Lawyers At Stroock & Stroock & Lavan Further Misled Google.

While Kewazinga's aggressive assertion followed by years-long silence is sufficient to find misleading conduct, its representatives' conduct in 2018 was additionally misleading.  On May 21,

2018, Kewazinga filed suit against Microsoft, but not Google, for infringement of the '325, '226, and '234 patents—the same three patents at issue here, including the two previously asserted against Google in the 2013 Action.  (Undisputed Facts ¶ 90.)  Kewazinga has been represented by the Stroock law firm since the start of that case, and the case remains pending.  (*See Kewazinga Corp. v. Microsoft Corp.*, Case No. 1:18-cv-4500-GHW (S.D.N.Y).)

Less than three weeks after filing suit against Microsoft, one of Stroock's clients, which was a co-defendant with Google in a copyright action (the "2018 Copyright Litigation"), approached Google about having Stroock also represent Google in that action.  (Undisputed Facts ¶ 93.)  Google believed that retaining Stroock in the 2018 Copyright Litigation would be mutually beneficial, as ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.  (*Id.* ¶ 94.)  During negotiations over the terms of the retention, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████.  (*Id.* ¶ 97.)  ████████████████████████████ ████████, and on September 13, 2018, Stroock and Google entered into an agreement for Stroock's representation of Google in the 2018 Copyright Litigation.  (*Id.* ¶ 97.)  In that retention letter, Stroock represented to Google that ████████████████████████████████████ ██████████████████████████████████████████████████████████  (*Id.* ¶ 98.) Google relied on that assertion in agreeing to retain Stroock on those terms and understood that assertion to be further confirmation that Kewazinga had no intention of suing Google at any point in the future.  (*Id.* ¶¶ 99–100.)

Discovery has now confirmed that Stroock's representations to Google were not only misleading; they were false.  According to Kewazinga's witnesses, ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(*Id.* ¶¶ 98, 101–102.) ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (*Id.* ¶¶ 101–102.)   And discovery further

revealed that Stroock maintains a security interest in Kewazinga's patents.  (Undisputed Facts ¶

104.)  None of those facts were ever communicated to Google (*id.* ¶¶ 34, 81–83, 92, 100–104),

further supporting a finding of misleading conduct.  *See, e.g.*, *Wafer Shave*, 857 F. Supp. at 121

(applying equitable estoppel where patentee failed to communicate that it would pursue its claims

once it secured funding).

### 3. Kewazinga's Responses To Google's Proof Of Misleading Conduct Do Not Create A Triable Issue.

Google anticipates that Kewazinga will advance three arguments to rebut a finding of

misleading conduct:  (1) that dismissal of the 2013 Action was without prejudice, which should

have alerted Google to the possibility that Kewazinga would file suit again; (2) that Kewazinga

never asserted the '234 patent against Google until this lawsuit; and (3) that Stroock's request for

a prospective waiver in connection with its representation of Google in the 2018 Copyright

Litigation should have alerted Google that Kewazinga had not abandoned its claims.  All three

arguments should be rejected.

#### a. Even Though The 2013 Action Was Dismissed Without Prejudice, Kewazinga Affirmatively Stated That It Had "No Intention Of Serving Google."

While dismissal of the 2013 Action was without prejudice, Kewazinga made it clear ***in its***

***court filing*** of non-opposition to dismissal that it "had no intention of serving Google."

(Undisputed Facts ¶ 31.)  Because that statement came after the meeting with Kewazinga in which

7

Google explained why it did not infringe, Google reasonably understood that statement as Kewazinga's acknowledgement of the weakness of its case; and that, true to its word, it really "had no intention" of continuing its assertion against Google.  (*Id.* ¶¶ 22–24, 32.)  Indeed, although the non-opposition called for dismissal "without prejudice," Kewazinga nowhere suggested that it had any intention of refiling the litigation.  (*Id.* ¶ 33.)  Therefore, it is irrelevant that a dismissal without prejudice ***ordinarily*** allows a plaintiff to re-file a case, because in ***this case*** Kewazinga made a specific statement reasonably leading Google to conclude that the opposite was true—that Kewazinga had no such intention.  Kewazinga's six years of silence following that statement confirms the reasonableness of Google's conclusion.

