**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEWAZINGA CORP., | |
| Plaintiff, | Civil Action No. 1:20-cv-1106-LGS |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

**DECLARATION OF JAMES F. SHERWOOD IN SUPPORT OF GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL**

i

I, James F. Sherwood, declare as follows:

1.      I am a Senior Counsel at Google within the Litigation Group. The matters set forth herein are within my personal knowledge, and if sworn as a witness, I could competently testify regarding them.

2.      I have been employed at Google since May 31, 2011. Before joining Google, I practiced patent litigation at Finnegan, Henderson, Farabow, Garrett & Dunner and clerked at the Court of Appeals for the Federal Circuit. Since 2012, I have been responsible for Google's management of almost every patent litigation filed against the company that involves the Street View feature, of which there have been at least half a dozen.

3.      I first heard about Kewazinga in May 2013. On May 24, 2013, I received a copy of a complaint that Kewazinga had filed alleging that Google infringed U.S. Patent Nos. 6,535,226 ("the '226 Patent") and 6,522,325 ("the '325 Patent"). Because the lawsuit (the "2013 Action") implicated Street View, the case was assigned internally to me.

4.      After I received the complaint, consistent with my practice in other cases, my team and I immediately began investigating Kewazinga's allegations and Google's potential defenses. For example, based upon Kewazinga's complaint in the 2013 Action, I had my team search Google's records for communications between individuals at Google and individuals affiliated with Kewazinga (David Worley, Andrew Weber, and Scott Sorokin) between 2005 and 2006. The results of that search indicated that Kewazinga representatives had reached out to Google to pitch a business partnership. The results also indicated that only David Lee and Robert Macdonald—former Google employees who had left by 2013—had communicated with Kewazinga. The records showed that communications had largely been one-sided, with David Worley sending roughly 54 emails to Google employees, where Google employees replied to David Worley's

emails roughly 9 times. In connection with this case, I spoke with Jill Szuchmacher and Vincent Cerf, whom Kewazinga alleged it contacted in the 2005–2006 time frame. Neither Ms. Szuchmacher nor Mr. Cerf had any recollection of Kewazinga.

5. Attached as **Exhibit 4** is the communication I reviewed that showed, by August 21, 2006, the Google employees who did receive Kewazinga's information had decided to pass on a partnership with Kewazinga. It is my understanding that no one from Kewazinga contacted anyone at Google after 2008 until 2013.

6. Shortly after I received the complaint in 2013, at my direction, my colleague Nevin Kapur (also a member of the Litigation Group) began analyzing the asserted patents for both invalidity and noninfringement. On May 30, 2013, Mr. Kapur sent me his preliminary analysis, which is attached as **Exhibit 5**. Based on that analysis, I formed the belief that Google did not infringe the asserted patents and that the asserted patents were likely invalid.

7. Consistent with my practice in other cases, I also initiated procedures within the legal department so that Google could defend itself in the lawsuit against Kewazinga. For example, on May 29, 2013, Google instituted legal holds—instructions to preserve emails, documents, and other records—on individuals believed to have information relevant to Kewazinga's assertions. Recipients included Stephen Chau, Gaurav Garg, Kei Kawai, Marc Levoy, Brian McClendon, Augusto Roman, Sebastian Thrun, and Luc Vincent (all of whom were instrumental to the early development of Street View); and others who worked on Street View.

8. In that same time frame, consistent with my practice in other cases, I also requested initial analyses concerning Kewazinga's allegations and Google's potential defenses from outside law firms that Google frequently works with for both *inter partes* review ("IPR") and District Court representation. Attached as **Exhibit 6** is an excerpted version of the initial analysis prepared

by the law firm Akin Gump regarding Kewazinga's assertions. Attached as **Exhibit 7** is an excerpted version of the initial analysis prepared by the law firm Perkins Coie regarding Kewazinga's assertions. Google also retained Richards, Layton, & Finger PA as local counsel in Delaware for the Kewazinga lawsuit.

9.  Both Akin Gump and Perkins Coie began contemplating non-infringing alternatives for Street View—as is my standard practice when evaluating potential defenses to a patent assertion. Ex. 6 at -3601; Ex. 7 at -3588. Both Akin Gump and Perkins Coie were intimately familiar with the functionality of Street View based on those firms' representation of Google in other patent cases involving Street View. Each firm included details on potential defenses that Google could pursue in response to Kewazinga's assertions, the attorneys that would work on the case on behalf of Google, and proposed budgets for representation. *See generally* Ex. 6; Ex. 7.

10. Attached as **Exhibit 8** is an excerpted version of the initial analysis I received from Sterne Kessler for IPRs of the '226 and '325 Patents. ███████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████

11. It is my standard practice at Google to consider IPRs in response to an assertion of patent infringement, and I followed that practice in this case. Based on the initial analysis that I received from Sterne Kessler, I intended to prepare and file IPR petitions concerning the '226 and '325 Patents if Kewazinga served its 2013 complaint.

