HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Ian G. DiBernardo
Timothy K. Gilman
Kenneth L. Stein
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email:  idibernardo@stroock.com
Email:  tgilman@stroock.com
Email:  kstein@stroock.com
Email:  sdesai@stroock.com
Email:  gspringsted@stroock.com

*Attorneys for Plaintiff Kewazinga Corp.*

**IN THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| KEWAZINGA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:20-cv-01106-LGS |
| | ) | |
| vs. | ) | **FILED UNDER SEAL** |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF KEWAZINGA CORP.'S LOCAL CIVIL RULE 56.1 STATEMENT OF
MATERIAL FACTS IN SUPPORT OF KEWAZINGA'S CROSS-MOTION FOR
SUMMARY JUDGMENT OF NO EQUITABLE ESTOPPEL**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Pursuant to Local Civil Rule 56.1 and the June 25, 2020 Order of this Court (D.I. 49), Plaintiff Kewazinga Corp. ("Kewazinga") hereby identifies the following material facts as to which Kewazinga contends there is no genuine issue to be tried with respect to its cross-motion for summary judgment of no equitable estoppel.

1.      David Worley, Scott Sorokin, and Andrew Weber came together in 1997 to form Kewazinga and collaborate on ideas related to navigable telepresence technology. Desai Decl., Ex. 1 (Worley Tr.) at 47:19-49:12, 99:20-100:6.

2.      By the early 2000's, Kewazinga was commercializing this technology throughout the United States by producing content for partners including NBC Sports, ABC Sports, ESPN, the Golf Channel, and Major League Baseball. Desai Decl., Ex. 2 (KEWAZINGA-G-0003007) at 3008.

3.      Kewazinga filed U.S. Provisional Patent Application No. 60/080,413. '226 patent at pg. 1, "Related U.S. Application Data." Desai Decl., Ex. 3.

4.      Kewazinga filed U.S. Patent Application No. 09/283,413 (which claims priority to U.S. Provisional Patent Application No. 60/080,413) on April 1, 1999. '226 patent at pg. 1, "Filed," "Related U.S. Application Data."  This application issued to Kewazinga Corp. as the '226 patent on March 18, 2003. *Id*. at "Assignee," "Date of Patent." Desai Decl., Ex. 3.

5.      Kewazinga filed U.S. Patent Application No. 09/419,274 (which claims priority to U.S. Provisional Patent Application No. 60/080,413) on October 15, 1999. '325 patent at pg. 1, "Filed," "Related U.S. Application Data."  This application issued to Kewazinga Corp. as the '325 patent on February 18, 2003. *Id*. at "Assignee," "Date of Patent." Desai Decl., Ex. 4.

6.      In 2005, Kewazinga reached out to Google to seek a partnership because Kewazinga believed that its intellectual property, technology, and forward-looking business concepts could be valuable and beneficial to Google. Desai Decl., Ex. 1 (Worley Tr.) at 70:9-22; Desai Decl., Ex. 5

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(Smalheiser Tr.) at 70:16-71:10. This included an email from Kewazinga to Google founders Larry Page and Sergey Brin sent on October 5, 2005. Desai Decl., Ex. 6 (GOOG-KZGA-00002374).

7.     Kewazinga's October 5, 2005 email explained that Kewazinga's technology could "enable a dynamic on-the-ground extension for GoogleMap explorations." Desai Decl., Ex. 6 (GOOG-KZGA-00002374) at 2375. In addition, Kewazinga's October 5, 2005 email explained that Kewazinga had "broad-ranging patents" on its technology and that "camera to camera navigation" to allow for "spatial exploration" was "broadly protected by [Kewazinga's] patents." *Id.* at 2375-76.

8.     Kewazinga's October 5, 2005 email to Mr. Page and Mr. Brin was forwarded the same day it was sent to Google employees Jenifer Austin and Christopher Sacca, among others. Desai Decl., Ex. 6 (GOOG-KZGA-00002374) at 2374.

9.     As of October 5, 2005, Ms. Austin was working in Google's "Office of the Google Founders." As of October 5, 2005, Christopher Sacca was Google's Head of Special Initiatives. Desai Decl., Ex. 7 (Jenifer Austin Linkedin Profile); Desai Decl., Ex. 8 (Christopher Sacca Linkedin Profile).

10.     In April 2006, Ms. Austin became a "Product Manager" for Google Maps and Google Earth. As part of Ms. Austin's work on Google Maps and Google Earth, she "launched the first time ever waterfront Street View collection of the San Francisco shoreline." Desai Decl., Ex. 7 (Jenifer Austin Linkedin Profile).

11.     Before leaving Google in December 2007, Christopher Sacca was involved in managing Google Maps and Google Earth. Desai Decl., Ex. 9 (Translation of Chris Sacca, the Google Visionary Who Left Everything Behind).

12.     On November 10, 2005, David Lee, Principal of New Business Development at Google, responded to Kewazinga, stating: "i [*sic*] work at google and received your email you sent

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to sergey and larry on oct. 5. how [*sic*] do you envision working with google?  please [*sic*]  let me know via email. thanks [*sic*] much for your inquiry. your [*sic*] technology looks very cool!"  Desai Decl., Ex. 10 (KEWAZINGA-G-0003187) at 3187.

13.    In January 2006, Kewazinga sent an email to Google with the subject "Kewazinga Strategic Plan," attaching three documents with information about Kewazinga's intellectual property, technology, and forward-looking business concepts. Desai Decl., Ex. 11, (KEWAZINGA-G-0002996 (attaching Desai Decl., Ex. 64 (KEWAZINGA-G-0002997), Desai Decl., Ex. 2 (KEWAZINGA-G-0003007), and Desai Decl., Ex. 12 (KEWAZINGA-G-0003017)). This included a PowerPoint presentation entitled "Strategic Plan," each slide of which was marked "Confidential." Desai Decl., Ex. 64 (KEWAZINGA-G-0002997).

14.    In its January 2006 disclosures to Google, Kewazinga identified that it had patents on navigable telepresence technology with a priority date of April 2, 1998, which were the '226 patent and the '325 patent. Desai Decl., Ex. 2 (KEWAZINGA-G-0003007) at 3015; Desai Decl., Ex. 11 (KEWAZINGA-G-0002997) at 3002. In those disclosures, Kewazinga identified the '226 and '325 patents by their titles, assignee, issue dates, and subject matter. Desai Decl., Ex. 2 (KEWAZINGA-G-0003007) at 3015; Desai Decl., Ex. 5 Desai Decl., Ex. 5 (Smalheiser Tr.) at 227:21-229:16.

15.    In communications between Kewazinga and Google in 2005 and 2006, Kewazinga disclosed its confidential and proprietary technology and business ideas to Google. Desai Decl., Ex. 5 (Smalheiser Tr.) at 227:21-229:16. In several of those communications, Google expressed interest in Kewazinga's technology and encouraged Kewazinga to disclose more of its confidential and proprietary information to Google. Desai Decl., Ex. 1 (Worley Tr.) at 88:22-90:20; Desai Decl., Ex. 5 (Smalheiser Tr.) at 227:21-229:16.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

16.     For example, Google employees reached out to Kewazinga, asking Kewazinga to further describe its technology and potential partnership with Google. Desai Decl., Ex. 13 at KEWAZINGA-G-0002924 (David Lee from Google emailing Kewazinga, stating "I work with Jennifer on video-related matters and she forwarded the email you sent to her. Can we set up a time where you can walk thru the demo and explain how we might work together?").

