Ian G. DiBernardo
Timothy K. Gilman
Kenneth L. Stein
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: idibernardo@stroock.com
Email: tgilman@stroock.com
Email: kstein@stroock.com
Email: sdesai@stroock.com
Email: gspringsted@stroock.com

*Attorneys for Plaintiff Kewazinga Corp.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEWAZINGA CORP., | ) |
| | ) |
| Plaintiff, | ) Civil Action No.  1:20-cv-01106-LGS |
| | ) |
| vs. | ) |
| | ) |
| GOOGLE LLC, | ) **REDACTED VERSION** |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF KEWAZINGA CORP.'S OPPOSITION TO GOOGLE LLC'S
MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL, AND
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

III. STATEMENT OF LAW ............................................................................................ 5

    A. Summary Judgment ............................................................................................... 5

    B. Equitable Estoppel ................................................................................................ 5

IV.  ARGUMENT ............................................................................................................. 6

    A. Kewazinga Did Not Engage in Misleading Conduct and Google Did Not
    Reasonably Infer that Kewazinga had Abandoned its Claims ............................. 6

        1. Google Could Not Reasonably Infer That Kewazinga Had Abandoned Its Rights
        And It Was Not The "Only Possible Inference" From Kewazinga's Conduct ....... 7

        2. The Evidence Demonstrates That Google Expected Kewazinga's
        Lawsuit ........................................................................................................... 11

    B. Google Did Not Rely on Any Allegedly Misleading Conduct by
    Kewazinga ........................................................................................................... 13

        1. Google's Investments In Street View Were Not Based On Kewazinga's
        Conduct But, Rather, Google's Business Considerations .................................... 14

        2. Google's *Post Hoc* Speculation About Alternatives Contradicts
        The Record ...................................................................................................... 18

        3. Google's Alleged Reliance In "Shutting Down Its Legal Machinery"
        Was Not Based On Kewazinga's Allegedly Misleading Conduct ...................... 22

    C. Google Has Not Suffered Any Material Prejudice Caused by Reliance on Kewazinga's
    Conduct ............................................................................................................... 23

        1. Google Has Not Suffered Any Evidentiary Prejudice Caused By
        Any Reliance ................................................................................................... 24

        2. Google Has Not Suffered Any Economic Prejudice Caused By
        Any Reliance ................................................................................................... 25

    D. Google's Unclean Hands Bars the Application of Equitable Estoppel ............................ 27

    E. Equitable Estoppel Cannot Apply to the '234 Patent ...................................... 29

V.   CONCLUSION ........................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aadventure Prod., Inc. v. Simply Smashing, Inc.*,
No. 07CV499 BTM(AJB), 2007 WL 2775128 (S.D. Cal. Sept. 20, 2007)............................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................5

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)....................................................................................26

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
605 F.3d 1305 (Fed. Cir. 2010)...........................................................................9, 10, 18

*Aukerman Co. v. R.L. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) (*en banc*) .................................................... *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................5

*Ecolab, Inc. v. Envirochem, Inc.*,
264 F.3d 1358 (Fed. Cir. 2001)..................................................................................16

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
No. 6:11-CV-201-JRG-JDL, 2017 WL 6268800 (E.D. Tex. Dec. 8, 2017)...............17, 24, 25

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
60 F.3d 770 (Fed. Cir. 1995)........................................................................13, 15, 17, 20

*Hall v. Aqua Queen Mfg., Inc.*,
93 F.3d 1548 (Fed. Cir. 1996)....................................................................................16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016).............................................................................................28

*Hemstreet v. Computer Entry Sys. Corp.*,
972 F.2d 1290 (Fed. Cir. 1992)............................................................................15, 17

*John Bean Techs. Corp. v. Morris & Assocs., Inc.*,
887 F.3d 1322 (Fed. Cir. 2018)...........................................................................6, 30, 31

*Kaist IP US LLC v. Samsung Elecs. Co.*,
No. 2:16-CV-01314-JRG, 2019 WL 8110046 (E.D. Tex. Jan. 18, 2019)...................14, 21, 25

ii

*Lear Corp. v. NHK Spring Co., LTD*,
No. 18-10613, 2019 WL 934811 (E.D. Mich. Feb. 26, 2019)...........................................23, 25

*Meyers v. Asics*,
974 F.2d 1304 (Fed. Cir. 1992)...........................................................................................5, 20

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001)...........................................................................................5, 14

*Radio Systems Corp. v. Lalor*,
709 F.3d 1124 (Fed. Cir. 2013)..................................................................................................29

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
137 S. Ct. 954 (2017)..................................................................................................................6, 13

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
767 F.3d 1339 (Fed. Cir. 2014)..................................................................................... *passim*

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
807 F.3d 1311 (Fed. Cir. 2015), *vacated in part on other grounds*, 137 S. Ct.
954 (2017)..........................................................................................................................................6

*Scholle Corp. v. Blackhawk Molding Co., Inc.,*,
133 F.3d 1469 (Fed. Cir. 1998)....................................................................................................10

*Scott v. Harris*,
550 U.S. 372 (2007).........................................................................................................................5

*Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*,
No. 11-2684-JWL, 2016 WL 7052055 (D. Kan. Dec. 5, 2016) ..................................12, 17, 20

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
No. 13CV651 JLS (MDD), 2016 WL 4095967 (S.D. Cal. June 28, 2016)...........................17

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
No. SACV1200329AGJPRX, 2014 WL 12587050 (C.D. Cal. Dec. 16, 2014) ....................21

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
473 F.3d 1173 (Fed. Cir. 2006)....................................................................................................31

*Wafer Shave, Inc. v. Gillette Co.*,
857 F. Supp. 112 (D. Mass. 1993) ................................................................................................9

**Statutes**

35 U.S.C. § 286........................................................................................................................6, 26

**Other Authorities**

Federal Rule of Evidence 408..........................................................................................29

## I.   __INTRODUCTION__

Google's "equitable estoppel" defense is essentially an argument that Kewazinga delayed too long in bringing this suit.  The fundamental legal problem with this defense is that, in 2017, the Supreme Court rejected laches as a defense to patent infringement—a patentee is free to bring suit whenever they choose.  35 U.S.C. § 286 limits the damages window to six years before filing; otherwise, the patentee has the unfettered right to choose when to litigate.  Alleging a delay in filing suit simply is no longer a cognizable defense to patent infringement.

True "equitable estoppel" would require Kewazinga somehow having *misled* Google into continuing to infringe.  The fundamental factual problem with this defense is that Google has known that it ███████████████████████████████████████████, but simply didn't care. Google took no efforts to investigate or address this known infringement risk from 2006-2013. Even after Kewazinga informed Google of the patents in early-2013 ████████████████ ███████████████ or after Google received Kewazinga's complaint for patent infringement in mid-2013, Google did nothing to address this known infringement risk in its business through the next 6-8 months until the complaint was withdrawn.  At most, Google ██████████████ ████████████████████████████████████████████████████████████████████████████ ████████████.  There was no alternative business path that Google forewent or was denied— ████████████████████████████████████████████████████████████████████████████ █████████████████████████████.

