# Exhibit 5

CONFIDENTIAL

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   Case No. 1:20-cv-01106
     - - - - - - - - - - - - - - - - - -x
 4   KEWAZINGA CORP.,                    :
                                         :
 5                       Plaintiff,      :
                                         :
 6            - vs -                     :
                                         :
 7   GOOGLE LLC,                         :
                                         :
 8                       Defendant.      :
     - - - - - - - - - - - - - - - - - -x
 9
10
                                June 10, 2020
11                              10:57 a.m.
                                Jupiter, Florida
12
13
14
15
16              ***CONFIDENTIAL***
17
18
19
20         VIDEOTAPED VIRTUAL DEPOSITION UPON
21   ORAL EXAMINATION OF LEONARD SMALHEISER, held at
22   the above-mentioned time and place, before Randi
23   Friedman, a Registered Professional Reporter,
24   within and for the State of New York.
25   Job No. CS4135135
```

Page 2

1       L. Smalheiser - CONFIDENTIAL
2   APPEARANCES:
3
        STROOCK & STROOCK & LAVAN, LLP
4       Attorneys for Plaintiff
5       180 Maiden Lane
        New York, New York 10038
6
        BY:  SAUNAK K. DESAI, ESQ.
7            IAN G. DiBERNARDO, ESQ.
8
9       DESMARAIS, LLP
        Attorneys for Defendant
10
        230 Park Avenue
11      New York, New York 10169
12      BY:  ELIZABETH WEYL, ESQ.
             JOHN M. DESMARAIS, ESQ.
13           STEVEN M. BALCOF, ESQ.
             DAVID A. FREY, ESQ.
14
             * * *
15
16
17
18
19
20  ALSO PRESENT:
21      Marcelo Rivera - Videographer
22
23
24
25

Page 3

1       L. Smalheiser - CONFIDENTIAL
2           STIPULATIONS
3       IT IS HEREBY STIPULATED, by and between
4   the attorneys for the respective parties hereto,
5   that:
6       All rights provided by the C.P.L.R.,
7   and Part 221 of the Uniform Rules for the Conduct
8   of Depositions, including the right to object to
9   any question, except as to the form, or to move
10  to strike any testimony at this examination is
11  reserved; and in addition, the failure to object
12  to any question or to move to strike any
13  testimony at this examination shall not be a bar
14  or a waiver to make such motion at, and is
15  reserved to, the time of this action.
16      This deposition may be sworn to by the
17  witness being examined before a Notary Public
18  other than the Notary Public before whom this
19  examination was begun, but the failure to do so
20  or to return the original of this deposition to
21  counsel, shall not be deemed a waiver or the
22  rights provided by Rule 3116, C.P.L.R., and shall
23  be controlled thereby.
24      The filing of the original of this
25  deposition is waived.

Page 4

1       L. Smalheiser - CONFIDENTIAL
2       MR. VIDEOGRAPHER:  Good morning.
3   We're going on the record at 10:57 a m. on
4   June 10th, 2020, and this deposition is
5   being taken remotely of Mr. Leonard
6   Smalheiser in the matter, Kewazinga Corp.
7   versus Google, LLC.
8       My name is Marcelo Rivera from the
9   firm, Veritext Legal Solutions, and I am the
10  videographer.  The court reporter is Randi
11  Friedman in association with Veritext Legal
12  Solutions.  I am not related to any party in
13  this action, nor am I financially interested
14  in the outcome.
15      Counsel and all present remotely
16  will now state their appearance and
17  affiliations for the record.  If there are
18  any objections to proceeding, please state
19  them at the time of your appearance,
20  beginning with noticing attorney.
21      MS. WEYL:  This is Elizabeth Weyl
22  from Desmarais, LLP representing Google LLC.
23  And on the line with me, but will not be
24  participating in the deposition is Steven
25  Balcof, John Desmarais and David Frey.

Page 5

1       L. Smalheiser - CONFIDENTIAL
2       MR. DESAI:  On behalf of
3   plaintiff, Kewazinga Corp., this is Saunak
4   Desai of Stroock & Stroock & Lavan.  And
5   with me on the line is Ian DiBernardo, also
6   from Stroock & Stroock & Lavan.
7       MR. VIDEOGRAPHER:  Will the court
8   reporter please swear in the witness.
