**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KEWAZINGA CORP.,

                Plaintiff,

          v.

GOOGLE LLC,

                Defendant.

Civil Action No. 1:20-cv-1106-LGS

**REDACTED**

## GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL, AND OPPOSITION TO KEWAZINGA'S CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Pages**

I.     KEWAZINGA MISLED GOOGLE THROUGH AFFIRMATIVE STATEMENTS AND SILENCE. ......................................................1

    A.     The Material Facts Concerning Misleading Conduct Are Undisputed....................1

    B.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. ................................2

    C.     Kewazinga's Lawyers Further Misled Google In 2018. ......................................4

       1.     The Material Facts Are Undisputed.............................................................4

       2.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. .....................5

II.     GOOGLE RELIED ON KEWAZINGA'S MISLEADING CONDUCT. ..........................7

    A.     The Material Facts Concerning Google Shutting Down Its Legal Machinery Are Undisputed.................................................................................7

    B.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. ................................8

    C.     The Material Facts Concerning Google's Expansion Of Its Street View Service Are Undisputed. ......................................................................................9

    D.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. ................................9

III.     GOOGLE WOULD BE MATERIALLY PREJUDICED IF KEWAZINGA IS PERMITTED TO GO FORWARD WITH ITS CLAIMS NOW.....................................12

    A.     The Material Facts Concerning Economic Prejudice Are Undisputed.................12

    B.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. ..............................12

    C.     The Material Facts Concerning Evidentiary Prejudice Are Undisputed. .............13

    D.     Kewazinga's Arguments Do Not Raise A Genuine Dispute. ..............................13

IV.     KEWAZINGA'S DEFENSES TO EQUITABLE ESTOPPEL LACK EVIDENCE AND DO NOT PRECLUDE SUMMARY JUDGMENT. ................................................14

V.     EQUITABLE ESTOPPEL APPLIES TO THE '234 PATENT. ......................................16

## **TABLE OF AUTHORITIES**

**Pages**

## **CASES**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992).................................................................................. 3

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
  52 F.3d 1062 (Fed. Cir. 1995)............................................................................ 11, 12

*Arctic Cat, Inc. v. Injection Research Specialists, Inc.*,
  362 F. Supp. 2d 1113 (D. Minn. 2005) ...................................................................... 9

*Aspex Eyewear v. Clariti Eyewear, Inc.*,
  No. 07 Civ 2373 (DC), 2008 WL 5049744 (S.D.N.Y. Nov. 26, 2008), *aff'd*, 605
  F.3d 1305 ................................................................................................................... 9

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010)....................................................................... 4, 9, 11

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  No. 6:11-cv-201-JRG-JDL, 2017 WL 6268800 (E.D. Tex. Dec. 8, 2017)............... 12, 14

*Gasser Chair Co. v. Infanti Chair Mfg. Co.*,
  60 F.3d 770 (Fed. Cir. 1995) ................................................................................... 12

*Kaist IP US LLC v. Samsung Elecs. Co.*,
  No. 2:16-cv-01314-JRG, 2019 WL 8110046 (E.D. Tex. Jan. 18, 2019) .................... 12

*Omega Patents, LLC v. CalAmp Corp.*,
  920 F.3d 1337 (Fed. Cir. 2019)............................................................................... 15

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
  137 S. Ct. 954 (2017).............................................................................................. 11

*SCA Hygiene Prods. v. First Quality Baby Prods., LLC*,
  767 F.3d 1339 (Fed. Cir. 2014)................................................................................. 3

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
  Case No. 13-cv-651-JLS (MDD), 2016 WL 4095967 (S.D. Cal. June 28, 2016) ........... 12

*Wafer Shave, Inc. v. Gillette Co.*,
  857 F. Supp. 112 (D. Mass. 1993), *aff'd without opinion*, 26 F.3d 140 (Fed. Cir.
  1994) .......................................................................................................... 3, 4, 9, 14

## <u>RULES</u>

Fed. R. Evid. 408 ................................................................................................................. 16

New York Rules of Professional Conduct, Rule 1.10(a) ................................................................. 6

New York Rules of Professional Conduct, Rule 1.7(a) ................................................................. 5

New York Rules of Professional Conduct, Rule 1.7(b) ................................................................. 5

Kewazinga admits the material facts warranting summary judgment of equitable estoppel. (*See* Dkt. 86.)  Unable to do anything else, Kewazinga resorts to wild accusations of misconduct and irrelevant arguments about laches, hoping to create the specter of disputed issues.  But equitable estoppel law has not changed, and the undisputed facts present a stronger case for application of the doctrine than almost any other case.  The Court should grant summary judgment.

