

www.desmaraisllp.com

| 230 Park Avenue | Elizabeth Weyl | 101 California Street |
|---|---|---|
| New York, NY 10169 | New York | San Francisco, CA 94111 |
| P: 212-351-3400 | Direct: 212-808-2981 | P: 415-573-1900 |
| F: 212-351-3401 | EWeyl@desmaraisllp.com | F: 415-573-1901 |

August 21, 2020

**Via ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *Kewazinga Corp. v. Google LLC*, Case No. 20-cv-1106 (LGS)
       Source Code Amendment to Protective Order

Dear Judge Schofield:

  We write on behalf of both parties, Plaintiff Kewazinga Corp. ("Kewazinga") and Defendant Google LLC ("Google"), to inform the Court of two issues relating to the Source Code Amendment to the protective order on which the parties cannot agree. Kewazinga and Google met and conferred and agree on the Source Code Amendment to the protective order with the exception of two disputes: (1) whether there should be presumptive limitations on the pages of source code that Kewazinga may request be printed by Google and (2) whether the number of copies Kewazinga is entitled to should be limited or if Kewazinga should have the ability to make its own copies of Google's highly confidential source code. On July 16, 2020, the Court granted the parties leave to file a joint letter setting forth their positions on those two issues. (Dkt. 64.) Attached as Exhibit A to this joint letter is the Source Code Amendment, which identifies the language each party proposes.

**(1) Presumptive Limits on Source Code Printing**

  The first disputed issue concerns defined limits on the printing of Google's source code. Under Google's proposal, Kewazinga may not print "more than 25 consecutive pages of source code, or an aggregate total of more than 500 pages, during the duration of the case without the prior written approval of [Google]," which Google "will not unreasonably withhold." (Ex. A, ¶ 9(d).) Kewazinga's proposal does not include this language, and instead allows Kewazinga to print limited portions of source code that appear reasonably necessary.

Kewazinga's Position:

  Without having provided any information about the scope or volume of source code that may be at issue, Google proposes a restrictive presumptive limitation that Kewazinga not be able to "print more than 25 consecutive pages, or an aggregate total of more than 500 pages, of source code." (Ex. A, ¶ 9(d)). Google's proposal finds no support in the Model Protective Order of the Northern District of California ("ND Cal. MPO," Ex. B) or the Model Protective Order of the Eastern District of Texas ("EDTX MPO," Ex. C) (collectively, "MPOs"). Neither includes a presumptive page limit. (*See* Ex. B, ¶ 9(d); Ex. C, ¶ 10(h)). Kewazinga's proposal is to simply use

the language from the ND Cal. MPO, which is what the parties have done for many other provisions in the protective order. (*Compare* Ex. A, ¶ 9(d) *with* Ex. B, ¶ 9(d)). Under this proposal, Kewazinga is restricted to "request[ing] paper copies of limited portions of source code, that are ***reasonably necessary*** for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial," and to the extent allowed in paragraph (i), which concerns "electronic images," and for which there is no dispute. (Ex. A, ¶ 9(d) (emphasis added)). No further restriction is warranted. This is also consistent with the EDTX MPO, which provides that a party "shall be permitted to make a ***reasonable*** number of printouts and photocopies of Source Code Material." (Ex. C, ¶ 10(h) (emphasis added)).

Arbitrary, rigid proposals like Google's have been rejected by numerous courts in favor of the more flexible and appropriate language found in the MPOs and proposed by Kewazinga. *E.g., OpenTV, Inc. v. Apple, Inc.*, No. 14CV01622JST (KAW), 2014 WL 5079343, at *2 (N.D. Cal. Oct. 9, 2014); *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306 JST JSC, 2013 WL 2181584, at *6 (N.D. Cal. May 20, 2013); *FarStone Tech., Inc. v. Apple Inc.*, No. 8:13-CV-01537-ODW, 2014 WL 2865786, at *3 (C.D. Cal. June 24, 2014). Courts often do so reasoning that where no source code has been produced, such restrictions are premature, bear no actual relationship to the case, and are unnecessary in light of the protections already afforded by the MPOs. *E.g., OpenTV*, 2014 WL 5079343, at *2 ("At this stage, then, any presumptive limits are unnecessary given the existing language in the model protective order."); *FarStone*, 2014 WL 2865786, at *3 ("Apple has not indicated that these numbers bear any actual relationship to the total source code available."); *EPL Holdings*, 2013 WL 2181584, at *6.

