Ian G. DiBernardo
Timothy K. Gilman
Kenneth L. Stein
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: idibernardo@stroock.com
Email: tgilman@stroock.com
Email: kstein@stroock.com
Email: sdesai@stroock.com
Email: gspringsted@stroock.com

*Attorneys for Plaintiff Kewazinga Corp.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEWAZINGA CORP., | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 1:20-cv-01106-LGS<br>) |
| vs. | )<br>) |
| GOOGLE LLC, | ) **REDACTED**<br>) |
| Defendant. | )<br>) |

**PLAINTIFF KEWAZINGA CORP.'S REPLY IN SUPPORT OF
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.   THE UNDISPUTED FACTS MERIT SUMMARY JUDGMENT ....................................1

III.  ARGUMENT ................................................................................................................3

      A.     Kewazinga Never Misled Google ............................................................................3

      B.     Google Never Relied on Any Misrepresentation ......................................................6

      C.     Google's Unclean Hands Bars the Application of Equitable Estoppel ....................8

      D.     Equitable Estoppel Cannot Apply to the '234 Patent ...............................................9

IV.  CONCLUSION ...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) (*en banc*) ........................................................................3, 6, 8

*In re Global Equity Management (SA) Pty. Ltd.*,
   No. C 17-02177 WHA, 2020 WL 4732210 (N.D. Cal. Aug. 15, 2020) ...................................9

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
   136 S. Ct. 1923 (2016).............................................................................................................8

*John Bean Technologies Corp. v. Morris & Associates, Inc.*,
   887 F.3d 1322 (Fed. Cir. 2018).................................................................................................9

*Lambeth Magnetic Structures, LLC v. Seagate Technology (US) Holdings, Inc.*,
   No. CV 16-538, 2018 WL 466045 (W.D. Pa. Jan. 18, 2018)...................................................5

*Mondis Technology, Ltd. v. LG Electronics, Inc.*,
   No. 2:07-CV-565-TJW-CE, 2011 WL 1714304 (E.D. Tex. May 4, 2011) ..............................5

*Radio Systems Corp. v. Lalor*,
   709 F.3d 1124 (Fed. Cir. 2013).................................................................................................9

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
   767 F.3d 1339 (Fed. Cir. 2014)............................................................................................3, 6

**Rules**

Fed. R. Civ. P. 4(m) .......................................................................................................................4

Fed. R. Evid. 408 ...........................................................................................................................9

**I.      INTRODUCTION**

Equitable estoppel bars patentees from *misleading* defendants into infringement unfairly. The undisputed facts prove that Google was not *misled*—Google *knew* it faced a ▮▮▮▮ ▮▮▮▮ and *chose* to risk infringement by launching Street View in 2007 and continuing to offer it through today. Neither the ▮▮▮▮ nor a 2013 infringement complaint nor a 2018 discussion of ▮▮▮▮ gave Google any pause—Google's corporate representative admitted that ▮▮▮▮ ▮▮▮▮ Tolerating infringement risk is simply what Google does. ▮▮▮▮ ▮▮▮▮ This was a rational business decision—Street View has been enormously successful with ▮▮▮▮ ▮▮▮▮, and Google's massive profits on it will dwarf any reasonable royalty assessed here.

Kewazinga made no misleading statement in 2013. But even if it had, Google never *relied* on such a statement, and certainly not to its detriment. And Google's calculated disregard of a known infringement risk and related misconduct is the precise type of "unclean hands" that bars equitable relief in any event. For each of these reasons independently, let alone all of them together, the undisputed facts mandate that Google's affirmative defense fails as a matter of law.

**II.     THE UNDISPUTED FACTS MERIT SUMMARY JUDGMENT**

It is undisputed that in 2005-06, Kewazinga disclosed to Google "Kewazinga's foundational patent" on "navigation through … progressively different perspectives of an … 'environment'" and "Kewazinga's Tweening Patent" on "tweening, mosaicing or other smoothing technique … [for] a seamless glide-transition," and a "Strategic Plan" proposing "a revolutionary on-the-ground extension for Google Earth and Google Maps." Kewazinga's L.R. 56.1 Statement and Google's Responses (D.I. 98, "SOF") ¶¶ 19-26. This material was circulated

to at least a dozen executives and business people within Google—including the "corporate development team" and those working on Google Earth and Maps—and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ existed at this time. *Id*. ¶¶ 15-18, 36. And it is undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but launched the accused Street View in May 2007 anyway, and without telling Kewazinga or otherwise trying to resolve this Kewazinga ▮▮▮▮▮▮▮▮ first. *Id*. ¶¶ 28-33.

