# Exhibit E

Page 1

```
 1
 2     IN THE UNITED STATES DISTRICT COURT
 3     FOR THE SOUTHERN DISTRICT OF NEW YORK
 4     Case No. 1:20-cv-01106-LGS
 5     ------------------------------------x
 6     KEWAZINGA CORP.,
 7                          Plaintiff,
 8              -against-
 9     GOOGLE, LLC,
10                          Defendant.
11     ------------------------------------x
12                       November 16, 2020
                         10:11 a.m.
13
14
15          Remote Videotaped Deposition
16     of JEFFREY LUBIN, an Expert Witness in
17     the above-entitled action, located in
18     Princeton, New Jersey, taken Via Zoom
19     before Dawn Matera, a Shorthand Reporter
20     and Notary Public.
21              *     *     *
22
23
24
25        Job No. CS4338777
```

Page 2

```
 1
 2  A P P E A R A N C E S :
 3
 4  STROOCK STROOCK & LAVAN LLP
    Attorneys for Plaintiff
 5      180 Maiden Lane
        New York, New York 10038
 6      (212)806-5400
 7  By: SAUNAK DESAI, ESQ.
        sdesai@stroock.com
 8      IAN DiBERNARDO, ESQ.
        idibernardo@stroock.com
 9
10
    DESMARAIS LLP
11  Attorneys for Defendant
        101 California Street
12      San Francisco, California 94111
        (415)573-1806
13
    By: EMILY CHEN, ESQ.
14      echen@desmarais.com
        AMEET MODI, ESQ.
15      emodi@desmarais.com
        DAVID FREY, ESQ.
16      dfrey@desmarais.com
17
18  Also Present:
19  JONATHAN POPHAM, Videographer
20       ~oOo~
21
22
23
24
25
```

Page 3

```
 1
 2            STIPULATIONS
 3     IT IS HEREBY STIPULATED AND AGREED, by
 4  and among counsel for the respective
 5  parties hereto, that the filing, sealing
 6  and certification of the within
 7  deposition shall be and the same are
 8  hereby waived;
 9     IT IS FURTHER STIPULATED AND AGREED
10  that all objections, except as to form of
11  the question, shall be reserved to the
12  time of the trial;
13     IT IS FURTHER STIPULATED AND AGREED
14  that the within deposition may be signed
15  before any Notary Public with the same
16  force and effect as if signed and sworn
17  to before the Court.
18          *   *   *
```

Page 4

```
 1      Lubin
 2      THE VIDEOGRAPHER:  Good morning.
 3  We are going on the record at
 4  a.m. on November 16th, 2020.   Please
 5  note the microphones are sensitive and
 6  may pick up whispering, private
 7  conversations and cellular
 8  interference.  Audio and video
 9  recording will continue until all
10  parties agree to go off the record.
11      This is media number 1 of the
12  video deposition of Dr. Jeffrey Lubin
13  taken by counsel for defendant in the
14  matter of Kewazinga Corporation versus
15  Google, LLC filed in the United States
16  District Court for the Southern
17  District of New York, case number
18  1:20-cv-01106-LGS.
19      This deposition is being held at
20  multiple locations via
21  videoconference.  My name is Jonathan
22  Popham from Veritext and I am the
23  videographer.  The court reporter is
24  Dawn Matera, also from Veritext.
25      I am not authorized to
```

Page 5

```
 1      Lubin
 2  administer an oath.  I am not related
 3  to any party in this action, nor am I
 4  financially interested in the outcome.
 5      Counsel will now please state
 6  their appearances and affiliations for
 7  the record.
 8      MR. DESAI:  On behalf of
 9  plaintiff Kewazinga Corp., this is
10  Stroock Stroock & Lavan.  And also on
11  the line on behalf of Kewazinga Corp.
12  is Ian DiBernardo, also of Stroock &
13  Stroock & Lavan.
14      MS. CHEN:  Good morning.  This
15  is Emily Chen representing Google,
16  Inc. with the law firm of Desmarais
17  LLP.  With me on the line are my
18  colleagues Ameet Modi and David Frey.
19      THE VIDEOGRAPHER:  Okay.  Anyone
20  else?
21      If that's everyone, will the
22  court reporter please swear in the
23  witness.
24  J E F F R E Y   L U B I N, having been
25  first duly sworn by Dawn Matera, a Notary
```

