# Exhibit G

Trials@uspto.gov                                              Paper 8
571-272-7822                                    Entered: September 23, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

MICROSOFT CORPORATION,
Petitioner,

v.

KEWAZINGA CORP.,
Patent Owner.

_____

Case IPR2019-00872
Patent 9,055,234 B2

_____

Before PATRICK M. BOUCHER, MATTHEW S. MEYERS, and
STACY B. MARGOLIES, *Administrative Patent Judges.*

MEYERS, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2019-00872
Patent 9,055,234 B2

# I. INTRODUCTION

## A. Background

Microsoft Corporation ("Petitioner") filed a Petition to institute an *inter partes* review of claims 1–30 of U.S. Patent No. 9,055,234 B2 (Ex. 1001, "the '234 patent"). Paper 1 ("Pet."). Kewazinga Corp. ("Patent Owner") filed a Preliminary Response. Paper 7 ("Prelim. Resp."). We have authority under 35 U.S.C. § 314, which provides that an *inter partes* review may not be instituted unless the information presented in the Petition shows "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a); *see also* 37 C.F.R. § 42.4(a). Upon consideration of the Petition and Preliminary Response, it is our determination that the information presented does not show a reasonable likelihood that Petitioner would prevail with respect to any claim challenged in the Petition. *See* 35 U.S.C. § 314(a).

## B. Related Proceedings

Petitioner identifies itself as the real party in interest for this proceeding. Pet. 8. Patent Owner identifies itself as the real party in interest for this proceeding. Paper 5, 1. Petitioner and Patent Owner state that the '234 patent is involved in *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-04500-GHW (S.D.N.Y.), filed on May 21, 2018. Pet. 8; Paper 5, 1.

## C. The '234 Patent

The '234 patent relates generally to a telepresence method and system that "permits one or more users to navigate through imagery of an environment." Ex. 1001, 3:9–11. The '234 patent discloses that, to provide this functionality, the "system receives electronic imagery of progressively

IPR2019-00872
Patent 9,055,234 B2

different perspectives of the environment having overlapping fields of view and generates electronic mosaic imagery from the electronic imagery of the environment." *Id.* at 3:18–22, 3:30–32, 4:45–51. The '234 patent further discloses performing "image output mixing, such as mosaicing and tweening" to enable "seamless motion throughout the environment." *Id.* at 4:54–56. As discussed further below, "mosaicing" refers to a process in which a mosaic is generated from a plurality of images, and "tweening" enables the structure of a view to be processed from two or more camera outputs of the view. *Id.* at 17:31–36, 17:64–18:4. The '234 patent describes these image output mixing techniques in part through reference to documents that are incorporated by reference and which we also discuss further below. *Id.* at 17:31–36, 17:64–18:4.

The '234 patent discloses (referencing Figure 1) that "telepresence system 100 generally includes an array 10 of cameras 14 coupled to a server 18, which in turn is coupled to one or more users 22 each having a user interfaced/display device 24." Ex. 1001, 4:67–5:3. The '234 patent also discloses that "[t]he output from the microcameras 14 are coupled to the server 18" and that "coupled to the server 18 is an electronic storage device 20." *Id.* at 5:35–37, 5:48–49. The '234 patent adds that "[t]he server 18 transfers the outputs to the electronic storage device 20." *Id.* at 5:49–50; *see also id.* at 22:12–25 (describing Figure 10).

