# EXHIBIT B

Andrew B. Lachow
andrewlachow@gmail.com
LachowLaw
11 Lafayette Road
Larchmont, New York 10538
Tel: (646) 678-0835

J. Christopher Carraway (*Pro Hac Vice*)
chris.Carraway@klarquist.com
Kristin L. Cleveland (*Pro Hac Vice*)
kristin.cleveland@klarquist.com
Todd M. Siegel (*Pro Hac Vice*)
todd.siegel@klarquist.com
James DeRouin (*Pro Hac Vice*)
james.derouin@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Tel: (503) 595-5300

*Counsel for Defendant Microsoft Corporation*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEWAZINGA CORP.**<br><br>Plaintiff,<br><br>v.<br><br>**MICROSOFT CORPORATION,**<br><br>Defendant. | Case No. 1:18-cv-04500-GHW<br><br>**DECLARATION OF ROBERT L. STEVENSON IN SUPPORT OF MICROSOFT'S CLAIM CONSTRUCTION BRIEF** |

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION AND ENGAGEMENT | 1 |
| II. | BACKGROUND AND QUALIFICATIONS | 1 |
| | A.   Educational Background | 1 |
| | B.   Professional History | 1 |
| III. | THE ASSERTED PATENTS | 4 |
| IV. | CLAIM CONSTRUCTION AND THE HANNA DECLARATION | 5 |
| | A.   Array of Cameras | 5 |
| | B.   Mosaicing | 12 |
| | C.   Mixing | 22 |
| | D.   Compositing | 23 |
| | E.   Tweening | 25 |
| | F.   Local scene characteristics | 31 |
| | G.   Warping imagery | 32 |
| | H.   "A field of view that overlaps that of an adjacent cameras" | 33 |
| | I.   "91. A device for providing a user with a display of an environment in response to user inputs, the system comprising … 94. The "system of claim 91" | 35 |

I, Robert L. Stevenson, do hereby declare as follows:

## I. INTRODUCTION AND ENGAGEMENT

1. I have been retained as an independent expert on behalf of Microsoft Corporation in connection with the above-captioned case. I have been asked to opine on the subject matter, including interpretation of certain claim language in U.S. Patent Nos. 9,055,234 (the "234 patent"), 6,522,325 (the "325 patent"), and 6,535,226 (the "226 patent"), collectively the "Asserted Patents."

2. My opinions set forth herein are based on my decades of professional training and experience, my review of the Asserted Patents and their file histories, and other materials referenced herein.

## II. BACKGROUND AND QUALIFICATIONS

3. My Curriculum Vitae is attached to this Declaration as Appendix A.

### A. Educational Background

4. I have earned a Bachelor's degree in Electrical Engineering from the University of Delaware and a Ph.D. degree in Electrical Engineering from Purdue University. My Ph.D. research was on communications and signal processing.

### B. Professional History

5. I am presently a Professor in the Department of Electrical Engineering and in the Department of Computer Science and Engineering at the University of Notre Dame. I first joined the faculty at the University of Notre Dame as an Assistant Professor in the Department of Electrical Engineering in 1990. I was granted tenure and promoted to the rank of Associate Professor in August 1996. I attained the rank of Professor in the Department of Electrical Engineering in August 2002, and I continue to serve in that capacity. I have served concurrently

as a Professor in the Department of Computer Science and Engineering at the University of Notre Dame since January 2003.

6. I spent the summer of 1992 at the Air Force Research Lab in Rome, New York and I spent the summer of 1993 at the Intel Corporation in Hillsboro, Oregon. Several leading computing companies, including Intel, Sun Microsystems, and Apple Computer have supported my research at Notre Dame. During the past 20 years, I have published over 150 technical papers related to the field of image processing and digital systems.

7. I am a member of the Institute of Electronics and Electrical Engineers, The International Society for Optical Engineering, and the Society for Imaging Science and Technology. I am a member of the academic honor societies Eta Kappa Nu, Tau Beta Pi, and Phi Kappa Phi.

8. For the past 20 years my work has focused on the design of techniques, hardware, and software for the processing of digital signals using digital computing devices. As an academic researcher I attempt to develop novel ideas for systems, then publish and present those ideas to the technical community. My success as an academic is directly related to the insights and techniques which provide the basis for new generations of products. My early work on digital techniques for printing and image capture devices led to significant interaction with companies developing desktop computers products in the early 1990s as they tried to incorporate those ideas into their products.

