Ian G. DiBernardo
Timothy K. Gilman
Kenneth L. Stein
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, NY 10038
Tel: (212) 806-5400
Fax: (212) 806-6006
Email: idibernardo@stroock.com
Email: tgilman@stroock.com
Email: kstein@stroock.com
Email: sdesai@stroock.com
Email: gspringsted@stroock.com
*Attorneys for Plaintiff Kewazinga Corp.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEWAZINGA CORP., | ) ) ) |
| Plaintiff, | ) Civil Action No. 1:20-cv-01106-LGS ) |
| vs. | ) ) |
| GOOGLE LLC, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF KEWAZINGA CORP.'S REPLY BRIEF**
**REGARDING CLAIM CONSTRUCTION**

**TABLE OF CONTENTS**

I. Dr. Lubin's Testimony is Reliable and Consistent with the Intrinsic Evidence ..........................1

II. Kewazinga's Construction of "Array of Cameras" is Consistent with the Intrinsic Evidence and the *Microsoft* Court's Ruling ................................................................................2

III. Kewazinga's Construction of "Mosaicing" is Consistent with the Intrinsic Evidence ................8

NY 78355471

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Contech Stormwater Solutions., Inc. v. Baysaver Technologies., Inc.*,
    310 F. App'x 404 (Fed. Cir. 2009) ............................................................................................ 7

*Goldenberg v. Cytogen, Inc.*,
    373 F.3d 115 (Fed. Cir. 2004) .................................................................................................. 7

*Kewazinga Corp. v. Microsoft Corp.*,
    No. 1:18-CV-4500-GHW, 2019 WL 3423352 (S.D.N.Y. July 29, 2019) ........................ *passim*

*Nevro Corp. v. Boston Scientific Corp.*,
    955 F.3d 35 (Fed. Cir. 2020) .................................................................................................... 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ......................................................................................... 1, 10

*ScriptPro LLC v. Innovation Associates, Inc.*,
    833 F.3d 1336 (Fed. Cir. 2016) ................................................................................................ 6

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................ 8, 9

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ............................................................................................ 2, 3

In its claim construction brief, Google misrepresents Dr. Lubin's credentials, Kewazinga's proposed constructions, the intrinsic evidence, and the *Microsoft* court's opinion. Ignored by Google, Dr. Lubin has decades of experience in the field at issue, and has explained how the intrinsic record supports Kewazinga's proposed constructions. In response, Google offers only attorney argument that takes issue with Dr. Lubin's word choice but not the substance of his analysis. Contrary to Google's mischaracterizations, Kewazinga's proposed constructions are consistent with the *Microsoft* court's opinion. The Court should reject Google's attempts to rewrite history and should adopt Kewazinga's proposed constructions.

## I.   Dr. Lubin's Testimony is Reliable and Consistent with the Intrinsic Evidence

Without any expert testimony to support its arguments, Google baselessly criticizes the testimony of Kewazinga's expert, Dr. Lubin.[1] Rather than contradict the Asserted Patents, Dr. Lubin supports his opinions with extensive citation to them. *E.g.,* D.I. 110-1 (Lubin Decl.) ¶¶ 22-35. Contrary to Google's assertion, courts routinely consider expert testimony "to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a [POSITA], or to establish that a particular term in the patent … has a particular meaning in the pertinent field." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). Dr. Lubin's testimony does all of these with support from the intrinsic evidence.

Google's arguments for ignoring Dr. Lubin's testimony are unfounded.[2] D.I. 111 at 3-6. First, Google contends that Dr. Lubin is unqualified by disregarding his considerable experience and education—specifically, his specialization in human visual perception, including through computer modeling, and his three decades of experience in image and video processing. Ex. H

---

[1] Notably, Google previously disclosed that it may rely on the "testimony of expert witness Dr. Anselmo A. Lastra" but Dr. Lastra has offered no testimony in this case. Ex. I (Google's 9/11/2020 Rule 4-2 Disclosures) at 1-2.

