UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                           :
KEWAZINGA CORP.,                        :
                        Plaintiff,      :
                                                  :         20 Civ. 1106 (LGS)
               -against-               :
                                                  :         <u>OPINION & ORDER</u>
GOOGLE LLC,                             :
                        Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Kewazinga Corp. ("Kewazinga") alleges that Defendant Google LLC ("Google") infringes U.S. Patent Nos. 9,055,234 ("Navigable Telepresence Method and System") (the "'234 Patent"), 6,522,325 ("Navigable Telepresence Method and System Utilizing an Array of Cameras") (the "'325 Patent") and 6,535,226 ("Navigable Telepresence Method and System Utilizing an Array of Cameras") (the "'226 Patent") (collectively, the "Kewazinga Patents"). The parties have presented their proposed constructions of two disputed claim terms -- "array of cameras" and "mosaicing" -- pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). For the reasons set forth below "array of cameras" is construed to mean "a camera configuration wherein the configuration can be created over time by positioning cameras in relation to each other," and "mosaicing" is construed as "creating imagery assembled from a plurality of images, or portions thereof, including an alignment process and a composition process."

**I.     BACKGROUND**

The Kewazinga Patents pertain to methods and systems that utilize cameras to achieve navigable telepresence. This technology allows for remote, seamless viewing of an environment.

Kewazinga contends that Google infringes the Kewazinga Patents through Google Street View, a street-level imagery project that allows users to virtually explore different locations.

The parties seek claim construction. They dispute the meaning of two terms: (1) "array of cameras," which is used in claims 55 and 119 of the '226 Patent and claims 1, 5, 6, 10, 14, 15 and 29 of the '325 Patent, and (2) "mosaicing," which is used in claims 1, 5 and 6 of the '325 Patent. Claims 1, 3, 13 and 16 of the '234 Patent also include the terms "mosaic imagery" and/or "mosaic images," which the parties contend should be construed in accordance with the Court's construction of the term "mosaicing."

## II. STANDARD

### A. Claim Construction

"'[T]he construction of a patent, including terms of art within its claim,' is not for a jury but 'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (citing *Markman*, 517 U.S. at 390). "[A] district court's duty at the claim construction stage is . . . to resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016); *accord Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, No. 20 Civ. 3951, 2021 WL 2823563, at *2 (S.D.N.Y. July 7, 2021). "This means that, as to claim coverage, the district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'" *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) (citation omitted); *accord Zeta Glob. Corp.*, 2021 WL 2823563 at *2. In the event "the parties [choose] to treat [certain] terms across [separate] patents as rising and falling together" the Court need not "separately address [every] Patent." *X2Y Attenuators, LLC v. Int'l. Trade Comm'n*, 757 F.3d 1358, 1363 n.2 (Fed.

Cir. 2014); *accord Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500, 2019 WL 3423352, at *2 (S.D.N.Y. July 29, 2019).

During claim construction, the court looks "first to intrinsic evidence, and then, if necessary, to the extrinsic evidence." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 785 (Fed. Cir. 2019) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005). The intrinsic record comprises the claims, the specification and the prosecution history. *Id*. Claim terms are presumed to be given their ordinary and customary meaning, as understood by a person of ordinary skill in the art ("POSITA") as of the patent's priority date, considering the entirety of the patent. *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020). "When the ordinary meaning of the claim language is 'readily apparent even to lay judges,' claim construction 'involves little more than the application of the widely accepted meaning of commonly understood words.'" *Green Pet Shop Enters., LLC v. Euro. Home Design, LLC*, No. 17 Civ. 6238, 2019 WL 1172069, at *4 (S.D.N.Y. Mar. 13, 2019) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)).

