UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEWAZINGA CORP., | Civil Action No. 20-cv-01106-LGS |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | **REDACTED PUBLIC VERSION** |
| GOOGLE LLC, | |
| Defendant. | |

## KEWAZINGA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.     KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT OF NO INVALIDITY FOR LACK OF §112 WRITTEN DESCRIPTION.................................................................... 1

II.    KEWAZINGA IS ENTTLED TO SUMMARY JUDGMENT OF NO DISCLAIMER OF "MOVING CAMERAS" ................................................................................................. 7

III.   KEWAZINGA IS ENTITLED TO SUMMARY OF NO FAILURE TO MARK ............ 9

IV.   KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT OF NO INVALIDITY BASED ON PRIOR ART REFERENCES NOT ENUMERATED IN GOOGLE'S FINAL ELECTION OF ASSERTED PRIOR ART ................................................................... 10

V.    KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT THAT STREET VIEW INFRINGES CLAIM 6 OF THE '234 PATENT ........................................................... 12

VI.   KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT THAT THE TAYLOR SYSTEM DOES NOT DISCLOSE ANY "TWEENING" OR "MOSAICING" CLAIM LIMITATIONS OF THE '234 AND '325 PATENTS .................................................... 14

VII.  CONCLUSION............................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994)..............................................................................9, 10

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-CV-00630-LHK, 2012 WL 2576136 (N.D. Cal. July 3, 2012)...................................17

*Baxter Healthcare Corp. v. Mylan Lab'ys Ltd.*,
  346 F. Supp. 3d 643 (D.N.J. 2016) ................................................................8

*Bos. Sci. Corp. v. Johnson & Johnson*,
  647 F.3d 1353 (Fed. Cir. 2011)......................................................................2

*Capon v. Eshhar*,
  418 F.3d 1349 (Fed.Cir. 2005)..............................................................2, 3, 4, 5

*Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*,
  310 F. App'x 404 (Fed. Cir. 2009) ..............................................................8

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015).....................................................................7

*Google v. Singular Computer LLC*,
  IPR2021-00154, Paper 16..............................................................................7

*Hologic, Inc. v. Smith & Nephew, Inc.*,
  884 F.3d 1357 (Fed. Cir. 2018)..............................................................2, 3, 5

*Immunex Corp. v. Sandoz Inc.*,
  964 F.3d 1049 (Fed. Cir. 2020)...................................................................2, 5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  607 F. Supp. 3d 464 (D. Del. 2022)................................................................17

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011)......................................................................................6

*Streck, Inc. v. Research. & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012)...................................................................2, 5

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016)....................................................................9

*United States v. Austin*,
    54 F.3d 394 (7th Cir. 1995) ................................................................................10

**Statutes**

35 U.S.C. §112 .............................................................................................1, 6, 7

35 U.S.C. §120 ....................................................................................................7

35 U.S.C. §282 ....................................................................................................2

35 U.S.C. §287 ...............................................................................................9, 10

**Other Authorities**

Fed. R. Evid. 408 ...............................................................................................10

Kewazinga replies to Google's opposition to Kewazinga's affirmative motions for summary judgment as follows.

## I.   KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT OF NO INVALIDITY FOR LACK OF § 112 WRITTEN DESCRIPTION

Google's argument in opposition to Kewazinga's motion for summary judgment of no invalidity for lack of written description is inconsistent with its non-infringement position. Specifically, Google argues no infringement because the Court's construction of "array of cameras" requires multiple cameras (*see*, *e.g.*, Dkt. 290 ("G.Opp") at 10 ("the Court's construction requires multiple cameras, not just a single camera that has traveled to multiple locations")), yet Google opposes Kewazinga's motion for no lack of written description by arguing it will present evidence that the patents "do not describe an invention comprised of **a single moving camera** that can be positioned relative to itself to form an 'array.'" G.Opp at 25 (emphasis added).[1] As such, Google faults the Asserted Patents for lacking written description support for matter that Google contends the claims do **not** cover, and this cannot be the basis for lack of written description.

Indeed, a finding that the "array of cameras" encompasses a single camera moved to different locations is not required for infringement. *See* K. Br. at 13; *see also id.* at 10-14. Street View uses a multi-camera rosette mounted on top of a car to "wheel the cameras into position"— the rosette is wheeled into a first position and individual, still images are captured, then the rosette is wheeled into the next position along a street, and another set of still images are taken, and so on. That the cameras are mounted atop a moving car does not alter the fact that once images are captured, their relationship to each other within the array is fixed. Indeed, to the extent the car

---

[1] Google failed to identify in its invalidity contentions lack of written description based on failure of the Patents to describe a single moving camera and so should be precluded from raising this argument at trial.

