```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
KEWAZINGA CORPORATION,                                      :
                                Plaintiff,                  :       20 Civ. 1106 (LGS)
                                                            :
                -against-                                   :       OPINION AND ORDER
                                                            :
GOOGLE LLC,                                                 :
                                Defendant.                  :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

WHEREAS, Plaintiff Kewazinga Corporation ("Kewazinga") asserts infringement of three patents: U.S. Patent No. 9,055,234 ("Navigable Telepresence Method and System") (the "'234 Patent"), U.S. Patent No. 6,522,325 ("Navigable Telepresence Method and System Utilizing an Array of Cameras") (the "'325 Patent") and U.S. Patent No. 6,535,226 ("Navigable Telepresence Method and System Utilizing an Array of Cameras") (the "'226 Patent") (collectively, the "Kewazinga Patents"). Following discovery, the parties cross-move for summary judgment. In connection with the summary judgment motions, Defendant Google LLC ("Google") moves to preclude the testimony of Michele Riley, Kewazinga's damages expert.

A. **Legal Standard**

WHEREAS, "[w]hen reviewing damages in patent cases, [the Federal Circuit] appl[ies] regional circuit law to procedural issues and Federal Circuit law to substantive and procedural issues pertaining to patent law." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1347 (Fed. Cir. 2018).[1] In reviewing motions to exclude expert testimony related to patent royalties, the Federal Circuit has applied its own law. *See, e.g.*, *MLC Intell. Prop., LLC*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

*v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021).  Federal Circuit law applies.

WHEREAS, Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial judge plays a "gatekeeping role," which "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Apple Inc. v. Wi-LAN, Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 595, 597 (1993)).  "A reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case."  *Id.*

WHEREAS, in the context of a reasonable royalty, "when the accused technology does not make up the whole of the accused product, apportionment is required."  *MLC Intell. Prop.*, 10 F.4th at 1373.  "The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."  *Id.*  "This is so even where the proposed royalty base is the smallest saleable patent practicing unit or SSPPU."  *Id.*  "[T]he patentee must give evidence tending to separate or apportion the infringer's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018).  "That the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods is particularly

essential in the context of patent damages." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

**B. Royalty Base – Revenues from Street View, the Allegedly Infringing Product**

WHEREAS, Riley's approach to measuring Plaintiff's damages is to calculate a hypothetical royalty payable by Defendant for its infringing use of the Kewazinga Patents. Riley first calculated Defendant's revenues from the infringing use of the patents and then determined and applied a royalty rate for the use of the patents. She calculated the revenues, or "royalty base," by seeking to measure Defendant's revenues from Defendant's use of Plaintiff's patented technology in Google Street View (Street View and the Dynamic Street View API), a feature of Google Maps.

WHEREAS, one component of Riley's royalty base is advertising revenue from Google Search, because Google Maps (which incorporates the infringing product, Street View) is closely tied to Google searches. "Local searches" -- i.e., those that seek information about a specific location -- often yield a map and link to Google Maps as part of the search results. Local searches also produce other results, including images, recipes, social media posts, and advertisements.

WHEREAS, because Google does not compile the data, Riley uses the following methodology to calculate Plaintiff's Street View revenues associated with Google Search: first, she begins with Google's worldwide advertising revenue from Google searches. The advertising revenue figure is limited to ad revenue attributable to the United States and then further limited to revenue from "local searches" as described above. The domestic advertising revenue for local searches is adjusted to subtract revenue specific to Google Maps (accounted for

elsewhere in Riley's calculation) and the costs to acquire Street View images (which Riley understands to be outside the scope of the Kewazinga Patents).  Finally, this number -- adjusted local search revenue -- is further reduced by multiplying it by the percentage of daily active users of Google Maps who use Street View (the "Maps to Street View Adjustment"), and then by the percentage of those users who are provided transition imagery between panoramas.

