UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEWAZINGA CORP., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 20-cv-01106-LGS <br><br> JURY TRIAL DEMANDED |

**KEWAZINGA CORP.'S BENCH MEMO OPPOSING GOOGLE'S PRESENTATION OF EXHIBITS RELATING TO KEWAZINGA'S PROTOTYPE FOR THE PURPOSE OF <u>DRAWING A COMPARISON WITH STREET VIEW OR PRIOR ART</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 2

   A.   Google Makes No Argument in Response to Kewazinga's Objection to Comparisons Between Kewazinga's Prototype and Prior Art. ....................................... 2

   B.   Google's Does Not Need to Compare Street View with Kewazinga Prototype to Rebut Commercial Success; Google's Argument is Misleading. ............................... 3

   C.   Courts Exclude Evidence of Misleading Comparisons of Alleged Commercial Embodiments. ................................................................................................. 5

   D.   Google's Case Law is Plainly Distinguishable. .................................................. 6

      (1)   Kewazinga does not contend that Street View is a copy of the Kewazinga prototype. ........................................................................................ 7

      (2)   Google's additional case law does not support admitting comparison of evidence relating to the Kewazinga prototype and Street View ......................... 8

III. CONCLUSION ..................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   616 F.3d 1283 (Fed. Cir. 2010)......................................................................................10

*Cadence Pharmaceuticals, Inc. v. Innopharma Licensing, LLC*,
   No. 14-1225, No. 14-01499, 2017 WL 39560 (D. Del. Jan. 4, 2017) ....................................10

*Gillette Co. v. Dollar Shave Club*,
   No. 15-1158, 2019 WL 1254773 (D. Del. Mar. 19, 2019) ......................................................5, 6

*Halo Electronics Inc. v. Pulse Electronics, Inc.*,
   136 S.Ct. 1923 (2016) ............................................................................................................8

*Motorola, Inc. v. Interdigital Technology Corp.*,
   121 F.3d 1461 (Fed. Cir. 1997).........................................................................................9, 10

*Riggs Marketing, Inc. v. Mitchell*,
   194 F.3d 1338 (Fed. Cir. 1999).....................................................................................7, 9, 10

*TradeCard Inc. v. S1 Corp.*,
   509 F.Supp.2d 304 (S.D.N.Y. 2007).................................................................................7, 9

*University of Florida Research Foundation, Inc. v. Orthovita, Inc*,
   No. 1:96-CV-82, 1998 WL 34007129 (N.D. Fla. Apr. 20, 1998) ............................................6

*Vulcan Engineering Co. v. Fata Group*,
   278 F.3d 1366 (Fed. Cir. 2002).............................................................................................9

*WBIP, LLC. v. Kohler Co.*,
   829 F. 3d 1317 (Fed. Cir. 2016).............................................................................................8

*Zenith Labratories, Inc. v. Bristol-Meyers Squibb Co.*,
   19 F.3d 1418 (Fed. Cir. 1994)............................................................................................5, 6

**I.      INTRODUCTION**

Google should not be permitted to proffer exhibits relating to the look, functionality, or output of Kewazinga's prototype system for the purpose of drawing a comparison between (i) the Kewazinga prototype and the alleged infringing Street View product, or (ii) the Kewazinga prototype and the presented prior art.

Using such evidence to draw such comparisons is contrary to well-settled law that the jury's determination of infringement requires comparing the asserted claims and the alleged infringing product and the determination of invalidity, anticipation and obviousness, requires comparing the asserted claims with the prior art.

Google's proffered authority merely establishes that a comparison between a commercial embodiment of an invention and the accused infringing product *may be relevant* in certain fact-specific scenarios. Those cases have no application to the facts of this case because, *inter alia*, none of the evidence in the record of Kewazinga's prototype shows that it was an embodiment of any of the asserted claims at issue at trial.  Indeed, the evidence that Google relies on demonstrates the opposite- that the prototype is not an embodiment of the claims at issue.

Even in the limited scenarios (not present here) that courts have permitted such comparison, those courts acknowledge the risk of confusing and prejudicing the jury.  Unlike the cases cited by Google, here, the Kewazinga prototype is not an embodiment of the claims,  there is no allegation by Kewazinga that Google copied its prototype when developing Street View, nor is there a full commercial product to enter into evidence and compare against Street View. As such, given the facts of this case, the danger of unfair prejudice far outweighs any limited probative value.