### b.  Equitable Estoppel Applies Equally To The '234 Patent.

The Court should reject any argument that equitable estoppel cannot apply to the '234 patent because it had not issued when the 2013 Action was dismissed.  Kewazinga relies on two cases for that proposition—*Radio Systems Corp. v. Lalor*, 709 F.3d 1124 (Fed. Cir. 2013) and *John Bean Techs. Corp. v. Morris & Associates, Inc.*, 887 F.3d 1322 (Fed. Cir. 2018)—but each is distinguishable.  In *Radio Systems*, equitable estoppel did not apply to a patent (the '082 patent) because the demand letter "did not mention the '082 patent."  709 F.3d at 1126.  By contrast, Kewazinga ***specifically*** threatened Google with litigation over its pending patent application.



(Undisputed Facts ¶ 25 ██████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ *id.* at ¶¶ 26–27 ████████████████

████████████████████ ).)

In *John Bean*, the Federal Circuit held that patent claims that had issued from reexamination were not subject to equitable estoppel because the claims were never asserted and

because their scope was very different than the claims of the previously-asserted patent.  *John Bean*, 887 F.3d at 1327–28.  This case presents different facts.  As described above, unlike in *John Bean*, Kewazinga aggressively asserted the application that eventually led to the '234 patent.  (Undisputed Facts ¶¶ 25–27.)  Moreover, also unlike in *John Bean*, the claims of the '234 patent are very similar in scope to the claims of the '325 and '226 patents—so much so that, during prosecution, the Patent Office rejected the '234 claims as being unpatentable over the '325 and '226 patents under the doctrine of double patenting, forcing Kewazinga to disclaim the enforcement life of the '234 patent to match that of the other two patents in order to secure its allowance.  (*See id.* ¶¶ 86–89.)  The fact that the claims of the '234 patent were found unpatentable because they were the same as the '325 and '226 patent claims supports a finding of equitable estoppel—Kewazinga aggressively asserted essentially the same invention, then remained silent until filing this lawsuit.  *See John Bean*, 887 F.3d at 1328 (explaining that equitable estoppel can apply to a later-issued patent if its claims are similar in scope to earlier-asserted claims).

Finally, no dispute exists that the '234 patent issued on June 9, 2015 (Undisputed Facts ¶ 87), and that Kewazinga remained silent until the filing of this lawsuit in February 2020, a period of four-and-a-half years.  (*Id.* ¶ 83.)  As discussed above, that silence is longer than other cases in which courts—including in this District—applied equitable estoppel on summary judgment.  *See, e.g.*, *Aspex Eyewear*, 2008 WL 5049744 at *2, *5–6 (three years and three months); *Wafer Shave*, 857 F. Supp. at 120–21 (three years and five months); *Scholle*, 133 F.3d at 1473 (three and a half years).  Additionally, that silence continued past 2018—after the '234 patent issued, and after Kewazinga's lawyers had sued Microsoft on the '234 patent (Undisputed Facts ¶ 90) while at the same time affirmatively (and falsely) telling Google that ███████████████████████████

████████████████████████████████.  (*See* Undisputed Facts ¶¶ 98, 101–102.)  Those are additional, independent bases for the application of equitable estoppel regarding the '234 patent.

        **c.**        ████████████████████████████ **Strengthening The Justification For Equitable Estoppel.**

As discussed above, in June 2018, the Stroock law firm sought to represent Google in the 2018 Copyright Litigation.  In negotiations regarding Stroock's potential representation of Google,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.  (Undisputed Facts ¶¶ 97–88.)  Kewazinga may argue that ████████ should have alerted Google to the possibility that Kewazinga would file suit again.  The Court should reject that argument for at least two reasons.

First, the 2018 negotiations came almost five years after Kewazinga aggressively asserted its patents against Google, did not oppose dismissal of the 2013 Action, and remained silent for almost five years thereafter.  (*Id.* ¶¶ 9, 26, 83, 92.)  That alone constitutes a sufficient basis to apply equitable estoppel.  *Aspex Eyewear*, 2008 WL 5049744 at *5–6; *Wafer Shave*, 857 F. Supp. at 121; *Scholle*, 133 F.3d at 1469.  Hence, Google's equitable estoppel defense was perfected before the 2018 contact.