12. In 2013, Kewazinga's representatives sought to meet to discuss the case with me. They provided me with claim charts to support their infringement position. On August 19, 2013, Nevin Kapur and I met with Ian DiBernardo from Stroock, and David Worley and Leonard Smalheiser from Kewazinga, at Perkins Coie in Palo Alto, California. I no longer recall the nature of any damages or settlement demand discussed at the August 19, 2013 meeting, but I understand that Kewazinga's witnesses testified at deposition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I explained why Google believed that it did not infringe Kewazinga's patents, particularly with respect to the "array of cameras" limitation of the '226 and '325 Patents. I was left with the impression that Kewazinga understood Google's position and the weaknesses in Kewazinga's assertions.

13. Attached as **Exhibit 9** is an email I received on September 11, 2013, from Ian DiBernardo. In the email, Kewazinga articulated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 9 at -3273. I understood Kewazinga's email to be a threat of assertion of its pending patent application, should it mature into a patent.

14. Following the email on September 11, 2013, I had at least one phone call conversation with Ian DiBernardo in which I reiterated Google's non-infringement arguments. I did not receive any further response or communication from Kewazinga, and it did not serve its complaint, which led me to believe that it understood its case was weak. On September 25, 2013,

Google moved to dismiss the complaint in the 2013 Action because Kewazinga had not served the complaint within the requisite 120 days of filing its complaint.

15. Attached as **Exhibit 10** is Kewazinga's non-opposition to that motion. In the non-opposition, Kewazinga stated that it "had no intention of serving Google." Ex. 10 at -3588. I understood Kewazinga's statements as its acknowledgement of the weakness of its case; and that, true to its word, it "had no intention" of continuing its assertion against Google. Although the non-opposition called for dismissal "without prejudice" (*id.*), Kewazinga nowhere suggested that it had any intention of refiling the litigation. Shortly after Kewazinga filed its non-opposition, the District of Delaware court dismissed the action and closed the case.

16. In light of Kewazinga's non-opposition to Google's motion to dismiss—and particularly in view of its statement that it "had no intention of serving Google"—and the subsequent dismissal of the case, I closed down the legal processes that I had initiated in defense of Kewazinga's allegations.

17. For example, it is my standard practice at Google to consider and investigate the implementation of potential design-arounds to an assertion of patent infringement where appropriate. That is particularly true in cases where the plaintiff seeks injunctive relief or an ongoing royalty—as was the case with Kewazinga's complaint in the 2013 Action. In several other litigations pending around the same time involving Street View, I worked with outside counsel to investigate potential design-arounds to Google Maps and Street View.

18. Regarding potential defenses, I requested initial analyses from the Akin Gump and Perkins Coie law firms. Each law firm advised that there were potential alternative designs to Street View that Google could implement in order to avoid the alleged infringement theory or mitigate alleged damages. For example, in Exhibit 7, Perkins Coie discussed how its team would

identify potential non-infringing alternatives in order to limit damages in the case and potential invalidity arguments.  Ex. 7 at -3588.  Further, in Exhibit 6, Akin Gump ███████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████. Ex. 6 at -3601.

19. Had Kewazinga pressed forward with its allegations of infringement in and after 2013, I would have further investigated potential design-arounds for Street View, including by further investigating the potential non-infringing alternatives proposals by the Akin Gump and Perkins Coie law firms.  For example, had Kewazinga pressed forward with its claims, I could and would have consulted with Google's engineers and executives about modifying Street View by implementing a single fish-eye lens (thereby avoiding the "array of cameras" limitations of Kewazinga's patents); deactivating the transition animation effects when a user moves from one panorama to another panorama (thereby avoiding the "tweening" limitations of Kewazinga's patents); storing and processing Street View imagery outside the United States (thereby avoiding alleged infringement of method steps covering storage and processing); pre-fetching nearby Street View imagery when a user selects a particular Street View location (avoiding the "sequentially providing" limitations of Kewazinga's patents); changing the interval at which Street View images are captured (avoiding any requirement of the claims that images be captured at fixed intervals); or whether Street View could continue to be provided in another way.  To consider these issues, I would work with the Street View Product Manager.  Currently that manager is Stafford Marquardt.  As outlined in his declaration, the above described alternatives were entirely feasible if there was reason to pursue them.  (Marquardt Decl. ¶¶ 19–27.)  I did not continue to explore potential non-infringing alternatives, however, because I believed (based on Kewazinga's statements and actions) that Kewazinga had no intention of continuing its assertion against Google.

20. I did not move forward with plans to file IPR petitions pursuant to the Sterne Kessler recommendations, because I believed (based on Kewazinga's statements and actions) that it had no intention of continuing its assertion against Google. Additionally, I did not retain either the Akin Gump or Perkins Coie law firms, or further investigate the strategies and defenses outlined by each of those law firms. As a further example, in light of Kewazinga's statement in its non-opposition, I believed there was no active case-or-controversy that would give Google standing to bring a declaratory judgment action against Kewazinga. (*See, e.g., Google Inc. v. Rockstar Consortium U.S. LP*, No. 4:13-cv-5933-CW (N.D. Cal. filed Dec. 23, 2013).