17.     Google employees forwarded Kewazinga's materials to more senior individuals at Google. *See* Desai Decl., Ex. 14, (KEWAZINGA-G-0003032) at 3032 ("Thank you so much for helping to get our information in front of Mr. Vinton Cerf."); Desai Decl., Ex. 15 (KEWAZINGA-G-0003090) at 3090. Google hired Vinton Cerf in or around September 2005 and has publicly described him as "one of the great technology leaders of our time." Desai Decl., Ex. 16 (Cerf's Up at Google).

18.     Google employees forwarded Kewazinga's materials to Google's corporate development team. Desai Decl., Ex. 17 (KEWAZINGA-G-0003099) at 3099 (Robert Macdonald from Google emailing Kewazinga, stating "I have forwarded this information to our corp dev team. They are reviewing right now and discussing internally best next steps. Let's touch base later this week to discuss."); Desai Decl., Ex. 18 (KEWAZINGA-G-0003093) at 3093 (Robert Macdonald from Google emailing Kewazinga, stating "I am traveling most of the week and I have passed on all of your information to our corp dev team.").

19.     In June 2006, Kewazinga provided Google with an "Updated Strategic Plan" to further describe the "strategic fit that we envision with regard to Google and Navigable Telepresence." Desai Decl., Exs. 19, 20 (KEWAZINGA-G-0003018 (attaching KEWAZINGA-G-0003019)).

20.     Kewazinga's June 2006 Strategic Plan disclosed:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Google Earth and Google Maps**

Navigable Video will vastly extend the reach of Google Earth and Google Maps by providing an on-the-ground telepresence extension that allows viewers to dynamically explore world environments as though they were physically at that location. Miniaturized systems mounted on vehicles and boats will ply the streets and waterways of cities and locales, giving armchair travelers the ability to experience the sights and sounds of live or prerecorded environments as though they were there. Kewazinga's telepresence technology will allow users to actually move through and around environments, not just zoom in from a fixed position. This revolutionary capability will launch a world of revenue generating possibilities; including Search, Advertising, eCommerce and Social Collaboration.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3022.

21.     Kewazinga's June 2006 Strategic Plan disclosed:

**Strategic Fit –** We believe that our proprietary telepresence technology can help Google to deliver a truly immersive and navigable video experience that will fundamentally redefine how people experience video content and explore the world. We can provide Google with a revolutionary on-the-ground extension for Google Earth and Google Maps that allows viewers to dynamically explore world environments as through they were physically there – presenting a formidable challenge to competitors while offering tremendous revenue potential.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3019.

22.     Kewazinga's June 2006 Strategic Plan disclosed:

**Museums, Zoos & Aquariums** and other great institutions of culture and education will use Kewazinga's technology to allow viewers to explore their assets 24/7 from anywhere in the world, vastly expanding access and creating intimate relationships that encourage and promote learning and appreciation.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3026.

23.     Kewazinga's June 2006 Strategic Plan disclosed:

**Scope of the patented methods and systems**

As discussed below, the Kewazinga patents cover both methods of and systems for the capture, processing and playback of navigable multi-camera video that was captured using a series of video cameras that provide progressively different perspectives of their subject matter.

In reviewing the patents and their scope it is important to keep in mind that the legacy system (2001 – 2003) and legacy Players (2001 – present) define neither (i) the scope or performance of the technology, nor (ii) the scope of the patents. Because the patents are method and system patents they cover future embodiments that offer

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the same basic functionality of navigable multi-camera video as the legacy system and Players, but with improved features and performance.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3030.

24.     Kewazinga's June 2006 Strategic Plan disclosed:

**Kewazinga Patents – position enables additional claims with priority date of April 2, 1998**
Kewazinga is the exclusive owner of two watershed patents relating to multiple camera arrays issued by the U.S. Patent and Trademark Office (PTO). Both of these patents relate to the use of multiple video camera array systems that allow navigation through and about progressively different perspectives of an event, scene or other "environment". With the issuance of the patents Kewazinga has legally established itself as the exclusive provider of these types of camera array viewing systems in all functional markets and applications. …

The patents cover systems and methods of capturing, processing and playback of video using multiple cameras in a way that allows one or more viewers or operators independently to navigate through and about the scene by changing perspective from camera to camera. Kewazinga's patents cover systems that allow navigation using the cameras' original video only, as well as system enhancements that allow for virtual views to be computed and derived from multiple cameras in order to enhance transitions from camera-to-camera.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3030.

25.     Kewazinga's June 2006 Strategic Plan disclosed regarding the '226 patent:

Kewazinga's foundational patent is entitled A NAVIGABLE TELEPRESENCE METHOD AND SYSTEM UTILIZING AN ARRAY OF CAMERAS. All 119 claims in the Foundational Patent application were approved by the PTO, and the Foundational Patent issued in March 2003. The Foundational Patent allows one or more viewers or operators to navigate through and about the scene by changing perspective from camera to camera – whether the video is being viewed on a live or a recorded basis. The patent covers systems and methods of navigation using the cameras' original video – whether or not enhancements to smooth the transition from camera to camera are used.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3030.

26.     Kewazinga's June 2006 Strategic Plan disclosed regarding the '325 patent:

Kewazinga's Tweening Patent issued in February 2003. It is directed to camera array systems where tweening, mosaicing or other smoothing technique is used to provide a smooth transition from one "real" camera to the next. By way of example, the Tweening Patent covers systems and methods for seamless navigation through an

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

array of cameras by providing "virtual" camera positions in-between each pair of adjacent real cameras. The benefits of tweening include a seamless glide-transition from camera to camera, as well as a reduction in the number of cameras needed for certain applications.

Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3030.

27.     Kewazinga identified the '226 and '325 patents to Google in 2006, including by providing information about the patents that could be used to find them. Desai Decl., Ex. 2 (KEWAZINGA-G-0003007) at 3015; Desai Decl., Ex 20 (KEWAZINGA-G-0003019) at 3030; Desai Decl., Ex. 5 (Smalheiser Tr.) at 227:21-229:16; Desai Decl., Ex. 21 (Sherwood Tr.). at 55:13-56:3, 75:3-9.

28.     Google identified a "patent threat" from Kewazinga in September 2006. Desai Decl., Ex. 22 (GOOG-KZGA-00004875); Desai Decl., Ex. 21 (Sherwood Tr.). at 114:14-117:14. Despite identifying a "patent threat" from Kewazinga in 2006, Google contends that it did not investigate or review Kewazinga's patents between 2006 and 2013. Desai Decl., Ex. 21 (Sherwood Tr.). at 58:4-10, 72:3-73:25, 114:14-117:14.

29.     In addition, despite identifying a "patent threat" from Kewazinga in 2006, Google did not consider any changes to Street View, which was in development at the time. Desai Decl., Ex. 21 (Sherwood Tr.). at 114:14-117:14.