Moreover, Kewazinga never misled Google nor acquiesced in its infringement.  Google points to a few statements from settlement discussions in 2013—███████████████████████ ████████████████████████████████████████████████—but even then Google offers no affirmative statement by Kewazinga that either Google didn't infringe or

that Kewazinga would not enforce its rights.  And while a patentee's silence *sometimes* can be misleading, that requires an affirmative duty to speak, and no such duty existed here.  In any event, Google was not "misled" in 2013— ████████████████████████████████████

████████████████████████████████████████████████

Tolerating infringement risk is simply part of Google's business practice.  Google has faced ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

That may be a rational business decision for cases such as this, where Google faces, *at worst,* reasonable royalty damages that would still leave it with ████████████████ from its infringement.  And it may even be a rational business decision where—as the evidence shows here—Google knowingly pirated Kewazinga's technology in 2006 in order to launch Street View, and simply accepted the risk that it might be caught and have to pay enhanced damages.

The question is not why did Kewazinga wait to bring this case or whether this case would be different if litigated in 2013 versus 2020 as Google posits—those are irrelevant laches issues. The question is whether Google was misled into *changing* its infringement behavior and would now unfairly be materially prejudiced.  It was not.  It is undisputed that if Kewazinga had stayed silent—and not filed a complaint in 2013—the parties would be in the exact same position today. Google's equitable estoppel defense therefore fails as a matter of law.

## II.    FACTUAL BACKGROUND

As set forth in Kewazinga's L.R. 56.1 Statement ("SOF"), Kewazinga pioneered navigable telepresence technology in the 1990's and its patents claim priority to 1998.  SOF ¶¶ 1-5, 59.  By the early 2000's, Kewazinga was commercializing this technology throughout the

United States by producing content for partners including NBC Sports, ABC Sports, ESPN, the
Golf Channel, and Major League Baseball.  SOF ¶ 2.

In 2005-06, Kewazinga offered Google the technology to "vastly extend the reach of
Google Earth and Google Maps by providing an on-the-ground telepresence extension that
allows viewers to dynamically explore world environments as though they were physically at
that location."  SOF ¶ 20; *see also id.* ¶¶ 13-19.  This included "two watershed patents. . . . The
Foundational Patent allows one or more viewers or operators to navigate . . . by changing
perspective form camera to camera . . . [and] Kewazinga's Tweening Patent . . . where tweening,
mosaicking or other smoothing technique is used to provide a smooth transition from one 'real'
camera to the next . . . a seamless glide-transition."  SOF ¶¶ 23-27.  This concept included boat-
mounted cameras, as well as capturing the inside of locations such as museums.  SOF ¶¶ 20-22.
Google's two founders received this material, as well as Jenifer Austin and Christopher Sacca.
SOF ¶¶ 6-8, 12.  In April 2006, Ms. Austin became a product manager for Google Earth.  Before
he left in 2007, Mr. Sacca was the Head of Special Initiatives and managed Google Maps and
Google Earth—both accused of infringement here.  SOF ¶¶ 9-11.

Google declined a business relationship in 2005-06.  But in mid-2007—████████
████████████████████████████—Google launched "Google Maps Street View."[1]
SOF ¶¶ 28, 29, 32, 39.  With Street View you can virtually explore city neighborhoods by
viewing and navigating within 360-degree scenes of street-level imagery.  It feels as if you're

---

[1] Google alleges that it was working with Stanford since 2002, but no evidence exists that
Google or Stanford considered tweening, boat-mounted cameras, navigation of interiors, or the
inclusion of Street View in Google Earth before 2005-06.  SOF ¶ 35.  Articles in 2005 note that
"the Stanford [CityBlock] project is still at the very early stages of development" and that
"Google might not even know what it wants to do with the technology yet." SOF ¶ 34. ████████
████████████████████████████████████████████████████████████
████████████████████████████         SOF ¶¶ 36-38.

walking down the street." SOF ¶ 41. Google used car-mounted cameras to collect this imagery—and Ms. Austin "launched the first time ever waterfront Street View collection" from boat-mounted cameras—and then processed the images to create smooth transitions. SOF ¶¶ 10, 42, 45. Within two years, Street View was "consistently one of Google Maps' most popular features." SOF ¶ 71. By 2013, ███████████████████████████████████. SOF ¶ 72.

After efforts to engage in business discussions were rebuffed, Kewazinga filed an infringement complaint on May 24, 2013. SOF ¶ 49. ████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ SOF ¶ 51. After the parties disagreed whether Google infringed the" array of cameras" limitation, Kewazinga followed up on September 11, 2013, affirming that it ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

SOF ¶¶ 52-54. Because the parties could not reach a resolution in 2013, Kewazinga acquiesced in the dismissal of its complaint *without prejudice*. SOF ¶¶ 57, 58.

Kewazinga never indicated that Google did not infringe, nor that Kewazinga would not police its rights. SOF ¶¶ 52-54, 57, 58. Rather, it continued to prosecute continuation applications, leading to the '234 patent-in-suit which does not require an "array of cameras." SOF ¶ 59. And Google did not consider the matter resolved either. Rather, all of the

████████████████████████████████████████████████

████████████████████████████████████████████ SOF ¶¶ 62,

63. And when Google considered retaining Stroock & Stroock & Lavan LLP ("Stroock") for an

unrelated copyright matter in Florida in 2018, ███████████████████

████████████████████████████████████████████████████

███████████████████████████████ SOF ¶¶ 110-114. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ SOF ¶¶ 115-117.

## III.   STATEMENT OF LAW

### A.   Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The movant must show that "under the governing law, there can be but one reasonable conclusion." *Id*. On summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). "Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Conclusory assertions by movants are insufficient to support a grant of summary judgment. *See Meyers v. Asics*, 974 F.2d 1304, 1309 (Fed. Cir. 1992) (reversing summary judgment of equitable estoppel because conclusory assertions of reliance were not sufficient to meet defendant's burden).

### B.   Equitable Estoppel

For Google to prevail on equitable estoppel, it bears to burden prove all three elements: "(1) the patentee engages in misleading conduct that leads the accused infringer to reasonably infer that the patentee does not intend to assert its patent against the accused infringer; (2) the

accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action." *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018).  The alleged prejudice must be "caused by *reliance upon*" the misleading conduct.  *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 767 F.3d 1339, 1350-51 (Fed. Cir. 2014).[2]  "[T]he underlying elements of … equitable estoppel are questions of fact." *Id*. at 1344.

Even if these three elements are met, "the trial court must . . . take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992) (*en banc*).  Unclean hands, such as copying or willful infringement, can bar application of equitable estoppel. *See id*. at 1043-44.

"[E]quitable estoppel and laches are distinct." *Aukerman*, 960 F.2d at 1042; *see also id*. at 1041-43.  Laches, which is "'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit,'" is no longer a valid defense to bar those damages for "the infringement [that] occurred within the period prescribed by § 286." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960, 967 (2017).