9           * * *
10      LEONARD SMALHEISER, the witness
11  herein, after first having been duly sworn,
12  was examined and testified as follows:
13          * * *
14      MR. VIDEOGRAPHER:  You may
15  proceed, counsel.
16      MS. WEYL:  Thank you.
17          EXAMINATION
18  BY MS. WEYL:
19      Q    Good morning, Mr. Smalheiser.  My name
20  is Elizabeth Weyl and I'll be taking your
21  deposition today.
22      Can you please state your full name
23  for the record?
24      A    My full name is Leonard Smalheiser.
25      Q    And where are you located, Mr.

2 (Pages 2 - 5)

CONFIDENTIAL

Page 30

1        L. Smalheiser - CONFIDENTIAL
2     A  ████████████████████████████
████████████████████████████████████
████████████
█ ████████████████████████████████
█ ████████████████████████████████
█ ████████████████████
█ ████████████████████████████
█ ████████████████████████████
10           MR. DESAI:  Objection, form.
11   BY MS. WEYL:
12     █ ████████████████
13           MR. DESAI:  Same objection.
14   ████████████████████████████
█ ████████████████████████████████
█ ████████████████████████████████
█ ████████████████████████████████
█ ████████████████████████
19   BY MS. WEYL:
20     █ ████████████████████████
█ ████████████████████████
22           MR. DESAI:  Objection to form.
23   ████████████████████████████████
████████████████████████████████████
█ ██████████

Page 31

1        L. Smalheiser - CONFIDENTIAL
2   BY MS. WEYL:
3     Q    Would all of Kewazinga's patents be
4   included in this licensing demand?
5           MR. DESAI:  Objection to form.
6           THE WITNESS:  This was a very
7     informal conversation, and I'm not sure that
8     any specificity was associated with that
9     number and what it represented.
10  BY MS. WEYL:
11    Q    But the licensing demand would include
12  at least the '325 and the '226 patents; correct?
13    A    As mentioned, this was a very general
14  conversation, and there were no details discussed
15  or explored about what that number would
16  represent.
17    Q    This meeting was during the 2013
18  litigation that Kewazinga brought against Google;
19  is that correct?
20    A    That is correct.
21    Q    And so this settlement demand would be
22  related to resolving Kewazinga's claims against
23  Google in 2013; is that correct?
24          MR. DESAI:  Objection to form.
25          THE WITNESS:  Could you please

Page 32

1        L. Smalheiser - CONFIDENTIAL
2     restate that question?
3   BY MS. WEYL:
4     Q    In that in-person meeting, one of the
5   goals of that meeting was to resolve Kewazinga's
6   claims against Google; is that correct?
7           MR. DESAI:  Objection to form.
8           THE WITNESS:  That is correct.
9   BY MS. WEYL:
10    Q    And the licensing demand that
11  Kewazinga made in that meeting would have been
12  geared towards at least resolving the patents
13  that Kewazinga asserted against Google in 2013;
14  is that correct?
15          MR. DESAI:  Same objection.
16          THE WITNESS:  That is correct,
17    without any discussion about exactly what
18    that amount of money might provide Google in
19    terms of licensing.
20  BY MS. WEYL:
21    Q    And it was your impression that a
22  license from Kewazinga to Google would cover all
23  patents that were issued to Kewazinga in the
24  future; correct?
25          MR. DESAI:  Objection to form.

Page 33

1        L. Smalheiser - CONFIDENTIAL
2           THE WITNESS:  No, that's not
3     correct.
4   BY MS. WEYL:
5     █ ████████████████████████████
█ ████████████████████████████████
█ ████████████████████████████
8           MR. DESAI:  Objection to form.
9     That mischaracterizes prior testimony.
10  ████████████████████████████
█ ████████████████████████████
█ ████████████████████████████████
█ ████████████████████████████
█ ████████████████████████████
█ ████████████
16  BY MS. WEYL:
17    █ ████████████████████████████
████████████████████████████████████
█ ████████████████████████
20          MR. DESAI:  Objection to form.
21  ████████████████████████████████
████████████████████████████████
█ ██████████
24  BY MS. WEYL:
25    Q  ████████████████████████

Veritext Legal Solutions
800-567-8658                                              973-410-4098

Page 54

1       L. Smalheiser - CONFIDENTIAL
2   BY MS. WEYL:
3       Q    But you understand that Google does
4   invest in Street View; is that correct?