## I.   Kewazinga Misled Google Through Affirmative Statements And Silence.

### A.   The Material Facts Concerning Misleading Conduct Are Undisputed.

Kewazinga first contacted Google fifteen years ago, in 2005.  (Dkt. 86 ("Undisputed Facts") ¶ 5.)  Google launched Street View in May 2007.  (*Id.* ¶ 6.)  Kewazinga delayed six years before suing Google in May 2013 for alleged infringement of the '325 and '226 patents.  (*Id.* ¶¶ 8–9.)

In August 2013, representatives of the parties met to discuss the case.  (*Id.* ¶ 19.)  At that meeting, Google informed Kewazinga of its belief that it did not infringe.  (*Id.* ¶¶ 22–24.)  On September 11, 2013, counsel for Kewazinga sent an email to Google stating:



(*Id.* ¶ 25.)  Google understood Kewazinga's September 11, 2013 email to be a threat of assertion of its pending patent application, should it mature into a patent.  (*Id.* ¶ 26.)  Following the September 11, 2013 email, Google had at least one further phone conversation with Kewazinga's counsel in which Google reiterated its non-infringement arguments.  (*Id.* ¶ 28.)

After that, Kewazinga never served its complaint.  (*Id.* ¶ 29.)  Therefore, on September 25, 2013, Google moved to dismiss the complaint for lack of service.  (*Id.* ¶ 30.)  On October 17, 2013,

Kewazinga filed a response and non-opposition to Google's motion to dismiss, stating:

> After filing this action and up until Google's filing of the Motion, Plaintiffs and Google were engaged in settlement discussions. Consequently, Plaintiffs had no intention of serving Google. Notwithstanding the foregoing and in light of the Motion, Plaintiffs do not oppose the dismissal of this action <u>without</u> prejudice.

(*Id.* ¶ 31.)  Google understood Kewazinga's statement as its acknowledgment of the weakness of its case and that, true to its word, Kewazinga "had no intention" of continuing its assertion against Google.  (*Id.* ¶ 32.)  But the real reason Kewazinga did not oppose dismissal was because ███████████ ████████████████████████████—a fact that it never communicated to Google.  (*Id.* ¶ 34.)  On November 14, 2013, the District of Delaware court dismissed the 2013 Action.  (*Id.* ¶ 35.)

The '234 patent issued on June 9, 2015.  (*Id.* ¶ 87.)  ██████████████████████ ███████████████████████ the '234 patent claims lack the "array of cameras" limitation.  (*See* Dkt. 1-1 at 29–31).  But Kewazinga did not follow up with Google.  Indeed, Kewazinga did not follow up on its threat to assert that patent until the filing of this lawsuit, over four years after the '234 patent issued and more than six years after dismissal of the 2013 Action.  (Undisputed Facts ¶ 83.)

Despite its second six-year silence from the dismissal of the 2013 Action to the filing of this lawsuit in January 2020, Kewazinga was aware that Google continued to provide Street View to users and customers during that time.  (*Id.* ¶¶ 73–79.)  During that second six-year silence, from 2013 to 2020, Kewazinga continuously █████████████████████████ *id.* ¶ 81), but Kewazinga never informed Google that it was doing so (*id.* ¶ 82).

## B.   Kewazinga's Arguments Do Not Raise A Genuine Dispute.

As explained in Google's opening brief, Kewazinga's undisputed aggressive assertion of its patents, followed by its misleading statements on dismissal and subsequent silence for more than half a decade, constitutes misleading conduct warranting summary judgment.  (Dkt. 59 ("Opening Br.") at 4–5 (citing cases).)  Each of Kewazinga's arguments to the contrary should be

2

rejected. First, Kewazinga asserts that the "only possible inference" from the evidence must be that Kewazinga engaged in misleading conduct. (Dkt. 76 ("Opp.") at 7 (citing *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043–44 (Fed. Cir. 1992).) The "only possible inference" standard applies to misleading "communication by omission or acquiescence." *See SCA Hygiene Prods. v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1350 (Fed. Cir. 2014). Here, Kewazinga was not just silent; it ***affirmatively misled*** Google. Specifically, in its non-opposition to dismissal of the 2013 Action, Kewazinga represented that it had "no intention of serving Google." (Undisputed Facts ¶ 31.) That was false: Kewazinga admits that it had ***every*** intention of serving Google, ██████████████████████████████. (*Id.* ¶ 34.) And it hid those true intentions from Google (*id.*), likely to prevent Google from filing a declaratory judgment action ███████████████ That is misleading conduct.[1]