These same considerations apply here. Google has not yet produced code or provided any information explaining how its proposed printing limits of "25 consecutive pages" and "500 [total] pages" bear any relationship to the source code at issue. In a similar case involving the same patents, Microsoft produced millions lines of source code across multiple different code bases for different versions and aspects of the accused product. *Kewazinga Corp. v. Microsoft Corporation*, Case No. 1:18-cv-04500 (S.D.N.Y.), ECF No. 122 at 3. Thus, Google's rigid limitation makes little sense without any information about the scope or volume of code at issue.

Further, the protective order includes provisions to protect Google's interests, including the ND Cal. MPO dispute resolution mechanism for Google to challenge Kewazinga's requests. Its purported concerns about "inadvertent disclosure" apply to every case involving source code and, yet, the MPOs are routinely adopted and found to provide sufficient protections to assuage those concerns. Thus, Google demonstrates no good cause for departing from the ND Cal. MPO—which is consistent with the language of the EDTX MPO—to impose an arbitrary, restrictive limitation on the number of pages of source code that Kewazinga may request.

Google's Position:

Google's source code details precisely how its software products work. Printouts of source code, particularly consecutive pages of source code, reveal critical aspects of product functionality that can be misappropriated. Inadvertent disclosure would create a substantial risk of serious harm to Google's business. The parties agree that Google's source code will be reviewed on a secure

Hon. Lorna G. Schofield
August 21, 2020
Page 3

source code computer in the first instance, and that Kewazinga is not permitted to request paper copies of Google's source code for the purposes of reviewing the code.  (Ex. A ¶ 9(d).)

Generally prohibiting transmission of source code and limiting the number of consecutive pages allowed to be printed to 25, and the number of aggregate total pages to 500, strikes the appropriate balance between allowing Kewazinga to obtain the discovery it needs while protecting Google's source code.  The Eastern District of Texas has entered similar provisions in exactly these circumstances, even though its default protective order does not contain such protections.  *See, e.g., Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014) (agreeing with defendant that "allowing a party to print source code without restrictions would create a high risk of inadvertent disclosure" and finding good cause to impose source code printing restrictions); *E-Contact Techs., LLC v. Apple, Inc*., No. 1:11-cv-426, 2012 WL 11924448, at *3-4 (E.D. Tex. June 19, 2020) (imposing limitation of 10 consecutive pages and 500 aggregate pages).  And, under Google's proposal, Google cannot and will not withhold approval to print additional pages if Kewazinga demonstrates a reasonable basis for its request.

Kewazinga does not argue that these limitations are unreasonable.  Instead, Kewazinga argues that it cannot agree to Google's proposed presumptive limits—nor will it provide a competing page limit proposal—because it does not yet understand the scope of Google's source code.  But a limitation on ***printing*** has no impact on the amount of code that Kewazinga is able to ***review***—Google is making its relevant code available for full review on a secured computer.  And Kewazinga ignores the fact that in the unlikely event that Kewazinga does require printed copies of Google's source code above and beyond the proposed presumptive limits, Google's proposed language includes a representation that it will not unreasonably withhold approval to do so.  (Ex. A ¶ 9(d).)  *See E-Contact Techs.*, 2012 WL 11924448 at *3-4 (agreeing with defendant's proposed limitation of 10 consecutive pages and 500 aggregate pages of source code when defendant represented it would not unreasonably withhold consent for printing of additional pages).  Kewazinga also claims that Google's proposal will invite countless disputes.  This again ignores the additional compromises that Google has built into the Source Code Amendment, which was to explicitly state that it will not challenge the amount of source code requested "as long the requests fall under the presumptive limits allowed for source code printing."  (Ex. A ¶ 9(d).)

Google's proposal for presumptive limits on printing is reasonable, necessary to protect Google's source code and against the adverse impact of inadvertent disclosure, and does not restrict Kewazinga's ability to review Google's source code.  Good cause therefore exists to adopt Google's proposed presumptive limits.