Kewazinga sent Google the '325 and '226 patents in March 2013 and they went to Google's ▮▮▮▮▮▮▮▮▮▮ which would typically ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that same day. *Id*. ¶¶ 47-48. Kewazinga sent Google an infringement complaint in May 2013, told Google in September 2013 that it continued to believe Google infringed, and told Google it would file continuation patents that Google would also infringe. *Id*. ¶¶ 49-50, 53-54. And it is undisputed that in June 2018, Google—without any prompting from Kewazinga or its counsel—was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶¶ 113-114.

Despite identifying a ▮▮▮▮▮▮▮▮▮▮▮▮, receiving the patents in March 2013 to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ receiving an infringement complaint in May 2013, being told that it infringed existing and future patents in September 2013, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, no one ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 82; *see also id*. ¶¶ 29, 48, 81-85.

Kewazinga never acquiesced in Google's infringement. Because the parties were in settlement discussions, Kewazinga did not serve the 2013 complaint and it was accordingly dismissed without prejudice. *Id*. ¶¶ 57-58. Google knew that "without prejudice" meant that Kewazinga could file a new complaint, and Kewazinga never stated that Google did not infringe or that Kewazinga was abandoning its claims. *Id*. ¶¶ 54-56. Kewazinga reaffirmed that it

2

believed Google infringed, and stated it would prosecute continued patent applications to make that infringement even clearer. *Id*. ¶¶ 52-54, 59. Kewazinga's 2020 complaint asserting both the original patents as well as a newer continuation is consistent with Kewazinga's representations from 2013, and with ███████████████████████████ *Id*. ¶ 110-114. Google was never misled—it chose to risk infringement with full appreciation of the threat it faced.

### III.  ARGUMENT

#### A.  Kewazinga Never Misled Google

This is not a case about delay, or even prejudicial delay—those are *laches* arguments which do not apply. D.I. 76 at 6. Equitable estoppel requires Kewazinga to have *misled* Google into believing Kewazinga acquiesced to Google's infringement. For summary judgment, Google must show the "***only possible inference***" from Kewazinga's conduct was that it would not pursue its infringement claims against Google again. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043-44 (Fed. Cir. 1992) (*en banc*) (emphasis added); *see also SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 767 F.3d 1339, 1350-51 (Fed. Cir. 2014).

Google largely points to a single communication as the alleged "misleading conduct"— Kewazinga's 2013 non-opposition to Google's motion to dismiss, which stated:

> After filing this action and up until Google's filing of the Motion, Plaintiffs and Google were engaged in settlement discussions. Consequently, Kewazinga had no intention of serving Google.
>
> Notwithstanding the foregoing and in light of the Motion, Plaintiffs do not oppose the dismissal of this action <u>without</u> prejudice. (SOF ¶ 57 (emphasis in original)).

Google contends that "had no intention of serving Google" meant that Kewazinga would never pursue its claims again. *See* D.I. 97 at 2. That interpretation strains the plain language of the submission, ignores its legal effect, and disregards the parties' contextual discussions.

The past-tense—that Kewazinga "***had*** no intention of serving"—refers to the 120-day

3

period for service *that had elapsed*. This **past** period required dismissal under Fed. R. Civ. P. 4(m), *regardless of Kewazinga's intentions for a future assertion*. SOF ¶ 55-57. Kewazinga expressly limited this "intention" to the elapsed time period "up until Google's filing of the Motion"—September 25, 2013. *Id.* Kewazinga emphasized that the dismissal was ***without*** prejudice, *i.e.*, that it could re-raise its infringement claims in a future complaint. *Id.* ¶¶ 57-58. Google's attempt to twist Kewazinga's statement about the ***past*** into a disclaimer of ***future*** rights contradicts the plain language and is nothing more than a newfound, litigation-induced argument.

Kewazinga's reservation of the right to re-assert its claims is consistent with dismissal under Rule 4(m)—"without prejudice" means that that the claim can be re-asserted, and Google knew that. SOF ¶ 56. Google's contrary argument would render Rule 4(m) a nullity, converting the dismissal "without prejudice" into one "with prejudice"—a legally improper result.

Kewazinga also stated that its non-service was a "[c]onsequen[ce]" of the parties' "settlement discussions." SOF ¶ 57. In those discussions, Kewazinga disagreed with Google's non-infringement, and those discussions ended with Kewazinga reaffirming that Google infringed, and stating that continuation patents would make this infringement even clearer. *Id.* ¶¶ 52-54. In this context, Kewazinga's emphasis on the dismissal being "<u>without</u> prejudice" can only be read as a reservation of rights to bring a future infringement complaint. *Id.* ¶¶ 57-58.