| Page 150 | Page 152 |
|---|---|
| 1  Lubin<br>2      So a matrix is also<br>3  interchangeable with array for the<br>4  purpose of this, for the purpose of these<br>5  patents and in general.  And whether or<br>6  not a subarray is used, I think that<br>7  meaning is well known to a POSITA and<br>8  very clearly applies to the things like<br>9  the sets of concentric rings as well as<br>10 to other collections of what are, you<br>11 know, called arrays here, but are also to<br>12 be considered subarrays.<br>13     Q.  Did you come up with your<br>14 definition of "array of cameras" before<br>15 or after you reviewed Figure 11?<br>16         MR. DESAI:  Objection to form.<br>17     A.  As I said all along I came up<br>18 with the definition based on general<br>19 knowledge of the term and then I made<br>20 sure that it was consistent with these<br>21 various figures and discussions.<br>22         And so, you know, that's how I<br>23 will continue to answer that question.<br>24     Q.  The patent refers to -- strike<br>25 that. | 1  Lubin<br>2      Q.  Turning to column 19 of the<br>3  '325 patent at line 7, do you see that it<br>4  says, "A plurality of cylindrical arrays<br>5  121-1 through 121-n of differing<br>6  diameters comprising a series of cameras<br>7  14 may be situated around an environment<br>8  comprising one or more objects 1200, one<br>9  cylindrical array at a time."<br>10         Do you see that?<br>11     A.  Yes, I do.<br>12     Q.  The patent refers to the<br>13 cylindrical arrays -- strike that.<br>14         The patent uses the word<br>15 "plurality," right?<br>16     A.  Plurality of rings, that's what<br>17 you're referring to?<br>18     Q.  That's right.  A plurality of<br>19 cylindrical arrays; do you see that?<br>20     A.  Line 7, I guess, on column 19.<br>21     Q.  That's right.<br>22     A.  Okay, yeah.<br>23     Q.  The patent doesn't refer to<br>24 those multiple arrays as one array here;<br>25 is that fair? |
| Page 151 | Page 153 |
| 1  Lubin<br>2      In Figure 11 of the '325<br>3  patent, the patent refers to 12-1, 12-2<br>4  and 12-n as cylindrical arrays, right?<br>5      A.  Yes.<br>6      Q.  And Figure 11 is a top-down<br>7  view of those cylindrical arrays; is that<br>8  right?<br>9      A.  That's right.<br>10     Q.  And each circle is described as<br>11 an array, correct?<br>12     A.  I don't recall if each circle<br>13 is, but it could be.  So each ring of<br>14 cameras is an array.  The vertical<br>15 assembly of those rings in the cameras is<br>16 an array that is composed of those ring-<br>17 shaped arrays or as we're calling them<br>18 subarrays.<br>19         And then the additional rings<br>20 are also arrays, but are also considered<br>21 subarrays of a larger array that is<br>22 formed as these rings are incorporated or<br>23 added or put into place in place of the<br>24 other rings that are taken away,<br>25 according to how this is described. | 1  Lubin<br>2         MR. DESAI:  Objection to form.<br>3      A.  Not explicitly here, but if you<br>4  look at the figure, if you look at Figure<br>5  11 -- let me just familiarize myself,<br>6  instead of just speaking from memory --<br>7  you will see this number 10, that refers<br>8  to that selection of cylindrical arrays.<br>9  You see that 10 with the arrow.<br>10         If you go back to Figure 1,<br>11 that 10 is explicitly referred to as an<br>12 array and it is comprised of the same<br>13 idea, those number 12 arrays.  In this<br>14 case they are rail arrays.  But those are<br>15 individual arrays.  And number 10, the<br>16 extent of those individual arrays is also<br>17 an array.<br>18         So it's the exact same thing in<br>19 Figure 11 and in the description of it,<br>20 whether or not -- whether or not the word<br>21 "array" is used to refer to those<br>22 concentric cylinders, it's still, there<br>23 is no other way to understand it,<br>24 especially when you consider that it<br>25 refers back to Figure 1. |