In one embodiment, the '234 patent discloses that "user inputs allow each user 22 to move or navigate independently through the array 10." *Id.* at 6:32–34. More particularly, the '234 patent discloses that "[t]he user inputs allow each user to not only select particular cameras, but also to select relative movement or navigational paths through the array 10." *Id.* at 6:39–

IPR2019-00872
Patent 9,055,234 B2

42. In another embodiment, the '234 patent discloses that "[n]avigation is effectuated by accessing the input of the storage nodes by a user interface device 24." *Id.* at 24:12–13; *see also id.* at 23:50–53. The '234 patent further discloses the following:

> [I]t is to be understood that virtually any configuration of rails 12 and cameras 14 is within the scope of the present invention. For example, the array 10 may be a linear array of cameras 14, a 2-dimensional array of cameras 14, a 3-dimensional array of cameras 14, or any combination thereof. Furthermore, the array 10 need not be comprised solely of linear segments, but rather may include curvilinear sections.
>
> The array 10 is supported by any of a number of support means. For example, the array 10 can be fixedly mounted to a wall or ceiling; the array 10 can be secured to a moveable frame that can be wheeled into position in the environment or supported from cables.

*Id.* at 7:43–56; *see also id.* at 24:46–49 (disclosing that camera arrays 12 "may be other shapes other than cylindrical" and that "it is not essential . . . that the camera arrays 12 surround the entire environment").

### D.   Illustrative Claim

Petitioner challenges claims 1–30 of the '234 patent, of which claims 1 and 13 are independent. Claim 1 is illustrative and is reproduced below:

> 1. A system for providing at least a first user with a first view of multiple locations through a remote environment and a second user with a second view of multiple locations through the environment, the first view being different than the second view, the system comprising:
> > one or more electronic storage devices;
> > one or more processing elements configured to:
> > receive, from a first user interface device associated with the first user, first user inputs associated with the first view through the environment;

IPR2019-00872
Patent 9,055,234 B2

receive, from a second user interface device associated with the second user, second user inputs associated with the second view through the environment;

store electronic imagery of progressively different perspectives of the environment having overlapping fields of view in the one or more electronic storage devices;

generate mosaic imagery from the electronic imagery of the environment;

based on the first user inputs, sequentially provide to the first user interface device mosaic imagery along the first view, thereby allowing the first user to navigate along the first view of the environment;

based on the second user inputs, sequentially provide to the second user interface device mosaic imagery along the second view, thereby allowing the first user and second user to navigate simultaneously and independently along the first view and second view of the environment, respectively.

### E.   *Asserted Grounds of Unpatentability*

Petitioner challenges claims 1–30 on the following ground:

| Claims Challenged | Statutory Basis | Reference |
|---|---|---|
| 1–30 | § 103(a) | The '325 Patent[1] |

To support its Petition, Petitioner proffers a Declaration of Dr. Robert L. Stevenson.  Ex. 1005.  Patent Owner relies on a Declaration of Dr. Keith Hanna to support its position.  Ex. 2001.

## II.   ANALYSIS

In addition to arguing that Petitioner fails to show a reasonable likelihood of prevailing on any of the challenged claims, Patent Owner raises two other arguments that it asserts warrant denial.  *See* Prelim. Resp.

---

[1] U.S. Patent No. 6,522,325 B1, issued February 18, 2003 (Ex. 1004, "the '325 Patent").

IPR2019-00872
Patent 9,055,234 B2

9–11.  First, Patent Owner argues that the current Petition "is an improper attempt to challenge the '234 patent under 35 U.S.C. § 112 in an IPR."  *Id.* at 9 (citing 35 U.S.C. § 311(b)).  Second, Patent Owner argues that "[t]he Board should deny institution pursuant to 35 U.S.C. § 325(d) because the only reference relied on by Petitioner—the '325 Patent—was considered by the Examiner during prosecution of the '234 patent."  Prelim. Resp. 10.

For the reasons set forth below, we conclude that Petitioner has not established a reasonable likelihood that it would prevail with respect to any claim challenged in the Petition.  Accordingly, we do not reach Patent Owner's other arguments.