9. My interaction with Apple's Imaging Group focused on various imaging devices such as digital cameras, scanners, and printers and how to best support those devices on desktop computers. At Intel, I worked in Intel's Architecture Lab at the time the MMX multimedia instructions were being incorporated into the Pentium processor. My work there dealt with

developing video compression techniques for CD-ROM's and network communications that were well matched to the Pentium architecture. I also gave a series of talks on how advanced communication and video processing techniques could be better supported on the Pentium platform. Similarly, my interaction with Sun Microsystem's group examined how advanced signal processing techniques could be best implemented using Sun's new Visual Instruction Set on the Sparc architecture.

10. A significant portion of my work has addressed the problem integrating images captured from multiple views generate high quality artificial images. Some of my earliest work on this topic was funded by the U.S. Air Force and published in 1995 through 1996. Such work continues today and even my most recent publication at the International Conference on Image Processing in 2018 has this characteristic.

11. I have also received significant support for my research from several U.S. Department of Defense Agencies. The Air Force Research Laboratory has funded my work to develop advanced parallel processing algorithms which exploited an ad-hoc network of mixed computers to achieve signification computational advantages over their previously implemented techniques. Other Department of Defense agencies have supported my work in image and video enhancement.

12. I have published 38 journal articles, written 9 book chapters, edited the proceedings of 17 conferences, and presented 113 papers at professional conferences.

13. I am an inventor of U.S. Patent No. 6,081,552, "Video Coding Using a Maximum *A Posteriori* Loop Filter," June 27, 2000.

14. If asked, I will testify regarding my qualifications, background and experience in the field of data compression, encoding and decoding.

15. I am being compensated at a rate of $600 per hour for my study and testimony in this litigation. I am also being reimbursed for reasonable and customary expenses associated with my work and testimony. My compensation is not contingent on the outcome of this litigation or the specifics of my testimony.

### III. THE ASSERTED PATENTS

16. The Asserted Patents generally relate to "telepresence systems and methods." The goal of such systems is generally to allow a person to have the illusion that they are present in the captured environment rather than their current location. Typically such systems permit the user to in some way interact with the captured environment. The telepresence system of the claimed invention involves capturing images of an environment such that multiple remote users can view different portions of the environment from different perspectives at a later time.

17. All three Asserted Patents claim priority back to Provisional Application 60/080,413, filed on April 2, 1998. Specifically, the '234 patent, titled "Navigable Telepresence Method And System" issued June 9, 2015 from U.S. Patent Application No. 14/505,208, filed on October 2, 2014. The October 2014 Application is a continuation of Application No. 13/949,132, filed on July 23, 2013, which is a continuation of Application No. 12/610,188, filed on October 30, 2009, now abandoned, which is a continuation of Application No. 11/359,233, filed on February 21, 2006, now Pat. No. 7,613,999, which is a continuation of Application No. 10/308,230, filed on December 2, 2002, now abandoned, which is a continuation of Application No. 09/419,274, filed on October 15, 1999, now Pat. No. 6,522,325, which is a continuation-in-part of Application No. 09/283,413, filed on April 1, 1999, now Pat. No. 6,535,226, which claims priority from Provisional Application 60/080,413, filed on April 2, 1998.

## IV. CLAIM CONSTRUCTION AND THE HANNA DECLARATION

18. I have reviewed the Joint Claim Construction Statement and the accompanying proposed claim constructions. I have also reviewed Kewazinga's claim construction brief, and supporting materials, including but not limited to, the Hanna Declaration.

19. In the following paragraphs, I set forth my opinions as to areas of disagreement that I have with positions taken by Kewazinga and the Hanna Declaration, as well as provide my opinions that support Microsoft's position.

20. One thing I agree with Hanna about is the definition of a person having ordinary skill in the art ("POSITA") as having a bachelor's degree in computer science, computer engineering or the equivalent, and 3-5 years of experience in the field of computer vision or image processing, or a post-graduate degree in computer science, computer engineering or the equivalent, and 1-2 years of experience in the field of computer vision or image processing, or equivalent experience. Hanna Decl., ¶ 23. This is the standard I used when evaluating the patents and while rendering my opinions below.

### A. Array of Cameras

21. I understand the parties are disputing the proper interpretation of the claim phrase "array of cameras" and that their proposed constructions are:

| Terms and Phrases | Microsoft's Proposed Construction | Kewazinga's Proposed Construction |
|---|---|---|
| array of cameras<br><br>(226 patent, claims 55, 94, 119; 325 patent, claims 1, 5, 6, 10, 14, 15, 29) | *a set of multiple cameras, each fixed to capture images at a different location, to provide a view through the environment without having to move any camera.* | No construction is necessary. However, if the Court rules that one is necessary, Kewazinga proposes the following construction:<br><br>*a configuration of cameras, where such configuration can include movable cameras and* |