[2] Google incorrectly insinuates that Kewazinga retained Dr. Lubin in this case whereas it relied on the testimony of Dr. Keith Hanna in the *Microsoft* case because of substantive issues related to their opinions. *See* D.I. 111 at 4, 13. In reality, however, Kewazinga disclosed Dr. Hanna as a potential expert for this proceeding but he was unavailable due to other work commitments. Ex. J (Kewazinga's 9/11/2020 Rule 4-2 Disclosures) at 8.

(Lubin Tr.) at 49:16-54:4; D.I. 110-1 (Lubin Decl.) ¶¶ 3-7; D.I. 110-5 (Lubin CV). Second, Google irrelevantly and wrongly criticizes how Dr. Lubin's opinions were put on paper. However, Google does not—and cannot—challenge that Dr. Lubin's declaration sets forth his opinions based on his independent analysis of the intrinsic record. Ex. H (Lubin Tr.) at 255:8-258:2, 262:8-264:19. Finally, Google erroneously contends that Dr. Lubin's testimony contradicts the intrinsic evidence. As explained below, Google's claims of "contradictions" are blatantly incorrect and misrepresent Dr. Lubin's testimony and the Asserted Patents.

**II.   Kewazinga's Construction of "Array of Cameras" is Consistent with the Intrinsic Evidence and the *Microsoft* Court's Ruling**

Google asserts that, under Kewazinga's construction, "the claimed 'array' can constitute any 'configuration' of cameras, rather than cameras with a fixed relationship to one another," and that Kewazinga seeks to "overturn" the *Microsoft* court.[3] D.I. 111 at 7. ***Not so***. Kewazinga's proposed construction is entirely consistent with the *Microsoft* court's ruling. The present dispute is about Google's proposed construction likely leading jurors astray to understandings of the claims that are explicitly refuted by the Asserted Patents. D.I. 110 at 22-25. Google disregards this risk of misleading the jury even though the purpose of claim construction is to ***clarify*** the claim terms. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Although Google proposes the *Microsoft* court's construction for "array of cameras," it has potentially problematic ambiguities that should be resolved in this case. The *Microsoft* court's construction—including the phrase "fixed in relation to each other"—was not proposed by either party in that case and, as a result, Kewazinga did not have the opportunity to explain these ambiguities. Because Google proposed that construction here, Kewazinga identified several

---

[3] Google's suggestion that the claims could cover any configuration of cameras under Kewazinga's proposed construction also ignores other limitations in the asserted claims such as the requirement that the array "includ[e] at least one camera path wherein each path is defined by a series of cameras having progressively different perspectives of the environment." *See, e.g.,* D.I. 110-12 ('325 patent) at claim 1.

potential interpretations of the phrase "fixed in relation to each other" that contradict the intrinsic evidence and improperly exclude preferred embodiments. D.I. 110 at 22-25. Jurors may incorrectly interpret that phrase to require (a) exact or uniform distances between the cameras in an array, (b) that the relationship between cameras in the array be predetermined or known prior to image capture, or (c) that the cameras in the array be fixed to each other or stationary. *Id*. ***But none of these interpretations can be reconciled with the intrinsic evidence.*** *Id*.

In fact, Google's own arguments amply demonstrate the potential ambiguities. ***First***, Google contends that the relationship between the cameras must be predetermined or known prior to image capture (neither of which are required by the phrase "fixed in relation to each other" or the *Microsoft* court's explanation of this phrase) because the Asserted Patents describe cameras "strategically placed" through a physical environment. D.I. 111 at 9-10. However, as described in Kewazinga's opening brief, cameras may be "strategically placed" through an environment regardless of whether that occurs prior to image capture or after image capture has begun. D.I. 110 at 8, 24 (describing Figure 12 flowchart in which the decision to use additional cameras, and where to place those cameras may be made *after* image capture has begun).

***Second***, Google contends that the cameras in the array must be fixed or stationary (D.I. 111 at 12-13), but that too is not required by the phrase "fixed in relation to each other" or the intrinsic evidence. D.I. 110 at 4-5, 24-25. The *Microsoft* court rejected this argument,[4] stating that the "proposed requirement that each camera must be fixed at a specific location is inconsistent with wheeling the array into position, or removing the array after it captures its images, both of which are taught." *Kewazinga*, 2019 WL 3423352, at *18.