If a claim term does not have an ordinary meaning, it must "be read in view of the specification." *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019); *accord Zeta Glob. Corp.*, 2021 WL 2823563, at *2. "[T]he specification is key -- it is highly relevant to the claim construction analysis and the single best guide to the meaning of a disputed term." *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1218 (Fed. Cir. 2020) (internal citations and quotation marks omitted). In addition to the specification, "a court should [] consider the patent's prosecution history, if it is in evidence." *Cont'l Circuits LLC*, 915 F.3d at 796 (internal quotation marks omitted); *accord Zeta Glob. Corp.*, 2021 WL 2823563, at *2. "Like the specification, the prosecution history provides evidence of how the [United States

Patent and Trademark Office ('PTO')] and the inventor understood the patent." *Cont'l Circuits LLC*, 915 F.3d at 796 (alteration in original) (citation omitted).

Secondary to the intrinsic evidence is the extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317; *accord Personalized Media Commc'ns, LLC v. Netflix Inc.*, No. 20 Civ. 3708, 2020 WL 5026600, at *6 (S.D.N.Y. Aug. 25, 2020). "[W]hile extrinsic evidence can shed useful light on the relevant art . . . it is less significant than the intrinsic record in determining the legally operative meaning of disputed claim language." *Cont'l Circuits LLC*, 915 F.3d at 799 (internal quotation marks omitted). "Extrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." *Tempo Lighting, Inc. v. Tivoli*, LLC, 742 F.3d 973, 977-78 (Fed. Cir. 2014) (citation omitted); *accord Personalized Media Commc'ns, LLC*, 2020 WL 5026600, at *6.[1]

### III. DISCUSSION

#### A. "Array of Cameras"

With respect to the term "array of cameras," Kewazinga contends that a construction is unnecessary, but to the extent the Court finds otherwise, the term should be construed to mean "a camera configuration wherein the configuration can be created over time by moving cameras." Google alternatively proposes that "array of cameras" should be construed to mean "a set of multiple cameras, each fixed in relation to each other." For the reasons below, "array of

---

[1] Because the Court does not rely on the opinions of Plaintiff's expert Dr. Jeffrey Lubin, this Opinion and Order does not address Google's objections to his expert report.

cameras" is construed to mean "a camera configuration wherein the configuration can be (1) created over time by (2) positioning cameras (3) in relation to each other."[2]

### 1. Positioned *In Relation to Each Other*

The plain language of the claims of the '226 and '325 Patents -- the two patents in which the term "array of cameras" appears -- makes clear that the cameras comprising an array must be positioned "*in relation to each other*." The '325 Patent claims an "array including at least one camera path wherein each path is defined by a series of cameras having progressively different perspectives of the environment." '325 Patent, Claim 1, 20:63 – 21:4. The '325 Patent also claims:

> A method for seamless viewing of an environment, the method comprising:
>
> receiving electronically a first image from an array of cameras having *progressively different perspectives of the environment*, the first image having a first field of view;
>
> receiving electronically a second image from the array, the second image having a second field of view that overlaps the first field of view;
>
> receiving electronically a third image from the array, the third image having a third field of view that overlaps the second field of view;
>
> mosaicing the first image with the second image and then mosaicing the second image with the third image; and

---

[2] In *Kewazinga Corp. v. Microsoft Corp.*, Judge Woods construed the meaning of "array of cameras," in the '226 and '325 Patents, and "mosaicing," in the '234 and '325 Patents -- the same Kewazinga Patents at issue in this case. No. 18 Civ. 4500, 2019 WL 3423352, at *6, 15 (S.D.N.Y. July 29, 2019). While the same construction of "mosaicing" is adopted in this case as that adopted in *Kewazinga Corp.*, *id*. at *6, a slightly different construction of the term "array of cameras," *id*. at *15, is adopted here. In *Kewazinga Corp.*, "array of cameras" was construed to mean "a set of multiple cameras each fixed in relation to each other." *Id*. at *15. The term "fixed" was proposed by the court, rather than the parties, in *Kewazinga Corp.* Here, based on the parties' briefing and oral argument as to the impact of the term "fixed," including prioritized consideration of the intrinsic evidence, an alternative construction of "array of cameras" is adopted -- namely, "a camera configuration wherein the configuration can be created over time by positioning cameras in relation to each other."