1

moves ████████ during a multi-camera capture sequence at a single location along a street, Google treats the resulting imagery as captured at a single point (*i.e.*, latitude/longitude). *See* SMF ¶ 30  The car is merely a means of efficiently positioning the cameras.

Notwithstanding Google's inconsistency, in light of the appropriate legal standard, Google's argument fails to demonstrate any plausible basis for a finding of clear and convincing evidence that the Patent specification does not provide written description support for moving cameras or a single moving camera. The written description requirement is satisfied if a person of skill in the art ("POSA") can reasonably conclude that the inventors had possession of the claimed invention. Because issued patents are presumed valid (35 U.S.C. § 282), Google must prove lack of written description by clear and convincing evidence. *Bos. Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011). Importantly, the written description requirement is not rigid, but can be satisfied by looking to the specification and a POSA's knowledge of the state of the art. *See Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1064 (Fed. Cir. 2020) (explaining that "[i]t is well-established that a patent specification need not re-describe known prior art concepts"); *Hologic, Inc. v. Smith & Nephew, Inc.,* 884 F.3d 1357, 1363 (Fed. Cir. 2018) (finding no lack of written description by determining how a POSA would understand the four corners of the patent with reference to prior art patents reflecting state of the art); *Streck, Inc. v. Research. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (finding a patentee can rely on information that is "well-known in the art" to satisfy written description requirement).

Additionally, "[t]he level of detail required to satisfy the written description requirement depends, in large part, on the nature of the claims and the complexity of the technology." *Streck*, 665 F.3d at 1285 (citation omitted); *see also Capon v. Eshhar*, 418 F.3d 1349, 1358 (Fed.Cir. 2005) ("The 'written description' requirement must be applied in the context of the particular

invention and the state of the knowledge."). As such, predictable arts require a lower level of detail to satisfy the written description requirement. *See Hologic*, 884 F.3d at 1362–63 (finding that disclosure of just one type of light guide in the written description was sufficient to support the claimed "light guide" because the field of the invention at issue is "a predictable art" in which various types of light guides were known); *Capon*, 418 F.3d at 1359 (vacating decision of lack of written description for consideration of, *inter alia*, "the predictability of the aspect at issue"). Here, the uncontroverted knowledge in the art and the predictability of the challenged aspect at issue— placement of a single or multiple cameras to capture images through an environment—establish that no fact finder could find that clear and convincing evidence demonstrates that the '226 and '325 Patents are invalid for failure to meet the written description requirement.

The array of cameras in the Patents serves to capture imagery that can be available for navigation by multiple, simultaneous users. Navigation is *not* by a user controlling a moving camera but by the user's *selection of camera outputs* (*i.e.,* imagery). In the Patents, there is no requirement that the cameras be positioned at specific intervals, or that they be tethered to each other, or that they be fixedly positioned, or that they capture the environment at the same time. *See* SMF ¶¶ 5–8. The goal is to capture imagery at progressively different perspectives through an environment, and the fundamental purpose of allowing multiple, simultaneous users to select views through an environment does not depend on how the cameras are placed to capture the imagery. Written description must be determined in this context. *Capon*, 418 F.3d at 1358.

In addition, the knowledge of the art establishes predictability with respect to stationary versus moving a camera in the context of the Patents. Importantly, Google's expert Dr. Lastra has admitted that ███████████████████████████████████████████████████████████ ████████████████████████████████████ Ex. 17 (Lastra Tr.) 61:15-62:10. He

also ████████████████████████████████████████████████ Ex.
17 (Lastra Tr.) 258:19-259:24. He also testifies that there is no relevance in the distinction of still
imagery and video—arguing that mosaicing can be performed so long as there is overlap between
images. G. Ex M. (Lastra Reply Rpt), ¶¶ 70-71.

  Consistent with Dr. Lastra's admissions, there is no evidence that in the context of the
Patents there is a difference between using imagery from a still camera or moving camera—
instead, the use of either, in the prior-art systems described in the patents, was predictable.
Mosaicing and tweening were well known techniques. Indeed, the Patents incorporate by reference
the prior art Burt and Hanna patents for their teachings of mosaicing and tweening.'325 Patent at
13:17-22 (Burt), 13:50-57 (Hanna). According to Dr. Lastra, "the Asserted Patents do not rely on
any new technology for mosaicing." Google Ex. M (Lastra Reply Rpt) ¶ 71. Moreover, applying
mosaicing and tweening to imagery from a moving camera was known. Ex. 13, ¶ 35 (Dr. Lubin
opining that "a POSITA would understand that 'mosaicing' does not require images captured by
stationary cameras [but] can be performed on images captured by moving cameras."). The Burt
patent discusses mosaicing images from a helicopter (Ex. 43 at 4:49-63), and the Hanna patent
discusses determining the motion of an image sensor (camera) through a scene (Hanna (U.S. Pat.
No. 5,259,040) 3:14-17). Google points to no evidence that mounting cameras atop a car serves
any technical purpose other than efficiently capturing images. In sum, the "predictability of the
aspect at issue"—using still or moving cameras in the context of the Patents—is clearly
established, and the written description requirement is satisfied. *Capon*, 418 F.3d at 1359