WHEREAS, Riley's methodology to allocate a portion of Google search advertising revenue to the alleged infringement is not reliable.  The problem is at the Maps to Street View Adjustment.  Riley says that applying this percentage (which is the percentage of Google Maps users who used Street View) to the calculated search ad revenues approximates revenue from users who "performed a local search and interacted with Street View in Google Maps."  It is unreasonable to use the percentage of Google *Maps* users who use Street View to allocate local *search* revenue to Street View.  Google Maps and Google Search are distinct products, that serve different purposes, and have different user metrics.  Defendant introduces unrebutted evidence that the percentage of local search users who click through to Street View is an order of magnitude smaller than the percentage of Maps users who click through to Street View. Although reasonable minds may disagree on how best to determine Street View revenues associated with Google Search, the Maps to Street View Adjustment is unreliable.  Defendant's remaining objections to Riley's calculation of the royalty base are for the jury and do not raise issues that warrant exclusion of the testimony.

WHEREAS, Plaintiff's arguments in defense of the Maps to Street View Adjustment are unpersuasive.  First, Plaintiff argues that Riley's damages methodology accurately apportions search revenue, because her calculations reflect deductions for the fact that only some daily active users of Google Maps use Street View, and only some users of Street View use the

infringing feature.  This argument is irrelevant because these deductions do not address the main error in Riley's methodology: conflating Google Search users with Google Maps users, a distinct category.

WHEREAS, Plaintiff also argues that Street View is part of the ecosystem of products that Google offers in response to local search queries, meaning that it provides value to all users who conduct a local search, regardless of whether that user uses Street View.  This argument does not remedy the problem because Plaintiff does not explain why Riley's methodology captures this ecosystem value.  In particular, Riley's testimony does not explain why using the percentage of Google Maps users who use Street View captures any ecosystem value provided to Google search users.  Plaintiff cites *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), to support the idea that its damages need not be limited to only the portion of local searches where users click through to Street View and instead can reflect a portion of revenue from all local searches.  This misunderstands *Lucent*.  There, the Circuit stated only that a royalty does not necessarily have to reflect only "specific instances of infringement proven with direct evidence," in part because users of a product can gain value from a feature, even if they do not directly use it.  *Id.* at 1334.  The problem with Riley's methodology is not that it assumes search users gain some value from the presence of Street View; it is that she offers no basis to conclude that her methodology accurately reflects that value.

WHEREAS, Plaintiff argues throughout its briefing that Defendant's objections to Riley's methodology should be left to the jury to decide.  However, "*Daubert*'s gatekeeping requirement . . . ensure[s] the reliability and relevancy of expert testimony" and "the court must judge admissibility based on the particular facts of the case."  *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1298 (Fed. Cir. 2015).  Here, Plaintiff's proposed method for

5

calculating the Google Search portion of the royalty base, and specifically the Maps to Street View Adjustment, is unreliable.

### C. Royalty Rate

WHEREAS, Defendant's motion to exclude Riley's testimony regarding the royalty rate is denied.  Riley developed her opinion about the appropriate royalty rate using the three standard quantitative valuation methods and a qualitative analysis using well-recognized factors for determining a reasonable royalty.  Using one of the valuation methods, Riley determined a royalty rate by halving the profitability of "the Google segment operating margin earned during the damages period . . . as indicative of the value of the [Kewazinga Patents] at the hypothetical negotiation."  Defendant objects because the segment includes all of Google's main products, some of which are more profitable than others and some of which are excluded from the royalty base in other ways, making the rate unreliable.  Defendant's argument fails because it goes to whether Riley's opinion is accurate, rather than whether Riley's methodology is unreliable.  *See id.* at 1295-96 (contrasting exclusion based on unreliable methods with "whether the expert is credible or the opinion is correct").  Riley's testimony can be subject to "vigorous cross-examination [and] presentation of contrary evidence" at trial.  *Id.* at 1296.  Such cross-examination and contrary evidence shall comply with the parties' stipulation that in exchange for not having to produce certain documents, Defendant agreed not to challenge expert testimony on grounds that it "failed to rely on more granular information concerning its revenues and profits . . . [including] profit data from product areas other than the Geo product area."  This stipulation further counsels against granting Defendant's motion as to the royalty rate.  It is hereby

**ORDERED** that Defendant's motion to preclude Ms. Riley's testimony is granted in part and denied in part.  Ms. Riley may not testify to profits attributable to Google Search advertising

revenue using the Maps to Street View Adjustment.

      The Clerk of Court is respectfully directed to close the motion at Dkt. No. 281.

Dated: September 28, 2023
       New York, New York

                                            **LORNA G. SCHOFIELD**
                                           **UNITED STATES DISTRICT JUDGE**