For the reasons detailed herein, Kewazinga's objections should therefore be sustained.

## II.     ARGUMENT

### A. Google Makes No Argument in Response to Kewazinga's Objection to Comparisons Between Kewazinga's Prototype and Prior Art.

Google does not contest Kewazinga's argument in its initial objection letter, Dkt. 540, regarding comparisons between Kewazinga's prototype and the asserted prior art. There is no reason to offer such evidence and perform such a comparison other than to prejudice the jury. Google alleges that the flashy, heavily produced, theatrical release of *The Matrix* evidences the prior art Taylor system (notwithstanding a lack of evidence as to how it was produced, and the *Star Trek Interactive* video evidences the prior art QTVR system (notwithstanding no witness with first-hand knowledge of how transitions were created). The evidence of Kewazinga's prototype that remains includes photos, snippets of outputs, and short video clips. These are vestiges of a product that no longer exists for comparison. Google's comparison of these vestiges with flashy finished products is intended to suggest in the jury's mind that the prior art was superior to the Kewazinga prototype, and hence must invalidate the patents-in-suit—without regard to how the movie's special effects were created. Such comparisons will be highly, unfairly prejudicial, especially because the visual comparison has absolutely nothing to do with the jury's factual determination of whether the prior art, as implemented, included each limitation of each asserted claim.

Put simply, such comparison between prior art and Kewazinga's prototype is not relevant to invalidity assessment for anticipation or obviousness. The jury's invalidity determinations of anticipation and obviousness require comparing the requirements of a claim with the prior at. Dkt. 537, Joint Proposed Jury Instructions, at §§11.3, 11.4.  Google points to nothing that sanctions comparing the functionality of a patentee's product, let alone a prototype that does *not* contain all the requirements of the asserted claims, for the purpose of comparing it with the prior art. Google

should not be allowed to offer evidence of Kewazinga's prototype product in comparison with the prior art in this case, as the risk of prejudice to the jury easily outweighs any potential value of such a comparison.

### B. Google's Does Not Need to Compare Street View with Kewazinga Prototype to Rebut Commercial Success; Google's Argument is Misleading.

Google's first argument for its improper use of evidence of the Kewazinga prototype is that it is necessary to "rebut Kewazinga's allegations about the commercial success of the K-System." Dkt. 568 at 1. Google does not need to introduce a comparison of the Kewazinga prototype to argue that it was not commercially successful. As Google's brief explains, there was one prototype built that was used at a few high-profile sporting events, but the product was a commercial failure and placed in storage. *Id.* at 2. Comparing Street View with the vestiges of the Kewazinga prototype is not relevant to prove this.

Google also argues that it should be able to offer the fact that Kewazinga "needed non-party Sarnoff to develop the K-System as evidence that the K-System reflects the value of Sarnoff's contributions, not the value of the asserted patents." *Id*. Google does not need to introduce evidence of the functionality of the Kewazinga prototype, and, in particular, does not need to compare the Kewazinga prototype to its Street View product in order to make those arguments.

Even assuming, *arguendo*, that a comparison of Street View and the Kewazinga prototype could conceivably be relevant to commercial success of the invention (something Google does not demonstrate), Google fails to demonstrate the requisite premise of its argument, i.e., its contention that the prototype is an embodiment of the patent claims. No evidence pertaining to the Kewazinga's prototype demonstrates that it is a commercial embodiment of any asserted claims—namely, Claims 14 and 15 of the '325 Patent or Claims 18 and 19 of the '234 Patent.

3

Google's argument is misleading. Google relies on a vague quote from the deposition of David Worley to claim that the Kewazinga prototype is "covered by Kewazinga's patents." *Id.* at 1. But context matters. Mr. Worley was answering a broad leading question asking him to agree that the "K-System product" was "covered by Kewazinga's patents." After an objection to form, he responded, "yes." Dkt. 569, Ex. 1 at 5. Importantly, however, the patents in suit at the time of the deposition include three patents, each of which had many separate patent claims. One of those patents (the '226 Patent) and most of the remaining claims from the other two patents are no longer being asserted by Kewazinga. This statement does not support, and there is no other evidence in the record, of any kind, that the Kewazinga prototype is a commercial embodiment of any of Claims 14 and 15 of the '325 Patent or Claims 18 and 19 of the '234 Patent. The vestiges of the Kewazinga prototype including assorted screenshots and video clips that were outputs from the use of the prototype do not provide evidence of the contours of the entire prototype, let alone evidence that it was a commercial embodiment of any of those asserted patent claims.