Second, rather than put Google on notice of a future lawsuit, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████  (Undisputed Facts ¶¶ 97–98.)  Google reasonably interpreted that unambiguous written representation as reaffirmation and confirmation of Google's prior conclusion that Kewazinga did not intend to assert its patents against Google.  (*Id.* ¶ 99.)  During discovery, Kewazinga's witnesses have now removed any doubt that Stroock's representations

were misleading:  Stroock has a security interest in Kewazinga's patents, ████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. (*Id.* ¶¶ 101–103.)

Therefore, ███████████████████████████████████████████████████████████

████████████████, ***support*** the application of equitable estoppel.

### B.     No Genuine Dispute Exists That Google Relied On Kewazinga's Misleading Conduct.

The second element of equitable estoppel focuses on whether Google relied on Kewazinga's misleading conduct.  *See Aspex Eyewear*, 605 F.3d at 1310.  Google did so in at least two ways:  it shut down its legal machinery, including its development of defenses, after dismissal of the 2013 Action; and it continued to invest heavily in Street View, including through significant financial investments in camera technology that could have otherwise accounted for Kewazinga's allegations.

### 1.     Google Relied On Kewazinga's Misleading Conduct By Shutting Down Its Legal Machinery.

Google's reliance is evidenced by the fact that it made significant plans and preparations for defending itself against Kewazinga's allegations in 2013—and then shut down those plans after Kewazinga affirmatively stated that "it had no intention of serving Google," and the 2013 Action was dismissed.  *See Aspex Eyewear*, 2008 WL 5049744 at *4 (citing *Aukerman*, 960 F.2d at 1043) (explaining that evidence of a communication "which lulls the infringer into a sense of security" can establish reliance); *Wafer Shave*, 857 F. Supp. at 124 ("The fact that [the defendant] failed to take affirmative actions to protect itself from a lawsuit seeking many millions of dollars in damages, such as the one it is facing now, is evidence of its reliance.").  The preparations that Google's legal department made to defend itself against Kewazinga's assertions, and its abandonment of those preparations after dismissal of the 2013 Action, are uncontroverted.

11

For example, Jim Sherwood, senior counsel at Google who was responsible for the Kewazinga matter, directed members of his team to begin investigating non-infringement and invalidity shortly after Kewazinga filed its complaint in 2013.  (Undisputed Facts ¶¶ 10–12.) Mr. Sherwood also instituted legal holds for the preservation of relevant documents.  (*Id.* ¶ 13.) He also requested legal analyses from three law firms—Perkins Coie, Akin Gump, and Sterne Kessler—concerning Kewazinga's patents and allegations.  (*Id.* ¶¶ 14–17.)  Consistent with Mr. Sherwood's practice when evaluating potential defenses to a patent assertion, the materials that Google requested and received from Perkins Coie and Akin Gump included analyses of non-infringement and potential alternative designs to avoid the alleged infringement theory or mitigate alleged damages.  (*Id.* ¶¶ 14–16.)  The materials that Google requested and received from Sterne Kessler outlined a timeline and strategy to file *inter partes* review (IPR) petitions to invalidate Kewazinga's patents at the Patent Office.  (*Id.* ¶ 17.)  Based on that analysis, Google intended to prepare and file IPR petitions on Kewazinga's patents if Kewazinga served its complaint.  (*Id.* ¶ 18.)

In August 2013, Google met with Kewazinga and explained its belief that it did not infringe the asserted patents.  (*Id.* ¶¶ 19, 22–24.)  Following that meeting, apparently Kewazinga decided not to serve the complaint.  (*See id.* ¶¶ 29–30.)  Shortly thereafter, Google moved to dismiss the complaint for lack of service (*id.* ¶ 30), and Kewazinga did not oppose, explaining in its non-opposition that Kewazinga "had no intention of serving Google."  (*Id.* ¶ 31.)  The 2013 Action was dismissed on November 14, 2013.  (*Id.* ¶ 35.)