21. Attached as **Exhibit 11** is an excerpted letter Google sent to its financial auditors at Ernst & Young on December 11, 2013. I relied upon Kewazinga's statements and updated this letter to inform Ernst & Young that the Kewazinga matter was closed. Ex. 11 at -4085.

22. Attached as **Exhibit 12** is a "Geo Patents Sync" presentation I prepared for an internal meeting on April 1, 2014, with executives of Google's Geo division, which includes Street View. I provided an update to the internal team regarding ongoing and closed patent disputes involving Geo matters. Ex. 12 at -2663. I informed the executives that in 2013 Kewazinga was a new matter that was resolved as a "walk away." *Id.* at -2672. I relied on Kewazinga's actions and statements, including its non-opposition, in providing that update to the Geo executives.

23. Google informs its internal teams and its auditors of ongoing litigation matters. I would not have told Google's internal teams or auditors that I considered the Kewazinga matter to be fully resolved if I believed that there was a risk of Kewazinga asserting its patents at some point in the future.

24. Attached as **Exhibit 13** is an email dated November 14, 2013 releasing Brian McClendon from the preservation hold put in place for the Kewazinga matter. All of the recipients

7

of the preservation hold were similarly released around the same time. █████████

████████████████████████████████████████████████████████████████████████

███████████████████████ I relied upon Kewazinga's statements when releasing the litigation holds (and risking the loss of evidence potentially relevant to a future lawsuit). I would not have released individuals from the holds if I believed that there was a risk of Kewazinga asserting its patents at some point in the future. While I do not know the full extent of the lost relevant documents, I do know that documents were lost because in this case Kewazinga produced communications with Google that we could not find in Google's records.

25. Between the dismissal of the 2013 Action and the filing of this lawsuit, Ian DiBernardo did not contact anyone at Google about any Kewazinga patent or application. Likewise, between the dismissal of the 2013 Action and the filing of this lawsuit, no one from Kewazinga directly contacted anyone at Google about any Kewazinga patent or application.

26. I became aware that Kewazinga had sued Microsoft on May 21, 2018, on the three patents now at suit against Google, shortly after Kewazinga filed that complaint against Microsoft. Because Kewazinga had previously sued Google and Microsoft at the same time in 2013, I understood the fact that Kewazinga sued only Microsoft as further confirmation that Kewazinga had no intention of suing Google. Indeed, by this time, it had been almost five years since there was any contact between anyone at Google and anyone at Kewazinga.

27. In 2018, Google was one of several defendants in a copyright litigation (the "2018 Copyright Litigation"). One co-defendant, ██████████, lined up the Stroock law firm to be joint defense counsel for all defendants. ████████████████████████████████████████

████████████████████████████████████    ████████████████████████████████

████████████████████████████████████████████████████████████████████████

8

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

28.　　It is part of my usual practice to ask a law firm seeking to represent Google to investigate conflicts that would prevent them from representing Google. This practice protects Google and avoids potential misunderstandings. ███████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

29.　　I believed that Google's retention of Stroock in the 2018 Copyright Litigation would be mutually beneficial, as Stroock was already representing several other co-defendants, and Google's defense would be coordinated with those other defendants. I understand that, today, Stroock alleges that Google was attempting to create a legal conflict, but the opposite is true—Stroock was proposed as counsel by Stroock's client ██████████, and I wanted to avoid any conflicts and was hopeful that Google and Stroock could reach an agreement for representation.

30.　　██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████ That confirmed my belief that Kewazinga had no "present" intent (*i.e.*, in 2018) to file suit against Google. ███████████████████████████████████

9

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████

31. Attached as **Exhibit 15** is the retention agreement between Google and Stroock in the 2018 Copyright Litigation, dated September 13, 2018. ████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 15 at -2366.  I understood that to confirm that Kewazinga had no intention of suing Google at any point in the future.  Had Stroock or Kewazinga communicated that it did intend to sue Google at any point in the future, Google would not have retained Stroock in the 2018 Copyright Litigation.  In addition, I would have considered filing IPRs against Kewazinga's patents, initiating a declaratory judgment action, and taken other measures to protect Google and preserve Google's defenses.  I did not take those actions because I continued to believe, based on Stroock's representations and Kewazinga's continued silence, that Kewazinga had no intention of suing Google at any point in the future.

32. Many key individuals who likely have knowledge relevant to Kewazinga's allegations have left Google since the dismissal of the 2013 Action, including Stephen Chau, Gaurav Garg, Kei Kawai, Marc Levoy, Brian McClendon, Augusto Roman, Gaurav Garg, Sebastian Thrun, Marc Levoy, and Luc Vincent—all of whom were instrumental to the early development of Street View.  Several now work for direct competitors of Google.

33. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I executed this declaration on July 15, 2020, in Falls Church, Virginia.

10

By: _/s/ James F. Sherwood_

James F. Sherwood

11