30.     Google contends that it was not aware of the '226 and '325 patents prior to the  first communication between Kewazinga and Google in 2013. Desai Decl., Ex. 23, Google's June 15, 2020 Response to Kewazinga's RFA No. 2.

31.     Google contends that it has never believed that it infringed Kewazinga's '226 or '325 patents or that the '226 and '325 patents are valid. Desai Decl., Ex. 23 (Google's June 15, 2020 Responses to Kewazinga's RFA Nos. 10-11); Desai Decl., Ex. 21 (Sherwood Tr.). at 40:12-25, 42:7-21, 44:10-14.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

32.     Google launched Street View on or around May 25, 2007. D.I. 60, Filip Decl. ¶ 10.

33.     Street View was being developed during the communications between Google and Kewazinga in 2005 and 2006. *See* D.I. 60, Filip Decl. at ¶¶ 6, 8. Google did not tell Kewazinga about its work on the "Cityblock" project, Street View, or Google's development of Street View when the parties communicated in 2005 and 2006 or thereafter. Desai Decl., Ex. 1 (Worley Tr.) at 118:11-19.

34.     On June 10, 2005, a contemporaneous article titled "Google backs street-imaging project" noted that "the Stanford [CityBlock] project is still at the very early stages of development" and that "Google might not even know what it wants to do with the technology yet."  Desai Decl. Ex. 62 (Google Backs Street Imaging) at 1.

35.     No evidence produced by Google demonstrates that Google—by virtue of its work on the "Cityblock" project or otherwise— had the idea for smoothing transitions from one location to another, the inclusion of Street View in Google Earth, the capture of imagery using cameras mounted on boats, and the inclusion of navigation of interiors (e.g., museums) in Street View prior to communications with Kewazinga. *See, e.g.*, Desai Decl., Ex. 19 (KEWAZINGA-G-0003018); Desai Decl., Ex. 20 (KEWAZINGA-G-0003019) at 3019, 3022, 3026, 3030.

36.     The earliest provisional patent applications related to this Google-Stanford project were not filed until August 3, 2006 and the only application related exclusively to the Google-Stanford project was not filed until March 30, 2007. Desai Decl., Ex. 25 (GOOG-KZGA-00002093) at 2111-13 (listing the patents that were generated as part of the Cityblock project, which were licensed to Google); *see also* Desai Decl., Ex. 26, Google's Third Amended and Supplemental Response to Kewazinga's Interrogatory No. 1 at 11 ("Google acquired nonexclusive and exclusive license for the patents Stanford held as a result of the CityBlock development efforts in 2007.") (citing Desai Decl., Ex. 25 (GOOG-KZGA-00002093)).

37.    The '226 and '325 patents were filed in 1999, prior to the origin of the Stanford "Cityblock" project. D.I. 60, Filip Decl. ¶ 4; '226 patent at pg. 1, "Filed"; '325 patent at pg. 1, "Filed."

38.    The transition of the "Cityblock" project internally to Google began in 2005, after the '226 and '325 patents issued in 2003. D.I. 60, Filip Decl. ¶ 5; '226 patent at pg. 1, "Date of Patent"; '325 patent at pg. 1, "Date of Patent."

39.    Street View is a feature included in Google Maps. Desai Decl., Ex. 27 (GOOG-KZGA-00001576) at 1576 (referring to "Google Maps Street View").

40.    Street View is a feature included in Google Earth. Desai Decl., Ex. 28 (GOOG-KZGA-00001633) at 1633-34; Desai Decl., Ex. 24 (Marquardt Tr.) at 111:11-113:22. Street View was incorporated into Google Earth in or around April 2008. Desai Decl., Ex. 28 (GOOG-KZGA-00001633) at 1633.

41.    Street View allows users to "virtually explore city neighborhoods by viewing and navigating within 360-degree scenes of street-level imagery. It feels as if you're walking down the street!"  Desai Decl., Ex. 27 (GOOG-KZGA-00001576 at 1576; Desai Decl., Ex. 21 (Sherwood Tr.). at 81:12-82:10; Desai Decl., Ex. 24 (Marquardt Tr.) at 83:23-84:8.

42.    Google captures imagery for use in Street View by, among other things, using cameras mounted on vehicles that capture images as the vehicles move. Desai Decl., Ex. 24 (Marquardt Tr.) at 79:9-15.

43.    Street View includes imagery captured by cameras mounted on boats. Desai Decl., Ex. 29 (KEWAZINGA-G-0005820) at 5820, 5824; 115:9-118:24.

44.    Street View includes imagery allowing users to navigate interiors including, for example, museums. Desai Decl., Ex. 30 (KEWAZINGA-G-0006102) at 6103-04; Desai Decl., Ex. 24 (Marquardt Tr.) at 121:19-126:4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

45.    Street View includes a transition animation effect when a user moves from one location to another in Street View, which makes those transitions smoother and "create[s] the effect of gliding smoothly to the next location."  Desai Decl., Ex. 31 (GOOG-KZGA-00006200) at 6200; Desai Decl., Ex. 24 (Marquardt Tr.) at 109:16-19.

46.    Google has cited Kewazinga patents (including the '226 patent) and applications during the prosecution of Google's owns patents including U.S. Patent Nos. 8,125,481; 9,294,757; 10,033,992; 8,823,707; and 9,473,745. Desai Decl., Ex. 32 (KEWAZINGA-G-0003768); Desai Decl., Ex. 33 (KEWAZINGA-G-0003745); Desai Decl., Ex. 34 (KEWAZINGA-G-0003718); Desai Decl., Ex. 35 (KEWAZINGA-G-0003694); Desai Decl., Ex. 36 (KEWAZINGA-G-0003732).

47.    On March 18, 2013, Kewazinga's counsel sent copies of the '226 and '325 patents to Google in connection with the potential licensing and/or sale of Kewazinga's patent portfolio. Desai Decl., Ex. 37 (KEWAZINGA-G-0003191) at 3191. Kewazinga's counsel explained the "portfolio covers street view applications and represents a potentially significant asset to Google and its Geo business." *Id*.

48.    Also, on March 18, 2013, the '226 and '325 patents were forwarded to Google's patent triage team. Desai Decl., Ex. 38 (GOOG-KZGA-00002960) at 2960; Desai Decl., Ex. 21 (Sherwood Tr.) at 144:14-22. Google's patent triage team would typically review or analyze patents to assess the infringement risk. Desai Decl., Ex. 21 (Sherwood Tr.) at 145:13-146:13. However, Google's patent triage team did not perform a defensive analysis of Kewazinga's patents, at least between March 18, 2013 and when Kewazinga filed a complaint alleging patent infringement against Google on May 24, 2013. Desai Decl., Ex. 21 (Sherwood Tr.) at 146:10-13.

49.    On May 24, 2013, Kewazinga filed a lawsuit against Google in the District of Delaware alleging infringement of the '226 and '325 patents ("2013 Action"). Desai Decl., Ex. 39 (KEWAZINGA-G-0003452).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

50.    On May 28, 2013, Kewazinga's counsel informed Google that Kewazinga had filed a filed a lawsuit against Google in the District of Delaware alleging infringement of the '226 and '325 patents. Desai Decl., Ex. 40 (KEWAZINGA-G-0003388) at 3388.