## IV. <u>ARGUMENT</u>

### A. **Kewazinga Did Not Engage in Misleading Conduct and Google Did Not Reasonably Infer that Kewazinga had Abandoned its Claims**

Google contends that Kewazinga's purported "delay" and "silence" from 2013 amounts to "misleading conduct" that establishes the first prong of equitable estoppel.  D.I. 59 at 5.  But

---

[2] Although portions of *SCA Hygiene* related to laches were vacated, the Federal Circuit "reinstate[d] the panel opinion's reversal of the district court's grant of summary judgment on equitable estoppel and adopt its reasoning." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 807 F.3d 1311, 1333 (Fed. Cir. 2015), *vacated in part on other grounds*, 137 S. Ct. 954, 959 n.1 (2017) ("The panel reversed the District Court's holding on equitable estoppel, concluding that there are genuine disputes of material fact.").

Kewazinga never backed off of its infringement allegations, and even told Google it was prosecuting additional claims that Google would infringe.  The undisputed record shows that in 2018 Google still knew it might be sued by Kewazinga—a fact fatal to Google's defense as a matter of law.  At a minimum, there is a factual dispute as to whether Kewazinga's conduct was misleading, and whether Google actually relied on that conduct to believe it was free to infringe.

     1.     <u>Google Could Not Reasonably Infer That Kewazinga Had Abandoned Its Rights And It Was Not The "Only Possible Inference" From Kewazinga's Conduct</u>

On summary judgment, Google faces the heavy burden of demonstrating that the "***only possible inference***" from Kewazinga's conduct was that Kewazinga never intended to pursue its infringement claims against Google again.  *See Aukerman*, 960 F.2d at 1043-44 (emphasis added); *see also SCA Hygiene*, 767 F.3d at 1350 ("To justify summary judgment of equitable estoppel, any inference that a patentee made a misleading communication by omission or acquiescence 'must be the only possible inference from the evidence.'") (quoting *Aukerman*, 960 F.2d at 1044).  Google cannot meet this burden.

Google's story is that it somehow convinced Kewazinga in an August 2013 meeting that Google did not infringe.  *See* D.I. No. 59 at 4, 7-8; D.I. 62 at ¶¶ 12, 14.  But Google omits that Kewazinga explicitly ***disagreed*** with Google during that meeting, and documented its continuing allegation of infringement ***after the meeting***.  SOF ¶¶ 52-54.



(SOF ¶ 53 (emphasis added)).

The 2020 testimony of Google's counsel that he inferred in 2013 that ████████████ ████████████ (*see* D.I. 62 at ¶¶ 12, 14) is vague at best and does not establish misleading conduct. It cannot override the contemporaneous evidence that Kewazinga maintained that Google infringed during and after the August 2013 meeting, ***and explicitly said so to Google.***

Nor was Kewazinga's withdrawal of its 2013 lawsuit against Google ("2013 Action") *without prejudice* somehow an acquiescence in infringement.  Kewazinga did not serve its complaint because settlement discussions were ongoing.  SOF ¶ 57.  When Google moved to dismiss for failure to serve, Google omitted that the dismissal would be without prejudice.  SOF ¶¶ 55, 56.  Kewazinga's response to the Court (and Google) noted that the parties "were engaged in settlement discussions" and ***emphasized with underlining that the dismissal was without prejudice***: "Plaintiffs do not oppose the dismissal of this action <u>without</u> prejudice."  SOF ¶ 57 (emphasis in original).  With the contemporaneous correspondence quoted above, the message was clear that Kewazinga still intended to police its patent rights, but hoped that continued negotiations and patent prosecutions could encourage Google to be reasonable.

Google tries to recast the 2013 court filing as an admission that Kewazinga "'had no intention' of continuing its assertion against Google" at ***any*** point in time.  *See* D.I. 59 at 5, 7-8. But the filing highlighted the settlement discussions and emphasized the lack of prejudice:

> After filing this action and up until Google's filing of the Motion, Plaintiffs and Google were engaged in settlement discussions.  Consequently, Kewazinga had no intention of serving Google.
>
> Notwithstanding the foregoing and in light of the Motion, Plaintiffs do not oppose the dismissal of this action <u>without</u> prejudice. (SOF ¶ 57 (emphasis in original)).

Nothing about Kewazinga's filing indicates that Kewazinga would never bring suit against Google again.  SOF ¶ 58.  Google's elision over this *emphasis of non-prejudice* and the

contemporaneous communications *reaffirming infringement* fails to transform this Rule 4(m) dismissal into an adjudication on the merits or otherwise prove that the "only possible inference" of Kewazinga's conduct was that it was abandoning its claims—a fact which by itself defeats Google's motion. *See Aukerman*, 960 F.2d at 1043-44.

Google cites *Aspex Eyewear*, *Wafer Shave*, and *Scholle* to contend that Kewazinga misled Google by bringing the current action approximately six years after the 2013 Action. *See* D.I. 59 at 5. But there is no magic deadline, and the Federal Circuit has reversed summary judgment of equitable estoppel premised on even longer periods of alleged silence. *Aukerman*, 960 F.2d at 1043-44 (reversing summary judgment premised on "nine plus years of silence"); *SCA Hygiene*, 767 F.3d at 1342, 1349-50 (reversing summary judgment premised on "six years and nine months" of delay). "[E]quitable relief is not a matter of precise formula" but, rather, a fact-intensive inquiry whether an infringer was misled "in the context of the specific interaction between the parties." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310-11 (Fed. Cir. 2010). And, "[a]lthough the most common example of equitable estoppel is a patentee who objects to allegedly infringing activities and then remains silent for a number of years, ***that silence must be 'coupled with other factors, [such that the] patentee's 'misleading conduct' is essentially misleading inaction.'***" *SCA Hygiene*, 767 F.3d at 1349 (emphasis added).

No such factors exist here. In *Aspex*, *Wafer Shave*, and *Scholle*, the patentees (1) ignored communications from the accused infringer entirely; (2) engaged in extended communications with the accused infringer *without* mentioning infringement; and/or (3) misrepresented their infringement positions prior to waiting years before bringing suit. *Wafer Shave*, *Inc. v. Gillette Co.*, 857 F. Supp. 112, 120-121 (D. Mass. 1993) (patentee never responded to a "letter requesting reasons for [the] assertion of infringement" and did not mention infringement

concerns in communications about the sale of the asserted patent); *Scholle Corp. v. Blackhawk Molding Co., Inc.,*, 133 F.3d 1469, 1470-72 (Fed. Cir. 1998) (patentee did not respond to the accused infringer's statement that it "would market the [accused product] unless [the patentee] informed [the accused infringer] considered the [accused product] to infringe" and did not mention infringement concerns for the accused product even though the parties discussed the asserted patent extensively); *Aspex Eyewear*, 605 F.3d at 1310-11 (patentee omitted asserted patent from its response to the accused infringer's request for more information); *see also SCA Hygiene*, 767 F.3d at 1349-50 (distinguishing *Aspex Eyewear* and *Scholle*).

**Here, no "other factors" risked "misleading inaction" because Kewazinga consistently maintained its infringement position during all communications with Google.**  SOF ¶¶ 52-54, 57, 58.  Indeed, in 2013, the final communications between the parties were Kewazinga explicitly telling Google that it continued to believe that Google infringes (SOF ¶ 52-54) and emphasizing that it was not opposing dismissal of the 2013 Action "<u>without</u> prejudice" (SOF ¶ 57 (emphasis in original)), thus retaining the right to pursue its claims at a later time.  Thus, Kewazinga had no "clear duty to speak" further—which is necessary when an accused infringer asserts that it was misled by silence.  *See Aukerman*, 960 F.2d at 1043-44.  Kewazinga was not required to continuously inform Google of the same position that it had already made clear.