5           MR. DESAI:  Objection to form.
6           THE WITNESS:  I can only assume
7       that they are, because I don't have access
8       to metrics that tell me that they are.
9   BY MS. WEYL:
10      Q    So based on your understanding of --
11  without needing to consider any metrics about
12  Street View, what is your understanding of the
13  amount of resources that Google has devoted to
14  Street View from 2013 to 2020?
15          MR. DESAI:  Objection to form.
16          THE WITNESS:  I could not begin to
17      tell you what that amount of money or what
18      that number is.  I don't know.
19  BY MS. WEYL:
20      Q    But you are aware that Google invested
21  in its Street View service between the years of
22  2013 and 2020; is that correct?
23          MR. DESAI:  Same objection.
24          THE WITNESS:  I'm sorry.  There
25      was an unavoidable noise outside my location

Page 55

1       L. Smalheiser - CONFIDENTIAL
2       and I didn't want everyone to have to hear
3       it.
4   BY MS. WEYL:
5       Q    No problem at all.
6           So you were aware that Google invested
7   in its Street View service between the years of
8   2013 and 2020; is that correct?
9           MR. DESAI:  Objection to form.
10          THE WITNESS:  I cannot quantify
11      whether or not Google spent money on Street
12      View in between those years or how much they
13      might have spent.
14  BY MS. WEYL:
15      Q    But you understand that Google --
16  strike that.
17          So you have no understanding of
18  whether Google invested any resources in the
19  Street View service between 2013 and 2020; is
20  that correct?
21          MR. DESAI:  Objection to form.
22          THE WITNESS:  As mentioned, I
23      can't quantify the amount of money that
24      Google spent in between those years or if
25      they spent that money.  I can't put a number

Page 56

1       L. Smalheiser - CONFIDENTIAL
2       on it.  I don't know.
3   BY MS. WEYL:
4       Q    But you're aware that Google continued
5   to provide its Street View service at least
6   between the years of 2013 and 2020; is that
7   correct?
8       A    I believe that they continued to
9   provide that service, to the best of my
10  knowledge.
11      Q    And you're aware that between the
12  years of 2013 and 2020, Google expanded its
13  coverage of the Street View service?
14          MR. DESAI:  Objection to form.
15          THE WITNESS:  I don't know
16      specifically how Google's coverage changed
17      in between those years.
18  BY MS. WEYL:
19      Q    In 2013, did you understand that
20  Google's Street View service was an important
21  feature to Google's products?
22          MR. DESAI:  Objection to form.
23          THE WITNESS:  It was my assumption
24      that it was an important asset for Google.
25

Page 57

1       L. Smalheiser - CONFIDENTIAL
2   BY MS. WEYL:
3       Q    And do you understand that after the
4   2013 litigation was dismissed, Google continued
5   to use its Street View service; is that right?
6       A    I believe that Google did provide
7   their Street View service after that case was
8   dismissed without prejudice.
9       Q    And in 2014, Google provided its
10  Street View service to users; is that correct?
11      A    I could not say definitively that it
12  did.  It would be an assumption that it did, but
13  I don't follow such matters.
14      Q    Did you use Google Street View service
15  in 2014?
16      A    I may have.  I can't be certain.
17      Q    Did you use Google Street View service
18  in 2015?
19      A    I may have.  I can't be certain.
20      Q    Were you aware that Google's Street
21  View service was still being offered in 2015?
22      A    I had no reason to not believe it was
23  still being offered.  I just can't be certain
24  because I have not made notes about my Google
25  Street View usage.

15 (Pages 54 - 57)

CONFIDENTIAL

Page 70

L. Smalheiser - CONFIDENTIAL
BY MS. WEYL:
Q   What was the purpose of these documents?
A   The purpose of these documents were to try to determine the level of interest by other companies in Kewazinga's -- in Kewazinga's products.
Q   How were these other companies identified?
    MR. DESAI:  Objection to form.
    THE WITNESS:  I'm sorry.  I need to ask you to clarify that last question.
BY MS. WEYL:
Q   Certainly.
    You stated that you worked on drafting documents for the purpose of trying to determine the level of interest by other companies in Kewazinga's products.
    My question is, how did you identify what companies to contact?
    MR. DESAI:  Objection to form, and to the extent it mischaracterizes prior testimony.