Second, there is no genuine dispute that Kewazinga's years-long silence following its aggressive assertion constitutes misleading conduct even under an "only possible inference" standard. In *Wafer Shave*, decided a year after the Federal Circuit articulated the "only possible inference" standard in *Aukerman*, the court entered summary judgment where the patentee alleged infringement in letters and then remained silent for over three years. *Wafer Shave*, 857 F. Supp. at 120-21. Here, Kewazinga ***filed a lawsuit***, a more aggressive assertion of patent rights than *Wafer Shave*. (Undisputed Facts ¶ 9.) After Google explained why it did not infringe, Kewazinga dropped its case and did not communicate with Google again for another ***six years***. (*Id.* ¶¶ 22, 28, 83.) All Kewazinga had to do was call or send a single email telling Google that Kewazinga would re-assert its claims ██████████████ *See Wafer Shave*, 857 F. Supp. at 121 ("a postcard

---

[1] *See, e.g.*, *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112, 121 (D. Mass. 1993) (applying equitable estoppel where patentee withheld that it would pursue its claims once it secured funding), *aff'd without opinion*, 26 F.3d 140 (Fed. Cir. 1994).

probably would have sufficed").  The only possible inference is that Kewazinga intended to mislead Google until █████████████████████.

Kewazinga concedes its lengthy silence but argues that it was not misleading because (1) it had no "clear duty to speak," (2) that it maintained its infringement belief, and (3) that its dismissal was without prejudice.  (Opp. at 7–10.)  These arguments lack merit.  Kewazinga started this dispute with its aggressive assertion, only to tell Google (and the Delaware court) that it had "no intention of serving Google." (Undisputed Facts ¶ 32.)  It had a clear duty to tell the truth, which is that Kewazinga intended to serve Google ██████████████  Kewazinga's belief in infringement is irrelevant because it was not acted upon.[2]  And the notion that the prior lawsuit was dismissed without prejudice is beside the point.  What matters for equitable estoppel is what Google believed—and no dispute exists that Google understood Kewazinga's non-opposition to mean that, true to its word, Kewazinga "had no intention" of continuing its assertion against Google.  (Undisputed Facts ¶ 32.)  Summary judgment is therefore appropriate.  *Wafer Shave*, 857 F. Supp. at 119 ("estoppel focuses on the effect of the patentee's conduct on the alleged infringer").

### C.   Kewazinga's Lawyers Further Misled Google In 2018.

As explained in Google's opening brief, in 2018, the Stroock law firm misleadingly told Google ████████████████████████████████████████████████████████████ ██████████████████████████████ (Opening Br. at 5–7, 10–11.)  Once again, Kewazinga admits the key facts (as it must), and raises only irrelevant arguments and speculation in opposition.

### 1.   The Material Facts Are Undisputed.

On May 21, 2018, Kewazinga filed suit against Microsoft for alleged infringement of the

---

[2] *See, e.g.*, *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) ("intentionally misleading silence arises when a patentee threatened immediate or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time") (citation and internal quotations omitted).

same three patents at issue here, with Stroock as its counsel.  (Undisputed Facts ¶ 90.)  Less than

three weeks later, a client of Stroock, ███████████ lined up the Stroock law firm to be joint defense

counsel for all defendants in a 2018 copyright litigation and proposed that Google retain Stroock

in that case.  (*Id*. ¶ 93.)  Google believed that retaining Stroock would be beneficial because

Google's defense would be coordinated with the other defendants.  (*Id*. ¶ 94.)  James Sammataro,

a partner at Stroock, told Google: ██████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████  (*Id*.)  In its September 13, 2018 retention letter, Stroock wrote

to Google that ████████████████████████████████████████████████████████

███████████████████████████  (*Id*. ¶ 98.)

      At the same time Mr. Sammataro confirmed ██████████████████████████████

████████████████████████████  Ian DiBernardo—his partner at the same Stroock

law firm—was assisting Kewazinga ███████████████████████████████  *Id*. ¶ 101.)

███████████████████████████████████████████████████  (*Id*. ¶¶ 101–

102.)  To this day, Stroock retains a security interest in Kewazinga's patents-in-suit.  (*Id*. ¶ 103.)

### 2.    Kewazinga's Arguments Do Not Raise A Genuine Dispute.

      Stroock's conduct was indisputably misleading.  At a minimum, ██████████████████

████████████████████████████████████████████████████  Stroock was at least

required to ***inform*** Google that █████████████████████████—something it did not do.[3]

---

[3] *See* New York Rules of Professional Conduct, Rule 1.7(a) (prohibiting representation if
reasonable lawyer would conclude that "the representation will involve the lawyer in representing

Kewazinga cannot excuse the misconduct.  Relying on a late declaration of Mr. Sammataro,[4] Kewazinga asserts ████████████████████████████████████████

████████████████████████████████████████████████ (Opp. at 12.)