**(2) Restriction on Kewazinga's Ability to Make its Own Copies and to Request Copies of Google's Highly Confidential Source Code**

The second disputed issue concerns limitations on Kewazinga's ability to make its own copies of Google's printed source code.  Google's proposal states that Kewazinga may request up to two additional sets of printed source code (Ex. A, ¶ 9(d)), and permits Kewazinga to make electronic copies "in limited excerpts" necessary to attach as exhibits to depositions, expert reports, or court filings.  (*Id.* ¶ 9(e).)  And under Google's proposal, Google "will entertain good faith

Hon. Lorna G. Schofield
August 21, 2020
Page 4

requests from [Kewazinga] for more than two additional sets if the need for additional sets arises." (*Id.* ¶ 9(d).) Kewazinga proposes that it be permitted to make paper copies of source code as "necessary" for certain purposes, as set forth by the ND Cal. MPO. (*Id.* ¶ 9(e).)

Kewazinga's Position:

Google seeks to impose a strict limitation on the number of copies of source code that Kewazinga may have, and prevent Kewazinga from making paper copies of source code under any circumstances. (*See* Ex. A, ¶¶ 9(d), 9(e)). *Again*, neither of these restrictions finds support in the MPOs, and Google demonstrates no good cause to deviate from the provisions of the MPOs. Kewazinga proposes using the ND Cal. MPO language, which expressly permits the receiving party to "make additional paper copies if such additional copies are necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report) or necessary for deposition." (*Compare* Ex. A, ¶ 9(e) *with* Ex. B, ¶ 9(e)). In fact, the default ND Cal. MPO uses even broader language, permitting the receiving party to make additional paper copies "otherwise necessary for the preparation of its case." (Ex. B, ¶ 9(e)). As a compromise, Kewazinga agreed to omit that language but Google has continued to push for a complete bar to Kewazinga making any paper copies of the source code on its own. (*See* Ex. A, ¶ 9(e)). The EDTX MPO similarly allows the receiving party to "to make a reasonable number of printouts and photocopies of Source Code Material." (Ex. C, ¶ 10(h)).

The MPOs also place no limits on the number of copies the receiving party may have but Google proposes that Kewazinga only be permitted "up to two additional sets (or subsets) of printed source code," with no ability to make copies itself. (*See* Ex. A, ¶¶ 9(d), 9(e); Ex. B, ¶ 9(d); Ex. C, ¶ 10(h)). The MPOs—like the Source Code Amendment—provide other protections for the producing party, including restrictions on where paper copies of the source code can be kept and requiring a log of the copies of the source code and the recipients of those copies. (*See* Ex. A, ¶¶ 9(e), 9(h); Ex. B, ¶ 9(e); Ex. C, ¶¶ 10(h), 10(j)). Moreover, Kewazinga's proposal—which mirrors the ND Cal. MPO—only permits making additional copies in certain situations. (*Compare* Ex. A, ¶ 9(e) *with* Ex. B, ¶ 9(e)). Thus, the Source Code Amendment protects Google's interests without the drastic restrictions that Google proposes.

Google again relies on the specter of "inadvertent disclosure" to support its restrictions but that concern applies to any case involving source code and does not warrant deviating from MPOs that are regularly adopted with the same concerns at issue. *See, e.g., OpenTV*, 2014 WL 5079343, at *2-3 (rejecting three-copy limit for source code as an unwarranted departure from the ND Cal. MPO). It does not warrant the sweeping restrictions proposed by Google, which prejudice Kewazinga's ability to litigate its case by arbitrarily restricting its ability to make and request copies of source code. At this preliminary stage of the case, the parties have no information about how many experts will opine on source code[1] and how many Google witnesses will deposed using source code. Kewazinga cannot know if it will identify source code necessary for a deposition far enough in advance for Google to provide a copy of it beforehand, and a request would itself reveal

---

[1] The Protective Order permits disclosure of source code to three or more experts (and typically there is at least a testifying technical expert and a source code expert), as well as outside counsel. D.I. 42 at ¶¶ 7.4(a), 7.4(b).