Kewazinga never made any misleading statement. And contrary to Google's cases where silence can sometimes be misleading, Kewazinga had no "clear duty to speak" further because it had ***already*** indicated to Google that it may bring its claims again in the future. D.I. 76 at 9-10.

Google's insinuations that Kewazinga ███████████████████████ are of no moment because Kewazinga had no duty to speak about its ██████ and litigation strategy. D.I. 97 at 10. Kewazinga was not required to continuously inform Google of its actions in attempting

4

to enforce its rights, and certainly was not obligated to disclose privileged information to do so. *See Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, No. CV 16-538, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018) (finding that communications with litigation funders are protected by the work-product doctrine); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *2–*3 (E.D. Tex. May 4, 2011) (same).

Google also argues it was misled in 2018 when it retained Stroock. But *before* any communication from Stroock, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SOF ¶¶ 110-114; *see also* D.I. 76 at 11-13. Far from believing *in 2013* that Kewazinga had abandoned its claims, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. Part of that preparation was to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id*. ¶ 114). This occurred *before* Google spoke to anyone at Stroock. *Id*. ¶¶ 110-114. Far from being misled, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is undisputed that the Orchard copyright matter ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and Stroock did not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. ¶¶ 119-120. ▇▇▇▇▇▇ *Id*. ¶ 121. ▇▇▇▇▇▇ Google's assertion that Stroock had a conflict in representing Google in 2018 is baseless—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* D.I. 95-1 (Worley Tr.) at 137:3-16

5



In any event, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that neither Kewazinga nor Stroock were misleading Google in any way. Even Google's corporate representative now concedes that he does not have any reason to believe that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶ 123.

### B. Google Never Relied on Any Misrepresentation

Google treats "reliance" as merely chronology, requiring nothing more than Google taking some action after Kewazinga's allegedly misleading conduct. But the "reliance" element requires Google to "show that, in fact, it substantially relied on the [allegedly] misleading conduct of [Kewazinga] *in connection with taking some action*." *Aukerman*, 960 F.2d at 1042-43 (emphasis added); *see also SCA Hygiene*, 767 F.3d at 1350-51. Google cannot do so.

The undisputed facts show that Google  SOF ¶¶ 81-85; D.I. 76 at 14-18. In fact, Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶¶ 87-88; D.I. 76 at 20-21. And Google cannot ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶ 83. Google cannot prove "reliance" in view of these undisputed facts.

Google speculates about alternatives it *could have* considered. D.I. 97 at 10-11. But what Google *actually did* in the face of U.S. patent threats—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶¶ 81-88; D.I. 76 at 18-21. Google argues it "need not show that it actually implemented any specific alternative." D.I. 97 at 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶ 82 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ D.I. 76 at 14-18. The only investment that Google points to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and cannot constitute "reliance." SOF ¶¶ 89-97; D.I. 76 at 15-17.

Google alleges it shut down its "legal machinery." D.I. 97 at 7-8. But Google's "legal machinery" comprised little more than preliminary mechanics of litigating, such as a litigation hold and solicitation of proposals from outside counsel. *See* D.I. 59 at 12. And far from spinning up its "legal machinery," ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ SOF ¶ 86. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See id.* ¶¶ 82, 84. Google's musing that it *might* have done something *if the complaint had been served* misses the mark—Google's inaction for six months *for a filed complaint* proves that Google would have similarly ignored Kewazinga even if Kewazinga had expressly laid bare in 2013 a plan to renew the dispute in 2020. Kewazinga could have invited Google to every meeting it had with litigation funders, and previewed the new complaint as it was being drafted. Until a complaint was served, Google would simply continue to disregard the known patent threat. Indeed, over nine years after other infringement complaints were served on Google because of Street View, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* ¶¶ 87-88.

Moreover, if this "legal machinery" shut down, that does not show reliance on misleading conduct—Google shut down its "legal machinery" even though Kewazinga emphasized that the dismissal was "<u>without</u> prejudice," that it still believed Google infringed, and that continuation patents would show that infringement even more clearly. SOF ¶¶ 52-54, 57-59. The "legal machinery" addressed litigation mechanics, not how to respond to a known infringement risk. To

7

the extent Google's counsel misunderstood "without prejudice" or misrepresented the status of the case to his superiors (*see* D.I. 97 at 8), Google's understanding was not based on being misled **by Kewazinga** and it cannot support equitable estoppel. *Aukerman*, 960 F.2d at 1042-43.

Google has also failed to show prejudice **caused by** its alleged reliance. D.I. 76 at 23-27.