Page 154

1      Lubin
2   Q.  Would another way to understand
3   it be that they are a plurality of
4   cylindrical arrays?
5       MR. DESAI: Objection to form.
6   A.  They can be both and they are
7   both.  A plurality of cylindrical arrays
8   in this case is an array on its own, on
9   its own merit.
10  Q.  So in your view there is no
11  distinction between a plurality of arrays
12  and a single array; is that fair?
13      MR. DESAI: Objection to form.
14  Mischaracterizes testimony.
15  A.  Yeah, I would say in general a
16  plurality, a plurality of arrays is
17  always an array.  But when they are
18  assembled in this way for this purpose,
19  they become an array by -- there is no
20  other way to interpret it.
21  Q.  In the embodiment represented
22  by Figure 11, an array of cameras is not
23  composed of rings of different
24  circumferences; is that fair?
25  A.  No.  An array -- what was the

Page 155

1      Lubin
2   beginning of that question again?
3   Q.  In the embodiment represented
4   by Figure 11, an array of cameras is not
5   composed of rings of different
6   circumferences; is that fair?
7       MR. DESAI: Objection to form.
8   A.  You're specifically asking
9   about rings of different circumferences
10  or cylinders of different circumferences?
11  Q.  I apologize.  Let me clarify.
12      My question is:  In the
13  embodiment represented by Figure 11, an
14  array of cameras is not composed of
15  cylinders of different circumferences; is
16  that fair?
17      MR. DESAI: Objection to form.
18  Misstates the testimony.
19  A.  Yeah, that's not fair.  As I
20  previously testified, that ring of
21  cylinders is itself also an array.
22      And in fact, that point is
23  driven home even more by the fact that
24  when you're, you know, in some ways of
25  navigating through this array, you can

Page 156

1      Lubin
2   just as easily navigate along a ring as
3   you can along a radius.
4       The indices of these arrays,
5   allows you, the way it's all constructed,
6   it doesn't matter whether you're going --
7   whatever direction you're going doesn't
8   matter.  You're indexing -- you're
9   indexing into this larger array and
10  thereby going on to different paths that
11  include along the circumference of an
12  individual ring.  And it includes going
13  up a cylinder and also includes going
14  inward or outward along a radius.  Those
15  are all directions in this
16  multidimensional array and it's
17  constructed by a plurality of the
18  cylindrical arrays.
19  Q.  Referring again to Figure 11.
20  The specification of the patent does not
21  describe Figure labeled 10 in the
22  specific context of Figure 11; is that
23  fair?
24      MR. DESAI: Objection to form.
25  A.  The way I understand the

Page 157

1      Lubin
2   writing of patents is that when you refer
3   to Figure 1, continually reference or
4   whatever the expression is to Figure 1,
5   then it includes the like terms from
6   Figure 1 and there would be no reason to
7   have that 10 hanging out there if it
8   didn't refer to the same thing.
9       Why would there be a 10?  Just
10  it's not a drafting error.  It refers to
11  something real.  It refers to the entire
12  set of cylindrical arrays.  And if you
13  look at the description of the embodiment
14  described with respect to Figure 1, it
15  explicitly calls that label 10 an array.
16      So, you know, I don't think
17  it's true that the description of the
18  embodiment of Figure 11 does not refer to
19  those things as an array for the reasons
20  that I've just described.
21  Q.  In the '325 patent, please turn
22  to column 18 at the bottom, around line
23  59, where it reads "Multiple arrays."
24      Do you agree that the section
25  starting at the bottom of column 18