*A.    Claim Construction*

In this *inter partes* review, filed March 22, 2019,[2] we construe the claims of the '234 patent by applying the same claim construction standard that would be used in a civil action under 35 U.S.C. § 282(b), including construing claims in accordance with the ordinary and customary meaning of such claims, as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent. 37 C.F.R. § 42.100(b) (2018); 83 Fed. Reg. 51340 (Oct. 11, 2018).  In applying such standard, claim terms are given their plain and ordinary meaning, as would be understood by a person of ordinary skill in the art, at the time of the invention and in the context of the entire patent disclosure.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Only those terms that are in controversy need be construed, and only to the extent necessary to resolve

---

[2] Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board, 83 Fed. Reg. 51340 (Oct. 11, 2018) (now codified at 37 C.F.R. pt. 42 (2019)).

IPR2019-00872
Patent 9,055,234 B2

the controversy. *See, e.g.*, *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

The parties do not specifically propose a construction for any claim term. Pet. 16; Prelim. Resp. 8. Petitioner notes that the parties "have submitted certain claim construction positions in the District Court proceeding, which are attached as Exhibit 1007" (Pet. 16), but asserts that "none of the agreed upon constructions of the '234 patent, nor the disputed constructions for the '234 patent claims are at issue in this Petition." *Id.* Petitioner also asserts—without reference to any particular claim term—that "the Board should construe the full scope of the claims as encompassing user-navigable systems that provide multiple perspective views of an environment, including both systems having an array of fixed-position cameras as well as systems having cameras mounted to a mobile structure that captures images while moving." *Id.*

We determine that no claim terms require express construction in order to determine whether to institute review.

### B.   *Level of Ordinary Skill in the Art*

Petitioner does not propose a level of ordinary skill in the art in the Petition. *See generally* Pet. However, regarding the level of ordinary skill in the art, Petitioner's declarant, Dr. Stevenson, proposes:

> a [person of ordinary skill in the art] to which these applications are directed would have had a bachelor's degree in computer science, computer engineering or the equivalent, and 3–5 years of experience in the field of computer vision or image processing, or a post-graduate degree in computer science, computer engineering or the equivalent, and 1–2 years of

IPR2019-00872
Patent 9,055,234 B2

> experience in the field of computer vision or image processing,
> or equivalent experience.

Ex. 1005 ¶ 30.

In response, Patent Owner asserts that its declarant, Dr. Hanna, "agrees that this was the level of ordinary skill in the art at the time the 1999 Application was filed." Prelim. Resp. 9 (citing Ex. 2001 ¶ 22); *see also* Ex. 2001 ¶ 22.

For purposes of this Decision, we adopt Dr. Stevenson's assessment of the level of ordinary skill in the art.

### C.    *Whether the '325 Patent is Prior Art*

The only art asserted by Petitioner in this proceeding is the '325 patent, which is an ancestor of the subject '234 patent through a chain of purported continuation applications. *See* Ex. 1001, 1:7–24. Petitioner asserts that, due to a break in the chain of priority, the '325 patent nevertheless qualifies as prior art to the '234 patent.[3] Pet. 21.

The '325 patent issued February 18, 2003, from U.S. Patent Application 09/419,274, filed October 15, 1999 ("the 1999 Application"). Ex. 1004, at codes (45), (21), (22).

The '234 patent issued June 9, 2015, from U.S. Patent Application 14/505,208, filed October 2, 2014. Ex. 1001, at codes (45), (21), (22). The '234 patent claims priority as a continuation, to U.S. Application No.

---

[3] Petitioner asserts that "[t]he priority chain leading to the '234 patent was broken" (Pet. 21), and as such, "the Challenged Claims are not entitled to an effective filing date any earlier than October 30, 2009, the filing date of the 2009 Application." *Id.* at 21. However, Petitioner contends that "[t]his Petition focuses on the 2006 Application, which disclosed an alleged invention requiring a user-navigable array of fixed-position cameras." *Id.* at 17.

IPR2019-00872
Patent 9,055,234 B2

13/949,132, filed on July 23, 2013, which is a continuation of U.S.