***Third***, without directly contesting that the Asserted Patents do not require exact or

---

[4] Microsoft's proposed construction was "a set of multiple cameras, each fixed to capture images at a different location, to provide a view through the environment without having to move any camera." *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500-GHW, 2019 WL 3423352, at *15 (S.D.N.Y. July 29, 2019).

- 3 -

uniform distances between the cameras in an array—which they do not (D.I. 110 at 23-24)—Google creates a meaningless distinction between how the relationship between cameras is "conceptualized" and its "physical manifestation." D.I. 111 at 13. There is no distinction because the identification of cameras within a coordinate system reflects the physical relationship among cameras, which is the basis for user navigation. *See* D.I. 110-12 ('325 patent) at 5:1-8, 19:19-26; D.I. 110 at 8-9, 23-24. For example, the relationship between cameras can be based on their ordering (*e.g.*, which camera comes before or after another)—as opposed to spatial distances between them—and that is based on the "physical manifestation" of the array.

To the extent that cameras in an array are "fixed in relation to each other," it is because there are known relationships between the cameras when images are captured, which permits navigation through an environment. D.I. 110-1 (Lubin Decl.) ¶¶ 51-53. As an example, for three cameras placed at different positions along an X-axis ($X_1$, $X_2$, and $X_3$), the known relationship between those cameras (*e.g.*, $X_2$ comes after $X_1$ and $X_3$ comes after $X_2$ when navigating along the axis) permits users to navigate (*id.*) and permits mosaicing images captured by the cameras (*id.* ¶ 35; D.I. 112-4 (Lubin Tr.) at 231:4-24). If the location of $X_3$ is determined after the locations of $X_1$ and $X_2$ are determined, that does not change the relationship between $X_1$ and $X_2$. The *Microsoft* court's use of the phrase "fixed in relation to each other" was directed to these known relationships between cameras which govern "how a path through the array of cameras can be defined" and "allow[] for the creation of progressively different perspectives, which can be 'mosaiced,' … to allow a user to navigate images of the environment captured by the array." *Kewazinga*, 2019 WL 3423352, at *16-*17.

Google wrongly asserts that Kewazinga's proposal was rejected by the *Microsoft* court. D.I. 111 at 16. To the contrary, the *Microsoft* court rejected that each camera in the array must be

"fixed at a specific location," acknowledging that the cameras can be movable. *See Kewazinga*, 2019 WL 3423352, at *18. The *Microsoft* court found only that moving cameras within an existing array can change the geometric relationship between the cameras, which changes the navigation path for users, resulting in a new array. *Id*. As the *Microsoft* court recognized, the Asserted Patents teach that the cameras in an array can be "deployed to create the necessary fields of view" for user navigation. *Id*. Objected to by the *Microsoft* court, moving cameras within an array could change the cameras' relative fields of view and, thus, the paths to be navigated by users. However, cameras that are moved or positioned to create these fields of view to form the array are—wholly consistent with the *Microsoft* court's ruling—"'fixed' … relative to the other cameras in the array." *Id*. Further consistent, positioning cameras to ***form*** the array— including paths within that array—does not change the cameras' "fields of view relative to the other cameras in the array" or the "geometric relationship with the other cameras within the array, which … would create a new array." *Id*. Simply put, changing an existing path is different from creating a path. The Figure 11 embodiment shows that cameras are moved to form array of cameras 10 in stages, over time; the known relationships between the cameras in one part of the array are not changed by moving cameras to form other parts of the array. D.I. 110 at 19-22. Kewazinga's proposed construction and explanation of Figure 11 is consistent with the *Microsoft* court's ruling.

It was in this context that the *Microsoft* court rejected Kewazinga's proposal that "array of cameras" be construed as "a configuration of cameras, where such configuration can include movable cameras and reusing a camera in multiple locations," which was different from Kewazinga's proposal here. *Kewazinga*, 2019 WL 3423352, at *15. The *Microsoft* court rejected that proposal because it inadvertently encompassed moving cameras within an array after it had

been fully formed, thereby changing the fields of view and geometric relationship among cameras in the array. *Id*. at *18. Kewazinga's proposal here does not permit moving cameras within a fully-formed array to change the relationship among cameras in the array but rather makes clear that an array can be formed by moving cameras to different locations over time.