>    *displaying the first, second, third and mosaic images in sequence* to obtain a seamless view through the environment.

'325 Patent, Claim 6, 22:10-27 (emphases added).  Similarly, the '226 Patent claims "an array of cameras including a series of cameras," with "progressively different point perspective."  '226 Patent, Claim 119, 26:25-33.  This language establishes that the cameras within an array are positioned with respect to each other to achieve the "progressively different perspectives," and overlapping fields of view that the patents teach.  *See Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500, 2019 WL 3423352, at *15 (S.D.N.Y. 2019) (citing the '226 and '325 Patents and explaining that "in all of the multitude of configurations contemplated in the patents [] the cameras in each array are always fixed in geometric relation to each other").  Accordingly, "array of cameras" is construed to mean a camera configuration wherein the configuration can be created over time by positioning cameras "*in relation to each other*."

>    **2.  Cameras Are *Positioned***

Cameras are "positioned" because the specifications of the '226 and '325 Patents plainly illustrate that an array can be movable.  The '226 and '325 Patents teach that an array of cameras may be "secured to a moveable frame that can be wheeled into position in the environment."  '226 Patent, 7:29-34; *see also* '325 Patent, 7:41-45 (explaining that "array 10 can be secured to a moveable frame that can be wheeled into position in the environment.").  In addition, claim 22 of the '325 Patent claims a system involving a series of "removable arrays."  '325 Patent, Claim 22, 24:53- 25:23.  This construction aligns with the embodiments shown by Figures 11 and 12, wherein arrays can be moved into place to capture images and then removed before another array is positioned.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed.

Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment.").

Rather than use the term "positioned," Google proposes the word "fixed." This term is ill-suited to the claim term because it suggests, contrary to the explicit teachings of the intrinsic evidence, that an "array of cameras" cannot be moved. *Fixed*, MERRIAM-WEBSTER (last visited July 19, 2021), https://www.merriam-webster.com/dictionary/fixed (defining "fixed as "not subject to change or fluctuation," or "securely placed or fastened"); *Position*, MERRIAM-WEBSTER (last visited July 19, 2021), https://www.merriam-webster.com/dictionary/positioned (defining "position" as "an act of placing or arranging"). "Positioned" allows for greater flexibility with respect to the movement of arrays and is supported by the specifications of the '226 and '325 Patents, which refer to the cameras as "positioned" or "strategically placed." *See, e.g.,* '226 Patent, 4:12-18 and '325 Patent, 4: 23-25 ("the system uses the multiplicity of positioned microcameras"); '226 Patent, 6:26-32 and '325 Patent, 6:41-43 ("the user navigates through the array 10, which is strategically placed through and around the physical environment to be viewed"); *see also Kewazinga*, 2019 WL 3423352, at *18 (characterizing "positioned" as a "less restrictive term" than "fixed"). Accordingly, "array of cameras" is construed to mean a camera configuration wherein the configuration can be created over time by "*positioning*" cameras in relation to each other.

Construing "array of cameras" as "a camera configuration wherein the configuration can be created over time by *positioning* cameras in relation to each other" also helps dispel the notion that the '325 and '226 Patents claim the use of "moving cameras," rather than moving arrays of cameras. The '325 Patent's specification distinguishes the claimed method and system for navigable telepresence from a method or system in which "moving cameras" would be used

-- specifically, "a moving vehicle carr[ying] the cameras." '325 Patent, 2:12-14.  The specification states that such a system "has several drawbacks," including that "in order for a viewer's perspective to move through the venue the moving vehicle must be actuate[d] and controlled." '325 Patent, 2:15-20.  In addition, in *Kewazinga Corp. v. Microsoft Corp.*, in which the court construed the meaning of "array of cameras" in the '325 and '226 Patent claims, the court explained:

> [the] contention that the cameras can be moved or reused also goes too far and lacks intrinsic support.  A careful review of the various configurations of 'arrays of cameras' contemplated in the ['325 and '226 Patents] reveals that there is not one single example in the intrinsic evidence of an array of cameras in which cameras are not fixed relative to each other.  Were that not the case, a user, let alone multiple independent users, might not be able to navigate through the environment utilizing the array.  Accordingly, a POSITA would understand that cameras that did not have 'fixed' fields of view relative to the other cameras in the array would be contrary to the teachings of the '325 and '226 Patents.  In this context, [Kewazinga's] contention that cameras can be moved or reused is troubling.  Moving a camera, without moving the entire array, would change its geometric relationship with the other cameras within the array…"

2019 WL 3423352, at *18.  The act of "positioning" cameras suggests that a camera cannot be continuously moving and, instead, must be placed with respect to the other cameras with which it comprises an array.

### 3. Arrays Can Be *Created Over Time*

An "array of cameras" is construed such that it "can be created *over time*."  Claim 22 and Figure 11 of the '325 Patent not only enforce the concept of movable arrays but also clarify that arrays can be formed over time.  Claim 22 teaches:

> A telepresence system for providing a first user with a first display of an environment and a second user with a second display of the environment, the system comprising:
>
> A plurality of *removable* arrays of cameras, each camera having an associated view of the environment and an associated camera output representing the associated view . . .

> At least one processing element coupled to the user interface devices for receiving user inputs including moving up down, clockwise around an environment, counter-clockwise around an environment, forward and backward indicative of movement through the environment, the processing element configured to interpret received first inputs and select outputs of the storage nodes forming the second path independently of the first inputs, thereby allowing the first user and second user to navigate simultaneously and independently through the environment, *wherein each removable array is situated at different lengths from the environment* and the first path includes a first view from a first array and a second view from a second array, thereby allowing the first user to simulate movement forwards and backwards in the environment.

'325 Patent, Claim 22, 24:53- 25:23 (emphases added). Figure 11 (reproduced below) shows that the removable arrays (12-1 through 12-n) comprise a larger array 10. Figure 12 (also reproduced below) clarifies that this larger array is created over time, by removing one cylindrical array and then adding a new one of a different diameter. '325 Patent, Figures 11 and 12; *see also* '325 Patent, 19: 44-63 (describing the formation of the embodiment shown in Figure 11).



FIG.11                    FIG.12

Removing and adding additional arrays allows users to navigate "forward and backward," in addition to "around an environment," as taught by claim 22 of the '325 Patent.  Time is necessarily required to remove and add new arrays that comprise the larger array 10.

**B.  "Mosaicing"**

The parties have offered competing constructions of the term "mosaicing" -- which appears in the '325 Patent and, in varying derivative forms, in the '234 Patent.  Kewazinga contends that "mosaicing" should be construed to mean "creating imagery assembled from a plurality of images, or portions thereof, including an alignment process and a composition process."  Google argues that "mosaicing" should be construed to mean "creating imagery assembled from a plurality of camera outputs, or portions thereof, including an alignment process and a composition process to achieve a seamless combination of the camera outputs."  The parties disagree about whether a "mosaic" must be the product of "camera outputs," and whether "mosaicing" requires an effort to achieve "seamlessness."  For the reasons below, the Court adopts Plaintiff's proposed construction.[3]  *See Kewazinga Corp.*, 2019 WL 342335, at *6 (construing "mosaicing" to mean "creating imagery assembled from a plurality of images, or portions thereof, including an alignment process and a composition process").