  When the specification is viewed from the perspective of a POSA, applying the knowledge
of the art and acknowledging the predictable nature of using a moving camera (as required by the
law), the conclusion that the written description requirement is satisfied is inescapable. For

example, the Patents teach wheeling cameras into position (*see* '226 Patent at 7:29-34; '234 Patent at 7:52-56; '325 Patent at 7:40-45), and in one embodiment, teach capturing imagery of a museum (*see* '226 Patent at 1:18-21; '234 Patent at 1:32-35; '325 Patent at 1:23-25). As explained by Dr. Lubin, a POSA would understand from the Patent specification that cameras could be wheeled into a first position along a wall of paintings, capturing images, then be wheeled further along the wall to capture images of additional paintings. Ex. 9 (Lubin Rebuttal Rpt.) ¶ 156; Ex. 8 (Lubin Opening Report) ¶ 305. Google's lack of written description argument would require the conclusion that **a computer scientist with a post-graduate degree and work experience,**[2] having read the specification, and being knowledgeable about the state of the art, would somehow not understand the inventors to have been in possession of this approach to image capture and instead believe that they had invented a system usable with only a single string of cameras. Such a conclusion does not reflect the knowledge of a POSA, the state of the art, or the predictable nature of the using such camera captures. *See supra*, *Streck*, *Hologic*, *Immunex*, and *Capon*. Indeed, the inventors were able to secure the '234 Patent, which covers navigating imagery by a moving camera, based on the same specification as the '325 Patent. Google cannot establish, by clear and convincing evidence, that the '226 and '325 Patent are invalid for lack of written description.

As Kewazinga explained (K.Br. §VII), the PTAB Decision denying institution of Microsoft's petition for *inter partes* review (IPR) is highly persuasive support that the Patents satisfy the written description requirement. In denying Microsoft's petition, the PTAB expressly found the Patents' specification provided written description support for moving cameras, ruling

---

[2] According to Google (Lastra Opening Report, ¶104) a person of ordinary skill would have a bachelor's degree in computer science, computer engineering, or a similar discipline and 3–5 years of experience in computer graphics or computer vision or would have a postgraduate degree in computer science, computer engineering, or a similar discipline, and 1–2 years of experience in computer graphics or computer vision.

"Petitioner has not shown sufficiently . . . that the [patent specification] fails to provide written-description support for the '234 patent's claims…." K.Br. at 28 (quoting Dkt. 110-17 ("PTAB Decision") at 11). [3] In response, Google presents three frivolous arguments.

**First**, Google argues the PTAB did not have all material facts before it. G.Opp at 25. [4] The PTAB had all that it needed. Contrary to Google's argument, this Court's specific construction and Kewazinga's infringement position are irrelevant—the PTAB considered a specification identical to the '325 Patent and the very issue of whether it supported the use of moving cameras. SMF ¶¶ 14-15. **Second**, Google takes the specious position that the IPR is irrelevant because it challenged the '234 Patent. G.Opp at 26. But the PTAB addressed the same issue before the Court here: The PTAB rejected Microsoft's argument that the '234 Patent was not entitled to priority to an earlier application because the earlier application lacked written description support for moving cameras.[5] *See* K.Br. at 27-28. Because that earlier application has the same specification as the '325 Patent, the PTAB's rejection of Microsoft's argument is persuasive. *See* SMF ¶ 15. **Third**, Google argues the PTAB did not consider §112 because it could not as part of an IPR. G.Opp at 26. Google is flatly wrong. Clearly, the PTAB Decision cited by Kewazinga directly addresses the

---

[3] Kewazinga does not concede that Google's characterization of the array of cameras in Street View as employing "moving cameras" is correct (*see* K.Br. at 12-13), however *even crediting this view*, the PTAB considered such embodiments to be supported by written description.

[4] Google's citation (G.Opp at 25) to *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) is misleading. That case held that invalidity must be established by "clear and convincing" evidence, not a mere preponderance, even where, hypothetically, a district court is presented with new evidence of invalidity not considered by the Patent and Trademark Office when granting the patent. *Id.* at 108-110. The case did not address the general persuasiveness of a prior PTAB decision, let alone one regarding §112 written description.