To the contrary, later in the same deposition upon which Google relies, Mr. Worley testified: "we had the prototype, the one prototype and it did not use tweening." Declaration of Jason M. Sobel ("Sobel Dec."), Ex. 1, Worley (March 28, 2022) Dep Tr. at 217:18-22. Critically, *all* of the asserted claims before the jury have tweening as an element. Accordingly, none of the vestiges of the Kewazinga prototype demonstrate output from a system using tweening. *See also infra* §IID (discussing PX-30 explaining the prototype is not coextensive with any patent). Accordingly, Google does not, and cannot, demonstrate that the Kewazinga prototype was an embodiment of any of the four asserted claims.

Grasping for anything, Google also mischaracterizes an opinion of Kewazinga damages expert Michele Riley (not someone who studied whether the Kewazinga prototype was an

4

embodiment of any claim) as saying that Kewazinga's inventions had commercial success. Dkt. 568 at 2 (citing Dkt. 510-1 at ¶¶85-86). Ms. Riley's statement in those paragraphs does not mention Kewazinga's patents or inventions, let alone any claims. Ms. Riley was plainly discussing the limited success of the prototype before Kewazinga "closed its operating business." Dkt. 510-1 at ¶¶85-86.

### C. Courts Exclude Evidence of Misleading Comparisons of Alleged Commercial Embodiments.

Courts have routinely refused to consider or allow evidence that makes comparisons between an alleged commercial embodiment of a patentee's invention and the accused product. In *Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, the Federal Circuit reversed the trial court's decision of infringement because it was based on testimony that incorporated the improper comparison between the commercial embodiment and the accused product, holding "as we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claim of the patent." 19 F.3d 1418, 1423 (Fed. Cir. 1994).

Following *Zenith,* in *Gillette Co. v. Dollar Shave Club*, the district court excluded the comparison portion of the defendant's expert testimony because the defendant and expert had not shown that the plaintiff's commercial embodiment was coextensive with the claims at issue, noting that "[i]n a few, limited circumstances, the Federal Circuit has not disapproved of testimony comparing an accused product to a commercial embodiment *when the commercial embodiment was co-extensive with the claims*." No. 15-1158, 2019 WL 1254773, at *2 (D. Del. Mar. 19, 2019) (emphasis added). Importantly, *Gillette* highlights the precision and strictness with which courts must address the inquiry of whether a product is an embodiment of a claim must be before allowing comparison with the product. Specifically*,* the court found that although the commercial product

was covered by the asserted claim, it had additional features from a narrower, unasserted dependent claim, and hence was an embodiment of the narrower claim. As such, it was not coextensive with the asserted claim, and the comparison was excluded. *Id.*

Also, following, *Zenith,* in *University of Florida Research Foundation, Inc. v. Orthovita, Inc.*, the court found that none of the proffered evidence that included the comparison between the accused product and the patentee's commercial embodiment could be properly considered for purposes of infringement and ultimately granted summary judgment to the defendant. No. 1:96-CV-82, 1998 WL 34007129 (N.D. Fla. Apr. 20, 1998) ("the Court concludes that the [proposed evidence is] fatally deficient in that, they compare the [accused product] not to the patent claims, but to the commercial embodiment of the patentee's invention in contravention of *Zenith Labs. v. Bristol-Meyers Squibb Co.,* 19 F.3d 1418, 1423 (Fed. Cir. 1994) …").

Allowing comparison between the evidence relating to Kewazinga's prototype and Google's Street View product would be contrary to well-settled Federal Circuit precedent and should be rejected here.

**D. Google's Case Law is Plainly Distinguishable.**

Critically, the premise of Google's argument is that the Kewazinga prototype is a commercial embodiment of the claims before the jury. As explained above, it is not and hence Google's argument fails. However, even assuming, *arguendo* that the Kewazinga prototype was a commercial embodiment of the four asserted patent claims, no case law supports the introduction of the unfairly prejudicial comparison that Google seeks to draw.