Mr. Sherwood then shut down the defensive preparations he had initiated, believing that Kewazinga was truthful when it represented to the court in the 2013 Action that it "had no intention of serving Google."  (*Id.* ¶ 36.)  And Mr. Sherwood kept them shut down in 2018 based on

Stroock's misrepresentations and Kewazinga's continued silence.  (*Id.* ¶ 100.)  For example, the legal holds that were instituted were released after Kewazinga abandoned its 2013 Action—something that would make no sense if Google believed Kewazinga would re-assert its claims. (*See id.* ¶ 37.)  Google did not further engage the services of the Perkins Coie or Akin Gump law firms, nor did it further investigate or pursue the non-infringement defenses or potential non-infringing alternatives identified in the initial analyses prepared by those firms.  (*Id.* ¶ 39.)  Had Kewazinga not abandoned its 2013 Action, and continued to remain silent, there were several design-around options Google could have and would have explored, which could have mitigated any future damages.  (*Id.* ¶¶ 56-68.)  Nor did Google pursue IPRs, as proposed by Sterne Kessler. (*Id.* ¶ 38.)  Google did not consider initiating a declaratory judgment action, which it has done in other cases, believing that no case or controversy existed between Kewazinga and Google.  (*Id*. ¶ 40.)  Google's belief that Kewazinga had abandoned its claims—and Google's reliance on Kewazinga's conduct—is further demonstrated by the contemporaneous reporting of the Kewazinga matter as closed to Google's outside financial auditors and internally to its executives. (*See id.* ¶¶ 41–43.)  Each of these actions and statements constitutes reliance and supports a finding of equitable estoppel.  *See, e.g.*, *Wafer Shave*, 857 F. Supp. at 122–24 (holding that evidence of the alleged infringer's ceasing to maintain holds on relevant evidence, its legal department ceasing to consider patentee a threat, stopping further investigation of design-arounds, failing to take further steps to defend itself from a lawsuit, and reporting the matter resolved to financial auditors all supported a finding of equitable estoppel).

### 2.    Google Further Relied On Kewazinga's Misleading Conduct By Expanding Its Street View Service Worldwide.

Continued investment into an allegedly infringing product is also evidence of detrimental reliance.  *Aspex Eyewear*, 605 F.3d at 1311-12.  That is particularly true "where a patent holder

'was undoubtedly aware that the alleged infringer *was continuing to invest* heavily in the sale of the products that the patent holder now alleges violates the patent.'" *Arctic Cat*, 362 F. Supp. 2d at 1125 (emphasis in original) (quoting *Wafer Shave*, 857 F. Supp. at 121). Here, there is no dispute that Google invested heavily in Street View after the dismissal of the 2013 Action and for the next six years—and that Kewazinga was well aware of that fact, yet stayed silent.

In particular, shortly after dismissal of the 2013 Action, Google began development of a complete redesign of its Street View camera system, which came to be known as "Herschel." (Undisputed Facts ¶ 49.) As documented in a presentation entitled "Spend Approval Committee Request for Next-Gen Geo Street View 'Herschel' Camera System," Google approved a nearly ███████ investment into the Herschel system. (*Id.* ¶ 50.) Google ultimately spent at least ██████ on that system alone between December 2014 and February 2020. (*Id.* ¶ 53.) The improved system included ████████████████████████████████. (*Id.* ¶ 50.) The nearly ██████ investment was ██████ more than Google spent on its previous Street View system. (*Id.* ¶ 51) Had Kewazinga not abandoned its 2013 Action, Google would have been able to explore non-infringing camera designs rather than lock-in to the Herschel design. (*Id.* ¶¶ 56–68.)

In addition to its investment in camera technology, Google invested heavily in other aspects of Street View after dismissal of the 2013 Action, and throughout the over six year period that Kewazinga remained silent. For example, Google ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████. (*Id.* ¶¶ 69–70.) In addition, between 2013 and 2019, Google increased the resources dedicated to Street View imagery collection in the United States. During that time period, Google ███████████████████

14

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████   (*Id.* ¶ 71.)  Additionally, between September 1, 2015 and April 1, 2019, Google increased ████████████████████████████████████████.

(*Id.* ¶ 71.)  Had Kewazinga not abandoned its 2013 Action and stayed silent for more than half a decade, Google would have been able to explore alternative designs for how it threaded together or served those images, rather than locking itself into a design Kewazinga now alleges is infringing.  (*Id.* ¶¶ 56–68.)