51.    On August 14, 2013, Kewazinga and Google entered into a confidentiality and Federal Rule of Evidence 408 agreement to discuss Kewazinga's patents and the 2013 Action, whereby Google agreed that the parties' discussions "will be kept confidential, covered by Rule 408 and not used in any litigation or proceeding . . . by Google." Desai Decl., Ex. 41 (KEWAZINGA-G-0003277) at 3277. After Kewazinga and Google entered into this agreement, Kewazinga provided Google with claim charts demonstrating how Street View infringes the '226 and '325 patents. *Id.*

52.    Representatives of Google and Kewazinga met in person on August 19, 2013 to discuss Kewazinga's patents and the 2013 Action. *See* Desai Decl., Ex. 42 (KEWAZINGA-G-0003374) at 3374. At the parties' in-person meeting, representatives of Google, including Mr. Sherwood, contended that Street View did not infringe because it did not have an "array of cameras." Desai Decl., Ex. 21 (Sherwood Tr.). at 169:11-170:6; Desai Decl., Ex. 1 (Worley Tr.) at 142:6-143:3. At the parties' in-person meeting, representatives of Kewazinga disagreed with Google's position and maintained that Google infringed the '226 and '325 patents. Desai Decl., Ex. 21 (Sherwood Tr.). at 166:3-167:12; Desai Decl., Ex. 1 (Worley Tr.) at 142:6-144:3.

53.    On September 11, 2013, after the parties' in-person meeting, Kewazinga's counsel sent an email to Google reiterating that Kewazinga continued to believe that Google infringed the '226 and '325 patents and that Kewazinga had a pending continuation patent application, stating:

> During our meeting you raised the issue of what in the Google system corresponded to the camera array. We continue to believe that the camera array limitation is met by the Google system and, in an effort to advance the dialog, have revised the claim charts to provide more detail as to what can be considered the array and the series of cameras. I am attaching a pdf envelope containing revised charts for Google Maps

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

and Earth with Street View, as well as revised charts for the Microsoft, Apple and Nokia products. The charts are provided pursuant to our confidentiality/408 agreement.

To the extent your position continues to be that the claims do not read on the Google system by virtue of the array limitation (which, of course, we disagree with, as explained in our revised charts), we note that such a limitation is unnecessary to the invention, and we will be pursuing claims without it in Kewazinga's pending continuation.

Please let us know if Google wishes to continue to discuss resolution of this matter through licensing the portfolio.

Sherwood Decl., Ex. 9 (KEWAZINGA-G-0003273) at 3273.

54.     Neither Kewazinga nor its counsel ever told Google (1) that Kewazinga no longer believed that Google infringed the '226 and '325 patents; (2) that Kewazinga agreed that Google did not infringe those patents; or (3) that Kewazinga believed its infringement assertion to be weak. Desai Decl., Ex. 23 (Google's June 15, 2020 Response to Kewazinga's RFA) at Nos. 6, 7; Desai Decl., Ex. 21 (Sherwood Tr.) at 176:15-177:17; Desai Decl., Ex. 1 (Worley Tr.) at 142:6-144:3l; KEWAZINGA-G-0003273 at 3273.

55.     Google filed a motion to dismiss the 2013 Action for failure to serve the complaint within the time period required by Federal Rule of Civil Procedure 4(m). Desai Decl., Ex. 43 (KEWAZINGA-G-0003524). Google's motion to dismiss the 2013 Action omitted the fact that the dismissal would be without prejudice, as required by Federal Rule of Civil Procedure 4(m). *See* Desai Decl., Ex. 43 (KEWAZINGA-G-0003524) at 3525-27.

56.     Google understood that Rule 4(m) dismissals would be without prejudice. Desai Decl., Ex. 21 (Sherwood Tr.). at 183:1-185:11.

57.     Kewazinga filed a non-opposition to Google's motion to dismiss, emphasizing that the dismissal was without prejudice, stating:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

> After filing this action and up until Google's filing of the Motion, Plaintiffs and Google were engaged in settlement discussions. Consequently, Kewazinga had no intention of serving Google.
>
> Notwithstanding the foregoing and in light of the Motion, Plaintiffs do not oppose the dismissal of this action <u>without</u> prejudice.

Sherwood Decl., Ex. 10 (KEWAZINGA-G-0003538) at 3538 (emphasis in original).

58.     Kewazinga's non-opposition did not indicate that Kewazinga was abandoning its right to pursue its infringement claims against Google in the future because Kewazinga expressly emphasized that the dismissal was "<u>without</u> prejudice." Sherwood Decl., Ex. 10 (KEWAZINGA-G-0003538) at 3538 (emphasis in original).

59.     After the dismissal of the 2013 Action, Kewazinga continued to prosecute patent applications in the same family as the '226 and '325 patents and Google was aware of this. Sherwood Decl. at ¶ 13; Sherwood Decl., Ex. 9 (KEWAZINGA-G-0003273) at 3273; Desai Decl., Ex. 61 at U.S. Patent No. 9,055,234 ("'234 patent") at pg. 1, "Related U.S. Application Data" (showing that '234 patent issued from a patent application that was a continuation of another patent application filed on July 23, 2013). This included the prosecution of U.S. Patent Application No. 14/505,208, which was filed on October 2, 2014 and claimed priority to the '226 and '325 patents, and which issued as the '234 patent on June 9, 2015. Desai Decl., Ex. 61 ('234 patent) at pg. 1, "Filed," "Appl. No.," "Related U.S. Application Data." The prosecution of these applications is matter of public record.

60.     Google contends that it had no knowledge of the '234 Patent until 2018. Desai Decl., Ex. 23 (Google's June 15, 2020 Response to Kewazinga's RFA) at No. 27.

61.     Google and Kewazinga never communicated about the '234 patent or the patent application that issued as the '234 patent prior to the current lawsuit.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

62.     In 2013, Google collected documents in connection with the 2013 Action, including those it needed to respond to Kewazinga's complaint.

Q. In 2005 and 2006 -- excuse me. In 2013, you collected documents from some of the people involved in the 2005, 2006 interactions with Kewazinga?

A. That -- that's right. We collected documents from the people who were identified in Kewazinga's complaint.

Desai Decl., Ex. 21 (Sherwood Tr.) at 243:23-244:3.

Q. So as part of the initial case investigation in 2013, Google collected some documents regarding Kewazinga?

A. Right. As -- as outlined by the -- the limited type of search terms that we had used here.

Q. And part of this collection was also to be able to answer and respond to the allegations in Kewazinga's complaint?

A. That's correct.

Desai Decl., Ex. 21 (Sherwood Tr.) at 201:1-9.

63.     Google has preserved the documents it collected in connection with the 2013 Action.

Q. These documents that were collected in 2013 regarding Kewazinga's claims have been preserved until today within Google?

A. That's -- that's my understanding, that the documents that were specifically collected as part of this effort were preserved.

Desai Decl., Ex. 21 (Sherwood Tr.) at 199:9-14.

Q. And those documents that Google collected in order to conduct its initial case investigation and to respond to Kewazinga's complaint had been preserved until today within Google?

A. Right. These -- these documents outlined in -- in this email, my understanding is that those were retained and I believe some of the -- the earlier 2013 correspondence, for instance, between Ian and Ms. Puckett, I believe those were retained as well.