Moreover, Google was aware that Kewazinga had pending patent applications, and Kewazinga had told Google that such continued prosecutions would be relevant to Google's infringement.  SOF ¶ 59.  If Google had any doubt whether Kewazinga was pursuing additional patent claims to assert against Google, "even the most rudimentary due diligence" would have confirmed that Google was still at risk.  *SCA Hygiene*, 767 F.3d at 1351 (finding that

"rudimentary due diligence" would have uncovered the continued patent prosecution, undermining any belief that the patentee did not intend to pursue its claims).

    2.    <u>The Evidence Demonstrates That Google Expected Kewazinga's Lawsuit</u>

The record proves that Google ***did not*** believe that Kewazinga had abandoned its claims. Since 2013, ████████████████████████████████████████████ ████████ SOF ¶¶ 62-64.  And in 2018, ████████████████████████ ██████████████ SOF ¶¶ 113, 114.  But rather than stop infringing, ████████ ████████████████████████ *Id.*

In 2018, a client of Stroock, The Orchard, and others, including Google, were sued in an unrelated copyright matter.  SOF ¶ 110. ████████████████████████████ ████████████████████████████████████████████ ████████████████████ SOF ¶ 111. ██████████████████████████ ████████████████████████████████████████████ █████████████████████████████████ SOF ¶ 112.  Google's version of events— ████████████████████████████████████████████ █████████████—again omits the most important facts.  D.I. 59 at 6-7. █████████████████████████████████ ████████████████████ SOF ¶¶ 113, 114.  Before Mr. Sammataro and Mr. Berry had spoken at all, ████████████████████████████ ████████████████████████████████████████████ █████████████████████████ *Id.* ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ SOF ¶ 113.

████████████████████████████████████████—prior to Mr. Berry and Mr.

Sammataro speaking—████████████████████████████████████████████

████████████████████████████████████████ SOF ¶¶ 112-114.  As

Mr. Berry put it:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████ (SOF ¶ 114).

Far from believing that Kewazinga had abandoned its claims, Google was actively

positioning itself for anticipated litigation. *See Sprint Commc'ns Co. L.P. v. Comcast Cable

Commc'ns LLC*, No. 11-2684-JWL, 2016 WL 7052055, at *15 (D. Kan. Dec. 5, 2016) (finding

that "evidence that [defendant] was monitoring the litigation between [plaintiff] and others …

could suggest a belief that [plaintiff] might sue [defendant] as well," allowing a "reasonable

factfinder [to] to find that [defendant] was not actually misled by [plaintiff's] conduct").  Google

conveniently omits this fact and begins its story halfway into the plot. *See* D.I. 59 at 6-7.

Additionally, Google misrepresents ████████████████████████████

████████████████████████ SOF ¶¶ 115-117. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Given that the representation was, ████████████████████████████████

████████████████████████████████ *Id.*; *see also id.* ¶¶ 119-

122.  Google relies heavily on language in the Stroock retainer that Stroock ████████████

████████████████████████████ D.I. 59 at 6, 10.  But the context of this

language—under the heading ████████████████████████████████—relates

████████████████████████████████████████████████

███████████████████████ SOF ¶ 118.

In any event, Google wrongly conflates potential *outside attorney* conflicts with *Kewazinga's* supposed abandonment of rights. Even if Stroock were conflicted—which it is not—other law firms exist that could have prosecuted Kewazinga's claims. Thus, whether *Stroock* was or was not conflicted from bringing suit against Google says nothing about whether *Kewazinga* had abandoned its claims. Regardless, ████████████████████████████

████████████████████████████ SOF ¶ 123.

The record shows that Google was not misled but, rather, fully expected Kewazinga's renewed patent assertion. And Google's immediate response was gamesmanship—an attempt to conflict Kewazinga's counsel of choice from representing Kewazinga. At a minimum, Google's internal documents create a factual dispute as to whether Kewazinga's abandoning its rights was the "only possible inference" from Kewazinga's conduct. *See Aukerman*, 960 F.2d at 1043-44.

### B. Google Did Not Rely on Any Allegedly Misleading Conduct by Kewazinga

The element of "reliance … is essential to equitable estoppel," which is a significant distinction between equitable estoppel and the now-defunct laches defense. *Aukerman*, 960 F.2d at 1042-43; *see also SCA Hygiene*, 137 S. Ct. at 967. The hallmark of this element is that that an accused infringer must provide evidence demonstrating that it would have changed its conduct but for the patentee's actions—in other words, Google "must show that, in fact, it substantially relied on the [allegedly] misleading conduct of [Kewazinga] *in connection with taking some action*." *Id.* (emphasis added); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) ("Infanti must show that it substantially relied on the misleading conduct of Gasser in taking some action, such as building a plant for producing the infringing product.").

13

The record is clear, however, that Google did not rely on Kewazinga's conduct ████

████████████████████████████████████████████████████████████████

██████████████████████████████ SOF ¶ 83.  Thus, summary judgment in

Kewazinga's favor is appropriate because Google cannot establish this essential element of

equitable estoppel.  *See Novartis*, 271 F.3d at 1046.  At the very least, fact issues remain as to

whether Google **actually** relied on Kewazinga's conduct, or whether Google is merely offering

after-the-fact, litigation-induced speculation about what it may have done.

1.  Google's Investments In Street View Were Not Based On Kewazinga's Conduct But, Rather, Google's Business Considerations

**It is undisputed that none of Google's investments in Street View were due to**

**Kewazinga's conduct**.  Google has readily conceded that it ████████████████████

██████████████████████████████ SOF ¶ 81.  Moreover, Google's 30(b)(6)

witnesses ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ SOF ¶¶ 82, 84.  Even in its brief, Google identifies no change to Street View made or

not made by Google **because** of Kewazinga or its patents.  *See* D.I. 59 at 13-17.  Thus, Google's

post-2013 investments in Street View cannot establish reliance  *Aukerman*, 960 F.3d at 1042-43;

*Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG, 2019 WL 8110046, at *13,

19 (E.D. Tex. Jan. 18, 2019) (rejecting equitable estoppel defense because defendant's

investment in the accused technology "was independent of any action or conduct by Plaintiff"

given that "[n]one of the three [defendant's] engineers … testified that the [asserted patent] in

any way influenced [defendant's] decision to commercialize the [accused technology]").  In

other words, "there is a total absence in the record of any showing by [Google] that its [post-

2013 investments in Street View] were in reliance upon supposed actions of [Kewazinga], rather

14

than a business judgment of its own." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294-95 (Fed. Cir. 1992) (reversing summary judgment of equitable estoppel).

Google goes on at length about investments it made in Street View after 2013 but misses the fundamental point of the "reliance" element.  D.I. 59 at 13-16.  The only investments relevant to equitable estoppel are those made in "substantial[] reli[ance] on the misleading conduct of the patentee."  *Aukerman*, 960 F.3d at 1042-43.  Investments made due to business considerations do not establish reliance. *Hemstreet*, 972 F.2d at 1294-95; *Gasser*, 60 F.3d at 776.