    THE WITNESS:  As a clarification,

Page 71

L. Smalheiser - CONFIDENTIAL
I didn't say I drafted the documents.  I said I contributed to the drafting of the documents.  And in terms of identifying which companies, which I think is what your question is, we, as a group, were trying to look for companies where there would be some synergy between what the companies offered or might want to offer, and what Kewazinga had to offer.
BY MS. WEYL:
Q   What companies have you identified as potential companies that could provide synergy with Kewazinga?
    MR. DESAI:  Objection to form.
    THE WITNESS:  I think I need you to clarify that question, please.
BY MS. WEYL:
Q   Did Kewazinga contact any other companies that it wanted to form a partnership with?
    MR. DESAI:  Objection to form.
    THE WITNESS:  I believe it did make contact, yes.

Page 72

L. Smalheiser - CONFIDENTIAL
BY MS. WEYL:
Q   And what companies did Kewazinga contact?
    MR. DESAI:  Same objection.
    THE WITNESS:  I can't recall the names of the companies that were contacted at that time, except for maybe a couple.
BY MS. WEYL:
Q   And what companies were those that you can recall?
A   The companies that come to mind include Google and Microsoft.  I believe Cisco.  And maybe Verizon.  And there may be others, but I can't recall them as I sit here today.
Q   Do you recall what companies Kewazinga contacted in the 2005 and 2006 timeframe?
    MR. DESAI:  Objection to form.
    THE WITNESS:  I believe Kewazinga -- I'm sorry.  Let me answer the question.  Yes, I have a general recollection, but I don't remember all of them.
BY MS. WEYL:
Q   Did Kewazinga contact Google in the

Page 73

L. Smalheiser - CONFIDENTIAL
2005 and 2006 timeframe?
A   Yes, I believe that is correct.
Q   And why did Kewazinga contact Google in the 2005 and 2006 timeframe?
A   I believe Kewazinga thought that Google could -- would be interested in and could benefit from Kewazinga's technology.
Q   Did Kewazinga contact Microsoft in the 2005 and 2006 timeframe?
A   I can't be certain about 2005, but I believe they were contacted by Kewazinga in the 2006 timeframe.
Q   Why did Kewazinga contact Microsoft in the 2006 timeframe?
A   I believe that Kewazinga thought that Microsoft might benefit from Kewazinga's technology.
Q   Did Kewazinga contact Cisco in the 2005/2006 timeframe?
A   I can't be certain of the date when Kewazinga contacted Cisco.
Q   Do you have a general timeframe of when Kewazinga contacted Cisco?
A   Unfortunately, no, I don't.  I don't

Page 186

1  L. Smalheiser - CONFIDENTIAL
2  confidential.
3  BY MS. WEYL:
4  Q   Just stepping back a couple of
5  questions, you had noted that this document has
6  "Confidential- Not for dissemination" on the
7  bottom; right?
8  A   I do see that.
9  Q   So if you -- if Kewazinga provided a
10 document to Google that contained confidential
11 information, it would have been marked
12 confidential; is that correct?
13      MR. DESAI:  Objection to form.
14      THE WITNESS:  I'm not sure that
15 that's necessarily correct.  Sometimes when
16 you've developed a relationship with a
17 company and the company is expressing
18 interest in receiving more documents,
19 there's an element of trust that gets
20 created.  It's possible that not every
21 document is marked in that manner, but I do
22 recall many of these documents being marked
23 in that manner.  And I think that it's very
24 clear that we were presenting
25 forward-looking concepts and business

Page 187

1  L. Smalheiser - CONFIDENTIAL
2  opportunities that we would never share with
3  a competitor.
4  BY MS. WEYL:
5  Q   Did Kewazinga have a Non-Disclosure
6  Agreement with Google?
7      MR. DESAI:  Objection to form.
8      THE WITNESS:  I -- as I sit here,
9  I don't recall if there was an NDA.  There
10 may not have been, but I don't remember.
11 BY MS. WEYL:
12 Q   Did Kewazinga have Non-Disclosure
13 Agreements with other companies it was talking to
14 in the 2005 and 2006 timeframe?
15 A   As I --
16      MR. DESAI:  Objection.
17      THE WITNESS:  Sorry.  We have some
18 latency here.