Even accepting that assertion as true, it confirms that ████████████████████████

████████████████████████—was false, because Kewazinga admits that Stroock

was ████████████████████████████████ (Undisputed Facts ¶ 101.)

Kewazinga also alleges that Google was "concerned about a potential Kewazinga lawsuit" and was simply trying to create a conflict.  (Opp. at 11.)  The evidence is to the contrary:  Google understood the fact that Kewazinga sued only Microsoft in 2018 as confirmation that it had no intention of suing Google (Dkt. 62 ("Sherwood Decl.") ¶ 26), and Google had no idea that Stroock was secretly ████████████████████████. (Undisputed Facts ¶¶ 34, 101.)

As explained in the uncontroverted testimony of Jim Sherwood (Google's in-house counsel), it is a standard part of Mr. Sherwood's practice to ask a law firm seeking to represent Google to investigate conflicts. (Undisputed Facts ¶ 95.)  For ***that*** reason, Mr. Sherwood asked Bill Berry, a Google litigation attorney, to contact Stroock about potential conflicts.  (*Id*.)  Mr. Sherwood's testimony and the emails that Kewazinga point to make clear that ████████████████

████████████████████████████ (Dkt. 95-4 (Sherwood Dep.) at 225:14–226:4.) ████████████████████████████████████████

████████████████████████████████ And even if

---

differing interests" or "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property, or other personal interests"; *id*., Rule 1.7(b) (permitting such representation if "each affected client gives informed consent, in writing"); *id*., Rule 1.10(a) (imputing conflicts to other lawyers within a firm except in certain circumstances).

[4] Kewazinga never disclosed Mr. Sammataro on its initial disclosures during the discovery period, and his declaration can be excluded on that basis alone.

Stroock had disclosed its ongoing work for Kewazinga, by May 2018 (at the time of the first Google/Stroock contact), Kewazinga had been silent for almost five years.  (Undisputed Facts ¶ 92.)  Thus, equitable estoppel was already established by 2018.

## II.   Google Relied On Kewazinga's Misleading Conduct.

### A.   The Material Facts Concerning Google Shutting Down Its Legal Machinery Are Undisputed.

Jim Sherwood, senior counsel at Google responsible for the Kewazinga matter, directed his team to begin investigating non-infringement and invalidity after Kewazinga filed its complaint in 2013.  (*Id*. ¶¶ 10–12.)  Mr. Sherwood instituted legal holds for the preservation of relevant documents.  (*Id*. ¶ 13.)  He also requested legal analyses from three law firms concerning Kewazinga's allegations.  (*Id.* ¶¶ 14–17.)  Google received materials from Perkins Coie and Akin Gump that included analyses of non-infringement and potential alternative designs to avoid alleged infringement or mitigate alleged damages.  (*Id.* ¶¶ 14–16.)  Google received materials from Sterne Kessler that outlined a timeline and strategy to file IPR petitions to invalidate Kewazinga's patents.  (*Id.* ¶ 17.)   Based on that analysis, Google intended to prepare and file IPR petitions on Kewazinga's patents if Kewazinga served its complaint.  (*Id.* ¶ 18.)

After the 2013 Action was dismissed on November 14, 2013 (*id.* ¶ 35), Mr. Sherwood shut down the defensive preparations he had initiated, believing that Kewazinga was truthful when it represented that it "had no intention of serving Google."  (*Id.* ¶ 36.)  He kept them shut down in 2018 based on Stroock's misrepresentations and Kewazinga's continued silence.  (*Id.* ¶ 100.)  For example, the legal holds that were instituted were released after Kewazinga abandoned its 2013 Action.  (*Id.* ¶ 37.)  Google did not further engage the services of the Perkins Coie or Akin Gump law firms, or further investigate the potential non-infringing alternatives identified in the initial analyses prepared by those firms.  (*Id.* ¶ 39.)  Nor did Google pursue IPRs, as proposed by Sterne

Kessler.  (*Id.* ¶ 38.)  Google did not consider initiating a declaratory judgment action, which it has done in other cases, believing that no case or controversy existed between Kewazinga and Google. (*Id*. ¶ 40.)  Instead, Mr. Sherwood reported the matter as closed to Google's outside financial auditors and internally to its executives.  (*See id.* ¶¶ 41–43.)