DESMARAIS LLP

Hon. Lorna G. Schofield
August 21, 2020
Page 5

Kewazinga's attorney work-product. And there are likely other situations warranting flexibility that Google is refusing to permit, given office closures and other circumstances caused by the COVID-19 pandemic. Google is the party seeking to deviate from the norm—the MPOs—and it has failed to demonstrate any good cause for doing so.

Google contends that it has accounted for Kewazinga's concerns because it will "entertain good faith requests" from Kewazinga for additional copies and provide copies "as soon as possible" after requested. (*See* Ex. A, ¶ 9(d)). But those contentions are significantly vaguer than the language it objects to as "provid[ing] no clear guidelines" and simply invites further disputes and problems. Kewazinga's proposal follows the MPOs, protects Google's interests, and provides reasonable flexibility to allow Kewazinga to litigate its case.

Google's Position:

As discussed above, Google's source code is extremely sensitive information, such that any inadvertent disclosure would create a substantial risk of serious harm to Google's business. The more copies of Google's source code that are made, the greater the chance of inadvertent disclosure, and of serious harm to Google.  Google proposes sensible limitations that permit Kewazinga to retain a reasonable number of printed copies of Google's source code (three in total); permits limited electronic reproduction for specific activities (depositions, expert reports, and court filings); and reduces the likelihood of inadvertent or improper use or disclosure of Google's code.

Kewazinga's proposed language, which would allow its attorneys to make copies of Google's source code if "otherwise necessary for the preparation of the case," provides no clear guidelines or limitations on when Kewazinga may make printed copies or digital images of Google's source code.  During the parties' meet-and-confer process, Google asked Kewazinga to explain the scenarios in which Kewazinga believed it might need to make copies of Google's code.  Kewazinga only said that it would like to make an unlimited number of its own additional paper copies for use in depositions.  Nor did Kewazinga provide a compromise position for the number of paper copies it could request from Google.

Under Google's proposal, Google "will entertain good faith requests from [Kewazinga] for more than two additional sets if the need for additional sets arises." (Ex. A ¶ 9(d).) That addresses Kewazinga's purported concern that it may need additional sets of printed source code.  And to the extent that Kewazinga believes it may need copies of code faster than "within 5 business days of the request," Google has proposed making copies for depositions available "as soon as possible after it is requested, but in no event more than 2 business days after the request is made."  (*Id.* ¶ 9(d).)  Kewazinga's concerns are therefore already fully addressed in Google's proposals.  Good cause therefore exists to adopt Google's proposed language.

**DESMARAIS**LLP

Hon. Lorna G. Schofield
August 21, 2020
Page 6

Respectfully submitted,

| */s/ Saunak K. Desai* | */s/ Elizabeth Weyl* |
|---|---|
| Ian G. DiBernardo | John M. Desmarais |
| Timothy K. Gilman | Steven M. Balcof |
| Kenneth L. Stein | Elizabeth Weyl |
| Saunak K. Desai | David A. Frey |
| Gregory R. Springsted | **DESMARAIS LLP** |
| **STROOCK & STROOCK & LAVAN LLP** | 230 Park Avenue |
| 180 Maiden Lane | New York, New York 10169 |
| New York, NY 10038 | T: 212-351-3400 |
| Tel: (212) 806-5400 | F: 212-351-3401 |
| Fax: (212) 806-6006 | jdesmarais@desmaraisllp.com |
| Email:idibernardo@stroock.com | sbalcof@desmaraisllp.com |
| Email:tgilman@stroock.com | eweyl@desmaraisllp.com |
| Email:kstein@stroock.com | dfrey@desmaraisllp.com |
| Email:sdesai@stroock.com | |
| Email:gspringsted@stroock.com | Ameet A. Modi |
| | Emily H. Chen (*pro hac vice*) |
| *Counsel for Plaintiff Kewazinga Corp.* | **DESMARAIS LLP** |
| | 101 California Street, Suite 3070 |
| | San Francisco, California 94111 |
| | T: (415) 573-1900 |
| | F: (415) 573-1901 |
| | amodi@desmaraisllp.com |
| | echen@desmaraisllp.com |
| | |
| | *Counsel for Defendant Google LLC* |