### C. Google's Unclean Hands Bars the Application of Equitable Estoppel

Even if Google could adduce facts to show equitable estoppel—which it cannot—the defense would still fail due to Google's unclean hands. *See Aukerman*, 960 F.2d at 1043-44; D.I. 76 at 27-29. It is undisputed that Kewazinga disclosed its patented technology to Google in 2005-06, including "Strategic Plans" for using the technology in Google Maps that were stamped "Confidential." SOF ¶¶ 13-15, 19-26. Kewazinga never granted Google permission to use its technology, which Google knew was patented. *Id*. ¶¶ 14, 27-29. The Street View technology that Google launched for Google Maps in 2007, and even the press releases that Google used to hype the launch, are nearly word-for-word identical to Kewazinga's prior disclosures. *Compare id*. ¶¶ 19-26 *with id*. ¶¶ 39-45. And while Google now says its Street View technology came from Stanford and not Kewazinga, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id*. ¶¶ 34-36. On this record, a reasonable fact-finder could conclude only that Google copied Kewazinga's patents and is liable as a willful infringer.

At a minimum, Google identified a Kewazinga ▬▬▬▬▬▬▬▬▬▬ and chose to launch Street View ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id*. ¶¶ 28-29. This disregard of a known patent risk is the "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant or—indeed—characteristic of a pirate" behavior that is willful infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

Google's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is likewise odious. *See supra* at § 3.A; D.I. 76 at 11-13. Google does not have **any** reason to believe that

8

███████████████████████████████ SOF ¶ 123. Nonetheless, Google

███████████████████████████████████████████████

███████████████████████████████████ Id. ¶¶ 113-114 █

███████████████████████████████████████████████

███████████████████ gain a litigation advantage further comprises unclean hands.

Google's misuse of settlement discussions also evidences unclean hands. If not violating the parties' 2013 agreement prohibiting use of exchanged information in litigation (SOF ¶ 51), Google at least spurns FRE 408 by introducing those discussions, and by relying on ████

████████████████████████████████████████████████

████████████████ *C.f. In re Glob. Equity Mgmt. (SA) Pty. Ltd.*, No. C 17-02177 WHA, 2020 WL 4732210, at *1-2 (N.D. Cal. Aug. 15, 2020) (chastising party for trying to rely on statements made during mediation and denying relief on that basis). Google's repeated abuse of FRE 408 is further misconduct and can only chill any meaningful settlement discussions going forward.

Google's conduct regarding this litigation—willful infringement, sham conflicts, and abuse of FRE 408 settlement discussions—comprises unclean hands that forfeits equitable relief.

### D.    Equitable Estoppel Cannot Apply to the '234 Patent

Equitable estoppel cannot apply to the '234 patent as a matter of law. *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013) ("Quite simply, the [later-issued patent's] claims could not have been asserted … until those claims issued."); *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1328 (Fed. Cir. 2018) ("[E]quitable estoppel does not apply to … claims that have not been issued …."); D.I. 76 at 29-31. Google offers no case applying equitable estoppel to a continuation patent. And even if Kewazinga's reference to an "application" in 2013 were somehow misleading (*see* D.I. 97 at 16), which it was not, it would be irrelevant—the '234 patent did not issue from that application and was not filed until 2014. SOF ¶¶ 59-61.

## IV. CONCLUSION

For the foregoing reasons and those previously submitted, the Court should grant Kewazinga's motion for summary judgment that no equitable estoppel exists as a matter of law.

Dated: New York, New York
       August 31, 2020

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**

*/s/ Ian G. DiBernardo*
Ian G. DiBernardo
Timonty K. Gilman
Kenneth L. Stein
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: idibernardo@stroock.com
Email: tgilman@stroock.com
Email: kstein@stroock.com
Email: sdesai@stroock.com
Email: gspringsted@stroock.com

*Attorneys for Plaintiff Kewazinga Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2020 I caused a true and correct copy of the **PLAINTIFF KEWAZINGA CORP.'S REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** to be served in accordance with the Federal Rules of Civil Procedure, and/or the Local Rules of this Court, upon the following parties and participants, *via* email:

> John Michael Desmarais
> Elizabeth Esther Weyl
> Steven Marc Balcof
> David A. Frey
> DESMARAIS LLP
> 230 Park Avenue
> New York, NY 10169
> Tel: (212)−351−3400
> Fax: (212)−351−3401
> Email: jdesmarais@desmaraisllp.com
> Email: eweyl@dllp.com
> Email: sbalcof@dllp.com
> Email: dfrey@desmaraisllp.com
>
> Ameet A. Modi
> Emily Chen (*Pro Hac Vice*)
> DESMARAIS LLP
> 101 California St.
> San Francisco, CA 94111
> Tel: (415) 573−1806
> Email: amodi@desmaraisllp.com
> Email: echen@desmaraisllp.com
>
> *Attorneys for Defendant Google LLC*

                     *s/ Saunak K. Desai*
                     Saunak K. Desai