Page 198

1      Lubin
2  your opinion is different from the
3  seamlessness that's described in the Burt
4  patent; is that fair?
5     A.   It's different than some of the
6  descriptions in there, yes.
7     Q.   How so?
8     A.   Well, as I've already said,
9  the -- when you're trying to -- you know,
10 seamlessness is, since it's a perceptual
11 issue, there is no absolute seamlessness,
12 and so it's really a question of, you
13 know, to what extent it is to interfere
14 with the task at end.
15        And if the task at end is
16 navigating through an environment, there
17 is different requirements.  You do not
18 want to have things jump at one moment to
19 the next, perhaps.  But, you know, it's,
20 I would say, a less stringent requirement
21 than seamlessness in images.
22    Q.   So I can't recall the exact
23 term, but is there a way to quantify a
24 person's ability to perceive changes,
25 small changes?

Page 199

1      Lubin
2     A.   Yes, in fact a lot of my early
3  work at Sarnoff was about that.  One unit
4  is called the adjust noticeable
5  difference.
6        And actually I did an analysis,
7  I wrote a paper with another guy named
8  Gerry Alphonse, I don't know if I
9  included it in my CV, but it was about
10 perceptual requirements of seamlessness
11 in tiled large-screen displays.  And it
12 started out from the perspective that
13 there is no such thing as complete
14 seamlessness, because there is a seam
15 between those displays.  The question is
16 how close do they have to be for it to
17 not bother.
18        And it's certainly subjective
19 in a lot of ways, so that if you want to
20 just really not ever be able to see that
21 there is a seam, that is a much more
22 stringent J&D requirement than just
23 having it be not objectionable.
24        And so, you know, that's how
25 I've always viewed the idea of

Page 200

1      Lubin
2  seamlessness.  In anything that's
3  consumed by the human visual system, it,
4  you know, it's a relative thing.
5     Q.   For the record, could you spell
6  the name of your coauthor on that paper?
7     A.   Yeah, it's Gerald, G-E-R-A-L-D,
8  Alfonse, A-L-P-H-O-N-S-E.
9        And maybe just to telegraph a
10 little bit, you know, there is certainly
11 no requirement for seamlessness at all in
12 mosaicing, and in fact, in some
13 applications you specifically do not want
14 any kind of attempt to blur the seam.
15        For example, in the aerial
16 image, you know, analysis example that I
17 gave before the break, where these image
18 analysts are looking at satellite images
19 and they are lined up so that they are
20 more or less matching, they don't want
21 anything to be done to remove any
22 information to obstruct or distort any
23 information at all in these images, even
24 at what's not only on the edges between,
25 between these different plates or what do

Page 201

1      Lubin
2  they call them, these images.
3        So, you know, in that case, and
4  also, you know, it helps you understand
5  where you are in the collection of images
6  for people to see some edges between
7  them.  You know, some see where one
8  starts and the other ends.  And so that
9  is certainly an example of mosaicing and
10 yet there is no requirement for
11 seamlessness.  In fact, there is a
12 requirement for not seamlessness in those
13 applications.
14        And so my opinion of whether or
15 not mosaicing has to include any attempt
16 to make things seamless is really
17 informed by those kinds of applications
18 and in my experience.
19    Q.   In this example of aerial
20 imagery, when the mosaic is being put
21 together, do they also go through what
22 the Burt patent describes as the mosaic
23 composition process?
24        MR. DESAI:  Objection to form.
25    A.   There is the alignment process

51 (Pages 198 - 201)

Page 202

1          Lubin
2   and then, you know, it's a composition
3   process in the sense that these images
4   are being laid out on top of each other
5   or near each other.
6       Q.   And the process of being laid
7   out on top of each other or near each
8   other, how does that work?
9       A.   It works in a lot of different
10  ways.  One typical way is to just pick an
11  edge between the two images and if there
12  is no overlapping area, just to allow one
13  image to go to that edge from its -- from
14  the side that it is mainly on.  And then
15  the other image to go to that edge the
16  side that it's on.  That is a good way to
17  avoid distorting the view.
18           You could also -- you could
19  also average the pixels that might reduce
20  the resolution in those areas, so...
21      Q.   And do you agree that mosaicing
22  as used in these patents requires some
23  effort to reduce seams in the resulting
24  image?
25      A.   No.  Not at all.  You know, I