Application No. 12/610,188, filed on October 30, 2009 ("the 2009

Application"), now abandoned.  The 2009 Application is a continuation of

U.S. Application No. 11/359,233, filed on February 21, 2006 ("the 2006

Application") (Exhibit 1003), now U.S. Patent No. 7,613, 999, which is a

continuation of U.S. Application No. 10/308,230, filed on December 2,

2002, now abandoned, which is a continuation of the 1999 Application, also

referred to as the '325 patent.  The '325 patent is a continuation-in-part of

U.S. Application No. 09/283,413, filed on April 1, 1999, now U.S. Patent

No. 6,535,226, which claims priority to Provisional U.S. Application No.

60/080,413, filed on April 2, 1998.  *See id.* at codes (63), (60), 1:7–23; *cf.*

Pet. 9, 12; Prelim. Resp. 5.

Petitioner contends that claims 1–30 (the challenged claims) of the

'234 patent "are not entitled to an effective filing date any earlier than

October 30, 2009, the filing date of the 2009 Application" (Pet. 21 (citing

Ex. 1002, 91)) because "[t]he 2006 Application did not convey to a [person

of ordinary skill in the art] that the Applicants were in possession of the

much later, and much more broadly drafted Challenged Claims, as of the

filing of the 2006 Application."  Pet. 18.  More particularly, Petitioner

argues that "[t]he 2006 Application narrowly discloses as its alleged

invention a distributed camera array for capturing images while stationary

for displaying multi-perspective views of the environment" and "disparages

prior art systems using cameras that were not placed in fixed-positions, but

instead, were mounted on moving vehicles during image capture."  Pet. 30

(citing Ex. 1005 ¶¶ 39–41, 50).  For example, Petitioner contends that the

2006 Application describes and claims a system "limited to a user-navigable

IPR2019-00872
Patent 9,055,234 B2

array of fixed-position cameras, each camera providing a view from a different point ('distributed camera array')." Pet. 21; *see also id.* at 22–30. To support its contention, Petitioner argues (1) "[t]he 2006 Application [c]riticized [m]oving [c]ameras [p]rior [a]rt" (*id.* at 21–23 (emphasis omitted)); (2) each embodiment identified in the 2006 Application is described as including "the distributed camera array" (*id.* at 23–29); and (3) each claim of the 2006 Application required "a distributed camera array for performing image capture" (*id.* at 29–30). Petitioner also argues that the distributed camera array is a critical, non-optional element of the invention. *Id.* at 37–40.

Petitioner further argues that because the challenged claims "eradicated any reference to the distributed camera array," Patent Owner "effectively broadened the alleged invention to encompass not only the distributed camera array system, but also systems that relied on moving cameras for image capture." Pet. 36 (citing Ex. 1005 ¶ 54). Thus, Petitioner takes the position that "the 2006 Application lacks adequate written description support for the Challenged Claims," and as such, "the Challenged Claims are not entitled to an effective filing date any earlier than October 30, 2009, the filing date of the 2009 Application." Pet. 21 (citing Ex. 1002, 91).

In response, Patent Owner asserts that "Petitioner does *not* argue that the priority application fails to disclose any limitation actually recited in the Challenged Claims." Prelim. Resp. 1 (citing Pet. 45–74; Ex. 1005 ¶¶ 59–83).[4] Rather, according to Patent Owner, Petitioner asserts that the 2006

---

[4] Patent Owner notes that "although the Petition includes arguments directed only to the 2006 Application, Patent Owner addresses those arguments with

IPR2019-00872
Patent 9,055,234 B2

Application "supports only a particular embodiment having an 'array of fixed-position cameras'—a term concocted by Petitioner and not found in the '234 Patent or the priority application—and, because the Challenged Claims do not recite that limitation, they are not entitled to priority." Prelim. Resp. 2. Patent Owner argues that "the Challenged Claims are not required to separately recite a limitation directed to every feature disclosed in the priority application." *Id.* (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004); *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016)).