Similarly, Google's assertion that the *Microsoft* court rejected Kewazinga's explanation of the Figure 11 embodiment is also incorrect. D.I. 111 at 11. In the passage Google quotes, the *Microsoft* court stated only that arrays 12-1 to 12-n in Figure 11 **each** have "cameras in different geometric relationships with each other" so they are distinct arrays. *Kewazinga*, 2019 WL 3423352, at *17. The *Microsoft* court did not address Figure 11 being described with "continuing reference to FIG. 1" (D.I. 110-12 ('325 patent) at 18:64-19:1) or Figure 11's reference to array of cameras 10. Thus, contrary to Google's assertion, the *Microsoft* court did not disagree that array of cameras 10 comprises the collection of arrays 12-1 to 12-n.[5]

Google provides no rebuttal to Kewazinga's explanation of the Figure 11 embodiment beyond wrongly arguing that it is a "theory" imagined by Dr. Lubin. D.I. 111 at 10-11. But Dr. Lubin's explanation is supported by extensive citation to the intrinsic evidence. D.I. 110-1 (Lubin Decl.) ¶¶ 26-28, 50; *see also* D.I. 110 at 5-8, 19-22. Google does not dispute Dr. Lubin's explanation of how the Figure 11 embodiment works. Instead, Google makes a superficial argument that Dr. Lubin's use of the term "sub-array" is improper because it "does not appear anywhere in the Patents-in-Suit." D.I. 111 at 11. That is irrelevant; Dr. Lubin uses the term to explain an expressly-disclosed embodiment. D.I. 112-4 (Lubin Tr.) at 148:13-149:20. Google does not—and cannot—dispute that the Asserted Patents disclose embodiments having an array

---

[5] Google points to the *Microsoft* court's remark that the Figure 11 embodiment is covered by claim 22 of the '325 patent. D.I. 111 at 12. That has no bearing on the construction of "array of cameras," which is found in several claims of the '325 and '226 patents, because a single embodiment can be covered by multiple claims addressing different aspects of that embodiment. *See ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016) ("Not every claim must contain every limitation or achieve every disclosed purpose.").

of cameras comprised of a collection of other arrays because that is explicitly shown and described. D.I. 110 at 5-6, 9-11; D.I. 110-1 (Lubin Decl.) ¶¶ 31-33. Explaining this as an "array of arrays" or an "array of sub-arrays" does not change the explicit teachings of the patents. Google also contends that the heading for the section describing Figure 11—"Multiple Arrays"—contradicts Dr. Lubin's explanation. D.I. 111 at 11. There is no contradiction. Figure 11 is described with continuing reference to Figure 1 and depicts multiple arrays: array 12-1, array 12-2, and so on, as well as array 10—the collection of them—which is consistent with Dr. Lubin's explanation of Figure 11. D.I. 110 at 5-8, 19-22; D.I. 110-1 (Lubin Decl.) ¶¶ 28-30, 50.

Google ignores critical intrinsic evidence supporting Kewazinga's proposal. Figure 11 shows an array of cameras—identified by label 10—that is formed over time by positioning other arrays (*i.e.*, "sub-arrays")—identified by labels 12-1 to 12-n—at different locations in an environment at different times to capture and store images. D.I. 110 at 5-7, 19-21. ***Tellingly, Google does not address label 10 of Figure 11 anywhere in its 25-page response.*** Google does not offer ***any*** explanation of the purpose of label 10 in Figure 11, let alone an explanation contrary to what Kewazinga contends.[6]

Contrary to Google's assertion, the Asserted Patents do not disclaim the use of moving cameras. D.I. 111 at 15-16. The PTAB ***explicitly rejected*** this argument—addressing the same passage Google relies upon—stating that the language does not "exclude[] from the invention all systems with moving cameras" but rather "identifie[s] a more limited drawback of a moving camera system that required complicated user operation." D.I. 110-17 at 13-14; *see also id.* at 15.