**1.  Mosaicing Is Not Limited to *Camera Outputs***

The language of the '325 Patent claims and '234 Patent specification does not support limiting "mosaicing" to "camera outputs."  Claims 2, 3 and 4 of the '325 Patent provide for "mosaicing the camera output *and [] additional source output*," which may include "computer graphic imagery, virtual world imagery, applets, film clips, and animation."  '325 Patent, Claims

---

[3] The parties agree that variants of "mosaicing" should be construed in accordance with the construction of "mosaicing."  The Court construes the terms "mosaic imagery" and "mosaic images" as "images created by mosaicing."

10

2, 3, and 4, 21: 33-61 (emphasis added).  The specification of the '234 patent similarly references additional source output, which may include:

> computer graphic imagery, virtual world camera views and virtual world grid data, virtual world imager, virtual objects and their grid positioning data, applets, sprites, avatar representations, film clips, animation, augmented-reality objects or images or recordings of real-world objects.

'234 Patent, 12: 42-48.  The specification states that "[t]he system may present the additional source output, alone or in combination with the camera output, for example, by *mosaicing*, mixing, layering or multiplexing it." '234 Patent, 12:48-50 (emphasis added).  This is enough to conclude that "mosaicing" is not limited to "camera outputs." *See Network-1 Techs., Inc.*, 981 F.3d at 1022 (directing courts to consider intrinsic evidence like claim terms and specifications); *Immunex Corp.*, 977 F.3d at 1218 (explaining that "[t]he specification is key").

As support for its argument that "mosaicing" requires exclusive use of camera outputs, Google points to claim 1 of the '325 Patent, which provides for "sequentially mosaicing the selected outputs of cameras in the first path," and claim 5 of the '325 Patent, which requires a sequence of cameras and "mosaicing the image of a current camera in the sequence to the image of a next camera in the sequence."[4]  These claims do not convey that all outputs *must* be camera outputs.  Instead, the fact that the '325 Patent describes the outputs as "outputs of cameras" suggests that "outputs" does not inherently mean camera outputs.  *See Phillips*, 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does

---

[4] While Google advanced the argument that "mosaicing" requires use of "camera outputs" in its claim construction briefing, during the *Markman* hearing held on February 16, 2021, Google's counsel stated that "if it's more palatable to the Court, we could keep that plurality of images portion of [Plaintiff's proposed] construction intact." *Kewazinga Corp. v. Google, LLC*, No. 20 Civ. 1106, Transcript, Dkt. No. 126 (S.D.N.Y. Mar. 3, 2021).  Despite this concession, for the sake of completeness, the above section addresses why it is inappropriate to limit "mosaicing" to "camera outputs."

11

not inherently mean objects made of steel"); *accord Kewazinga*, 2019 WL 3423352, at *10. Read in the context of the entire patent -- including the claims and specification -- mosaicing is not limited to camera outputs. *See Phillips*, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *accord Alexsam, Inc. v. MasterCard Int'l Inc.*, No. 15 Civ. 2799, 2018 WL 2849692, at *2 (E.D.N.Y. June 11, 2018).

### 2. Mosaicing Does Not Require *Seamless* Combination

The '325 and '234 Patents do not support Google's proposed requirement that "mosaicing" "achieve a seamless combination of the camera outputs." Neither the '325 Patent nor the '234 Patent teaches a system or method for "mosaicing" or creating "mosaic imagery" and "mosaic images." *See* '325 Patent, Claim 1, 20:63-21:4 (teaching a "telepresence system for providing a first user with a first display of an environment and a second user with a second display of the environment"); '234 Patent, Claim 1, 25: 6-11 (teaching "[a] system for providing at least a first user with a first view of multiple locations through a remote environment and a second user with a second view of multiple locations through the environment, the first view being different than the second view..."). These patents incorporate by reference U.S. Patent No. 5,649,032, entitled "A System For Automatically Aligning Images to Form a Mosaic Image" (the "Burt Patent"). '234 Patent, 17:30-41; '325 Patent, 13:15-25. Because "incorporated patents are effectively part of the host [patents] as if [they] were explicitly contained therein," *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1363 (Fed. Cir. 2014) (citation omitted), the Burt Patent provides guidance as to the meaning of "mosaicing."