[5] Pages 9 and 15 of Kewazinga's opening brief (Dkt. 270) contain erroneous internal cross-references to "§V.C" while referencing the PTAB Decision. The correct citation is to § VII. Separately, the reference to § "V.E" on page 6 should be to § IX.

§112 written description requirement.[6] K. Br. At 27-28 (citing PTAB decision at 11). As Google well knows, the PTAB considers written description in situations like the Microsoft IPR when considering entitlement to priority applications. *See, e.g., Google v. Singular Computer LLC*, IPR2021-00154, Paper 16, at 12-21 (in response to Google's challenging patent's entitlement to priority based on lack of §112 written description, PTAB analyzing and finding sufficient written description, rejecting patentee's argument that §112 analysis was beyond the scope of PTAB review); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375, 1381–82 (Fed. Cir. 2015) (affirming patent validity based on PTAB's determination that prior art patent lacked written description support). The PTAB Decision, having considered the same issue Google's defense raises—*i.e.*, whether the specification provides written description support for moving cameras— is highly persuasive and should be followed.

## II.   KEWAZINGA IS ENTTLED TO SUMMARY JUDGMENT OF NO DISCLAIMER OF "MOVING CAMERAS"

Google, not Kewazinga, attempts to reopen claim construction by improperly reading in a blanket exclusion of moving cameras. Google acknowledges that disclaimer requires "an exacting standard," but persists in its clear mischaracterization of the Patents. *See* G.Opp at 6, 28 (citing *supra*, n.4). As found by the PTAB, the Patents "criticized the moving camera system for requiring **viewer control** of the camera system's movement for navigation through an environment." Dkt. 110-17 at 8 at 13-14 (emphasis added); *see also id.* at 16. And Dr. Lubin agrees the criticism is limited to viewer-controlled moving cameras. Ex. 9 (Lubin Rebuttal Rpt.) ¶155-157, ¶157 (quoting '226 Patent, 2:7-9 ("*In order for the user's view to move through the venue or environment*, a

---

[6] 35 U.S.C. §120 governs a claim to priority to an earlier application, affording the benefit of an earlier priority date to "[a]n application for patent for an invention disclosed in the manner provided by section 112(a)"—the provision setting forth the written description requirement.

moving vehicle carries the cameras"), 2:11-13 ("*in order for a viewer's perspective to move through the venue*, the moving vehicle must be actuated and controlled")). In contrast, the embodiments describe navigation as not relying, *per se*, on physically moving cameras, but by accessing imagery stored in "nodes." Because navigation is by accessing storage nodes, it is irrelevant whether the imagery was originally captured by stationary or moving cameras. Ex. 9 (Lubin Rebuttal Rpt.) ¶¶ 46, 155-157. As described in the Patents,

> [Navigation in the embodiments] involves a ... switching process (invisible to the viewer) which moves the viewer's point perspective from camera to camera. Rather than relying, per se, on physically moving a microcamera through space (i.e., vesting a viewer with control of a vehicle carrying one or more cameras), the system uses the multiplicity of positioned microcameras to move the viewer's perspective from microcamera node to adjacent microcamera node….

> Instead of vesting the viewer with the capacity to physically move a robotic camera or vehicle on which the camera or cameras are mounted, which would immediately limit the number of viewers that could simultaneously control their own course, one or more viewers can navigate via storage nodes containing images of an environment associated with a pre-existing array of cameras.

Ex. 3 '234 Patent at 4:31-55; *see also* Ex. 1 '226 Patent, 4:10-30; Ex. 2 '325 Patent at 4:20-42.[7, 8]

---

[7] Google argues, without legal citation (G. Opp at 5, n.1), that disclosure added to the '325 Patent is irrelevant to interpretation of 'array of cameras' in the '226 Patent. Google is wrong; disclosure in a later, continuation-in-part application is relevant to construction of the parent patent. *See Baxter Healthcare Corp. v. Mylan Lab'ys Ltd.*, 346 F. Supp. 3d 643, 658 (D.N.J. 2016) (finding that it is "entirely appropriate, and perhaps necessary, to look at the intrinsic evidence of a later issued, related [continuation-in-part] patent to interpret a common term used in both patents"); *Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*, 310 F. App'x 404, 407 (Fed. Cir. 2009) ("The disclosure in the '639 [continuation-in-part] patent is relevant for claim construction of the earlier '527 patent claim"). As such, Kewazinga cites to all three Patents.