### (1) Kewazinga does not contend that Street View is a copy of the Kewazinga prototype.

Google relies on the Federal Circuit's unpublished decision in *Riggs Marketing Inc. v. Mitchell*, 194 F.3d 1338 (Fed. Cir. 1999), and *TradeCard Inc. v. S1 Corp.*, 509 F.Supp.2d 304, 324 (S.D.N.Y. 2007), which follows *Riggs*. In *Riggs*, (i) the patent at issue was direction to structure of a golf club bending machine, (ii) the patentee sold a golf club bending machine covered by its patent, and (iii) the accused product was a golf club bending machine. *Riggs*, 194 F.3d at *1. The Federal Circuit found that the district court did not abuse its discretion by allowing the introduction into evidence of plaintiff's golf bending machine because it "was relevant to [plaintiff's] charge that [defendant] willfully infringed its patent, inasmuch as it might show that [infringer] copied [patentee's] design." *Id.* at *4. Unlike *Riggs*, there are no allegations that Street View is a copy of the Kewazinga prototype, and hence the reasoning in *Riggs* does not apply.[1] Also, unlike *Riggs*, there is no evidence that the Kewazinga prototype is a commercial embodiment of the claims at issue. Further unlike *Riggs*, the Kewazinga prototype and Street View are not devices, *per se*, but have functionality in computer software, and here Google also seeks to introduce vestiges of the outputs of the Kewazinga prototype.

Google argues that Kewazinga will rely on communications from 2005/2006 to establish willfulness and those communications included pictures of Kewazinga's prototype. Dkt. 568 at 3. Google glosses over the point that there is no allegation in Kewazinga's willfulness case of copying; nor is copying a required element of willfulness. A willfulness inquiry is focused on knowledge of the patents and Google's culpability in offering Street View in ignoring or recklessly

---

[1] In both *Riggs* and *TradeCard*, the court was reviewing whether the admission of testimony relating to the functionality of the commercial embodiment of the product would constitute abuse of discretion necessitating a new trial, not whether a court is required to allow such evidence in the first instance. *See Riggs*, 194 F.3d at *4; *TradeCard*, 509 F.Supp.2d at 325.

7

disregarding a patent claim. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1933 (2016): *WBIP, LLC. v. Kohler Co.*, 829 F. 3d 1317, 1340-41 (Fed. Cir. 2016).

Google's brief prominently displays a screenshot of a portion of PX-30 to support its argument but omits the portion of that same exhibit below the photograph that unequivocally defeats the premise of Google's entire argument. The image Google includes in its brief is followed by a clear statement on page 12 under a section entitled "**Scope of the patented methods and systems**:"

**Scope of the patented methods and systems**

As discussed below, the Kewazinga patents cover both methods of and systems for the capture, processing and playback of navigable multi-camera video that was captured using a series of video cameras that provide progressively different perspectives of their subject matter.

*In reviewing the patents and their scope it is important to keep in mind that the legacy system (2001 – 2003) and legacy Players (2001 – present) define neither (i) the scope or performance of the technology, nor (ii) the scope of the patents. Because the patents are method and system patents they cover future embodiments that offer the same basic functionality of navigable multi-camera video as the legacy system and Players, but with improved features and performance.*

PX-30 at PX-0030.0012 (emphasis in original). Kewazinga made clear in those communications that the prototype system (referred to as the legacy system in the document) was not coextensive with "the scope of the patents," and further clarifies that the patents "cover future embodiments." *Id.* If this misleading presentation is indicative of what Google intends to do at trial, comparing evidence relating to the Kewazinga prototype that is not a commercial embodiment of the asserted patent claims with Street View is certain to unfairly prejudice, confuse and/or mislead the jury.

**(2) Google's additional case law does not support admitting comparison of evidence relating to the Kewazinga prototype and Street View**

Google's brief continues with citations to cases in support of its argument that comparing the Kewazinga prototype with Street View can aid the jury's infringement determination. Dkt. 568 at 4. But as those cases prominently note, the comparison is only relevant in certain contexts where "a commercial product meets all of the claim limitations." *Id.* (citing *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1288–89 (Fed. Cir. 2010)). As demonstrated

8

above, Google cannot prove that the Kewazinga prototype is the commercial embodiment of any of the patent claims at issue.