Google's substantial economic investments in Street View—made after the 2013 Action was dismissed and Google formed a reasonable belief that Kewazinga was truthful in its representation that it "had no intention" of suing Google—constitute reliance warranting a finding of equitable estoppel.  *See, e.g.*, *Aspex Eyewear*, 605 F.3d at 1311–12 (describing alleged infringer's expansion of business as evidence of reliance).  That reliance is further demonstrated by the fact that Street View is a publicly available, widely used, and widely advertised feature— and Kewazinga was admittedly well-aware of Google's expansion of Street View, choosing to sit back and wait for Google's expansion to become locked in.  (Undisputed Facts ¶¶ 73–79 (Kewazinga responses to requests for admission, admitting that it was aware from 2014 to 2019 "that Google continued to provide Street View to users and customers"); *id*. at ¶ 70 (deposition testimony confirming that Kewazinga did not inform Google at any time between 2014 and 2019 that it still believed Google was infringing its patents).)  That sit-back-and-watch, lying-in-wait, strategy further demonstrates reliance.  *See Arctic Cat*, 362 F. Supp. 2d at 1125 (finding reliance "where a patent holder 'was undoubtedly aware that the alleged infringer *was continuing to invest*

15

heavily in the sale of the products that the patent holder now alleges violates the patent'" (quoting *Wafer Shave*, 857 F. Supp. at 121)).

      **3.**      **Kewazinga's Generalized Denials Do Not Rebut Google's Evidence Of Reliance.**

Kewazinga will likely assert that Google did not actually rely on Kewazinga's misconduct (1) because Google did not actually make any changes to Street View in response to the 2013 Action, or that the changes Google could have made are hypothetical; and (2) because Google actually relied on its belief of non-infringement, rather than Kewazinga's misleading conduct. Those arguments should be rejected.

First, the assertion that Google did not make any changes to Street View in response to Kewazinga's allegations in 2013 is irrelevant. To show reliance, the accused infringer "need not prove precisely what alternative paths it would have taken, or that every . . . decision was based on reliance on [the patentee]'s silence." *Aspex Eyewear*, 605 F.3d at 1312 (finding reliance based on accused infringer's declaration that it would likely have considered ceasing sale of the product had the patentee continued its assertion rather than withdraw into silence). Here, it is uncontroverted that Google investigates the implementation of alternative designs (particularly in cases like this where the plaintiff seeks an injunction or ongoing royalty), Google has done so in several other litigations pending in the 2013 time frame, and Google would have considered similar alternative designs had Kewazinga not abandoned its claims. (Undisputed Facts ¶¶ 56–68.) Indeed, as contemporaneously documented here, and not controverted, Google began to investigate non-infringing alternatives in this case in response to the 2013 Action, only to shut down that effort when the 2013 Action was dismissed and to keep it shut down in 2018 based on Stroock's misrepresentations and Kewazinga's continued silence. (*Id.* ¶¶ 36, 39, 56, 58–68, 99– 100.) Likewise, it is uncontested that Google regularly makes changes to Street View, that Google

has the ability to change it if doing so makes economic or practical sense, such as the mitigation

of a potentially significant damages award in litigation, and that Google has done so in certain

regions. (*Id.* ¶¶ 54–68.)  Kewazinga agreed to the dismissal of the 2013 Action before even serving

the complaint, and Google did not further pursue these alternatives as a result—but could (and

would) have done so had Kewazinga pressed forward.  (*Id.* ¶¶ 14–16, 30–33, 35–36, 39, 54–68,

80, 83, 90–92, 99–100.)  And, in any event, there is no dispute that Google **in fact** shut down its

legal machinery, did not file a declaratory judgment action, ceased pursuing IPRs, and otherwise

stopped preparations for defending itself against suit.  (*See supra* Section IV.B.1.)  All of that is

sufficient to establish reliance.