Desai Decl., Ex. 21 (Sherwood Tr.) at 201:10-18.

14

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

64.     Mr. Sherwood was designated to testify as Google's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding "the status, preservation, and retention of documents related to Kewazinga, the Patents-in-Suit, and the Named Inventors, and the relevant loss of such documents over time."   Ex. 49, (Google's June 9, 2020 Response to Kewazinga's 30(b)(6) Topic) at No. 6; *see also* Desai Decl., Ex. 21 (Sherwood Tr.). at 18:7-13. At this deposition, Mr. Sherwood was unable to identify with any specificity what documents Google contends has been lost or how that resulted from Kewazinga's conduct.

> Q. Are you aware of any specific documents relevant to this litigation that have been lost from Google's records between 2013 and today?
>
> A. No, I'm -- I'm unable to point to documents that -- that we no longer have. But I am aware that some have been lost.
>
> Q. But you're unable to specify which ones have been lost?
>
> A. That's correct.

Desai Decl., Ex. 21 (Sherwood Tr.) at 209:17-210:1 (objections omitted). At most, Mr. Sherwood identified the purported loss of communications between Google's in-house counsel and Kewazinga's outside counsel in late 2013 but was unable to identify their relevance. Desai Decl., Ex. 21 (Sherwood Tr.) at 210:2-212:9.

65.     Google institutes a litigation hold for U.S. patent litigation. Desai Decl., Ex. 21 (Sherwood Tr.) at 206:19-207:4. Google's litigation holds suspend any automatic deletion protocols. Desai Decl., Ex. 21 (Sherwood Tr.) at 209:7-9. Over the last eight years, there have always been U.S. patent litigations pending against either Google or Google's partners with respect to Google's Geo products. Desai Decl., Ex. 21 (Sherwood Tr.) at 205:1-7. At the end of 2013, there were 14 pending patent litigations against Google's Geo products. Sherwood Decl., Ex. 12 (GOOG-KZGA-00002672); Desai Decl., Ex. 21 (Sherwood Tr.) at 203:25-204:6, 205:22-206:3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

66.     Mr. Sherwood could not identify any additional individuals he needed to speak to or documents that he needed to review before testifying on behalf of Google at his deposition. Desai Decl., Ex. 21 (Sherwood Tr.) at 25:13-26:4, 27:11-28:8.

67.     Mr. Marquardt, Google's other 30(b)(6) witness, could not identify any additional individuals he needed to speak to or documents that he needed to review before testifying on behalf of Google at his deposition. Desai Decl., Ex. 24 (Marquardt Tr.) at 60:13-61:10, 63:12-64:1.

68.     During discovery in this case, Google did not investigate whether the former employees that it identifies as "likely [to] have knowledge relevant to Kewazinga's allegations" (D.I. 63 at ¶ 44) are unavailable.

> Q. The second sentence reads: "For example, at least the following Google potential witnesses have left Google since the dismissal of the 2013 Kewazinga suit: Augusta Roman, Brian Dick, Brian McClendon, Gaurav Garg, Kei Kawai, Luc Vincent, Marc Levoy, Sebastian Thrun and Stephen Chau." Do you see that part of Google's response to the interrogatories?
>
> A. Yes, I do.
>
> Q. And I know we talked about some of these names already, but are you aware of anyone at Google trying to contact any of those individuals regarding the -- this litigation?
>
> A. At this time I'm not.

Desai Decl., Ex. 21 (Sherwood Tr.) at 248:21-249:9.

> Q. Has anyone at Google attempted to contact Mr. Levoy, Mr. Garg or Mr. Roman regarding this litigation?
>
> A. Not that I'm aware of.

Desai Decl., Ex. 21 (Sherwood Tr.) at 242:16-19.

> Q. Are you aware of anyone at Google trying to contact Mr. Vincent or Mr. Chau regarding this litigation?
>
> A. I'm not.

Desai Decl., Ex. 21 (Sherwood Tr.) at 246:6-9.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Q. Are you aware of anyone within Google attempting to contact Mr. MacDonald or Mr. Lee regarding this litigation?

A. I'm not aware.

Desai Decl., Ex. 21 (Sherwood Tr.) at 241:16-19.

69.     There was no bar to Google filing a declaratory judgment against Kewazinga after the dismissal of the 2013 Action.

70.     There was no bar to Google filing petitions for *inter partes* review of the '226 and '325 patents after the dismissal of the 2013 Action, and there is currently no bar to Google filing petitions for *inter partes* review of the '226 and '325 patents because the complaint in the 2013 Action was not served on Google. 35 U.S.C. § 315(b).

71.     Street View became "one of Google Maps' most popular features" by 2009. Desai Decl., Ex. 44 (GOOG-KZGA-00001671) at 1671.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

72. By the end of 2010, Street View received upwards of 100 million views per day. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2124. By 2012, Street View received upwards of 200 million views per day. *Id*.



Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2124.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

73.   By 2015, Google recognized Street View to be "one of the most used and loved Google products" and Street View was the third most favorably rated Google product (only behind Google Maps and Google Search) and the ninth most used Google product. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2124.



Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2124.

74.   By 2015, Google understood Street View to be "critical for Internal & External customers," with significant internal value including its benefits for other Google products like Google Maps and Google Fiber. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116. For example, since 2013 or earlier, Google has used Street View data to make Google Maps data more accurate and more up-to-date, which is important to users of Street View. Desai Decl., Ex. 24 (Marquardt Tr.) at 75:16-76:12, 160:9-161:14, 162:5-12.



Street View Operation is critical for Internal & External customers
- Current Customers: GT/Maps, StreetSmart, BeeGees/Newfie, Street View Users
- Future Customers: Local Update Data, Access/GFiber, VR, Android Auto

Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

75.     By 2015, Google understood Street View to have a positive impact on the "Google Brand." Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2125.

76.     Google has been continuously investing in expanding Street View since its release in 2007. Desai Decl., Ex. 24 (Marquardt Tr.) at 265:4-267:9.

77.     In a June 2008 Google blog post, Google stated "To celebrate Street View's one year birthday, I am very happy to announce we are bringing Street View to 37 (you heard me – 37!) new areas and we have expanded coverage in 15 of our existing areas. All in all, this effectively doubles our coverage." Desai Decl., Ex. 46 (GOOG-KZGA-00001869) at 1869; Desai Decl., Ex. 24 (Marquardt Tr.) at 262:6-265:3.

78.     In a June 2011 Google blog post, Google stated "Since we launched Street View on Google Maps in the U.S. in 2007, we've added 26 more countries and enabled you to explore images across all seven continents. Today we're excited to share with you the latest expansion of Street View because it's our biggest update yet." Desai Decl., Ex. 47 (GOOG-KZGA-00001829) at 1829. The blog post further stated "Be it for armchair travel from the comfort of your computer, or to figure out where you might want to visit on your next vacation, we're thrilled to continue our expansion of Street View." *Id.* at 1830.

79.     The number of Street View vehicles that Google operated in the United States and globally increased between 2010 and 2012. Desai Decl., Ex. 48 (GOOG-KZGA-00005181). The number of kilometers driven by those vehicles in the United States and globally increased between 2010 and 2012. *Id*. The number of operating hours for those vehicles in the United States and globally increased between 2010 and 2012. *Id*.