Google first points to its investment in the ▮▮▮▮▮▮▮▮▮▮▮.  *See* D.I. 59 at 14.



▮▮▮▮  SOF ¶ 89; *see also id.* ¶¶ 87, 88.  Google's internal documents show the real reasons for the investment—***all of which are business considerations that have nothing to do with Kewazinga***: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SOF ¶¶ 89-97. Google ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ SOF ¶ 90.

Google also points to its investments in expanding Street View made after the dismissal of the 2013 Action.  D.I. 59 at 14-15.  Again, Google does not even allege that these investments were made ***because of Kewazinga***.  Google has been continuously investing in expanding Street

View since its release in 2007.  SOF ¶¶ 76-78 ("[W]e're thrilled to continue or expansion of Street View."). ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ SOF ¶ 79.

Furthermore, Google's continued investment in Street View is consistent with it being "one of Google Maps' most popular features" by 2009 and ██████████████████████

█████████████  SOF ¶¶ 71, 72.  By 2015, Google recognized Street View to be ████████

███████████████████████████████████████████████████████████

████████████████████████████  SOF ¶ 73.  Indeed, Google recognized Street View to

be ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████  SOF ¶ 74, 75.  The record shows that Google's business decisions were driven by the enormous popularity and profitability of Street View.

Additionally, Google contends that it has never believed that it infringed Kewazinga's patents or that the patents are valid.  SOF ¶ 31.  Whether true or not, the Federal Circuit and district courts have *repeatedly* found that such beliefs at least create an issue of fact as to whether an accused infringer actually relied on the patentee's conduct, precluding summary judgment of equitable estoppel.  *E.g., Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001) (accused infringer's "firm belief from the outset that its product was noninfringing," *inter alia*, warranted summary judgment of no equitable estoppel); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1558 (Fed. Cir. 1996) ("Viewing the evidence in the light most favorable to Hall, as we must, we can only conclude that U.S. Watermattress may have acted due to its belief that the

patent was invalid rather than due to any belief that Hall would not sue under the patent."); *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13CV651 JLS, 2016 WL 4095967, at *6-7 (S.D. Cal. June 28, 2016) (denying summary judgment of equitable estoppel because of a "dispute of fact over whether [accused infringer] would have continued to invest in its [accused technology] based on its noninfringement position" as opposed to a belief that patentee would not sue); *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684, 2016 WL 7052055, at *16 (D. Kan. Dec. 5, 2016) (denying summary judgment of equitable estoppel because of "evidence that [accused infringer's] in-house counsel did not believe that it infringed any patents, which could mean that [accused infringer] relied on that opinion instead of on [patentee's] conduct").

Thus, any implication that Google increased in its investment in Street View ***because of Kewazinga*** is unsupported by the record.  To the contrary, the record shows that Google invested in Street View because of business considerations based on the popularity, profitability, and success of Street View, as well as its importance to Google.  That is why it is unsurprising that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ SOF ¶

83.  ***Google was merely acting on business considerations unrelated to Kewazinga, which cannot constitute reliance for purposes of equitable estoppel.***  *Hemstreet*, 972 F.2d at 1294-95 *Gasser*, 60 F.3d at 776; *see also Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG-JDL, 2017 WL 6268800, at *5 (E.D. Tex. Dec. 8, 2017) (rejecting equitable estoppel defense because accused infringer "did not establish that it sold products, constructed facilities, or took any other action because of statements, silence, or any other conduct by [patentee]" and "[a]t most, [accused infringer] engaged in its ordinary course of business, including building fabs and making products in those facilities").

17

Google's citation to *Aspex Eyewear* is unavailing.  There, it was undisputed that the accused infringer had actually made changes based on the patentee's actions, including withdrawing products from the market that the patentee had accused of infringing other patents. *Aspex Eyewear*, 605 F.3d at 1312.  Thus, there was a basis for the accused infringer's assertion that it could have done the same for the accused product if given notice, especially because that product was new at the time.  *Id.* at 1311-12.  Here, in contrast, Google has not provided evidence that it made ***any*** change to Street View because of Kewazinga, and Google had already established a pattern of continuously investing in Street View prior to the 2013 Action.

Google also baldly asserts that Kewazinga was "well-aware of Google's expansion of Street View" and that Kewazinga knew "Google invested heavily in Street View after the dismissal of the 2013 Action," characterizing Kewazinga as "lying-in-wait."  D.I. 59 at 14-15. This again is a *laches* argument—whether and why Kewazinga delayed in bringing a claim.  *See SCA Hygiene*, 767 F.3d at 1346, 1349-50 (considering reasonableness of delay for laches but not for equitable estoppel).  But in any event, Kewazinga had no actual knowledge of Google's investments in Street View.  SOF ¶ 80.

2.     Google's *Post Hoc* Speculation About Alternatives Contradicts The Record

Unable to point to any investments in Street View made *because of* Kewazinga's conduct, Google resorts to rank speculation—unsupported by any contemporaneous evidence— that it *could* have considered "alternative designs" in 2013.  *See* D.I. 13-16  For several reasons, this litigation-induced, after-the-fact speculation that Google *might* have acted differently is insufficient to sustain an affirmative defense.

*First*, Google has not provided any contemporaneous evidence showing that it ***actually considered*** any purportedly non-infringing "alternative designs" in 2013.  ███████████

████████████████████████████████████████████████████

██████████████████████████   SOF ¶ 82.   Although Google now—in 2020—concocts alleged alternatives (*see* D.I. 62 at ¶ 19), there is no evidence that Google considered any of these alternatives in the relevant time period to show reliance.  Thus, Google's *post hoc* speculation about what it "would have been able to explore" (*see* D.I. 59 at 14-15)—*i.e.*, that Google would have thought about whether to think about hypothetical alternatives—does not show the actual reliance that distinguishes estoppel from laches. *See SCA Hygiene*, 767 F.3d at 1351 (finding that the "[accused infringer] would not have made certain capital investments had it been involved in an earlier lawsuit over those products … may show a nexus for purposes of laches, [but] it does not necessarily establish that [accused infringer] expanded its business after considering the implications of [patentee's] silence").

Even now, Google identifies purported alternatives but provides no evidence about whether those alternatives would be technically feasible, whether they would be acceptable to users and customers, how they would be implemented, when they would be implemented, the costs of implementing them (including opportunity costs), the impact of implementing them on usage of and revenue from Street View and Google Maps, or anything else.  Indeed, Google's only "evidence" as to any of these points is a bare tautology—that the alternatives ██████████

███████████████████████████████████████████████████████████████████

██████████████   *See* D.I. 61 at ¶¶ 19-27.

Further, no competent evidence exists that any purported "alternative" would not also infringe.  Google offers no expert opinion, no comparison of the purported alternatives to the claim limitations, and no technical testimony.  Google's hearsay from outside counsel pitching potential litigation strategies, or self-serving *ipse dixit* of its in-house counsel, is neither admissible nor persuasive.  *See* D.I. 62 at ¶ 19.  And Google's argument that it could have

offshored its operations ignores 35 U.S.C. § 271(g)—if Google used Kewazinga's patents abroad and imported the results back into the U.S., that would still infringe U.S. patents.