19      MR. DESAI:  Objection to form.
20 I'll just note that the prior question
21 didn't have the 2005/2006 timeframe point in
22 it.  Go ahead.  You can answer.
23      THE WITNESS:  I'm not in a
24 position to answer the question as to
25 whether or not any other company had signed

Page 188

1  L. Smalheiser - CONFIDENTIAL
2  a Non-Disclosure Agreement, because as I sit
3  here right now, I cannot recall that level
4  of detail.
5  BY MS. WEYL:
6  Q   If I asked you back in 2013, would you
7  have a better recollection?
8      MR. DESAI:  Objection to form.
9      THE WITNESS:  I'm not sure that I
10 would have had a better recollection.
11 BY MS. WEYL:
12 Q   Going back to Exhibit 11 on that
13 Strategic Overview slide, you indicated there
14 were multiple things that were confidential in
15 nature.
16      So is my understanding correct that
17 the first bullet which says, "Incorporate
18 Navigable Video into Google Pack" is considered
19 confidential?
20      MR. DESAI:  Objection to form.
21 Mischaracterizes prior testimony.
22      THE WITNESS:  I think the notion
23 of any company proposing to a different
24 company that the inclusion of their
25 technology might add value is potentially a

Page 189

1  L. Smalheiser - CONFIDENTIAL
2  confidential piece of information.
3  BY MS. WEYL:
4  Q   So by "technology," Navigable Video is
5  what you're saying refers to Kewazinga
6  technology?
7      MR. DESAI:  Objection to form.
8      THE WITNESS:  Yes, I would say
9  Navigable Video is -- was the technology
10 that I'm referring to.
11 BY MS. WEYL:
12 Q   And that first bullet point,
13 "Incorporate Navigable Video into Google Pack" is
14 Kewazinga confidential information; is that
15 correct?
16      MR. DESAI:  Objection to form.
17      THE WITNESS:  As I said, I think
18 the notion of including one company's
19 technology into another company's offering
20 can possibly be construed as or
21 characterized as confidential.
22 BY MS. WEYL:
23 Q   But that first bullet point doesn't
24 have any technical details in it; does it?
25      MR. DESAI:  Objection to form.

Page 222

1  L. Smalheiser - CONFIDENTIAL
2  to communicate.
3  BY MS. WEYL:
4     Q   And Mr. Worley kept you in the loop of
5  the communications that occurred between Google
6  and Kewazinga; correct?
7        THE WITNESS:  Saunak, if you
8     you're saying something, I can't hear you.
9        MR. DESAI:  Objection, form.
10       THE WITNESS:  I'm sorry.  I've
11    lost my train of thought.  Could you please
12    repeat that question?
13 BY MS. WEYL:
14    Q   Certainly.  Mr. Worley kept you in the
15 loop of communications that occurred between
16 Google and Kewazinga; correct?
17       MR. DESAI:  Same objection.
18       THE WITNESS:  Yes, I would say
19    that that statement is correct.
20 BY MS. WEYL:
21    Q   Okay.  And in the 2005 to 2006
22 timeframe, did Kewazinga reach out to other
23 companies?
24       MR. DESAI:  Objection to form.
25       THE WITNESS:  Yes, during that

Page 223

1  L. Smalheiser - CONFIDENTIAL
2     timeframe, other companies were contacted.
3  BY MS. WEYL:
4     Q   And what other companies were
5  contacted?
6     A   Well I can't be sure of the exact
7  dates, but we've covered this ground already.  If
8  you'd like, I'll repeat the names of those
9  companies.
10    Q   Thank you.  That would be appreciated.
11    A   I believe Cisco and Verizon and
12 Microsoft were contacted in this timeframe, but I
13 cannot be exactly sure of the timeline of when
14 those companies were contacted.
15    Q   And did Cisco express interest in
16 Kewazinga's technology in the 2005/2006
17 timeframe?
18       MR. DESAI:  Objection to form.
19       THE WITNESS:  I don't recall the
20    exact nature of the communication that we
21    had with them, but my recollection is that
22    it didn't dovetail with any of their
23    initiatives at the time.
24 BY MS. WEYL:
25    Q   And did Verizon represent that they

Page 224

1  L. Smalheiser - CONFIDENTIAL
2  were interested in Kewazinga's technology?