### B.  Kewazinga's Arguments Do Not Raise A Genuine Dispute.

These facts—all undisputed—demonstrate Google's reliance on Kewazinga's misleading conduct.  (*See* Opening Br. at 11-13.)  Kewazinga contends—without proof—that Google did not shut down its legal machinery "based on being 'misled.'"  (Opp. at 22.)  But the evidence proves that Google's in-house counsel explicitly identified the "Kewazinga" matter as "resolved" to executives and auditors shortly after the 2013 Action was dismissed.  (Undisputed Facts ¶¶ 41–42; Sherwood Decl. ¶¶ 21–23, Exs. 11, 12.)  As Mr. Sherwood testified—and Kewazinga does not dispute—he would not have made those representations if he believed that there was a risk of Kewazinga asserting its patents at some point in the future.  (Undisputed Facts ¶ 43.)  Google shut down its defenses, relying on Kewazinga's misrepresentation to conclude that Kewazinga had "no intention" of suing Google.  (*Id*. ¶¶ 43–44.)  The fact that Kewazinga was silent for more than six years thereafter proves the reasonableness of Google's conclusion.

Kewazinga also argues that the litigation counsel and IPR proposals cannot support reliance because they were "never acted on."  (Opp. at 22.)  But no dispute exists that Google did not move forward with retaining litigation counsel or initiating IPRs ***precisely because*** Kewazinga chose not to serve the complaint and misrepresented that it had "no intention" of moving forward with its assertion.  (Undisputed Facts ¶¶ 36, 38, 39.)  That ***supports*** a finding of reliance.[5]

---

[5] *See Aspex Eyewear v. Clariti Eyewear, Inc.*, No. 07 Civ 2373 (DC), 2008 WL 5049744, at *4 (S.D.N.Y. Nov. 26, 2008) (evidence of communication "which lulls the infringer into a sense of security" can establish reliance), *aff'd*, 605 F.3d 1305; *Wafer Shave*, 857 F. Supp. at 124 (finding that defendant's shutting down of legal defenses and procedures constituted evidence of reliance).

**C.    The Material Facts Concerning Google's Expansion Of Its Street View Service Are Undisputed.**

Evidence of continued investment into an allegedly infringing product also constitutes detrimental reliance, particularly "where a patent holder was undoubtedly aware that the alleged infringer was ***continuing to invest*** heavily in the sale of the [accused] products." *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, 362 F. Supp. 2d 1113, 1125 (D. Minn. 2005) (emphasis in original) (internal quotations omitted); *see also Aspex Eyewear*, 605 F.3d at 1311–12.  Again, Kewazinga admits the key facts establishing Google's detrimental reliance.

Shortly after dismissal of the 2013 Action, Google began development of a complete redesign of its Street View camera system, known as "Herschel."  (Undisputed Facts ¶ 49.)  Google approved a ▮▮▮▮▮▮▮▮▮▮ investment into the Herschel system, and ultimately spent ▮▮▮▮▮ ▮▮▮▮▮▮▮ on that system alone between 2015 and February 2020.  (*Id.* ¶ 50.)  In addition to its investment in camera technology, Google invested heavily in other aspects of Street View after dismissal of the 2013 Action, and throughout the over six year period that Kewazinga remained silent, including the number of vehicles outfitted and deployed, number of hours vehicles spent driving, and number of images captured.  (*Id.* ¶¶ 69–71.)  Kewazinga admits that it was aware that Google continued to provide Street View to users between 2014 and 2019 (*id.* ¶¶ 73–79), and that Kewazinga never communicated a belief of infringement to Google during that time.  (*Id.* ¶ 70.)  And Kewazinga does not controvert witness testimony explaining that, had Kewazinga not abandoned its 2013 Action, Google would have explored non-infringing designs, rather than locking itself into designs that Kewazinga now says is infringing.  (*Id.* ¶¶ 56–68.)

**D.    Kewazinga's Arguments Do Not Raise A Genuine Dispute.**

Google's substantial economic investments in Street View—made after the 2013 Action was dismissed and Google formed a reasonable belief that Kewazinga was truthful in its

representation that it "had no intention" of suing Google—constitute reliance warranting a finding of equitable estoppel.  (*See* Opening Br. at 13–16.)  None of Kewazinga's arguments raise a genuine issue of fact.  First, Kewazinga contends that Google cannot point to anything it would have done differently "if Kewazinga had not ***brought*** the 2013 Action."  (Opp. at 14 (emphasis added).)  But the misleading conduct is Kewazinga's ***abandonment*** of the 2013 Action (falsely stating that it had "no intention" of serving Google, while secretly ███████████████  And the uncontroverted evidence shows that, had Kewazinga not abandoned its claims, Google would not have released litigation holds or reported the matter as closed, and would have pursued IPRs and investigated potential design alternatives.  (Undisputed Facts ¶¶ 18, 36–43, 58–59.)