Page 203

1          Lubin
2   know that, you know, there were a number
3   of examples given in the Burt and in
4   these patents that do suggest that you
5   would want to reduce the visibility of
6   seams, but speaking from, you know, from
7   my experience in mosaicing, and from the
8   ordinary definition of mosaicing, there
9   is no need for that.
10           And in fact, if you look at the
11  Burt patent, that these, that are
12  incorporated by reference into --
13           (Off the record.)
14           THE VIDEOGRAPHER:  Back on the
15      record at 4:44 p.m.
16  BY MS. CHEN:
17      Q.   Dr. Lubin, before the break I
18  just asked a question, and the question
19  is, do you agree that mosaicing as used
20  in these patents requires some effort to
21  reduce seams in the resulting image?
22           MR. DESAI:  Objection to form.
23      A.   Yeah, I believe I started
24  saying that I don't, and then I gave a
25  number of reasons.  And I assume that

Page 204

1          Lubin
2   those reasons I already gave are still on
3   the record, correct?
4       Q.   Yes.
5       A.   So the thing I would like to
6   add to that is, even though the Burt
7   patent describes many cases in which
8   attempting to reduce seams is desirable,
9   it's interesting and important to note
10  that the claims themselves, and claim 1,
11  even, in particular, doesn't say anything
12  at all about reducing visibility of
13  seams.
14           And that of itself suggests to
15  me that it's not a requirement, even the
16  attempt to reduce the visibility of seams
17  is not at all a requirement of mosaicing
18  as he constructed it, and as I observed
19  in my own experience, both in work and in
20  the world at large.
21      Q.   Do you agree that the mosaicing
22  process taught by the Burt patent
23  includes image processing aimed at
24  reducing seams in the resulting image?
25           MR. DESAI:  Objection to form.

Page 205

1          Lubin
2       A.   In some embodiments, yes.  But
3   as I've just testified it does not
4   require it or else it would have been in
5   the first claim.
6       Q.   And to be clear, my question is
7   whether the mosaic process taught by the
8   Burt process includes image processing in
9   different reduced seams in the resulting
10  image?
11      A.   I was talking about claim 1 in
12  the Burt patent.
13      Q.   So your opinion is that in the
14  methods and systems taught by the Burt
15  patent, the image processing takes place
16  during the composition process, but does
17  not require reduction of seams; is that
18  fair?
19           MR. DESAI:  Objection to form.
20      A.   No.  I am saying you don't need
21  to do that image processing.  You may do
22  image processing for other reasons, but I
23  believe the image processing to which the
24  Burt patent refers is there specifically
25  to attempt to reduce the visibility of

Page 222

1 Lubin
2  Q. Yes.
3  A. Well, I think so, but if you
4 want to tell me that is the case, I will
5 believe you.
6  Q. You don't have to take my word
7 for it. We can reference the patent.
8  A. In '234, claim 4 talks about
9 mosaic imaging.
10  Q. Yes. For example, '234, claim
11 3 also discusses mosaic imagery, right?
12  A. Yes, I thought you were asking
13 about the term "mosaicing," though.
14  Q. I apologize. Do you agree that
15 the term "mosaic imagery" is used in
16 claim 3 of the '234 patent?
17  A. Yes, I do.
18  Q. And is it your opinion that the
19 claim to be construed here is "mosaicing"
20 and that term can also be modified to
21 describe mosaic imagery?
22      MR. DESAI: Object to form.
23  A. Let me look at what I wrote
24 about this because I don't remember off
25 the top of my head.