To support its argument, Patent Owner argues that "the Challenged Claims are directed to features unrelated to the array of cameras that provide the advantages described in the 1999/2006 Applications."[5] *Id.* at 27; *see also id.* at 24–29. Patent Owner argues the following:

> In general, the '234 patent and the priority applications disclose telepresence systems that include features and benefits directed to each of capturing, storing, processing, and permitting users to navigate imagery, and according to Federal Circuit law, applicants were not required to claim every feature directed to all of these aspects, including any array of cameras. Importantly, the systems and methods of the Challenged Claims operate and provide significant benefits described in the priority application

reference to the "1999/2006 Applications . . . [b]ecause the 1999 Application and 2006 Application have virtually identical specifications." Prelim. Resp. 14. We thus understand Patent Owner's references to "the priority application" as referring to the 2006 Application in addressing Petitioner's arguments, while also emphasizing the further commonality of disclosure with the 1999 Application.

[5] Although Patent Owner responds to Petitioner's "arguments with reference to the '1999/2006 Applications' collectively" (Prelim. Resp. 14), the "Petition focuses on the 2006 Application." Pet. 17. Accordingly, our analysis also focuses on the 2006 Application.

IPR2019-00872
Patent 9,055,234 B2

> *without an array of cameras*.  For example, the Challenged
> Claims are directed to features for smoothing user navigation
> (*e.g.*, mosaicing imagery) and extending "content life" through
> the navigation of stored imagery—features Petitioner effectively
> admits are disclosed in the priority application.

*Id.* at 2–3.  Patent Owner adds:

> The 1999/2006 Applications describe a need for a telepresence
> system "that provides the ability to better simulate a viewer's
> actual presence in a venue."  Ex. 2002 at 12; Ex. 1003 at 13.  One
> aspect of this described in the 1999/2006 Applications involves
> "effectuat[ing] seamless motion throughout the environment"
> which facilitates simulating a viewer's actual presence in an
> environment and navigation through it.  *See* Ex. 2002 at 17;
> Ex. 1003 at 18; Ex. 2001, ¶¶ 29–30.  The 1999/2006 Applications
> teach that "image output mixing, such as mosaicing and
> tweening" can be used to help achieve this.  Ex. 2002 at 17;
> Ex. 1003 at 18.  In addition, the 1999/2006 Applications disclose
> other forms of mixing, which involve "compositing the existing
> or current output and the updated camera node output,"
> "dissolving the existing view into the new view," providing
> outputs from "intermediate cameras," and/or "add[ing] motion
> blur to convey the realistic sense of speed."  Ex. 2002 at 43–44;
> Ex. 1003 at 44–45.  These forms of mixing can also be used to
> smooth navigation through an environment.  Ex. 2001, ¶ 31

Prelim. Resp. 25–26.  Patent Owner argues that the challenged claims

recite "these same features for smoothing a user's navigation through

an environment resulting in a more realistic experience."  *Id.* at 26.

According to Patent Owner, "[b]oth independent claims of the '234

patent recite limitations directed to mosaicing, which can be used to

smooth navigation."  *Id.* (citing Ex. 1001, claims 1 and 3).

Patent Owner also argues that another advantage described in the 2006

Application "unrelated to any array of cameras, and reflected in the

Challenged Claims, is extending 'content life.'"  *Id.* at 26.  More

IPR2019-00872
Patent 9,055,234 B2

particularly, Patent Owner argues that the 2006 Application "disclose[s] the electronic storage of imagery of an environment in 'storage nodes' to allow users to independently navigate through stored imagery, with each viewing being different." *Id.* at 27 (citing Ex. 2002, 20–21; Ex. 1003, 21–22; Ex. 2002, 65–66).