---

[6] Google also attempts to read Figure 11 of the '325 patent out of the intrinsic evidence because it is not in the '226 patent. D.I. 111 at 15. That does not warrant disregarding disclosures in the '325 patent, which also uses "array of cameras" in the claims. Further, a patent that is a continuation-in-part of an earlier patent (and therefore part of the same patent family) can be used to construe terms in the earlier patent. *Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*, 310 F. App'x 404, 407 (Fed. Cir. 2009) ("The disclosure in the '639 patent is relevant for claim construction of the earlier '527 patent claim because the '639 patent was issued to the same inventors from a continuation-in-part of the '527 patent."). The *Goldenberg* case that Google relies on did not involve patents in the same family and, thus, is inapposite. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 115 (Fed. Cir. 2004).

The *Microsoft* court also implicitly rejected this argument by finding that the cameras in an array need not be stationary. *Kewazinga*, 2019 WL 3423352, at *18.

Finally, Google wrongly asserts that the claims would be rendered indefinite under Kewazinga's construction because, *ex ante*, one may be "left to wonder" when the array is formed. D.I. 111 at 16-17. Indefiniteness is a legal inquiry about what a POSITA can ascertain about claim scope, yet Google offers no expert testimony in support of its argument.[7] Moreover, under Federal Circuit law, **"[d]efiniteness does not require that a potential infringer be able to determine ex ante if a particular act infringes the claims."** *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020) (emphasis added). Rather, claims are indefinite where "infringement could not be determined at any time." *See id*. That is not the case under Kewazinga's proposed construction, where, regardless of how an array is formed, the existence of the array is readily understood by a POSITA. Google provides no evidence to show otherwise.

### III.  Kewazinga's Construction of "Mosaicing" is Consistent with the Intrinsic Evidence

Google does not dispute that the ***ordinary meaning*** of mosaicing is what Kewazinga proposes but, contrary to the law, Google seeks to read two extraneous limitations into the construction of that term—**(i)** that mosaicing requires efforts "to achieve a seamless combination of outputs" and **(ii)** that mosaicing must be performed on "camera outputs." *See* D.I. 110 at 13, 18 (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-1367 (Fed. Cir. 2012)). Nor could Google dispute that ordinary meaning, which is supported by the intrinsic evidence, as well as by Dr. Lubin. D.I. 110 at 13-18. Google offers no contrary expert

---

[7] Contrary to Google's assertion, Dr. Lubin did not admit that the "scope of the claims cannot be determined with any reasonable certainty." D.I. 111 at 17-18. In the only testimony Google cites, Dr. Lubin explains that the array of cameras can be formed over time, which is supported by the intrinsic evidence. Dr. Lubin further explained that a POSITA practicing the invention has discretion in how to form the array and would understand when an array has been formed. Ex. H (Lubin Tr.) at 175:5-178:24.

testimony.[8] Instead, through only attorney argument, Google misrepresents the intrinsic evidence in order to fabricate purported disavowals. Thus, Google has failed to show any "clear and unmistakable" disavowals. *Thorner*, 669 F.3d at 1366-1367.

***As to (i) above***, Google conflates (a) mosaicing as part of effectuating seamless ***motion*** and (b) creating mosaics having no seams. *See* D.I. 111 at 20-22. These are distinct concepts. *See* Ex. H (Lubin Tr.) at 196:22-198:21, 208:15-210:15. Seamless motion is about providing users with a smooth experience while navigating through the environment, as opposed to, for example, prior art in which navigation involves jumping from one image to another. *See, e.g.,* D.I. 110-12 ('325 patent) at 2:10-20 (distinguishing prior art in which users "jump between views"). "Seamless" in that sense is not directed to whether the mosaic may have seams in it—indeed, it is used throughout the Asserted Patents to refer to transitions that may have nothing to do with mosaicing. *See, e.g., id.* at 4:41-43 ("[I]mage output mixing, such as mosaicing and tweening, effectuates seamless motion throughout the environment."). Google mischaracterizes this distinction over the prior art, arguing that the Asserted Patents disavow the full scope of mosaicing because they describe prior art in which "changing camera views results in a discontinuous image." D.I. 110-12 ('325 patent) at 2:14-20. But again, in the passage, "discontinuous image" refers to the effect of jumping between views, not anything specifically to do with mosaicing. *See id*. at 2:10-20. Indeed, the '226 patent contains that same language but does not claim, or even mention, mosaicing. D.I. 110-13 ('226 patent) at 2:5-16. Finally, Google asserts that Kewazinga's proposed construction "leads to nonsensical results" by misrepresenting Dr. Lubin's testimony. D.I. 111 at 23. Google implies that Dr. Lubin testified that no relationship at all is necessary between images that are mosaiced when, in reality, he explained that there is