After incorporating the Burt Patent by reference, the '234 and '325 Patents describe "mosaicing" as consisting of an alignment process and a composition process. The patents' specifications state:

> The server automatically aligns one camera output to another camera output, a camera output to another mosaic (generated from previously occurring camera output) such that the output can be added to the mosaic, or an existing mosaic to a camera output.
>
> Once the mosaic alignment is complete, the present embodiment utilizes a mosaic composition process to construct (or update) a mosaic. The mosaic composition comprises a selection process and a combination process. The selection process automatically selects outputs for incorporation into the mosaic and may include masking and cropping functions to select the region of interest in a mosaic. Once the selection process selections which output(s) are to be included in the mosaic, the combination process combines the various outputs to form the mosaic. The combination process applies various output processing techniques, such as merging, fusing, filtering, output enhancement, and the like, to achieve a seamless combination of the outputs. The resulting mosaic is a smooth view that combines the constituent outputs such that temporal and spatial information redundancy are minimized in the mosaic.

'234 Patent, 17:37-57; '325 Patent, 13:21-42. Based on this description in the specification, it is clear that "mosaicing" includes alignment and composition processes, and during the February 16, 2021, *Markman* hearing, the parties clarified that they do not dispute this point. *See Kewazinga*, 2019 WL 3423352, at *7 (reaching this same finding with respect to the meaning of "mosaicing" in the '234 and '325 Patents); *Kewazinga Corp.*, No. 20 Civ. 1106, Transcript, Dkt. No. 126.

The parties dispute, however, whether the result of these processes must be "seamless." This goal of "seamlessness" stems from the combination process, which occurs as step two of the composition process, after the "selection process selects which portions of the input image and current mosaic will be used to form an updated mosaic." Burt Patent, 6:10-11. Here, there is no reason to limit the meaning of "mosaicing" to products that are "seamless" or obtained through

"efforts to achieve seamlessness." *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope."). The intrinsic evidence from the Burt Patent clarifies that a mosaic need not be seamless or the result of efforts to achieve seamlessness. For example, the Burt Patent includes a description of additional processing used to make a mosaic seamless after the mosaic has been created; the Burt Patent states:

> After processing, the individual images are combined to form a mosaic, i.e., an image that contains a plurality of individual images. Additional image processing is performed on the mosaic to ensure that the seams between the images are invisible such that the mosaic looks like a single large image.

Burt Patent 1:20-25; *see also Kewazinga Corp.*, 2019 WL 3423352, at *9 (explaining that "incorporating the proposed requirement of seamlessness into the construction of the term 'mosaicing' is inappropriate because that requirement would render a determination of whether 'mosaicing' took place contingent on the outcome of the 'mosaicing' process, rather than the utilization of that process"). The Burt Patent also uses the phrase "seamless mosaic," suggesting that a "mosaic" is not necessarily "seamless." *See Phillips*, 415 F.3d at 1314; *see also* Burt Patent, 4:41-44 ("in composing the mosaic . . . the system may use any one of a number of image fusing, merging, filtering, and averaging processes to best produce a seamless mosaic.").

## IV.   CONCLUSION

For the reasons set forth below (1) "array of cameras" is construed as "a camera configuration wherein the configuration can be created over time by positioning cameras in relation to each other," and (2) "mosaicing" is construed as "creating imagery assembled from a plurality of images, or portions thereof, including an alignment process and a composition

process." The parties shall proceed according to the deadlines set forth in the Amended Patent Case Management Plan and Scheduling Order at Docket No. 123.

Dated: July 30, 2021
      New York, New York

                                      **LORNA G. SCHOFIELD**
                                  **UNITED STATES DISTRICT JUDGE**