[8] This was the distinction that Dr. Lubin expressed at his deposition, but which Google mischaracterizes in its brief.[8] Ex. 9 (Lubin Reply Report) at ¶¶ 155-157. Ex. 8 (Lubin Opening Report) ¶¶ 46. Dr. Lubin's infringement opinion is not, as Google argues, "predicated on his belief that 'the Court got it wrong'…." G. Opp. at 3 quoting G. Ex. N (Lubin Tr.) 329:6-330:12. First and foremost, Dr. Lubin faithfully applied the Court's construction. *See* Ex. N (Lubin Tr.) at 331 ("Q. Dr. Lubin, you're not expressing the opinion that the Court's claim construction doesn't govern the construction of the claims in this case; are you? A. No, of course not."). Dr. Lubin testified that "**that sentence**, in particular, has been misconstrued… **That sentence** is with respect to teleoperating, a user teleoperating [i.e., controlling] a single vehicle" to navigate. G. Ex. N (Lubin

Google relies on *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016), which is inapposite. *Cf.* G. Opp. 28. Although the *Columbia* court stated that a patentee "need not state 'my invention does not include X'" for there to be a disclaimer (*id.* at 1363), the court found a clear disclaimer that the term "byte sequence feature" included only "machine code" and not "resource information" because the priority application stated that "[t]he byte sequence feature . . . represents the **machine code** in an executable ***instead of* resource information**." *Id.* at 1365-66 (emphasis added). No such express exclusion of moving camera embodiments is present in the Patents–only a criticism of **user-controlled** moving vehicles. There are no words, either implicit or explicit, that rise to the level of manifest *exclusion* or *disavowal* in the Patents, and Kewazinga's motion should be granted.

## III.   KEWAZINGA IS ENTITLED TO SUMMARY OF NO FAILURE TO MARK

With respect to '234 Patent, Google concedes that Kewazinga had no duty to mark the K-System because the '234 Patent issued in 2015, more than ten years after the K-System was shelved. G.Opp at 22. With respect to the '226 and '325 patents, Google's argument that there is conflicting evidence regarding whether the K-system practiced the '226 or '325 Patent (*see* G.Opp at 22) is wholly irrelevant: the evidence shows that Google received actual notice of infringement in 2013, prior to the damages period in this case. Under 35 U.S.C. §287, actual notice absolves the patentee of any failure to mark.

Google relies on *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) for the proposition that "determining notice under section 287 must focus on the action

---

Tr.) 329:6-330:12; *see* K.Br. at 10-11. Dr. Lubin's reference to "that sentence" in his testimony is clearly referring to the sentence in the Patents repeatedly mischaracterized by Google. *See* Ex. 9, ¶175, n.89 (at pages 59-60) quoting '226 and '325 Patents ("…*in order for a viewer's perspective to move through the venue*, the moving vehicle *must* be actuated and controlled. *In this regard*, operation of the system is complicated") (emphasis added).

of the patentee, not the knowledge or understanding of the [accused] infringer" (G.Opp at 21),

arguing that this entitles it to be willfully blind to any actual notice or awareness it had of

Kewazinga's infringement allegations (*id.* at 22). Kewazinga's actions, however, show beyond

doubt that Kewazinga provided Google with actual notice under § 287.

In *Amsted*, a letter from the patent holder stating "[i]n our view [your center plate] …

infringes the ['269 patent]" was expressly held to meet § 287's notice requirement.  *Amsted*, 24

F.3d at 187. In the present case, Kewazinga went well beyond the facts of *Amsted* in that it: (i)

*filed a complaint for patent infringement* asserting that Street View infringed the then-issued

'226 and '325 Patents (D. Del. Case No. 1:13-cv-00938-GMS (filed May 24, 2013)), [9] (ii)

brought the filing to Google's attention by email on May 29, 2013 (*see* SMF ¶ 56, Ex. 32), and

(iii) engaged Google in licensing negotiations. *See* SMF ¶ 57, Ex. 33; SMF ¶ 56, Ex. 30; Dkt.

117 at 2-4 and 12 (granting Kewazinga's motion for summary judgment of no equitable estoppel,

observing that Google received notice of the 2013 complaint and engaged in licensing

discussions). [10] Kewazinga provided actual notice, so there is no limitation on damages from a

failure to mark.

## IV.    KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT OF NO INVALIDITY BASED ON PRIOR ART REFERENCES NOT ENUMERATED IN GOOGLE'S FINAL ELECTION OF ASSERTED PRIOR ART

---

[9] Google responds to Kewazinga's 56.1 Statement of Material Facts that the complaint was not served. *See* Dkt. 292 (Google Response to SMF), ¶ 56. As a preliminary matter, §287(a) refers only to filing rather than service. Moreover, as discussed, Kewazinga provided further notice.

[10] In its response to SMF ¶ 57, Google disputes that Kewazinga provided Google with affirmative notice of infringement to the extent Kewazinga relies on documents covered by Rule 408. However, Rule 408 limits the use of materials so designated to establish "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," not to establish that a party had *notice* of such a claim. *See, e.g.*, *United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful).