Google relies on *TradeCard Inc.* for its language that "there are contexts in which an embodiment is relevant to the comparison of the accused device against the claim(s) at issue." 509 F.Supp.2d at 324. The district court sets forth three contexts in which an embodiment *may* have relevance, all of which are distinguishable from the circumstances present in this case: (1) an embodiment that "is in fact the entire invention," which "may" be relevant to claim construction and infringement; (2) an embodiment that helps the jury understand the comparison of the accused device to the claims; or (3) in finding willfulness. For the first context, the court quotes *Vulcan Eng'g Co. v. Fata Group*, 278 F.3d 1366 (Fed. Cir. 2002) in the context of whether the court properly applied "the law of claim construction" on appeal when the embodiment is the entire invention presented by the patentee. Here, the embodiment at issue – the Kewazinga prototype – is not the entire invention because, at least according to Kewazinga's corporate representative, it does not demonstrate tweening, an essential aspect of the patent claims remaining in the case. Sobel Dec., Ex. 1, at 217:20-218:4 ("[W]e had the prototype, the one prototype and it did not use tweening.") The second and third contexts set forth in *TradeCard*, both of which are tied to *Riggs*, are wholly inapposite for the reasons explained above. *See supra* §II.D.1.

Finally, the *TradeCard* court cites *Motorola* for the proposition that a court may "properly allow 'passing references' to a particular relevant aspect of a commercial embodiment" as long as the jury is properly instructed as to the correct analysis for infringement. 509 F.Supp.2d at 325. Importantly, in *Motorola,* the Federal Circuit was finding that a new trial was not justified where the record merely showed a "few passing references to the size of [the patentee's *commercial embodiment*] compared to [the accused product]" to show one device was not really portable and

9

called the two "apples" and "oranges." *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1470 (Fed. Cir. 1997) (finding that defendant was not allowed to make a comparison between the patentee's commercial embodiment and the infringing product). The Federal Circuit was not deciding whether passing references comparing products should be allowed, but rather based on that record, the prejudice was not so great to warrant a new trial.

Google cites *Cadence*, where *defendant* sought to preclude comparison of *its* accused product to the *plaintiff's* commercial product. *Cadence Pharms., Inc. v. Innopharma Licensing, LLC*, No. 14-1225, No. 14-01499, 2017 WL 39560, at *2 (D. Del. Jan. 4, 2017). There, the commercial product, a medication, was an embodiment of one or more of the claims of the patents-in-suit. Unlike in *Cadence*, there is no evidence in the record that the K-System prototype is a commercial embodiment of the asserted claims. Moreover, unlike here, the *defendant* was seeking to preclude evidence of *plaintiff/patentee* who was looking to make the comparison and apparently was (like *Riggs*) asserting that defendant copied its drug, alleging in the Complaint that defendant's drug had the same active ingredient and route of administration as, and was bioequivalent to, patentee's drug that was listed in the Orange Book as covered by the claims of its asserted patent. *Cadence,* No. 14-1225, No. 14-01499 at Dkt. 1 §§ 30,34.

Google also cites *Adams,* where the Federal Circuit held for purposes of summary judgment, when a commercial product meets *all* of the claim limitations of a patent at issue, then a comparison to that product "may support a finding of infringement." 616 F.3d at 1288-89. In so doing, the court recognized there was an exception to the prohibition against such comparison evidence only where the commercial product meets *all* the limitations of the claim. As detailed above, that is not the circumstance in this case.

### III.     CONCLUSION

For the reasons set forth above, Google should not be permitted to present evidence relating to the Kewazinga prototype for the purpose of comparing it to Google's Street View, or to Prior Art, at trial.

Dated: October 28, 2024                                   Respectfully submitted,

/s/ *Jason M. Sobel*
Ian G. DiBernardo
Jason M. Sobel
Harold S. Laidlaw
Merri Moken
Anthony J. Boccamazzo
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Tel:  (212) 209-4800
Fax:  (212) 209-4801
idibernardo@brownrudnick.com
jsobel@brownrudnick.com
hlaidlaw@brownrudnick.com
mmoken@brownrudnick.com
aboccamazzo@brownrudnick.com

*Counsel for Plaintiff
Kewazinga Corp.*