Second, the fact that Google formed a belief of non-infringement does not preclude a

finding of reliance and equitable estoppel.  As the court in *Wafer Shave* explained, "[t]o find

otherwise would encourage those accused of infringement not to seek legal advice, but to rely

solely on a patentee's future conduct and have faith such conduct will prevent the patentee from

succeeding in a lawsuit."  *Wafer Shave*, 857 F. Supp. at 123.  Here, while it is true that Google

formed a belief of non-infringement, it is undisputed that Google still takes steps to defend itself

in lawsuits when it has a good-faith belief in non-infringement (such as retaining legal counsel and

pursuing invalidity defenses)—and that Google stopped taking those steps as soon as Kewazinga

agreed to dismissal of the 2013 Action, and kept those efforts shut down after Stroock's

misrepresentations in 2018.  (*See id.* ¶¶ 36, 38-39, 99-100.)

Indeed, that fact distinguishes this case from cases in which courts have declined to apply

equitable estoppel.  For example, in *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed.

Cir. 2001) and *Gasser Chair Co. v. Infanti Chair Mfg. Co*., 60 F.3d 770, 776 (Fed. Cir. 1995), the

Federal Circuit held that the defendants in those cases failed to come forward with evidence of

reliance, and that the evidence established that the alleged infringer would have gone forward with its activities regardless.  Here, by contrast, Google shut down its legal machinery, did not file a declaratory judgment action, did not pursue IPRs, did not retain litigation counsel, and released evidence preservation holds—actions that are separate from economic and business decisions, and actions that would make no sense unless Google actually believed and relied on the fact that Kewazinga had abandoned its claims.

> ### C.    No Genuine Dispute Exists That Google Would Be Materially Prejudiced If Kewazinga Is Permitted To Go Forward With Its Claims After Years Of Silence.

The third factor in the equitable estoppel analysis focuses on whether Google would be materially prejudiced if Kewazinga is permitted to proceed with its claims in this case.  *See Aspex*, 605 F.3d at 1310.  Material prejudice can be economic, demonstrated "by showing that the present suit would result in damages which likely would have been prevented by an earlier suit."  *ABB Robotics*, 52 F.3d at 1065 (quotations and citation omitted).  Material prejudice may also be evidentiary, arising "by reason of a defendant's inability to present a full and fair defense" based on loss of records, death of a witness, or faded memories.  *Wafer Shave*, 857 F. Supp. at 126 (quoting *Aukerman*, 960 F.2d at 1033).  Here, the undisputed facts demonstrate that Google would suffer material prejudice that is both economic (based on the substantially higher damages it may incur as a result of Kewazinga's delay and silence) and evidentiary (based on the loss of key information, including by result of the intervening death of a key Kewazinga executive and inventor.)

> ### 1.    No Dispute Exists That Google Potentially Faces Substantially Higher Damages In This Case Based On Kewazinga's Silence, Constituting Material Economic Prejudice.

As described above, Kewazinga agreed to the dismissal of the 2013 Action.  No dispute exists that, in the intervening years and until the filing of this lawsuit, Kewazinga continued to

believe that Google infringed its patents, was well aware that Google was continuing to develop and invest in Street View, and—nevertheless—chose to stay silent.  (*See supra* Section IV.B.2.) Kewazinga's sit-back-and-watch, lying-in-wait, strategy caused material economic prejudice to Google in at least three different ways.

First, the potential damages that Google may owe if Kewazinga prevails on infringement and validity are significantly higher than they would have been in 2013.  Kewazinga admits that it is seeking monetary damages in this Action based on Google providing Street View to users and customers during the years of its misleading silence between 2014 and 2019.  (Undisputed Facts ¶ 84.)  And, as discussed above, Google invested heavily in Street View during that time, such that by 2019 Street View had expanded all over the world—with ███████████████████ ████████████████████.  (*Id.* ¶¶ 70–72.)  Had Kewazinga not abandoned its assertion in 2013 and stayed silent for more than half a decade, the matter would have been resolved years ago, before those future damages would have accrued.  Moreover, Google could (and would) have pursued invalidity defenses in litigation and IPRs at the Patent Office (*id.* ¶¶ 14–15, 17–18, 38)— both of which could have resulted in the invalidation of Kewazinga's patents years ago.

Second, and relatedly, the patents-in-suit expired in 2019.  (*Id.* ¶ 105.)  As a result, Google is now locked in—it has no ability to design around Kewazinga's patents in order to avoid future infringement or mitigate future damages, because there is no future infringement or future damages.  By contrast, if Kewazinga had not abandoned its claims in 2013 and further misled Google in 2018 (through the representations of its law firm, Stroock), Google could have considered ways to avoid future infringement between 2013 and 2019.  Its inability to do so now constitutes material economic prejudice.  *See, e.g.*, *ABB Robotics*, 52 F.3d at 1065.