80.     Kewazinga has at no point had actual knowledge of Google's investments in Street View. Desai Decl., Ex. 1 (Worley Tr.) at 172:15-174:18; Desai Decl., Ex. 5 (Smalheiser Tr.) at 54:3-56:17.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

81.     Google has made no changes to Street View or its investment in Street View because of the '226 patent or the '325 patent. Desai Decl., Ex. 23 (Google's June 15, 2020 Responses to Kewazinga's RFA) at Nos. 12, 14.

82.     At his deposition, Mr. Sherwood, designated to testify on behalf of Google about "Google's development of Street View in light of Google's interactions with Kewazinga" and "Google's investment in Street View in light of Google's interactions with Kewazinga" could not identify a specific change made, did not make, or considered for Street View, prior to the current lawsuit, because of Kewazinga or its patents.

> Q. Are you aware of anyone within Google ever proposing specific changes to Street View to lessen the risk that Google infringed the '325 or the '226 patents?
>
> A. No, we -- we didn't go forward with discussions of -- of that nature, given that Kewazinga declined to go forward with its 2013 lawsuit and indicated that it had no intention of doing so.

Desai Decl., Ex. 21 (Sherwood Tr.) at 44:1-9 (objections omitted); *see also id*. at 41:1-23, 42:22-43:7, 44:15-21; *see also* Desai Decl., Ex. 49 (Google's June 9, 2020 Response to Kewazinga's 30(b)(6) Topics) at Nos. 11, 12, 17; *see also* Desai Decl., Ex. 21 (Sherwood Tr.) at 18:7-13.

83.     At his deposition, Mr. Sherwood could not identify anything that Google would have done differently with respect to Street View if Kewazinga had never brought the 2013 Action.

> Q. So if Kewazinga had never brought the 2013 litigation, it's possible nothing would have changed with how Google approached Street View?
>
> A. Yeah, I -- I don't know.

Desai Decl., Ex. 21 (Sherwood Tr.) at 252:11-16 (objections omitted); *see also id*. at 251:2-252:10.

84.     At his deposition, Mr. Marquardt, designated to testify on behalf of Google about "Google's development and integration of Street View" and "Google's investment in Street View between 2005 and 2020" could not identify a specific change made, did not make, or considered for

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Street View, prior to the current lawsuit, because of Kewazinga or its patents. Desai Decl., Ex. 24 (Marquardt Tr.) at 257:17-259:25; *see also* Desai Decl., Ex. 49 (Google's June 9, 2020 Response to Kewazinga's 30(b)(6) Topics) at Nos. 10, 16; *see also* Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15.

85.   Between March 2013, when Google received an email from Kewazinga's counsel discussing the '325 and '226 patents and stating that they "cover[] street view applications," and October 2013, when Kewazinga filed a non-opposition to Google's motion to dismiss the 2013 Action without prejudice, Google did not make or consider any changes to Street View. Desai Decl., Ex. 21 (Sherwood Tr.) at 146:10-13, 153:11-154:20, 156:1-17, 173:19-174:21; Desai Decl., Ex. 24 (Marquardt Tr.) at 257:17-259:25; *see also* Desai Decl., Ex. 37 (KEWAZINGA-G-0003191) at 3191.

86.   The alleged "non-infringing alternatives" from outside counsel in 2013 that Google refers to (Sherwood Decl. ¶¶ 9, 18) were proposed litigation arguments, not business proposals to minimize risk. Sherwood Decl., Ex. 6 (GOOG-KZGA-00003601); Sherwood Decl., Ex. 7 (GOOG-KZGA-00003588). In addition, Google was receiving proposals from outside counsel by June 2013, including a proposal to file a petition for *inter partes* review by October 15, 2013, but Google appears to have taken no action on any of these proposals through the dismissal of the litigation without prejudice in November 2013. D.I. 62 (Sherwood Decl.) ¶ 10; *id.*, Ex. 8 at GOOG-KZGA-00002719. For example, Google did not file petitions for IPR on the '226 or '325 patents by October 15, 2013, as proposed by outside counsel, and has still not filed any. D.I. 62 (Sherwood Decl.) ¶ 10; *id.*, Ex. 8 at GOOG-KZGA-00002719.

87.   Google has been sued in the United States for patent infringement because of Street View "about a half dozen" times, with some of those litigations spanning several years. Desai Decl., Ex. 21 (Sherwood Tr.) at 109:22-111:4. For example, Google was sued for patent infringement in

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

2010 because of Street View in *Vederi, LLC v. Google, Inc.*, Case No. 2:10-cv-07747 (C.D. Cal.).

Desai Decl., Ex. 50 (KEWAZINGA-G-0006394) (docket sheet showing case pending for over nine

years); Desai Decl., Ex. 51 (KEWAZINGA-G-0006423) at 6424 (complaint alleging that Google

infringes patents because of Street View). Additionally, Google was sued for patent infringement in

2011 because of Street View in *Transcenic, Inc. v. Google, Inc. et al.*, Case No. 1:11-cv-00582 (D.

Del.). Desai Decl., Ex. 52 (KEWAZINGA-G-0006331 (docket sheet showing case pending for

nearly four years); Desai Decl., Ex. 53 (KEWAZINGA-G-0006622 at 6625-26 (amended complaint

alleging that Google infringes patent because of Street View).

88.     Google has never made a change to Street View due to United States patent

litigation.

> Q. As best you can recall sitting here today, Google has never modified Street View
> to avoid infringement in a U.S. patent litigation?
>
> A. I think that's right for U.S. patent litigation. Now, you know, as we discussed
> earlier, I do manage cases internationally as well, and so I do think there is at least
> one instance where a change we made may have involved Street View, but I don't
> remember exactly.
>
> Q. But you know for at least U.S. patent litigation, Google has never modified  Street
> View to avoid an infringement risk?
>
> A. Right. Now it's something that we've looked at, we've looked at noninfringing
> alternatives, that's something we look at routinely in our cases. I'm not aware of a
> case where we've implemented a -- a change to Street View.

Desai Decl., Ex. 21 (Sherwood Tr.) at 110:11-111:4; *see also* Desai Decl., Ex. 24 (Marquardt Tr.) at

255:23-257:4, 260:1-261:22.

89.     At his deposition, Mr. Marquardt, designated to testify on behalf of Google about

"Google's development and integration of Street View" and "Google's investment in Street View

between 2005 and 2020" could not identify any reason related to Kewazinga for Google's

investment in the "Herschel" camera system. Desai Decl., Ex. 24 (Marquardt Tr.) at 221:18-222:6,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

257:17-259:25; *see also* Desai Decl., Ex. 49 (Google's June 9, 2020 Response to Kewazinga's 30(b)(6) Topics) at Nos. 10, 16; *see also* Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15.

90.    Google projected that the investment in the "Herschel" camera system would pay for itself multiple times over, at least due to savings associated with other Google products that could use the Street View data from the new camera system such as Google Fiber. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116 (projecting savings of over $10 million per city that Google Fiber is deployed in because of investment in "Herschel" camera system), 2167 (projecting savings of $250 million to $375 million for Google Fiber because of $98.3 million investment in "Herschel" camera system); Desai Decl., Ex. 24 (Marquardt Tr.) at 205:7-207:5.