Although Google need not "prove precisely what alternative paths it would have taken" (*see* D.I. 59 at 16 (quoting *Aspex Eyewear*, 605 F.3d at 1312)), Google has provided nothing but conclusory assertions that it could have (as a technical matter) or would have (as an economic matter) implemented any alternative, and that such alternative would not be infringing.  This falls far short of Google's burden. *See Meyers*, 974 F.2d at 1309.  These conclusory assertions, at most, create a factual dispute as to whether implementation of any alternative was likely and feasible, a dispute Google cannot win with its lack of any contemporaneous evidence.  *See Sprint Commc'ns*, 2016 WL 7052055, at *16 ("[T]he Court concludes that the likelihood and feasibility of defendants pursuing other alternatives present questions of fact concerning whether defendants relied to their detriment…"); *Aadventure Prod., Inc. v. Simply Smashing, Inc.*, No. 07CV499 BTM(AJB), 2007 WL 2775128, at *5 (S.D. Cal. Sept. 20, 2007) (denying summary judgment of equitable estoppel because accused infringer's "post hoc conclusory statements" that it would have acted differently but for patentee's conduct were insufficient); *see also Gasser*, 60 F.3d at 776 (finding conclusory assertions that accused infringer "would have acted differently under other circumstances" to be insufficient to establish "reliance").

*Second*, Google's conclusory assertions and speculation that it *might* have considered alternatives if it perceived a patent threat are **contradicted by Google's actual practices.** Although Google ███████████████████████████████████████████████████ ████████████████████████████████████████████ SOF ¶¶ 28, 29.  While being on notice of Kewazinga's assertion for at least eight months between March 2013 and November 2013, Google still did not make or consider any changes to Street View.  SOF ¶ 85.  Google's

failure to ███████████████████████████████████ belies its story that it might have made changes if given another chance in 2013.  *See Kaist IP*, 2019 WL 8110046, at *19 (finding that defendants failed to establish reliance because they "declined to make non-infringing design changes to the [accused technology] even after [plaintiff's predecessors] approached them about licensing the patent, despite the fact that there was an opportunity to influence the shape of the source and drain regions on the device").  Moreover, ████████

████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████ SOF ¶¶ 87, 88.  Google did not ████████████████████████████████████████—Google cannot credibly argue that anything in 2013 somehow changed the path Google had already chosen.

As to Google's 2020 proposed alternatives, ██████████████████████████████████

████████████████████████████████████████████████████

███████  SOF ¶¶ 98-109.  For example, Google relies on an alleged alternative of deactivating the transition effect when a user moves from one panorama to another (*see* D.I. 63 at ¶ 60) but disregards that the change was never made despite requests for it for over two years.  SOF ¶ 102; *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV1200329AGJPRX, 2014 WL 12587050, at *8 (C.D. Cal. Dec. 16, 2014) ("Defendant offers hypotheticals about what it might have done had Plaintiff sued earlier.  It could have omitted accused features. … But Defendant did not show that it omitted any accused features after Plaintiff's 2010 and 2011 letters.").

*Third*, Google's recognition of the importance and popularity of Street View, detailed above, belies its speculation that it would have made changes to Street View or its investment therein, or that it would have made commercial sense for Google to do so.  *See supra* at § IV.B.1.

3.　　Google's Alleged Reliance In "Shutting Down Its Legal Machinery" Was
Not Based On Kewazinga's Allegedly Misleading Conduct

Google did not ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████  SOF ¶¶ 28, 29, 82.　If Kewazinga had not filed suit and then dismissed it without

prejudice in 2013, Google would never have engaged its alleged "legal machinery" at all, *i.e.*,

Google would be in the same position today, and is not prejudiced from what happened in 2013.

Google's "legal machinery" appears to comprise ███████████████████████

███████████████████████████████████████████████████████████████████

███████　*See* D.I. 59 at 12.　The ████████████████████████████████

███████████████████████████████████████████████████████  SOF

¶ 86.　████████████████████████████████████████████████████

████████████████████████████████████████████████████  *Id*.　████

███████████████████████████████████████████████████████████████████

███████████████████████████  *Id*.　Heavy machinery indeed.

Once the litigation was dismissed, the "legal machinery" allegedly shut down, regardless

of the fact that the dismissal was "<u>without</u> prejudice" and that Kewazinga had expressly

reaffirmed its infringement allegation and its intention to seek additional patents to better show

Google's infringement (*see supra* at § IV.A.1).　*See* D.I. 59 at 11-13.　Thus, the "legal

machinery" was just the mechanics of going through litigation—not a business evaluation of the

risk of future litigation.　Google offers no evidence that it "shut[] down its legal machinery"

because of Kewazinga's purported "delay" and "silence."　*See id*.　Because the decision was not

based on being "misled," it cannot support equitable estoppel.　*Aukerman*, 960 F.2d at 1042-43.

Moreover, as explained further below, the record proves that 



*See infra* at § IV.C.1. This is

hardly evidence that Google thought it was free to infringe—

SOF ¶ 56.                                    is hardly the type

of "reliance" or "prejudice" that could support equitable estoppel—Google offers no case that

has ever excused infringement on this basis.  In any event, Google's decision to "shut[] down its

legal machinery" did not result in prejudice to Google, as explained below.  *See infra* at § IV.C.

### C.   Google Has Not Suffered Any Material Prejudice Caused by Reliance on Kewazinga's Conduct

Even if Google had relied on purportedly misleading conduct by Kewazinga—which it

did not—Google cannot demonstrate any prejudice **caused by** such reliance. *See SCA Hygiene*,

767 F.3d at 1350–51.  "There is a difference between prejudice that results from a patentee's

alleged misrepresentation and prejudice caused by reliance upon it . . .  the former is sufficient to

show a nexus for laches, the latter is required to show reliance for equitable estoppel." *Id*. at

1350; *see also Lear Corp. v. NHK Spring Co., LTD*, No. 18-10613, 2019 WL 934811, at *5

(E.D. Mich. Feb. 26, 2019) ("[T]he asserted prejudice must stem from the reliance.") (citing *SCA

Hygiene*, 767 F.3d at 1350). This is because "[t]he accused infringer must show that, in fact, it

substantially relied on the misleading conduct of the patentee **in connection with taking some

action**." *Id.* at 1350-51 (quoting *Aukerman*, 960 F.2d at 1042-43) (emphasis added). Google

cannot meet this standard for either evidentiary or economic prejudice.

1.    <u>Google Has Not Suffered Any Evidentiary Prejudice Caused By Any Reliance</u>

Google cannot show material evidentiary prejudice caused by its purported reliance on allegedly misleading actions.   As its 30(b)(6) witness testified, ███████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

SOF ¶¶ 62, 63.  And Google ███████████████████████████████

███████████████████████████████████████   SOF ¶ 64.   This is

unsurprising given that ████████████████████████████████████

██████████████████████   SOF ¶ 65.