3        MR. DESAI:  Objection to form.
4        THE WITNESS:  Initially Verizon
5     did express interest in the technology, but
6     ultimately I believe that they decided it
7     didn't dovetail effectively with their
8     strategy.
9  BY MS. WEYL:
10    Q   And did Microsoft express interest in
11 Kewazinga's technology in the 2005/2006
12 timeframe?
13       MR. DESAI:  Objection to form.
14       THE WITNESS:  Yes, I would say
15    that they definitely expressed interest in
16    it.
17 BY MS. WEYL:
18    Q   So when I asked you earlier, I asked
19 if you thought -- so when I asked you earlier
20 about whether you thought Google acted
21 appropriately in the 2005/2006 timeframe, you
22 indicated that it was possible that Google went
23 ahead and possibly used some of Kewazinga's
24 technology in its own products; is that correct?
25       MR. DESAI:  Objection to form.

Page 225

1  L. Smalheiser - CONFIDENTIAL
2        THE WITNESS:  I'm not sure that I
3     was specific about the technology part in
4     terms of their bad actor status.  I would
5     say that they used some of Kewazinga's
6     forward ideas and business opportunities in
7     their own product after they met with us.
8  BY MS. WEYL:
9     Q   And specifically what ideas did they
10 incorporate -- did Google incorporate into its
11 own products?
12    A   Well I would say that they would
13 include, but not necessarily be limited to
14 incorporating Navigable Video into Google Earth,
15 as well as Google Maps as an on-the-ground
16 extension of those products.
17       I would say that it also included
18 providing travel destinations and cultural
19 destinations, and museums and possibly zoos and
20 aquariums and other interior building locations
21 as additional navigable experiences.
22       I would say that they also provided
23 experiences that I believe were captured on
24 boats, on waterways, that was also part of the
25 documentation that we provided to them, but,

Page 226

L. Smalheiser - CONFIDENTIAL

1. again, it's not limited to that, and a more
2. thorough investigation would have to be made.
3. But we clearly said to them, and I
4. believe that this sentence is included in a
5. number of the papers that we sent to them, that
6. miniaturized Kewazinga systems would be placed
7. atop cars and boats that would ply the streets
8. and waterways in order to provide navigable
9. experiences. And to that extent, I think Google
10. went ahead and took a lot of the forward-looking
11. ideas that Kewazinga presented it and used it in
12. their own product.
13. Q   Are any of those things covered by
14. Kewazinga's patents?
15. MR. DESAI: Objection to form.
16. THE WITNESS: I don't know whether
17. they're covered by the patents. I'm not
18. sure that they are.
19. BY MS. WEYL:
20. Q   Do you know if Google had the idea for
21. Street View before Kewazinga ever emailed Google
22. in the 2005/2006 timeframe?
23. MR. DESAI: Objection to form.
24. THE WITNESS: I can't know it for

Page 227

L. Smalheiser - CONFIDENTIAL

1. sure, but I might have been exposed to a
2. piece of information that suggested that
3. they might have done some preliminary work
4. before we contacted them, although we never
5. knew that they had done preliminary work,
6. and they never disclosed any preliminary
7. work that was similar to our invention to
8. us, either by email or in a telephone call.
9. BY MS. WEYL:
10. Q   So in my previous question -- sorry.
11. I want to get this straight.
12. I asked you if any of the things that
13. you mentioned were covered by the Kewazinga
14. patents, and you said that you didn't know; is
15. that correct?
16. MR. DESAI: Objection.
17. THE WITNESS: That's correct. I'm
18. sorry, that is correct.
19. BY MS. WEYL:
20. Q   And so none of those ideas that you
21. conveyed were related to the Kewazinga patents,
22. and so how would Google have disclosed what it
23. was doing in relation to the invention if all of
24. the features that you discussed about were not

Page 228

L. Smalheiser - CONFIDENTIAL

1. included in the Kewazinga patents?
2. MR. DESAI: Objection to form.
3. Foundation. And, I mean, I think that's
4. confusing a lot of different questions that
5. were asked in the previous 10 to 15 minutes.
6. You can answer the question.
7. THE WITNESS: I think the
8. documents that were provided by Kewazinga to
9. Google, some of which or maybe possibly many
10. of which were marked as confidential and do
11. not distribute presented many
12. forward-looking concepts and business
13. opportunities to Google that Kewazinga
14. thought that they could help to offer to
15. Google and to extend Google's ecosystem, if
16. you will. Their software ecosystem.