Kewazinga also argues that Google's investments in Street View were business choices, not made "because of" Kewazinga's misleading conduct.  (Opp. at 14–17.)  Even accepting all of Kewazinga's assertions as true, Google made those significant investments ***after it was misled by Kewazinga into believing that Kewazinga had abandoned its claims***, and is now deprived of the opportunity to consider alternatives.  For instance, no dispute exists that Google began developing its Herschel camera system in the months following the dismissal of the 2013 Action, and that Google approved the ███████████ investment into that system in 2015–2016.  (Undisputed Facts ¶¶ 49–50.)  The uncontroverted testimony establishes that Google regularly makes changes to Street View, and that had Kewazinga pressed forward with its claims, it could have and would have considered a variety of alternatives to modify Street View if those alternatives made economic and/or practical sense.  (*Id*. ¶¶ 54–55, 58–65.)  The fact that Google could have made those changes is further corroborated by evidence—also uncontroverted—that Google has in fact discontinued products and services in light of expense and legal considerations.  (*Id*. ¶¶ 66–67.)

10

That is all that is required to establish reliance.[6]

Kewazinga next argues that Google's uncontroverted evidence about alternative designs is "speculation," and suggests that Google has never made a change to Street View based on litigation. (Opp. at 18–21.)  The evidence shows the opposite:  it is undisputed that Google regularly considers alternatives and has in fact discontinued products and services in light of expense and legal considerations.  (*Id*. ¶¶ 66–67.)  And contrary to Kewazinga's contention, Google need not show that it actually implemented any specific alternative.  *See Aspex Eyewear*, 605 F.3d at 1312.  Google is prejudiced precisely ***because*** Kewazinga's aggressive (albeit brief) assertion, followed by years of silence, meant that Google had no need to implement alternatives, and is now ***deprived*** of that opportunity years later.

Finally, Kewazinga's argument that Google's belief of non-infringement creates a fact dispute (Opp. at 16–17) is meritless.  There is no dispute that Google shut down its legal machinery in response to Kewazinga's misleading assertions in connection with dismissal of the 2013 Action.  Specifically, Google released evidence preservation holds, reported the matter as closed, did not pursue IPRs, and did not retain litigation counsel.  (*See supra* Section II.A.)  All of those actions are separate from economic or business decisions, and have only one explanation:   Google detrimentally relied on Kewazinga's misconduct, not its own belief of non-infringement.  Indeed,

---

[6] *See ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) (explaining that the reliance prong was met where a patent owner "lulled [an accused infringer] into a sense of security"); *Aspex Eyewear*, 605 F.3d at 1312 (explaining that the accused infringer "need not prove precisely what alternative paths it would have taken, or that every . . . decision was based on reliance on [the patentee's] silence").  *SCA Hygiene*, a case that Kewazinga relies on heavily throughout its brief, did not change equitable estoppel law—its holding was limited to the separate doctrine of laches.  137 S. Ct. 954, 967 (2017).  Therefore, it did not impose any higher burden to establish reliance, let alone overturn any equitable estoppel case, as Kewazinga suggests.

that fact distinguishes this case from *all* of the cases that Kewazinga cites concerning reliance.[7]

### III. Google Would Be Materially Prejudiced If Kewazinga Is Permitted To Go Forward With Its Claims Now.

#### A. The Material Facts Concerning Economic Prejudice Are Undisputed.

Material prejudice is demonstrated "by showing that the present suit would result in damages which likely would have been prevented by an earlier suit." *ABB Robotics*, 52 F.3d at 1065. Here, it is undisputed that Kewazinga intends to seek damages of ███████████████

███████████████████████. (*Id.* ¶¶ 21, 85.) Kewazinga admits that its current damages demand is based on Google providing Street View to users and customers during the years of its misleading silence between 2014 and 2019. (Undisputed Facts ¶ 84.) Google invested heavily in Street View during that time, such that by 2019 Street View had expanded all over the world. (*Id.* ¶¶ 70–72.) The patents-in-suit expired in 2019. (*Id.* ¶ 105.)

#### B. Kewazinga's Arguments Do Not Raise A Genuine Dispute.

The undisputed facts demonstrate that Google would suffer material prejudice based on the substantially higher damages it may incur as a result of Kewazinga's misleading conduct— damages that could have been avoided or mitigated much earlier. (*See* Opening Br. at 18–20.) In addition, because the patents have now expired, Google has no ability to design around the patents in order to avoid future infringement or mitigate future damages. (*Id.*) Notably, Kewazinga does not dispute any of the above, which alone is sufficient to warrant summary judgment.

Instead, Kewazinga baselessly asserts that "Google would have made the same

---

[7] *See generally, e.g.*, *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-01314-JRG, 2019 WL 8110046 (E.D. Tex. Jan. 18, 2019) (reliance evidence focused entirely on product investment and commercialization); *Gasser Chair Co. v. Infanti Chair Mfg. Co.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (same); *ThermoLife Int'l, LLC v. Myogenix Corp.*, Case No. 13-cv-651-JLS (MDD), 2016 WL 4095967, at *5–*7 (S.D. Cal. June 28, 2016) (same); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cv-201-JRG-JDL, 2017 WL 6268800, at *5 (E.D. Tex. Dec. 8, 2017) (same).

investments anyway." (Opp. at 25.) But the uncontroverted evidence proves that Google would have considered Kewazinga's assertion in designing Street View had Kewazinga pressed forward with its claim. (Undisputed Facts ¶¶ 54–68.) Kewazinga's contentions that Google now faces a shorter damages period, and that Kewazinga is only seeking a reasonable royalty (Opp. at 26), are irrelevant because Kewazinga admits that its total damages demand will be higher based on Google's substantial investments into Street View between 2014 and 2019. (*Id.* ¶ 84.) Finally, Kewazinga asserts that Google could have always filed a declaratory judgment action or IPR. Not so. Based on the dismissal of the 2013 Action, Google believed that it would not have been able to demonstrate the existence of an ongoing case or controversy for a declaratory judgment action or to ensure judicial review of any IPR proceeding, (*id.* ¶¶ 38, 40), but would have considered pursuing those strategies if not for Kewazinga's misleading conduct (*id.* at ¶¶ 38–39, 100).

## C. The Material Facts Concerning Evidentiary Prejudice Are Undisputed.

Andrew Weber was a Vice Chairman of Kewazinga between 2005 and 2014, and a named inventor on the patents-in-suit. (Undisputed Facts ¶ 45–46.) ███████████████████

███████████████████████████████████████████████████████████

████████ (Undisputed Facts ¶¶ 46–48.) A number of potential Google witnesses who were instrumental to the development of Street View have long since left the company, and many since 2013. (Undisputed Facts ¶ 44.) And, even for those still at Google, memories have faded. (*Id.* ¶¶ 20, 44.) Documents have also been lost, because—relying on Kewazinga's statement that it had "no intention of serving Google"—Google's litigation department released evidence preservation holds after the dismissal of the 2013 Action. (*Id.* ¶ 37.) Kewazinga produced documents in this case reflecting communications with Google that Google no longer had. (*Id.*)

## D. Kewazinga's Arguments Do Not Raise A Genuine Dispute.

As Google explained in its opening brief, these facts establish material evidentiary

prejudice.  (Opening Br. at 20–21.)  Kewazinga argues that Google cannot establish material prejudice because Kewazinga's misleading conduct did not directly cause the death of its named inventor.  (Opp. at 25.)  But that is not the law—decades of Federal Circuit precedent, none of which was overturned by Kewazinga's cited cases, establish the intervening death of a key witness as a form of material evidentiary prejudice in the equitable estoppel context.  *See, e.g.*, *Wafer Shave*, 857 F. Supp. at 126.  And in *Eidos*, another out-of-circuit district court case cited by Kewazinga, the defendant could only speculate as to the nature of lost evidence.  2017 WL 6268800, at *6.  Here, by contrast, it is undisputed that Kewazinga no longer has access to Mr. Weber, nor his files (Undisputed Facts ¶¶ 47–48)—prejudice that directly resulted from Kewazinga's abandonment of its case until after Mr. Weber's death.  In addition, no dispute exists that many former Google employees having historical knowledge regarding this case have left Google and are now outside this Court's subpoena power.  (*Id.* ¶ 44.)  And no dispute exists that documents have been lost and memories have faded.  (*Id.* ¶¶ 20, 37, 47–48.)

## IV.    Kewazinga's Defenses To Equitable Estoppel Lack Evidence And Do Not Preclude Summary Judgment.

Kewazinga alleges that Google impermissibly misappropriated ideas allegedly disclosed in 2005-2006, thereby constituting willful infringement and precluding equitable estoppel.  (Opp. at 27–28.)  But Kewazinga's admissions foreclose its defenses.  For instance, Kewazinga admits that it did not provide Google with any information under a confidentiality or non-disclosure agreement.  (Undisputed Facts ¶ 5.)  And Kewazinga does not dispute that Street View originated from a joint effort between Stanford and Google that began in 2002, three years before Kewazinga first attempted to contact Google.  (*Id.* ¶¶ 1–2.)  Even if it had, Kewazinga does not dispute the sworn testimony that no one from the Street View team that was developing Street View in the 2005-2007 time frame was in contact with Kewazinga nor saw Kewazinga's documents.  (*Id.* ¶

3.)[8]  Thus, Kewazinga's allegations of minimal overlap in concepts between Google's products and Kewazinga's ideas are irrelevant, as no one from Google involved in creating Street View received those materials.  (*Id.*)  Finally, Kewazinga admits that upon being sued in 2013, Google immediately investigated Kewazinga's allegations, formed a good-faith belief of non-infringement, conveyed those beliefs to Kewazinga, and consulted with counsel for its defense.  (Undisputed Facts ¶¶ 10–12, 14–17, 19, 22–24.)  All of those legally preclude a finding of willful infringement.  *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1353 (Fed. Cir. 2019).

Kewazinga also baselessly alleges confidentiality and FRE 408 violations.  (Opp. at 29.)  In advance of the parties' August 19, 2013 meeting, Kewazinga demanded an agreement that

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████  (Dkt. 95, Ex. 41.)  Thus, that agreement pertained to Kewazinga's presentation and claim charts, which Google has not used or disclosed in this case.  To the extent Kewazinga believes that the "agreement" applied to the parties' "communications" more generally, Kewazinga cannot credibly feign surprise that those 2013 communications would be at issue in this equitable estoppel phase—indeed, Kewazinga itself disclosed those communications in open court.  (*See* Dkt. 35, Apr. 16 Hr'g Tr. at 11.)  Kewazinga's allegation that Google contravened FRE 408 is also baseless—Rule 408 prohibits the introduction of compromise discussions as evidence ***to prove or disprove the validity or amount of a disputed***

---

[8] Kewazinga's only argument to the contrary relies on materials not provided in discovery and not admissible in evidence, including a purported translation of a foreign-language publication's alleged interview with former Google employee Christopher Sacca.  (Kewazinga Statement of Facts ¶¶ 9–11.)  None of those materials, if they were even admissible (which they are not), contradict the sworn testimony of Google's witness, who managed the development of Street View and testifies that none of the people who received Kewazinga's materials in 2005 were involved in the development of Street View.  (Undisputed Facts ¶ 3.)

*claim*.  Fed. R. Evid. 408.  Google offers the evidence for another, permissible purpose (to establish prejudice), not to prove or disprove the validity or the amount of the claim.  And Kewazinga admits that it intends to seek damages ███████████████—a factual statement, not an offer of a "compromise" for which Rule 408 might apply.  (Undisputed Facts, Response to ¶ 85.)

## V.      Equitable Estoppel Applies To The '234 Patent.

No dispute exists that Kewazinga expressly threatened assertion of a patent without the "array of cameras" limitation that would issue from a pending application.  (*Id.* ¶ 25.)  Then, after the '234 patent issued, rather than follow up on its threat, Kewazinga remained silent for another *five years*.  (*Id.* ¶¶ 25–27, 83, 87.)  Thus, the misleading conduct—assertion then silence—continued years after the '234 patent issued, facts that distinguish this case from the two cases on which Kewazinga relies, *Radio Systems* and *John Bean*.  (See Opp. at 29–30.)

In addition, an independent basis exists to apply equitable estoppel to the '234 patent.  As discussed above, in 2018, after suing Microsoft on the patents in this case, including the '234 patent, Kewazinga's lawyers at Stroock misled Google ███████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████  (Undisputed Facts ¶¶ 90, 98, 101–102.)  Google relied on those misrepresentations to keep its legal machinery and defenses shut down.  (*Id.* ¶ 100.)  And Google is prejudiced, at least because it can no longer mitigate damages by designing around the '234 patent (since Kewazinga delayed filing suit until after the '234 patent expired).  (*Id.* ¶ 105.)  Thus, all three elements of equitable estoppel are indisputably met regarding the '234 patent, independent of Kewazinga's misleading conduct before the issuance of that patent.

Google therefore respectfully requests that the Court grant summary judgment of equitable estoppel as to all three patents-in-suit in this case, and render final judgment in favor of Google.

16

Dated: August 17, 2020                    Respectfully submitted,

                                 By:    */s/ John M. Desmarais*
                                        John M. Desmarais

                                        DESMARAIS LLP
                                        John M. Desmarais
                                        jdesmarais@desmaraisllp.com
                                        Steven M. Balcof
                                        sbalcof@desmaraisllp.com
                                        Elizabeth Weyl
                                        eweyl@desmaraisllp.com
                                        David A. Frey
                                        dfrey@desmaraisllp.com
                                        230 Park Avenue
                                        New York, NY 10169
                                        Tel: (212) 351-3400
                                        Fax: (212) 351-3401

                                        Ameet A. Modi
                                        amodi@desmaraisllp.com
                                        Emily Chen (*pro hac vice*)
                                        echen@desmaraisllp.com
                                        101 California Street
                                        San Francisco, CA 94111
                                        Tel: (415) 573-1900
                                        Fax: (415) 573-1901

                                        *Counsel for Defendant Google LLC*