Page 223

1 Lubin
2      Can you ask that question
3 again?
4  Q. The question is, is it your
5 opinion that the construction of the term
6 "mosaicing" can also be modified to
7 construe mosaic imagery?
8      MR. DESAI: Objection to form.
9  A. Well, this is what I learned.
10 That other claim terms reciting the word
11 "mosaicing" or variants using "mosaic
12 imagery" should be construed with the
13 construction of the term "mosaicing" and
14 need not be separately or additionally
15 construed.
16      So that means that, you know,
17 once the definition of "mosaicing" is
18 agreed upon, then that informs the
19 definition of all those other terms;
20 mosaic imagery, mosaic images, generating
21 mosaic images, et cetera.
22  Q. Okay. So going back to my
23 question, you don't know whether or not
24 the Kewazinga patent required a
25 composition process?

Page 224

1 Lubin
2      MR. DESAI: Objection to form.
3      And misstates prior testimony.
4  A. To the extent that a claim in
5 the Kewazinga -- in any of the Kewazinga
6 patents is relying on mosaicing as set
7 forth by the Burt patent, then yes, the
8 Burt patent says that mosaicing involves
9 an alignment process and a composition
10 process, a combination process,
11 composition process.
12  Q. Do you agree that the claim in
13 the Kewazinga patent that cites mosaic or
14 mosaic imagery is all in the context of
15 what is set forth in the Burt patent?
16      MR. DESAI: Objection to form.
17  A. I'm not sure. That seems to me
18 to be a legal question and not a claim
19 construction question.
20  Q. When you evaluated the
21 suitability of your construction of the
22 term "mosaic," did you rely on anything
23 other than Burt?
24      MR. DESAI: Objection to form.
25  A. Yeah, I relied on my past

Page 225

1 Lubin
2 experience with image mosaics and what
3 I've seen out in the world with image
4 mosaics and mosaicing.
5  Q. Is your past experience with
6 image mosaicing consistent or
7 inconsistent with what is disclosed in
8 Burt?
9      MR. DESAI: Objection to form.
10  A. I would say it's consistent.
11 It says that, you know, there is an
12 alignment process and a composition
13 process, that seems straightforward to me
14 as the two pieces that comprise the
15 mosaicing process.
16      The additional optional task of
17 attempting to create seamlessness has
18 never been a part of my understanding of
19 what mosaicing is about, well before I
20 ever looked at any of these patents and
21 nothing in the patents led me to believe
22 otherwise.
23  Q. Do you have an opinion about
24 whether the presence or absence of image
25 processing aimed at reducing seams in

57 (Pages 222 - 225)

Page 266

CERTIFICATION

I, DAWN MATERA, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 19th day of November, 2020.

*[signature: Dawn Matera]*
DAWN MATERA

---

Page 267

I N D E X

Witness                              Page
JEFFREY LUBIN                          5

E X H I B I T S

No.                                  Page
Exhibit 1   Claim construction expert    8
            report and declaration

Exhibit 2   Notice of deposition to      9
            Kewazinga pursuant to Rule
            30(b)(1)

Exhibit 3   Dr. Keith Hannah's          48
            original and supplemental
            declaration submitted in
            connection with Microsoft
            case

            ~oOo~

---

Page 268

Veritext Legal Solutions
290 W. Mt. Pleasant Ave. - Suite 3200
Livingston, New Jersey 07039
Toll Free: 800-227-8440  Fax: 973-629-1287
erratas-cs@veritext.com

November 20, 2020
Jeffrey Lubin
jxlubin@gmail.com

Case Name: Kewazinga Corp. v. Google, LLC

Veritext Reference Number: 4338777

Witness: Jeffrey Lubin     Deposition Date: 11/16/2020

Dear Sir/Madam:

Enclosed you will find a transcript of your deposition.

As the reading and signing have not been expressly waived, please review the transcript and note any changes or corrections on the jurat/errata sheet included, indicating the page, line number, change and reason for the change. Sign at the bottom of the sheet in the presence of a notary except in California where you are signing under penalty of perjury and email the errata sheet back to us at the address shown above.

If the jurat is not received within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

Encl.
Cc: Emily Chen, Esq.
    Saunak Desai, Esq.

---

Page 269

Kewazinga Corp. v. Google, LLC
Jeffrey Lubin
E R R A T A
- - - - -
PAGE   LINE   CHANGE
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
Reason:_____
___ ___ _____
4338777