After considering the parties' positions on the record before us, we determine that Petitioner has not shown sufficiently in support of its unpatentability ground that the '325 patent is prior art, i.e., that the 2006 Application fails to provide written-description support for the '234 patent's claims (the challenged claims). Our reviewing court has stated that "[i]t is certainly reasonable that different claims could be directed to covering different aspects of the invention." *ScriptPro*, 833 F.3d 1336, 1342; *see also Carl Zeiss Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1181 (Fed. Cir. 1991) ("[I]t is not necessary that a claim recite each and every element needed for the practical utilization of the claimed subject matter, as it is entirely appropriate, and consistent with § 112, to present claims to only one aspect." (internal citation and quotation marks omitted)).

First, on the current record, Petitioner does not show sufficiently that the 2006 Application "criticize[s]" or "teaches away" from vehicle-mounted mobile camera systems such that a user-navigable array of fixed-position cameras is a necessary element of the invention that should have been claimed. *See* Pet. 21–23 (citing Ex. 1003, 8, 10–11, 25), 31–32.

In the "Description of Related Art," the 2006 Application identifies U.S. Patent No. 5,708,469 ("the '469 patent"), which according to the 2006 Application, discloses that "a moving vehicle carries the cameras." Ex. 1003, 10. The 2006 Application refers to "several drawbacks" of the system

13

IPR2019-00872
Patent 9,055,234 B2

described in the '469 patent, including that "in order for a viewer's perspective to move through the venue, the moving vehicle must be actuated and controlled" and that, "[i]n this regard, operation of the system is complicated." Ex. 1003, 10–11. The 2006 Application thus criticized the moving camera system for requiring viewer control of the camera system's movement for navigation through an environment. *Id.* Thus, we are not persuaded that the 2006 Application excluded from the invention all systems with moving cameras. Rather, we agree with Patent Owner, on the current record, that the 2006 Application identified a more limited drawback of a moving camera system that required complicated user operation.

With respect to the "Detailed Description Of Preferred Embodiments," Petitioner asserts that the 2006 Application "emphasized the advantages of the allegedly inventive array of fixed-position cameras over a vehicle-mounted mobile camera structure." Pet. 22–23. In particular, Petitioner observes that the 2006 Application specifically asserts that, because the array "employs a series of cameras 14, no individual camera, or the entire array 10 for that matter, need be moved in order to obtain a seamless view of the environment." *Id.* (emphasis omitted) (quoting Ex. 1003, 25).

Although we agree with Petitioner that the 2006 Application identifies advantages related to the array, the 2006 Application discloses alternative methods for obtaining a seamless view of the environment. *See, e.g.,* Ex. 1003, 18 (disclosing "image output mixing, such as mosaicing and tweening, effectuates seamless motion throughout the environment"); *see also id.* at 47 (disclosing "the system may form the mosaic from a predetermined number of outputs or during a predetermined time interval,

IPR2019-00872
Patent 9,055,234 B2

and then display the images pursuant to the user's navigation through the environment"). And, as Patent Owner notes, "the [2006 Application] expressly contemplates alternatives—using structures that include moving cameras to capture images, not only an 'array of fixed-position cameras.'" Prelim. Resp. 41; *see also* Ex. 1003, 27 (disclosing "it is to be understood that virtually any configuration of rails 12 and cameras 14 is within the scope of the present invention"), 28 (disclosing "the array 10 can be secured to a moveable frame that can be wheeled into-position in the environment or supported from cables). Thus, we are not persuaded that the 2006 Application "criticize[s]" or "teaches away" from vehicle-mounted mobile camera systems such that a user-navigable array of fixed-position cameras is a necessary element of the invention that should have been claimed.

Petitioner further contends that "[t]here is nothing about the 2006 Application that would have led a [person of ordinary skill in the art] to understand that the Applicants were claiming they invented a telepresence system that used vehicle-mounted mobile cameras instead of the fixed-position distributed camera array." Pet. 41 (citing Ex. 1005, ¶ 57). However, as explained above, the 2006 Application expressly contemplates using structures that include moving cameras to capture images, not only the "fixed-position distributed camera array," as Petitioner asserts. *See* Ex. 1003, 27, 28. In this regard, the 2006 Application discloses that that "the array 10 can be fixedly mounted to a wall or ceiling" or "the array 10 can be secured to a moveable frame that can be wheeled into-position in the environment or supported from cables." Ex. 1003, 28. Additionally, as Patent Owner notes, the 2006 Application incorporates by reference U.S. Patent No. 5,529,040 to Hanna (Exhibit 1009), which according to the 2006

IPR2019-00872
Patent 9,055,234 B2

Application describes tweening in the context of a moving video camera.
*See* Prelim. Resp. 4 (citing Ex. 1009), 46–47; Ex. 1003, 47–48, 49 (noting
that "where the Hanna patent effectuates the tweening process by detecting
the motion of an image sensor (e.g., a video camera), an embodiment of the
present invention monitors the user movement along live cameras or storage
nodes"), 66.

Petitioner also argues that "criticizing prior systems that relied on
cameras mounted to a moving vehicle is the antithesis of blaze marks that
would lead a [person of ordinary skill in the art] to conclude that the
Applicants were in possession of an invention that lacked the distributed
camera array that the 2006 Application makes clear was an integral part of
the invention." Pet. 43. However, as discussed above, we agree with Patent
Owner that the 2006 Application does not criticize or disclaim "moving
camera systems, including vehicle-mounted cameras, in their entirety."
Prelim. Resp. 49. Instead, the 2006 Application identifies a limited
drawback pertaining to moving camera systems requiring viewer control of
the camera system's movement for navigation through an environment." *Id*.

Petitioner also does not show sufficiently on the current record that a
user-navigable array of fixed-position cameras is a "critical," "non-optional"
feature of the invention that should have been claimed. *See* Pet. 37–41.
Here, we agree with Patent Owner that the use of "image output mixing,
such as mosaicing and tweening" does not necessarily require the use of an
array of cameras to obtain a seamless view of the environment. *See* Prelim.
Resp. 25 (citing Ex. 1003, 18). Although Petitioner characterizes camera
arrays as a "critical feature" of the 2006 Application (*see* Pet. 37–41), the
2006 Application discloses that "an embodiment of the present invention

IPR2019-00872
Patent 9,055,234 B2

monitors the user movement among live cameras or storage nodes"
(Ex. 1003, 66) and "a user may navigate through the environment . . . by
accessing the input of the storage nodes by a user interface device." *Id.* at
67.  Thus, we are not persuaded by Petitioner's argument.  "Not every claim
must contain every limitation or achieve every disclosed purpose."
*ScriptPro*, 833 F.3d 1342.

Patent Owner asserts that "Petitioner has failed to demonstrate that the
Challenged Claims cannot claim priority to the 1999 or 2006 Applications"
because the challenged claims "address problems described in the 1999/2006
Applications."  Prelim. Resp. 32 (citing Ex. 2001 ¶¶ 28–37).  Here, we agree
with Patent Owner that the challenged claims address a benefit described in
the 2006 Application—permitting users to navigate imagery.  For example,
the 2006 Application discloses the benefit of "allow[ing] a user to move
forward and backward through the environment."  Ex. 2003, 14.  The 2006
Application also discloses that "image output mixing, such as mosaicing and
tweening, effectuates seamless motion throughout the environment."
Ex. 1003, 18.  The 2006 Application further discloses, with respect to
"effectuat[ing] the tweening process," that an "embodiment of the present
invention monitors the user movement among live cameras or storage
nodes."  Ex. 1003, 49.

These features are captured in the challenged claims.  Independent
claim 1 of the '234 patent recites, *inter alia*, (1) "one or more electronic
storage devices" and (2) "one or more processing elements configured
to . . . store electronic imagery of progressively different perspectives of the
environment having overlapping fields of view in the one or more electronic
storage devices," and configured to "generate mosaic imagery from the

IPR2019-00872
Patent 9,055,234 B2

electronic imagery of the environment." Ex. 1001, 25:7–24. Independent claim 13 similarly recites "generating mosaic imagery from electronic imagery of the environment having overlapping fields of view." *Id.* at 26:57–27:2.

Petitioner does not show on the current record that such features require an array of fixed-position cameras. *See* Pet. 17 (arguing that the 2006 application "was explicit that a user-navigable array of fixed-position cameras was an integral aspect of the alleged invention"), 21 (arguing that the invention is "limited to a user-navigable array of fixed-position cameras, each camera providing a view from a different point"). On the current record, we agree with Patent Owner that the use of "image output mixing, such as mosaicing and tweening" does not necessarily require the use of an array of cameras. Prelim. Resp. 25–26. As discussed above, the 2006 Application describes other features in respective embodiments, namely mosaicing and tweening. *See* Ex. 1003, 13; *see also id.* at 44–45 (discussing "mixing the outputs").

With respect to "mosaicing," the 2006 Application incorporates by reference U.S. Patent No. 5,649,032 to Burt ("Burt," Ex. 1008) for its disclosure of a system and method for generating a mosaic from a plurality of images. *See* Ex. 1003, 46. Patent Owner asserts (*see* Prelim. Resp. 28), and our independent evaluation confirms, that Burt does not require a user-navigable array of fixed-position cameras because Burt discloses that its system receives "a series of images from a sensor 1200 such as a video camera." Ex. 1008, 20:34–35. And, as discussed above, with respect to "tweening," the 2006 Application incorporates by reference the Hanna patent (Ex. 1009) for its disclosure of a method for determining sensor

IPR2019-00872
Patent 9,055,234 B2

motion and scene structure and image processing system.  *See* Ex. 1003, 47–48.  Patent Owner asserts (Prelim. Resp. 28, 52–53), and our independent evaluation confirms, that Hanna also does not require a user-navigable array of fixed-position cameras.  *See generally*, Ex. 1009.  Instead, Hanna discloses that its system operates using "an image sensor 302, such as a video camera, whose output is a sequence of images of a scene at a given resolution."  *Id.* at 11:65–68.

Upon review of the 2006 Application's disclosure, we are not persuaded that the Petition shows that the limitations of claims 1–30 of the '234 patent lack written description support in the 2006 Application.  *See* Pet. 44–74 (mapping claims 1–30 to the '325 patent); *see also* Ex. 1005 ¶¶ 59–83.  Accordingly, Petitioner has not shown sufficiently in support of its unpatentability ground that the '325 patent is prior art.

### D.    Petitioner's Asserted Ground of Unpatentability

Petitioner has not persuaded us that the '325 patent qualifies as prior art such that it could be used in a ground raised under 35 U.S.C. § 102 or § 103 in an *inter partes* review of the '234 patent.  *See* 35 U.S.C. § 311(b).  Consequently, Petitioner has not shown a reasonable likelihood of prevailing on its proposed ground of unpatentability based on the '325 Patent.

### III.    CONCLUSION

Based on the arguments in the Petition and the Preliminary Response, and the evidence of record, we are not persuaded that the '325 patent is prior art to the '234 patent.  Therefore, we determine that Petitioner has not demonstrated a reasonable likelihood that at least one of the challenged claims of the '234 patent is unpatentable based on the asserted ground.

IPR2019-00872
Patent 9,055,234 B2

## IV.    ORDER

For the reasons above, it is

ORDERED that, pursuant to 35 U.S.C. § 314(a), the Petition is denied, and no *inter partes* review is instituted for claims 1–30 of U.S. Patent No. 9,055,234 B2.

IPR2019-00872
Patent 9,055,234 B2

PETITIONER:

Todd Siegel
James DeRouin
KLARQUIST SPARKMAN, LLP
Todd.siegl@klarquist.com
james.derouin@klarquist.com


PATENT OWNER:

Ian G. DiBernardo
Kenneth L. Stein
STROOCK & STROOCK & LAVAN LLP
idibernardo@stroock.com
kstein@stroock.com