---

[8] Google's assertion that Dr. Lubin's testimony on the term "mosaicing" should be disregarded (D.I. 111 at 22) should be rejected for the same reasons explained above. *See supra* at § I.

no one particular relationship that is necessary—*e.g.*, there is no need for the images to be contiguous or overlapping as long as the relationship between them is known. D.I. 112-4 (Lubin Tr.) at 231:4-24. Indeed, Google's argument effectively ignores the requirement for an alignment process and composition process in both parties' proposed constructions. Google also misstates Kewazinga's position: *if*, as Google argues, a mosaic requires seamlessness, *then* "seamless mosaic" is redundant. D.I. 111 at 22; *see also* D.I. 110 at 17.

**As to (ii) above**, without disputing the ordinary meaning of mosaicing and without identifying any disavowal, Google argues that mosaicing must be performed on "camera outputs." D.I. 111 at 24-25. Google points to the term "camera outputs" used as a separate limitation in the claims, but that actually demonstrates that "camera outputs" are ***not*** inherently required by mosaicing. *Phillips*, 415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel."). Having no substantive rebuttal to the clear disclosure of mosaicing images that are not "camera outputs" in the intrinsic evidence (*see* D.I. 110 at 16 (quoting D.I. 110-11 ('234 patent) at 12:39-13:2), Google asserts those disclosures do not count because they are in the '234 patent, which Google argues does not include claims reciting "mosaicing." Google's assertion that "mosaicing" only appears in the '325 patent claims is highly misleading because the '234 patent claims recite the phrase "generate mosaic imagery," which both parties have agreed "should be construed in accordance with the construction of the term 'mosaicing.'" D.I. 108 at 3. Further, contrary to Google's assertion, the '325 patent claims recite "mosaicing" along with "additional source output." *See, e.g.,* D.I. 110-12 ('325 patent) at claim 2 (explicitly reciting "mosaicing the camera output and the additional source output"); *see also id*. at claim 3.

Dated: New York, New York  
      January 29, 2021

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**

*/s/ Ian G. DiBernardo*  
Ian G. DiBernardo  
Timothy K. Gilman  
Kenneth L. Stein  
Saunak K. Desai  
Gregory R. Springsted  
**STROOCK & STROOCK & LAVAN LLP**  
180 Maiden Lane  
New York, NY 10038  
Tel: (212) 806-5400  
Fax: (212) 806-6006  
Email:  idibernardo@stroock.com  
Email:  tgilman@stroock.com  
Email:  kstein@stroock.com  
Email:  sdesai@stroock.com  
Email:  gspringsted@stroock.com

*Attorneys for Plaintiff Kewazinga Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, I caused a true and correct copy of the foregoing **KEWAZINGA CORP.'S REPLY CLAIM CONSTRUCTION BRIEF** to be filed and served electronically by means of the Court's CM/ECF system in accordance with Federal Rules of Civil Procedure and/or the Local Rules of this Court, upon the following counsel of record:

John Michael Desmarais
Elizabeth Esther Weyl
Steven Marc Balcof
David A. Frey
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351−3400
Fax: (212) 351−3401
Email: jdesmarais@desmaraisllp.com
Email: eweyl@dllp.com
Email: sbalcof@dllp.com
Email: dfrey@desmaraisllp.com

Ameet A. Modi
Emily Chen (*Pro Hac Vice*)
DESMARAIS LLP
101 California St.
San Francisco, CA 94111
Tel: (415) 573−1806
Email: amodi@desmaraisllp.com
Email: echen@desmaraisllp.com

*Attorneys for Defendant Google LLC*

                        *s/ Saunak K. Desai*
                        Saunak K. Desai