Google's three excuses for exceeding the bounds of its final election of prior art are baseless. **First**, Google's cursory argument that Kewazinga's brief does not substantively evaluate the references (G.Opp at 23) is wholly irrelevant. The only material facts at issue are (1) Google elected one set of prior art on which to rely for invalidity and (2) Google's expert submitted opinions beyond the scope of the art elected by Google. *See* K.Br at § VI; K. SMF at ¶¶ 48-51.[11]

**Second**, Google's attempt to draw a distinction between the use of prior art against a *patent* versus its use against the *claims* is untenable–anticipation and obviousness challenges to a patent *are* challenges to its claims. *Cf.* G.Opp at 23-24. Google admits that Dr. Lastra applied different "subsets" of its elected prior art combinations to different claims. Google uses the term "subsets" to obscure the reality that they are unelected combinations and individual references that clearly are outside the bounds of what Google elected. First, Google's final election of prior art otherwise considers "subsets" as separate references. *See* Ex. 45 (enumerating the "Taylor System" separately from the Taylor System in combination with other references); *see also* K. Br. at 25, SMF ¶¶ 48-51. Second, Google's position is precluded by the very language of the Court's order, which states: "For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference." Dkt. 155, ¶ 2.

**Third**, Google's argument that Kewazinga's motion is an "untimely motion to strike" and that Google's misbehavior should be allowed because Kewazinga has allegedly "suffered no prejudice" (G.Opp at 24) fares no better. Demonstrating the unavailability of admissible evidence is a valid basis for summary judgment. Google offers no legal or factual support for its *ipse dixit* claim that Kewazinga's motion is untimely. No deadline for motions *in limine* has passed and it is

---

[11] Page 25 of Kewazinga's opening brief (Dkt. 270) at contained an erroneous citation to SMF ¶¶ 40-41 rather than ¶¶ 48-51 due to changes in paragraph numbering that occurred during drafting. The correct citation is SMF ¶¶ 48-51.

now, in the context of this motion, clear that Google will assert a defense at trial relying solely on inadmissible evidence, *i.e.*, invalidity combinations beyond that which it elected.

## V.   KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT THAT STREET VIEW INFRINGES CLAIM 6 OF THE '234 PATENT

Google raises several issues in an attempt to dispute the infringement of claim 6 of the '234 Patent, but none rises to the standard of a *genuine dispute of material fact*. Despite Google's invocation of a plethora reasons that Street View allegedly does not infringe, this shotgun approach cannot conjure quality out of quantity: a reasonable juror would be obligated to determine that Street View infringes claim 6 of the '234 Patent.

Google argues that Dr. Lastra "opines that Street View does not infringe '234 Claims 1 and 6 for at least "twenty different reasons" (G.Opp at 26 (citations omitted)), but in reality these "twenty reasons"–many of which are simply the same "reason" repeated *ad nauseam*–boil down to essentially three: (i) the mosaicing disputes addressed in Kewazinga's opening brief (*see* K.Br at § IV); (ii) the argument that the one or more processing elements of independent claim 1 cannot "receive user inputs" nor "provide tweened imagery" to the user device (G.Opp at 27); and (iii) the specious claim that Street View does not provide imagery "along a view" (*id*). None of these arguments is supportable and none gives rise to a genuine dispute of material fact.

While Google's "mosaic imagery" arguments with respect to claim 1[12] are unavailing for the reasons set forth in Kewazinga's opening brief (K.Br at § IV), it is worth re-emphasizing that Google's expert, Dr. Lastra, testified at his deposition that ███████████████████████████ ███████████████ Ex. 17 (Lastra Tr.) at 167:22–168:5; SMF at ¶ 43. That Google Street View generates still mosaic imagery is not a material dispute of fact: Google's arguments on this score

---

[12] The term "mosaicing" appears in claim 1 whereas "tweening" appears in claim 6.

sound purely in rearguing claim construction and lack substantive merit, improperly reading-in unsupportable limitations to the plain language of claim 1. *See* K.Br at § IV.C.

Google's contention that "[t]he Street View client cannot be both the user device and the processing server that receives user inputs from the user interface device" (G.Opp at 27) is a legally improper attempt to reargue claim construction rather than raising an issue of material fact. Furthermore, Google's argument is premised on a falsehood. Neither claim 1 (nor claim 6, which depends therefrom) recites a processing "*server*"; they recite "one or more processing *elements*"– broadly permissive language that by its plain and ordinary meaning accommodates any number of proposed architectures or arrangements of processors and that could refer to the interaction between a client user interface device and one or more processors on that device. Indeed, this arrangement (exchange of information between a device and its processing elements) is expressly disclosed in the '234 Patent itself. The '234 Patent contemplates an embodiment in which a "user interface device" is programmed "to interpret the user input." '234 Patent, 6:7-11 ("the user interface device is a personal computer programmed to interpret the user input and transmit an indication of the desired current node address, buffer outputs from the array, and provide other of the described functions."). Elsewhere, the '234 Patent separately identifies and distinguishes between a computer and a processor that is part of such computer. *E.g.*, '234 Patent at 21:12–39, 21:56–22:7 (enumerating a computer (servers 902 or 1002) separately from the processors comprising it (central processing units 904 and 1004)). Thus, even assuming the Court were redoing claim construction, the disclosures of the '234 patent defeat Google's contention that the Street View client device cannot both comprise a user interface device and also receive user input, and also defeat its related argument that a Street View client device processor cannot "provide the tweened imagery to the first user interface device" as recited in claim 6. "One or more processing

elements" of a device can reside on and communicate with the device of which they are a part.

Google's final, equally strained argument that imagery is not provided "along a view" because the captures are taken too far apart (G.Opp at 27) likewise does not create a genuine dispute of material fact. No reasonable juror could accept Google's argument that imagery showing the view in front of a car moving down a straight street[13] is not imagery "along a view" of that street based on a spacing interval of a few meters. While Google points to the anticipated testimony of its expert Dr. Lastra, Google never requested that the term "along a view" be construed to be limited based on the spacing intervals of captured imagery, and such a position would be baseless. Consequently, such anticipated testimony is irrelevant.

Google's arguments do not create a genuine issue of material fact.

## VI.   KEWAZINGA IS ENTITLED TO SUMMARY JUDGMENT THAT THE TAYLOR SYSTEM DOES NOT DISCLOSE ANY "TWEENING" OR "MOSAICING" CLAIM LIMITATIONS OF THE '234 AND '325 PATENTS

Kewazinga is entitled to summary judgment that Taylor does not disclose, and can neither anticipate nor render obvious as a supplementary reference, the mosaicing and tweening claim elements of the '325 and '234 Patents. None of the evidence proffered by Google nor relied on by Dr. Lastra is sufficient to show that that the Taylor System relied on by Google as prior art practiced these claim elements *at all*, let alone by clear and convincing evidence.

Google acknowledges the reason that this is so: Google's argument that "morphing **could** be implemented using existing **tools** to create 'artificial point[s]-of-view'" (G.Opp at 29) concedes that Google and Dr. Lastra rely on *other, external* tools that are not part of the Taylor System. Confirming Kewazinga's position, the Taylor Article (relied on by Dr. Lastra) expressly represents

---

[13] Of course, looking straight in front of a car is not the only view in Street View. Users can look at other angles, such as 90 degrees to the side as the car progresses. This could also be imagery "along a view," but Google does not address it.

that the Taylor Patent—which has no disclosure of mosaicing or tweening—describes Mr. Taylor's "System." *See* K.Br at 31 & n. 13 (citing Ex. 20, Taylor Article, at 4); Ex. 41 (Taylor Patent). The relevant issue is not, as Google misleadingly suggests, whether external tools in fact meet the mosaicing and tweening limitations. The relevant issues is whether such tools are part of the Taylor System relied on by Google. They are not.

Google fails to establish any genuine dispute of material fact precluding summary judgment. *First*, Google incorrectly states that "Dr. Lastra explains (1) how the Taylor System implemented "mosaicing" and "tweening" by "warping," "morphing," and/or "interpolating" to align and blend images (the animated images cited in ¶ 239, available at https://digitalair.com/about.html. . . .)." G. Opp. at 29. Dr. Lastra, in fact, makes no such representation that the Taylor System implemented mosaicing and tweening and provides no evidence that would support such a conclusion. Rather, ¶239 of his report carefully uses the passive voice (" . . . the bottom image has been interpolated"). He never opines or provide corroborating evidence that the photographs allegedly captured in 1994 were interpolated *in 1994* or that they were interpolated *using the Taylor System*.[14]

A review of the history of https://digitalair.com/about.html[15] using the Internet Archive's WayBack Machine suggests an explanation for why Dr. Lastra's report is so carefully worded: the Internet Archive's earliest capture of this webpage, from January 10, 2011,[16] reflects a radically different appearance and *none* of the imagery cited by Dr. Lastra in his report. The alleged 1994

---

[14] Given that the leftmost of the photographs on the webpage have a significant reddish tinge and no interpolation or stabilization, it appears that these are intended to reflect the sequence of images allegedly captured in 1994, whereas the allegedly stabilized and interpolated images to the right appear to have undergone significant color correction in addition to other revisions in post-production at an unspecified date.

[15] The present form of the web page, on which Dr. Lastra relies, includes examples of Digital Air products from as recently as 2016 and thus dates to no earlier than 2016.

[16] https://web.archive.org/web/20110110233938/http://digitalair.com/about.html .

imagery and its corresponding "stabilized" and "interpolated" counterparts first appear in a snapshot from May 10, 2021.[17] There is no record evidence that the "stabilized" or "interpolated" images relied on by Google even *existed* prior to 2011, let alone that they were created by the Taylor System as it existed prior to the Patents' priority date in 1998 or were created without external tools. Google simply fails to marshal any such evidence, let alone clear and convincing proof.

Furthermore, Dr. Lastra discusses this website only in the background section of his report. When Dr. Lastra presents the bases for his invalidity opinions by comparing the Taylor System to the challenged claims, for the mosaicing and tweening claim elements, Dr. Lastra relies *exclusively* on the Taylor Article. *See* K. Br. at 32, SMF at 69 & n. 1. Nor is the website among the references Dr. Lastra identified as describing of the characteristics of the Taylor System–Dr. Lastra lists only the Taylor Patent, the Taylor Article, and "knowledge of the developers of the system, including Dayton Taylor." SMF 63, Ex. 5 (Lastra Opening Report) ¶ 232. In other words, Dr. Lastra offers no opinion that the images from the website are evidence of mosaicing or tweening.

***Second***, Google argues without further elaboration (or even citation) that Dr. Lastra "explains…how he personally observed the Taylor System when he met the inventor, Dayton Taylor, at a conference." (G. Opp at 29). But the fact that Dr. Lastra saw Taylor's image capture system and met with Dayton Taylor is irrelevant to the question of whether the Taylor System utilized the claimed mosaicing and tweening elements. Google does not even argue in its brief that Dr. Lastra will testify in support of this proposition, and indeed nothing in Dr. Lastra's report or his deposition testimony suggests that Dr. Lastra personally observed the Taylor System perform any mosaicing in tweening. To the contrary, Dr. Lastra testified that ███████████████

---

[17] https://web.archive.org/web/20210510065217/http://digitalair.com/about.html.

███████████████████████████████████, K Br. At 33 (citing SMF ¶ 70);

Ex. 17 (Lastra Tr.) 250:19-254:22. This is fully consistent with Kewazinga's position–that the

disclosures of the Taylor Article and Taylor Patent indicate that the Taylor System did **not** perform

any mosaicing or tweening itself.

      ***Third***, Google argues that that "Taylor explicitly recognized that, in addition to the

stabilization and interpolation that he used[18], ***further*** morphing could be implemented using

existing tools to create "artificial point[s]-of-view." G. Opp. 29. This statement concedes that

"existing tools"–not the Taylor System itself–performed the hypothesized morphing. *See, e.g.*

*Apple, Inc. v. Samsung Elecs. Co*., No. 12-CV-00630-LHK, 2012 WL 2576136, at *3 (N.D. Cal.

July 3, 2012) ("There is no evidence that the software programs and code used by Mr. Bickley

*were in existence at the same time or that they were combined in a single apparatus*. Mr. Bickley's

post-hoc, reconstructed interpretation of how a WAIS system *might* have been constructed does

not constitute prior art") (emphases added); *IOENGINE, LLC v. PayPal Holdings, Inc.,* 607 F.

Supp. 3d 464, 518 (D. Del. 2022) (Bryson, J., visiting Federal Circuit judge) (discussing with

respect to system art that "[a]nticipation, of course, depends on a finding that a single reference

satisfied all the limitations of the challenged claim" and citing the above portion of *Apple v.*

*Samsung*). The evidence does not support–let alone by clear and convincing evidence–a conclusion

that **the Taylor System** performed or comprised the claimed mosaicing and tweening.

## VII.   CONCLUSION

      For the foregoing reasons, the Court should grant Kewazinga's motions.

---

[18] As discussed *supra* in this section, the evidence does **not** show that Taylor used stabilization and interpolation in any prior art system, nor does Dr. Lastra rely on such a claim for invalidity.

Dated: March 16, 2023

Respectfully submitted,

_/s/ Ian G. DiBernardo_____

Ian G. DiBernardo
Jason M. Sobel
Haroon N. Mian
Harold S. Laidlaw
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Tel:  (212) 209-4800
Fax:  (212) 209-4801
idibernardo@brownrudnick.com
jsobel@brownrudnick.com
hmian@brownrudnick.com
hlaidlaw@brownrudnick.com

Timothy K. Gilman
Saunak K. Desai
Gregory R. Springsted
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, New York 10038
Tel:  (212) 806-5400
Fax:  (212) 806-6006
tgilman@stroock.com
sdesai@stroock.com
gspringsted@stroock.com

_Counsel for Plaintiff_
_Kewazinga Corp._