Third, 

(*Id.* ¶ 21.)

(*Id.* ¶ 85.)

### 2. No Dispute Exists That Key Evidence Is Now Lost, Constituting Material Evidentiary Prejudice.

Kewazinga's silence and delay for more than half a decade has also resulted in the loss of evidence—hindering Google's ability to present a full and fair defense, and thereby constituting material prejudice. *Wafer Shave*, 857 F. Supp. at 126 (quoting *Aukerman*, 960 F.2d at 1033). Importantly, Google can no longer secure testimony or obtain other evidence from Andrew Weber, who died in 2014—after Kewazinga's abandonment of its claims in 2013 but before the filing of this lawsuit. Mr. Weber was a Vice Chairman of Kewazinga between 2005 and 2014. (Undisputed Facts ¶ 45.) He was also a named inventor on the patents-in-suit. (*Id.* ¶ 46.) As a named inventor, Mr. Weber had unique independent knowledge regarding the patents-in-suit that can never be recovered. *See, e.g.*, *Advanced Hydraulics*, 525 F.2d at 482. In particular, he would have been able to testify regarding the inventorship of the patents-in-suit. Moreover, Kewazinga's remaining witnesses have confirmed that

. (Undisputed Facts ¶¶ 47–48.) Accordingly, no dispute exists that material evidence that could have been collected in 2013 is now lost. *See, e.g.*, *Wafer Shave*, 857 F. Supp. at 126 (undisputed evidence concerning death of key witness established material prejudice).

Other evidence has also been lost due to the passage of time. In particular, a number of potential Google witnesses who were instrumental to the development of Street View have long

since left the company and many since 2013.  (Undisputed Facts ¶ 44.)  And, even for those still

at Google, no doubt their memories have faded after all these years.  (*Id.* ¶¶ 20, 44.)  Documents

have also likely been lost, because—relying on Kewazinga's statement that it had "no intention of

serving Google"—Google's litigation department released evidence preservation holds after the

dismissal of the 2013 Action.  (*Id.* ¶ 37.)  While Google does not know the extent of the lost

relevant documents, that Kewazinga produced documents in this case reflecting communications

with Google, that Google no longer had, is proof that at least some key evidence has been lost.

(*Id.*)  Had Kewazinga not misled Google as to its intentions, Google could have taken measures to

preserve some of that evidence.  *See, e.g.*, *Wafer Shave*, 857 F. Supp. at 126 (evidence that alleged

infringer did not have the opportunity to preserve relevant evidence constituted material prejudice).

### D.  Kewazinga's Defenses To Equitable Estoppel Lack Evidence And Should Be Rejected.

The Court may weigh other equitable considerations in determining whether to apply

equitable estoppel.  *See Aspex Eyewear*, 605 F.3d at 1313.  In its discovery responses, Kewazinga

alleges that equitable estoppel should not apply for two reasons.  First, it alleges that Kewazinga

provided notice of its technology and its patents in 2005–2006, and that Google copied that

technology and willfully infringed Kewazinga's patents.  Second, Kewazinga alleges that Google

attempted to create a conflict with respect to its legal counsel (Stroock), rendering Google's hands

unclean.  Neither defense makes sense, and no evidence exists for either defense.

#### 1.  Kewazinga's Copying And Willful Infringement Allegations Are Factually And Legally Without Merit.

Kewazinga alleges that Google improperly appropriated, or copied, ideas that it sent to

Google in the 2005–2006 time frame.  But no facts exist to substantiate that claim.  Kewazinga

admitted that it did not provide Google any information under a confidentiality or non-disclosure

agreement.  (Undisputed Facts ¶ 5.)  In addition, there is no evidence that any information provided

by Kewazinga to Google in the 2005–2006 time frame made it to the Google Street View development team or that anyone on that team had copied ideas from Kewazinga. (*Id*. ¶ 3.) Indeed, the opposite is true. Street View originated from a joint effort between Stanford University and Google that began in 2002, three years before Kewazinga first attempted to contact Google. (*Id.* ¶¶ 1–2.) Given the complete lack of corroborating evidence, Kewazinga's copying allegation boils down to little more than a happenstance—Kewazinga happened to approach Google with unrelated video technology around the time that Street View was under development.

Likewise, Kewazinga's allegation of willful infringement is without merit. Willful infringement requires proof of conduct that is "wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Google's conduct has been the opposite of that. When Kewazinga sued Google in 2013, no dispute exists that Google immediately investigated Kewazinga's allegations, formed a good-faith belief of non-infringement, conveyed those beliefs to Kewazinga, and consulted with counsel for its defense in the litigation. (Undisputed Facts ¶¶ 10–12, 14–17, 19, 22–24.) Kewazinga abandoned its claim shortly after Google explained why it did not infringe. (*Id.* ¶¶ 29–33, 35.) Moreover, Kewazinga's allegation that Google was willfully infringing is directly contrary to its allegation that Google did not rely upon Kewazinga's prolonged silence, because Google in fact relied on its belief of non-infringement. Google indisputably formed a good-faith belief of non-infringement, which does ***not*** preclude a finding of equitable estoppel, but ***does*** foreclose Kewazinga's willful infringement theory. *See Wafer Shave*, 857 F. Supp. at 123 (explaining that forming a belief of non-infringement cannot necessarily foreclose a finding of equitable estoppel, because such a holding would discourage parties from seeking legal advice to defend themselves from infringement allegations); *Omega Patents, LLC v.*

*CalAmp Corp.*, 920 F.3d 1337, 1353 (Fed. Cir. 2019) (explaining that a good-faith belief of non-infringement precludes a finding of willful infringement).   Kewazinga's willful infringement allegations are both implausible and legally meritless.

**2.      Kewazinga's Allegation That Google Attempted To Create A Conflict With Respect To Stroock Makes No Sense.**

As discussed above, in 2018, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.   Incredibly, based on pre-motion communications between the parties, Kewazinga will apparently argue that the 2018 exchange demonstrates unclean hands on the part of ***Google***.   Specifically, Kewazinga contends that Google sought to create a conflict to disqualify Kewazinga's law firm.

That assertion makes no sense.   Google did not solicit Stroock's representation.   █████████

████████████████████████████████████████████████████████████

████████████████████████   (Undisputed Facts ¶ 93.)   Consistent with his standard practice whenever a new law firm seeks to represent Google, Mr. Sherwood suggested that Stroock investigate conflicts that would prevent the firm from representing Google.   (*Id.* ¶ 95.)   That practice, which Mr. Sherwood applies in all cases and to all new firms (not just Stroock), protects Google and avoids potential misunderstandings.   (*Id.*)   ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████   (*Id.* ¶ 94.)   Rather than attempting to create a conflict, Mr. Sherwood was hopeful that Google and Stroock could avoid any conflicts and reach an agreement for the purposes of representation in the 2018 Copyright Litigation.   (*Id.* ¶ 96.)

23

Nothing about that series of events demonstrates *any* wrongdoing on the part of Google. To the contrary, as discussed above, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ at the same time. That does not render *Google's* hands unclean, and it does not preclude the application of equitable estoppel in this case; rather, it supports it.

## V.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant summary judgment of equitable estoppel as to all three patents-in-suit in this case, and render final judgment in favor of Google.

Dated: July 15, 2020                                   Respectfully submitted,

By:    */s/ John M. Desmarais*
            John M. Desmarais

            DESMARAIS LLP
            John M. Desmarais
            jdesmarais@desmaraisllp.com
            Ameet A. Modi
            amodi@desmaraisllp.com
            Steven M. Balcof
            sbalcof@desmaraisllp.com
            Elizabeth Weyl
            eweyl@desmaraisllp.com
            David A. Frey
            dfrey@desmaraisllp.com
            230 Park Avenue
            New York, NY 10169
            Tel: 212-351-3400
            Fax: 212-351-3401

            Emily Chen (*pro hac vice*)
            echen@desmaraisllp.com
            101 California Street
            San Francisco, California 94111
            Tel: (415) 573-1900

Fax: (415) 573-1901

*Counsel for Defendant Google LLC*