91.    Google's reasons for investing in the "Herschel" camera system were its own business considerations. Desai Decl., Ex. 24 (Marquardt Tr.) at 172:14-174:21, 176:12-19, 177:1-181:9, 221:18-222:6.

92.    One of the motivations for and expected benefits of Google's investment in the "Herschel" camera system was a business consideration related to the deteriorating hardware of the prior camera systems. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116, 2123; Desai Decl., Ex. 24 (Marquardt Tr.) at 172:4-173:10.

93.    One of motivations for and expected benefits of Google's investment in the Herschel camera system was a business consideration related to the improved quality of data collected by the new camera system. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2123, 2126, 2127, 2138; Desai Decl., Ex. 24 (Marquardt Tr.) at 172:14-173:10.

94.    One of the motivations for and expected benefits of Google's investment in the Herschel camera system was a business consideration related to the desire to keep pace with competitors. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116, 2126, 2127; Desai Decl., Ex. 24 (Marquardt Tr.) at 176:12-19.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

95.     One of the motivations for and expected benefits of Google's investment in the Herschel camera system was a business consideration related to saving money with respect to other Google products that use or could use Street View data. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2116, 2117, 2118, 2123, 2125, 2127, 2167, 2168; Desai Decl., Ex. 24 (Marquardt Tr.) at 177:1-181:9.

96.     One of the motivations for and expected benefits of Google's investment in the Herschel camera system was a business consideration related to opening the door for new technology that could potentially use Street View data such as driver-assistance and navigation technology. Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2118, 2127, 2167; Desai Decl., Ex. 24 (Marquardt Tr.) at 207:6-208:18.

97.     One of the motivations for and expected benefits of Google's investment in the Herschel camera system was the importance of Street View to Google, including the "Google Brand." Desai Decl., Ex. 45 (GOOG-KZGA-00002115) at 2124, 2125; Desai Decl., Ex. 24 (Marquardt Tr.) at 199:17-200:6.

98.     Google has never stopped offering Street View in the United States.

99.     At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any instance of Google considering stopping offering Street View in the United States based on a patent infringement litigation, prior to the current litigation. Desai Decl., Ex. 24 (Marquardt Tr.) at 236:13-17.

100.     At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any instance of Google

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

removing the transition effect that occurs in Street View when a user moves from one panorama to another. Desai Decl., Ex. 24 (Marquardt Tr.) at 236:18-237:13.

      101.    At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any document showing that Google had considered removing the transition effect that occurs in Street View when a user moves from one panorama to another, prior to this litigation. Desai Decl., Ex. 24 (Marquardt Tr.) at 254:9-16.

      102.    Some users of Street View had expressed an interest in making the transition effect that occurs in Street View when a user moves from one panorama to another optional. Desai Decl., Ex. 54 (GOOG-KZGA-00006219). Google never made that change, however, even though the request had been pending for over two years. *Id.* at 6226.

      103.    At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any instance of Google relocating United States Street View data to data centers outside the United States. Desai Decl., Ex. 24 (Marquardt Tr.) at 243:15-22.

      104.    At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any instance of Google considering relocating United States Street View data to data centers outside the United States, prior to the current litigation. Desai Decl., Ex. 24 (Marquardt Tr.) at 243:23-244:5.

      105.    At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives"

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

(Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not testify as to whether relocating United States Street View data to data centers outside the United States would impact the user experience in Street View. Desai Decl., Ex. 24 (Marquardt Tr.) at 244:10-245:25.

106.    Street View does not use prefetching of surrounding panoramas when a user selects a particular Street View location. Desai Decl., Ex. 24 (Marquardt Tr.) at 246:12-15.

107.    At his deposition, Mr. Marquardt, designated to testify on behalf of Google regarding "potential alternative designs of Street View and the feasibility of implementing alternatives" (Desai Decl., Ex. 24 (Marquardt Tr.) at 11:6-15), could not identify any instance of Google considering implementing prefetching of surrounding panoramas in Street View, prior to the current litigation. Desai Decl., Ex. 24 (Marquardt Tr.) at 246:16-24, 250:1-15.

108.    Google has never used a camera system with only a single camera to capture imagery for use in Street View. Desai Decl., Ex. 24 (Marquardt Tr.) at 250:10-252:5.

109.    The interval between points along the street at which images are captured for Street View is not random. Desai Decl., Ex. 24 (Marquardt Tr.) at 252:14-16.

110.    Stroock & Stroock & Lavan LLP ("Stroock") represented Orchard Enterprises NY, Inc. ("The Orchard") in a copyright infringement action brought by Seugne Botha in the Middle District of Florida ("2018 Orchard Action"). Sammataro Decl. ¶ 4. In addition to The Orchard, Botha's complaint named several other defendants including, *inter alia*, Amazon, Spotify, Microsoft, and Google. *Id*. James Sammataro, a former Stroock attorney, was the partner in charge of Stroock's representation of The Orchard. *Id*. ¶ 5; *see also id*. ¶ 2.

111.    The Orchard had agreed to indemnify the other defendants. Sammataro Decl. ¶ 5. The Orchard wanted Stroock to also represent the co-defendants. *Id*. As part of this, The Orchard connected Mr. Sammataro with in-house counsel for Google, Bill Berry. *Id*.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

112.    On June 28, 2018, Mr. Sammataro spoke with Mr. Berry about Stroock representing Google in the 2018 Orchard Action. Sammataro Decl. ¶ 6; Sherwood Decl., Ex. 14 (GOOG-KZGA-00002358) at 2361-63.

113.    By no later than June 15, 2018, before Mr. Sammataro and Mr. Berry had spoken about the 2018 Orchard Action, Mr. Berry spoke with Mr. Sherwood about Kewazinga and Stroock's representation of Google in the 2018 Orchard Action. Desai Decl., Ex. 55 (GOOG-KZGA-00004366) at 4366. Mr. Sherwood was involved in the 2013 Actions and the August 2013 meeting between Google and Kewazinga. Sherwood Decl. ¶¶ 3, 12. At the time he spoke with Mr. Berry about Stroock's representation in the 2018 Orchard Action, Mr. Sherwood was aware that Kewazinga had sued Microsoft alleging infringement of the '325, '226, and '234 patents in *Kewazinga Corp. v. Microsoft Corporation*, Case No. 1:18-cv-04500-GHW (S.D.N.Y.). Desai Decl., Ex. 55 (GOOG-KZGA-00004366) at 4366; Desai Decl., Ex. 21 (Sherwood Tr.). at 217:11-218:2.

114.    Mr. Berry and Mr. Sherwood discussed the possibility of conflicting out Stroock from representing Kewazinga in any assertion of its patents against Google. As Mr. Berry stated:

> Jim [Sherwood] and I talked and agreed the best path forward was to ask Stroock if they had any conflict issues -- thinking that if they said no, and we engaged them without a waiver, they'd bee [*sic*] conflicted from suing us on the Kewazinga family of patents.

Desai Decl., Ex. 56 (GOOG-KZGA-00004369) at 4369; Desai Decl., Ex. 21 (Sherwood Tr.). at 221:10-16, 222:18-223:13; *see also* Desai Decl., Ex. 55 (GOOG-KZGA-00004366) at 4366; *see also* Desai Decl., Ex. 57 (GOOG-KZGA-00004373) at 4373 ("So … any issues with us hiring Stroock now? If we do, they can't sue us re Kewazinga! ;)").

115.    On July 3, 2018, Mr. Sammataro informed Mr. Berry that Stroock had no present conflicts in representing Google because Stroock was not then handling any active litigation adverse

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to Google. Sammataro Decl. ¶ 8; Sherwood Decl., Ex. 14 (GOOG-KZGA-00002358) at 2359-60. In that same communication, Mr. Sammataro informed Mr. Berry that Stroock was seeking a conflict waiver for the assertion of the same family of patents at issue in Kewazinga's prior, 2013 lawsuit against Google. Sammataro Decl. ¶ 8; Sherwood Decl., Ex. 14 (GOOG-KZGA-00002358) at 2359-60. Mr. Sammataro also communicated to Mr. Berry that the 2018 Orchard Action would be a limited engagement because of the posture of the case, and Mr. Berry agreed. Sammataro Decl. ¶ 10; D.I. 62 (Sherwood Decl.), Ex. 14 (GOOG-KZGA-00002358) at 2359-60. Internal discussions within Google's legal department noted that Stroock "want[ed]a waiver to allow them to use in the future on the Kewazinga family of patents" and that it was "[g]ood to know their intentions, though, I suppose." Ex. 56 (GOOG-KZGA-00004369) at 4369.

116.     Mr. Berry initially indicated to Mr. Sammataro that Google would not agree to an advance waiver of any future conflicts. Sammataro Decl. ¶ 9. Mr. Sammataro did not drop the request for a conflict waiver for the Kewazinga family of patents but, rather, Mr. Berry and Mr. Sammataro agreed that any future conflicts would be addressed if, and when, they actually arose. *Id*. ¶¶ 9-10. On that basis, Stroock would not require a written advance waiver from Google for future conflicts. *Id*. ¶¶ 9-10.

117.     Stroock did not anticipate a future conflict in its representation of Kewazinga against Google because Stroock's representation of Google in the 2018 Orchard Action was, as expressed to Google, a "limited engagement" (Sherwood Decl., Ex. 14 (GOOG-KZGA-00002358) at 2360) and expected to quickly resolve. Sammataro Decl. ¶ 10.

118.     Google executed an engagement letter with Stroock for the 2018 Orchard Action. Sammataro Decl. ¶ 11; Sherwood Decl., Ex. 15. The engagement letter indicated no current ethical conflict of interest existed and that Stroock did "not anticipate the development of any such actual conflict." Sammataro Decl. ¶ 11; D.I. 62 (Sherwood Decl.), Ex. 15 (GOOG-KZGA-00002366).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

This language is found under a heading in the retainer agreement for "Conflicts of Interest Arising from Joint Representation."  Sammataro Decl. ¶ 11; D.I. 62 (Sherwood Decl.), Ex. 15 (GOOG-KZGA-00002366). Accordingly, the language about Stroock "not anticipat[ing] the development of any such actual conflict" related to conflicts between co-defendants (*i.e.*, "Clients") arising out of the joint representation in the 2018 Orchard Action. Sammataro Decl. ¶ 11; D.I. 62 (Sherwood Decl.), Ex. 15 at (GOOG-KZGA-00002366).

119.    By the time Google had retained Stroock for the 2018 Orchard Action in late September 2018, the 2018 Orchard Action was nearly complete as the plaintiff reached a settlement with nearly all of the co-defendants, including Google, on September 29, 2018. Sammataro Decl. ¶ 12; Desai Decl. Ex. 63.

120.    In its representation of Google in the 2018 Orchard Action, Stroock did not have any singular, substantive communication with Google, as all work was done as part of the joint defense arrangement among co-defendants, and Stroock did not receive any confidential information from Google. Sammataro Decl. ¶ 13.

121.    Google continued to be represented by its own counsel, Mayer Brown, throughout the pendency of the 2018 Orchard Action. Desai Decl., Ex. 21 (Sherwood Tr.) at 234:17-21.

122.    Mr. Berry attended the mediation of the matter which led to the resolution of the case in person and represented Google. Sammataro Decl. ¶ 13.

123.    Google's in-house counsel, Mr. Sherwood, agreed that there is no reason Stroock should be conflicted out of representing Kewazinga in the current litigation. Desai Decl., Ex. 21 (Sherwood Tr.) at 235:5-10.

124.    In this litigation, Kewazinga is seeking reasonable royalty damages, not lost profits. Ex. 65 (Kewazinga's April 30, 2020 Rule 26(a)(1) Initial Disclosures) at 8.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

125.   Stroock's security interests in the '226, '325, and '234 patents were executed in January 2016 and are a matter of public record. Desai  Decl., Ex. 58 (KEWAZINGA-G-0000088) at 88-89; Desai Decl., Ex. 59 (KEWAZINGA-G-0000122) at 122-23; Desai  Decl., Ex. 60 (KEWAZINGA-G-0000156) at 156.

126.   The 2020 valuation discussions that Google references in its brief (D.I. 59 at 20; D.I. 63 at ¶ 85) were in the context of settlement discussions between outside counsel for Google and Kewazinga.


Dated: New York, New York                    Respectfully submitted,
       July 29, 2020
                                             STROOCK & STROOCK & LAVAN LLP

                                             _/s/ Ian G. DiBernardo_____
                                             Ian G. DiBernardo
                                             Timothy K. Gilman
                                             Kenneth L. Stein
                                             Saunak K. Desai
                                             Gregory R. Springsted
                                             STROOCK & STROOCK & LAVAN LLP
                                             180 Maiden Lane
                                             New York, NY 10038
                                             Tel: (212) 806-5400
                                             Fax: (212) 806-6006
                                             Email: idibernardo@stroock.com
                                             Email: tgilman@stroock.com
                                             Email: kstein@stroock.com
                                             Email: sdesai@stroock.com
                                             Email: gspringsted@stroock.com

                                             *Attorneys for Plaintiff Kewazinga Corp.*

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 29, 2020, I caused a true and correct copy of the foregoing

**PLAINTIFF KEWAZINGA CORP.'S LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF KEWAZINGA'S CROSS-MOTION FOR SUMMARY JUDGMENT OF NO EQUITABLE ESTOPPEL** to be filed and served electronically by means of the Court's CM/ECF system in accordance with Federal Rules of Civil Procedure and/or the Local Rules of this Court, upon the following counsel of record:

John Michael Desmarais
Elizabeth Esther Weyl
Steven Marc Balcof
David A. Frey
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212)−351−3400
Fax: (212)−351−3401
Email: jdesmarais@desmaraisllp.com
Email: eweyl@dllp.com
Email: sbalcof@dllp.com
Email: dfrey@desmaraisllp.com

Ameet A. Modi
Emily Chen (*Pro Hac Vice*)
DESMARAIS LLP
101 California St.
San Francisco, CA 94111
Tel: (415) 573−1806
Email: amodi@desmaraisllp.com
Email: echen@desmaraisllp.com

*Attorneys for Defendant Google LLC*

_/s/ Saunak K. Desai_
Saunak K. Desai