When pressed, Mr. Sherwood ████████████████████████████████

████████████████████████████████████████

████████   SOF ¶ 64.  Mere speculation that documents may have been lost is insufficient to meet Google's burden.  *See Eidos Display*, 2017 WL 6268800, at *6 ("Innolux's assertion that documents which might have existed no longer do, coupled with its conclusory arguments about a 'loss of evidence,' does not carry its burden to establish prejudice.") (internal citations omitted).  Google failed to identity any other allegedly "lost" documents.

Google suggests that the memories of individuals have purportedly faded and that employees have left Google since 2013 to argue evidentiary prejudice.  *See* D.I. 59 at 20-21.  But again this attempts to bootstrap laches into an equitable estoppel defense—none of this amounts to a specific showing that any such loss of evidence was *caused by* Google's alleged reliance on

24

Kewazinga's conduct.  *See Eidos Display*, 2017 WL 6268800, at *6 (finding no evidentiary prejudice "because Innolux did not show that the evidence it believed might exist would have been available if this lawsuit had been filed before 2011.  Likewise, the naked possibility that witnesses who might be relevant are not available is not sufficient evidence of prejudice where, as here, the defendant does not show that it was unable to locate or procure testimony from these witnesses.  *Lear*, 2019 WL 934811, at *6 ("Defendants have at most shown that they no longer have relevant evidence due to the passage of time. But Defendants need to show that they no longer have relevant evidence because of their response to Lear's indication that they would not be sued. Defendants' evidentiary prejudice argument seems to conflate laches with equitable estoppel."). ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ SOF ¶¶ 66, 67. Further, Google has not contended that its former employees are now unavailable, likely ████████████████████████████████████ SOF ¶ 68.

Google's suggestion that former Kewazinga inventor Andrew Weber's death in 2014 constitutes material prejudice to Google is equally unavailing. Any prejudice resulting from Mr. Weber's death was not caused by Google's "response to [Kewazinga's] indication that they would not be sued," but an independent event outside of either party's control, which is insufficient for equitable estoppel. *Lear*, 2019 WL 934811, at *6 (finding that death of allegedly material witness did not establish evidentiary prejudice for equitable estoppel).

2.     Google Has Not Suffered Any Economic Prejudice Caused By Any Reliance

Similarly, Google cannot demonstrate any economic prejudice resulting from any alleged reliance on Kewazinga's conduct, as Google would have made the same investments in Street View anyway due to its value to the company. *Kaist IP*, 2019 WL 8110046, at *19 ("The Court concludes that Defendants did not establish that they suffered any economic prejudice or harm.

Defendants would have made the same economic investments . . . regardless of the conduct of Plaintiff . . .").  The evidence indisputably shows that Google's investments in Street View were made due to its own business considerations (*see supra* at § IV.B.1)—not because of Kewazinga—meaning they do not establish reliance for purposes of equitable estoppel and, thus, cannot establish prejudice ***caused by*** such reliance.  *See SCA Hygiene*, 767 F.3d at 1350.

Moreover, the nature of the case and present state of the (now-expired) patents-in-suit further indicates that Google has not suffered material prejudice from reliance on Kewazinga's actions. For example, the damages period is *shorter* because Kewazinga is entitled to collect damages only from six years prior to filing of the suit—and the patents expired approximately a year prior to filing the suit, further reducing the damages period to approximately five years. *See* 35 U.S.C. § 286 (limiting patent damages to six years prior to the complaint). Had Kewazinga continued pursuing the 2013 Action, Kewazinga would be entitled to damages since 2007. Google, in essence, got six years of free infringement—a boon rather than prejudice.

Additionally, Kewazinga is seeking reasonable royalty damages, not lost profits.  SOF ¶ 124.  Assessing reasonable royalty damages requires a careful analysis that duly accounts for any alleged non-infringing alternatives and the relative bargaining positions of the parties. *See, e.g., Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770-71 (Fed. Cir. 2014) (in determining a reasonable royalty, "the core economic question is what the infringer . . . would have anticipated the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives"). This analysis obviates the concerns Google raises regarding the potential for it to have charted a course that did not involve the infringing Street View feature; the damages owed to Kewazinga would be based on the royalty rate Google would be willing to pay to license the patents-in-suit, in full view of any potential viable alternatives.

Google's contention that it might have filed a declaratory judgment lawsuit is irrelevant. There was no bar to Google filing a declaratory judgment action after 2013, and Google had ███████████████████████████ without choosing to seek a declaratory judgment.  SOF ¶ 69.  Similarly, Google's assertion that it might have filed petitions for *inter partes* review of Kewazinga's patents is irrelevant—Google remains free to do so, and chose to ignore its outside counsel's proposal to file one in 2013 before any alleged misleading conduct.  SOF ¶¶ 70, 86.

### D.    Google's Unclean Hands Bars the Application of Equitable Estoppel

Google will not be able to establish the elements required to prove equitable estoppel. But even if it could, Google's unclean hands preclude equitable relief. At a minimum, Google's misconduct is an issue of fact that precludes summary judgment. *See Aukerman*, 960 F.2d at 1043-44 (reversing summary judgment of equitable estoppel because the trial court failed to properly consider the patentee's evidence that the accused infringer "copied" its invention).

For years, Google has abused Kewazinga's disclosures and misappropriated its ideas and technology. There is no dispute that Kewazinga identified its patents as well as other confidential and proprietary technology and business ideas to Google in the 2005-2006 time period.  SOF ¶¶ 13-15, 19-27. At no time has Kewazinga provided Google with permission to use any of its confidential information, technology or patented inventions. But the record evidence supports only one conclusion—Google incorporated ideas and technology from Kewazinga's confidential disclosures into Street View. For example, Kewazinga disclosed to Google technology and concepts for smoothing transitions as a user moves from one view to another, including by tweening, which are used in Street View.  SOF ¶¶ 26, 45. Further, Google used and incorporated additional concepts disclosed by Kewazinga in Street View including, for example, the inclusion of Street View in Google Earth, the capture of imagery using cameras mounted on boats, and the inclusion of navigation of interiors (*e.g.*, museums) in Street View. SOF ¶¶ 20, 22, 40, 43, 44.

None of Google's produced documents—including documents related to Google's "Cityblock" project with Stanford—demonstrate that Google had any of these ideas prior to Kewazinga's disclosure of them to Google.  SOF ¶ 35.

And Google knew this technology was patented.  SOF ¶¶ 14, 27, 28, 46, 47, 50.  Google now alleges that work it did on the "Cityblock" project shows it does not have unclean hands (*see* D.I. 59 at 22)—which is incorrect, as explained above—but at a minimum Google did not disclose that it was working on a competing project while it knowingly accepted and encouraged Kewazinga to disclose proprietary and confidential information.  SOF ¶¶ 15-18, 33.

Google's behavior supports a finding of willful infringement, which requires conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Even if Google was merely willfully blind to Kewazinga's patents, copying technology that Kewazinga informed Google was subject to patents—███████████████████████ ███████ (SOF ¶¶ 28, 29)—without evaluating the patents at issue is flagrant and deliberate misconduct. Accordingly, Google's willful infringement of Kewazinga's patents, as well as its unpermitted use of and improper coaxing of Kewazinga's confidential and proprietary information constitute unclean hands that preclude equitable estoppel.



In addition, Google's efforts to ████████████████████████████ ████████████████████████████████████ *See supra* at § VI.A.2. ██████████ ███████████████████████████████████████████ SOF ¶¶ 113, 114 ████████████ ████████████. Google engaged in gleeful gamesmanship in its ███████████ ██████████████████████████████████████████ as a sword

against Kewazinga—even though it now claims that Kewazinga's 2013 actions were so misleading as to lead Google to rely on them unthinkingly.

Even now, Google's summary judgment papers evince its bad faith approach to Kewazinga; Google's filings are littered with violations of confidentiality agreements and in contravention of Federal Rule of Evidence 408. In particular, Google cites documents and communications exchanged in connection with the 2013 Action and subject to an explicit agreement that ███████████████████████████████████████████████████████

████████████████████████████████ *See, e.g.*, D.I. 63 ¶¶ 19-21; SOF ¶ 51. Google also relies on FRE 408 communications exchanged in connection with this very litigation—albeit by blatantly misconstruing its own declarant's statement that Kewazinga's counsel indicated it was

███████████████████████████████████████████████████████████████████████

████████████████████████████ D.I. 63 ¶ 85 (citing D.I. 62 ¶ 33).

Google's own conduct in connection with its infringement—pirating Kewazinga's technology, attempting to use unrelated litigation to disqualify Kewazinga's counsel of choice, and violating confidentiality agreements and the protections of FRE 408 to try to use Kewazinga's good-faith settlement discussions against itself—comprise the very type of unclean hands that forfeit the equitable relief which Google now demands.

### E.    Equitable Estoppel Cannot Apply to the '234 Patent

Google's attempt to attach equitable estoppel to the '234 patent—which issued in 2015— flies in the face of Federal Circuit precedent. *See Radio Systems Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013). In *Radio Systems*, the Federal Circuit found that it was an abuse of discretion to apply equitable estoppel to a later-issued, related patent, even if the later-issued patent claimed priority to the parent patent, because "[q]uite simply, the [later-issued patent's] claims could not have been asserted . . . until those claims issued." *Id.* at 1131. Similarly, here,

the '234 patent issued in 2015, and the application that led to it was not even filed until 2014—a

year *after* Kewazinga dismissed without prejudice the 2013 Action against Google.

The pending continuation Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in 2013 did not

lead to the '234 patent.  *Compare* D.I. 59 at 8 *with* D.I. 63 at ¶¶ 25-26.  Neither the '234 patent

nor the application that led to it existed in 2013; the claims of the '234 patent simply "could not

have been asserted" against Google until two years *after* any allegedly misleading conduct. SOF

¶ 59; *see also id.* ¶¶ 60, 61.  Accordingly, any equitable estoppel Google enjoys with respect to

the '325 and '226 patents cannot apply to the '234 patent.

And Google's invocation of *John Bean Techs. Corp. v. Morris & Assocs., Inc.* in support

of its argument is unavailing. 887 F.3d 1322, 1328 (Fed. Cir. 2018). The  Federal Circuit in *John*

*Bean* drives home the point: "the defense of equitable estoppel *does not apply to pending claims*

. . . [C]laims that have not issued cannot be asserted, and therefore no misleading conduct or

silence could be present." *Id.* (emphasis added). Accordingly, "for claims that have not issued,

there is no case or controversy and therefore the elements of equitable estoppel are not present.

*Id.* (internal quotes omitted). Here, because the asserted claims did not exist in 2013, Kewazinga

"could not have engaged in misleading conduct or silence with respect to those claims." *Id.*

Google appears to suggest that this case meets *John Bean*'s hypothetical speculation that

some claims that emerge from *reexamination*—a Patent Office procedure to alter existing patents

that did not occur here—might be so similar to the original claims so as to be "identical for

purposes of infringement, and consequently, for purposes of applying equitable estoppel." *Id.*

Reexamination is a Patent Office procedure whereby a given patent is reexamined and, in some

cases, amended.  It is distinct from a continuation application, which leads to a *separate* patent

with *separate* claims and scope. By law, a continuation patent, like the '234 patent, cannot claim the same invention as a prior patent, which is the opposite of reexamination.

Google cites no authority to apply equitable estoppel to a continuation patent. The mere fact that a terminal disclaimer was filed in the prosecution that led to the '234 patent is inapposite. D.I. 59 at 9. A terminal disclaimer is a procedural filing available to the patentee to secure issuance of claims; it does not give rise to a presumption that a patent subject to a terminal disclaimer is patentably indistinct from its parent patents. *See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc*., 473 F.3d 1173, 1184 n.4 (Fed. Cir. 2006) ("[T]he filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection."). Google has performed no analysis to establish that the claims of the '234 patent are directed to the same invention as the claims of the '325 and '226 patents, and certainly has not done so with an eye to the hypothetical situation hinted at by the Federal Circuit in *John Bean*.  The only Federal Circuit cases on point refused to apply equitable estoppel to continuation patents, with *Radio Systems* labelling such application an abuse of discretion—no authority has ever held a contrary result.

## VI.    **CONCLUSION**

For the foregoing reasons, the Court should deny Google's motion for summary judgment of equitable estoppel and grant Kewazinga's motion for summary judgment.


Dated: New York, New York                          Respectfully submitted,
      July 29, 2020
                                            **STROOCK & STROOCK & LAVAN LLP**


                                          */s/ Ian G. DiBernardo*
                                          Ian G. DiBernardo
                                          Timonty K. Gilman
                                          Kenneth L. Stein
                                          Saunak K. Desai
                                          Gregory R. Springsted
                                          **STROOCK & STROOCK & LAVAN LLP**
                                          180 Maiden Lane
                                          New York, NY 10038
                                          Tel: (212) 806-5400
                                          Fax: (212) 806-6006
                                          Email:  idibernardo@stroock.com
                                          Email:  tgilman@stroock.com
                                          Email:  kstein@stroock.com
                                          Email:  sdesai@stroock.com
                                          Email:  gspringsted@stroock.com

                                          *Attorneys for Plaintiff Kewazinga Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2020 I caused a true and correct copy of the

**KEWAZINGA'S OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL, AND MEMORANDUM OF LAW IN SUPPORT OF KEWAZINGA'S CROSS-MOTION FOR SUMMARY JUDGMENT** to be served in accordance with the Federal Rules of Civil Procedure, and/or the Local Rules of this Court, upon the following parties and participants, *via* email:

> John Michael Desmarais
> Elizabeth Esther Weyl
> Steven Marc Balcof
> David A. Frey
> DESMARAIS LLP
> 230 Park Avenue
> New York, NY 10169
> Tel: (212)−351−3400
> Fax: (212)−351−3401
> Email: jdesmarais@desmaraisllp.com
> Email: eweyl@dllp.com
> Email: sbalcof@dllp.com
> Email: dfrey@desmaraisllp.com
>
> Ameet A. Modi
> Emily Chen (*Pro Hac Vice*)
> DESMARAIS LLP
> 101 California St.
> San Francisco, CA 94111
> Tel: (415) 573−1806
> Email: amodi@desmaraisllp.com
> Email: echen@desmaraisllp.com
>
> *Attorneys for Defendant Google LLC*

*s/ Saunak K. Desai*
Saunak K. Desai