17. BY MS. WEYL:
18. Q   Did Kewazinga --
19. A   Excuse me. May I finish?
20. Q   Yes, you may.
21. A   In those documents -- or I should say
22. in many of those documents, Kewazinga clearly
23. marked its patents by title of the patent, and I
24. think more than one patent the title was

Page 229

L. Smalheiser - CONFIDENTIAL

1. presented. I believe that claims were also
2. either described or excerpted. I think issue
3. dates of the patents are also included in some or
4. many of those documents. And I think
5. descriptions of the patents are included in many
6. or some of those documents.
7. And so you have a situation where
8. forward business concepts are being provided.
9. Evidence of the patents, including their title,
10. issuance date, claim information and general
11. descriptions are disclosed. And I think that
12. Google used that information to further their own
13. product without disclosing at any point during
14. that time to Kewazinga that they had a competing
15. product that was in development.
16. Q   Can you point to me some documents
17. that Kewazinga provided to Google that included
18. the title, issuance, date and general information
19. about the Kewazinga patents?
20. MR. DESAI: Objection to form, and
21. as to how the witness would possibly do that
22. right now electronically. You can put
23. documents in front of him and ask him
24. questions about that.

## Page 286

L. Smalheiser - CONFIDENTIAL

INDEX TO TESTIMONY

EXAMINATION OF LEONARD SMALHEISER — PAGE

BY: Ms. Weyl — 5

* * *

EXHIBITS

Defendant

| Number | Description | Page |
|---|---|---|
| Exhibit 1 | Complaint | 13 |
| Exhibit 2 | Notice of Deposition | 15 |
| Exhibit 3 | Email: 9-12-13 (KEWAZINGA-G 3393) | 20 |
| Exhibit 4 | Email Exchange (KEWAZINGA-G 3374-3383) | 24 |
| Exhibit 5 | Plaintiff's Response to Defendant's First Set of Requests for Admission | 134 |
| Exhibit 6 | Patent Assignment Cover Sheet (KEWAZINGA-G 96-98) | 149 |
| Exhibit 7 | Email: 10-5-05 (KEWAZINGA-G 3185-3186) | 175 |
| Exhibit 8 | Email Exchange (KEWAZINGA-G 3187) | 176 |
| Exhibit 9 | Email Exchange (KEWAZINGA-G 3183-3184) | 179 |
| Exhibit 10 | Email: 1-30-06 (KEWAZINGA-G 2996) | 181 |
| Exhibit 11 | Strategic Plan, January 2006 (KEWAZINGA-G 2997-3006) | 182 |

(Exhibits continued.)

## Page 287

L. Smalheiser - CONFIDENTIAL

(Exhibits continued.)

EXHIBITS

Defendant

| Number | Description | Page |
|---|---|---|
| Exhibit 12 | Order (KEWAZINGA-G 3542) | 247 |
| Exhibit 13 | Plaintiffs' Response and Non-Opposition to Google's Motion to Dismiss (KEWAZINGA-G 3538-3539) | 250 |
| Exhibit 14 | U.S. Patent '234 (KEWAZINGA-G 57-87) | 261 |
| Exhibit 15 | U.S. Patent '325 (KEWAZINGA-G 1-29) | 270 |
| Exhibit 16 | U.S. Patent '226 (KEWAZINGA-G 30-56) | 271 |

(Exhibits were retained on Exhibit Share.)

* * *

REQUESTS

1) Page 101, Line 10
2) Page 231, Line 22

* * *

## Page 288

L. Smalheiser - CONFIDENTIAL

C E R T I F I C A T I O N

I, Randi Friedman, Registered Professional Reporter and Notary Public of the State of New York, do hereby certify:

THAT, the witness whose testimony is herein before set forth, was duly sworn by me, and

THAT, the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related either by blood or marriage to any of the parties to this action; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this day, June 15, 2020.

*Randi C. Friedman*
Randi Friedman, RPR

* * * * * * * * *

## Page 289

Saunak Desai, Esq.
sdesai@stroock.com

June 15, 2020

RE:  Kewazinga Corp. v. Google, LLC
     6/10/2020, Leonard Smalheiser (#4135135)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at erratas-cs@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions